James H.M. Sprayregen
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York  10022
Telephone:     (212) 446-4800
Facsimile:      (212) 446-4900

　　　- and -

Marc Kieselstein (admitted *pro hac vice*)
Ryan Blaine Bennett (admitted *pro hac vice*)
Paul Wierbicki (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois  60654
Telephone:     (312) 862-2000
Facsimile:      (312) 862-2200


Proposed Counsel to the Debtors and Debtors in Possession

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| LEAR CORPORATION, et al.,[1] | ) | Case No. 09-14326 (ALG) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

---

[1]　　The Debtors in these chapter 11 cases, along with the last four digits of each U.S. Debtors' federal tax identification number (if any), include:  Lear Corporation (6776); Lear #50 Holdings, LLC (N/A); Lear Argentine Holdings Corporation #2 (7832); Lear Automotive Dearborn, Inc. (4976); Lear Automotive Manufacturing, LLC (3451); Lear Canada (5059); Lear Canada Investments Ltd. (a non-U.S. Debtor that does not maintain a U.S. Federal tax identification number); Lear Corporation (Germany) Ltd. (6716); Lear Corporation Canada Ltd. (a non-U.S. Debtor that does not maintain a U.S. Federal tax identification number); Lear Corporation EEDS and Interiors (6360); Lear Corporation Global Development, Inc. (3121); Lear EEDS Holdings, LLC (4474); Lear European Operations Corporation (8411); Lear Holdings, LLC (4476); Lear Investments Company, LLC (8771); Lear Mexican Holdings Corporation (7829); Lear Mexican Holdings, LLC (4476); Lear Mexican Seating Corporation (4599); Lear Operations Corporation (5872); Lear Seating Holdings Corp. #50 (9055); Lear South Africa Limited (a non-U.S. Debtor that does not maintain a U.S. Federal tax identification number); Lear South American Holdings Corporation (1365); Lear Trim L.P. (8386); and Renosol Seating, LLC (4745). The location of the Debtors' corporate headquarters and the service address for all of the Debtors is:  21557 Telegraph Road, Southfield, Michigan 48033.

**NOTICE OF DEBTORS' MOTION FOR ENTRY OF AN ORDER**
**APPROVING THE DEBTORS' KEY MANAGEMENT INCENTIVE PLAN**

**PLEASE TAKE NOTICE** that a hearing on the *Debtors' Motion for Entry of an Order Approving the Debtors' Key Management Incentive Plan* (the "Motion") will be held before the Honorable Allan L. Gropper of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), Alexander Hamilton Custom House, One Bowling Green, Room 617, New York, New York 10004, on **July 30, 2009 at 10:00 a.m. (Eastern Time)**.

**PLEASE TAKE FURTHER NOTICE** that any **responses or objections to the relief requested in the Motion** must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York and shall be filed with the Bankruptcy Court electronically by registered users of the Bankruptcy Court's case filing system (the User's Manual for the Electronic Case Filing System can be found at www.nysb.uscourts.gov, the official website for the Bankruptcy Court) and by all other parties in interest, on a 3.5-inch disk, in text-searchable Portable Document Format (PDF), Wordperfect or any other Windows-based word processing format (in either case, with a hard copy marked "Chambers Copy" and delivered directly to the Bankruptcy Court) and shall be served so as to be actually received by no later than **July 25, 2009 at 4:00 p.m. (Eastern Time)** by the following parties: (a) the above-captioned debtors (collectively, the "Debtors"), 21557 Telegraph Road, Southfield, Michigan 48033, Attn: Terrence B. Larkin; (b) the undersigned counsel to the Debtors at the address set forth below; (c) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004, Attn: Paul K. Schwartzberg; (d) counsel to the official committee of unsecured creditors, Lowenstein Sandler PC, 65 Livingston Avenue, Roseland, New Jersey 07068, Attn: Sharon L. Levine; (e) counsel to the agent for the Debtors' prepetition senior lenders and proposed

postpetition secured lenders, Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New York, New York 10017, Attn: Kenneth S. Ziman; (f) counsel to the ad hoc committee of the Debtors' unsecured noteholders, Stroock & Stroock & Lavan LLP, 180 Maiden Lane, New York, New York 10038, Attn: Kristopher M. Hansen; (g) the Internal Revenue Service, 500 North Capitol Street NW, Washington, D.C. 20221; (h) the Securities and Exchange Commission, 100 F Street NE, Washington, D.C. 20549; (i) the Environmental Protection Agency, Ariel Rios Building, 1200 Pennsylvania Avenue NW, Washington, D.C. 20460; (j) the Pension Benefit Guaranty Corporation, 1200 K Street NW, Washington, D.C. 20005; (k) each trustee for each of the Debtors' notes; (l) the attorneys general for each of the States in which the Debtors conduct operations; and (m) all entities that have filed a request for service of filings in the above-captioned chapter 11 cases pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure. Only those responses that are timely filed, served and received will be considered at the hearing. Failure to file a timely objection may result in entry of a final order granting the Motion as requested by the Debtors.

K&E 15168786.1

New York, New York
Dated:  July 14, 2009

/s/ Marc Kieselstein
James H.M. Sprayregen
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York  10022
Telephone:     (212) 446-4800
Facsimile:      (212) 446-4900

- and -

Marc Kieselstein (admitted *pro hac vice*)
Ryan Blaine Bennett (admitted *pro hac vice*)
Paul Wierbicki (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois  60654
Telephone:     (312) 862-2000
Facsimile:      (312) 862-2200

Proposed Counsel to the Debtors and
Debtors in Possession

K&E 15168786.1

James H.M. Sprayregen
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York  10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

   - and -

Marc Kieselstein (admitted *pro hac vice*)
Ryan Blaine Bennett (admitted *pro hac vice*)
Paul Wierbicki (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois  60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200


Proposed Counsel to the Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| LEAR CORPORATION, et al.,[1] | ) Case No. 09-14326 (ALG) |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each U.S. Debtors' federal tax identification number (if any), include:  Lear Corporation (6776); Lear #50 Holdings, LLC (N/A); Lear Argentine Holdings Corporation #2 (7832); Lear Automotive Dearborn, Inc. (4976); Lear Automotive Manufacturing, LLC (3451); Lear Canada (5059); Lear Canada Investments Ltd. (a non-U.S. Debtor that does not maintain a U.S. Federal tax identification number); Lear Corporation (Germany) Ltd. (6716); Lear Corporation Canada Ltd. (a non-U.S. Debtor that does not maintain a U.S. Federal tax identification number); Lear Corporation EEDS and Interiors (6360); Lear Corporation Global Development, Inc. (3121); Lear EEDS Holdings, LLC (4474); Lear European Operations Corporation (8411); Lear Holdings, LLC (4476); Lear Investments Company, LLC (8771); Lear Mexican Holdings Corporation (7829); Lear Mexican Holdings, LLC (4476); Lear Mexican Seating Corporation (4599); Lear Operations Corporation (5872); Lear Seating Holdings Corp. #50 (9055); Lear South Africa Limited (a non-U.S. Debtor that does not maintain a U.S. Federal tax identification number); Lear South American Holdings Corporation (1365); Lear Trim L.P. (8386); and Renosol Seating, LLC (4745). The location of the Debtors' corporate headquarters and the service address for all of the Debtors is:  21557 Telegraph Road, Southfield, Michigan 48033.

**DEBTORS' MOTION FOR ENTRY OF AN ORDER APPROVING
THE DEBTORS' KEY MANAGEMENT INCENTIVE PLAN**

The above-captioned debtors (collectively, the "<u>Debtors</u>") hereby move the Court, pursuant to this motion (the "<u>Motion</u>"), for the entry of an order, substantially in the form attached hereto as <u>Exhibit A</u>, (a) approving and authorizing the Debtors' proposed key management incentive plan (the "<u>KMIP</u>") and (b) authorizing the Debtors to make payments to certain management employees under the KMIP. In support of this Motion, the Debtors respectfully state as follows:[2]

## <u>Jurisdiction</u>

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are sections 105(a), 363(b) and 503(c) of the Bankruptcy Code, 11 U.S.C. §§ 101–1532 (the "<u>Bankruptcy Code</u>") and Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>").

## <u>Background</u>

### *General Background*

4. The Debtors and their affiliates are a leading global automotive supplier of seat systems, electrical distribution systems and electronic products globally and supply their products to all original equipment manufacturers. The Debtors and their affiliates maintain their global headquarters in Southfield, Michigan, and employ approximately 72,000 workers

---

[2] In further support of this Motion, and shortly hereafter, the Debtors will file with the Court the *Declaration of John R. Sinkular in Support of Debtors' Motion for Entry of an Order Approving the Debtors' Key Management Incentive Plan*.

K&E 15168786.1

worldwide, including approximately 5,500 employees in the United States and Canada. In 2008, the Debtors and their non-debtor affiliates achieved total net sales of approximately $13.6 billion.

5.     In the past year, the Debtors have experienced a significant decline in revenue due to an unprecedented downturn in the automotive industry. The Debtors' businesses have been adversely impacted by a decrease in overall global vehicle production, particularly in North America and Europe. Furthermore, the impact in North America has been exacerbated by a shift in consumer preference away from large trucks and SUVs, which historically have generated a disproportionate share of the Debtors' sales and profitability. In addition, raw material, energy and commodity costs have increased significantly during 2008 and remain extremely volatile. These unfavorable conditions have not only affected the Debtors' operations but have created financial distress among the original equipment manufacturers as well as automotive suppliers throughout the entire supply chain.

6.     To ensure that they maintain competitive operations, the Debtors and approximately 68 percent of their prepetition secured lenders and a majority of their noteholders have executed plan support agreements (collectively, the "Plan Support Agreements"), which were filed upon commencement of these chapter 11 cases (collectively, the "Chapter 11 Cases") and have attached to them a term sheet that sets forth the terms of a chapter 11 plan of reorganization that contemplates a significant de-leveraging of the Debtors' balance sheet and expressly contemplates the KMIP. The Debtors intend to file a proposed chapter 11 plan consistent with the terms contained in the plan term sheet. The Debtors believe that the terms of their chapter 11 plan will allow them to remain a viable, competitive going forward business.

K&E 15168786.1

7.     On July 7, 2009 (the "Petition Date"), each of the Debtors commenced the Chapter 11 Cases to permit them to restructure their balance sheets and operations to restore profitability.   The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.   On the Petition Date, the Court entered an order authorizing the joint administration and procedural consolidation of the Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b).   On July 14, 2009, the United States Trustee appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").   No trustee or examiner has been requested or appointed in the Chapter 11 Cases.

## *Description of the KMIP*

**A.     Developing the KMIP**

8.     Historically, in addition to base salary, the Debtors have compensated a core management team of key employees through an equity-based long-term incentive plan and an annual incentive plan.   The Debtors developed these incentive plans to attract and motivate talented executives to achieve certain financial and operations results.   To best align employees' interests with the Debtors' overall performance, these incentive plans primarily provided employees with equity grants for achieving certain performance targets.   In light of the unprecedented downturn experienced by the automotive industry and the general decline in equity markets, the value of equity granted to employees under the Debtors' incentive plans rendered marginal value.

9.     In the spring of 2009, as the Debtors examined their restructuring alternatives, the Debtors recognized that achieving a successful reorganization would depend upon appropriately incentivizing the Debtors' senior management.   To that effect, the Debtors suspended their existing equity-based incentive plans and retained Towers Perrin ("Towers") to assist the

4

Debtors' management and the compensation committee (comprised of four independent directors) of the board of directors of parent Debtor Lear Corporation in developing a management incentive plan designed to provide employees instrumental to the success of the Debtors' restructuring efforts with real value for achieving the Debtors' restructuring objectives.

10.     The Debtors, in consultation with Towers and the Debtors' other advisors, carefully considered compensation components that would best incentivize and reward employees for maximizing value while ensuring that the terms of any proposed incentive plan were competitive and market-driven.  To achieve these objectives, Towers gathered data from 40 companies with total revenue comparable to the Debtors, including certain of the Debtors' competitors and other large automotive suppliers, including companies that have filed for chapter 11.  Towers then provided the Debtors with a report on the competitiveness of the Debtors' salary structure in March 2009.

11.     In their March 2009 report, Towers determined that the total compensation levels for the Debtors' senior management team were materially below the automotive supply industry average, principally due to the failure of the Debtors' long-term incentive plan and annual incentive plan to provide meaningful value.  The Debtors, together with Towers, then structured the KMIP to alleviate this compensation gap and to ensure that key management employees are incentivized to maintain the Debtors' businesses' competitiveness and to drive the successful reorganization of the Debtors in the Chapter 11 Cases.

12.     Further, prior to the Petition Date, the Debtors conducted intensive negotiations with the steering committee of their prepetition secured lenders and the ad hoc committee of the Debtors' noteholders regarding the terms of the KMIP.  Prior to filing this Motion, the Debtors modified certain aspects of the KMIP to address the issues raised by these parties.  The

prepetition secured lender steering committee and the ad hoc noteholder committee support the Debtors' request for approval of the KMIP as described herein. Further, recognizing the importance of the KMIP to the Debtors' objectives, the prepetition secured lenders and noteholders, which are parties to the Plan Support Agreements, likewise have agreed to support the KMIP.

13. The Debtors' senior management, in conjunction with their advisors and through discussions with their major creditor constituents, structured KMIP bonuses to reflect and reward (a) progress toward completing a timely restructuring in order to preserve value for the Debtors' businesses and estates and (b) near-term financial and operational steps toward implementing the Debtors' long-term business plan.

## B. Terms of the KMIP

### 1. Eligible Employees

14. The Debtors developed the KMIP to award bonuses to approximately 29 key management employees, including five "insiders" (as that term is defined in section 101(31) of the Bankruptcy Code), whom the Debtors determined are instrumental to the Debtors' ability to develop a plan of reorganization, effect all actions necessary to exiting chapter 11 within the established timeframe and drive actions that maximize value for the Debtors' estates and facilitate their successful restructuring.[3] Indeed, the Debtors and their supporting constituents are fully cognizant that in light of the Debtors' customers' general concerns about providing business awards to suppliers in chapter 11, as well as other value-enhancing aspects of the

---

[3] The Debtors' insiders eligible to receive bonus payments under the KMIP consist of the Debtors' chief executive officer, chief financial officer, general counsel, president of the Debtors' seating division and president of the Debtors' electrical and electronic systems division.

K&E 15168786.1

Debtors' proposed chapter 11 plan, the Debtors and their creditors are best served by an expeditious trip through the chapter 11 process.

15. In determining the KMIP participant pool, the Debtors sought to identify those employees that drive the Debtors' operational and restructuring activities. Many of the employees participating in the KMIP were materially involved in the negotiations regarding the Debtors' chapter 11 plan term sheet and the Plan Support Agreements and continue to be heavily involved in the Debtors' restructuring efforts. In addition, certain of the participating employees drive high-level operations needed to maximize value for the Debtors and their estates. Without the diligent efforts of these employees, the Debtors could not hope to achieve the financial performance targets under the KMIP or to meet certain financial covenants in the Debtors' proposed postpetition credit facility.[4] Accordingly, because the Debtors' successful restructuring and emergence from chapter 11 depend on these 29 employees, it is appropriate that they participate in the KMIP.

### 2. Incentive Awards Under the KMIP

16. The Debtors, with input from Towers, have set individual award opportunities based upon a percentage of each individual's base compensation. Awards under the KMIP were designed to approximate the expected 2009 median target-level incentives across companies with total revenue comparable to that of the Debtors. Incentive awards under the KMIP are paid for achieving key milestones in the Chapter 11 Cases and for certain quarterly financial goals. Specifically, 75 percent of an eligible employee's total target award opportunity is based upon certain chapter 11 plan milestones (the "Milestone Awards"). The remaining 25 percent of an

---

[4] Among other things, the Debtors proposed postpetition credit facility includes financial covenants based on minimum liquidity, minimum EBITDA and maximum capital expenditures.

K&E 15168786.1

eligible employee's total target award opportunity is based upon the Debtors' satisfying, if not exceeding, certain operating earnings targets (the "Financial Performance Awards").

### a. The Milestone Awards

17.     The Milestone Awards are based on the Debtors' achieving certain key milestones in the Chapter 11 Cases within an accelerated timeline.  The Milestone Awards under the KMIP are allocated as follows:

- eligible employees will receive 25 percent of their total target award opportunity (*i.e.*, one-third of the aggregate Milestone Award) for filing by no later than 60 days after the Petition Date a plan of reorganization that conforms to the terms of the Debtors' chapter 11 plan term sheet or such other plan that the Debtors' board of directors determines is in the Debtors' best interests; and

- eligible employees will receive 50 percent of their total target award opportunity (*i.e.*, the remaining two-thirds of the Milestone Awards) for consummating a plan of reorganization and emerging from chapter 11 by no later than 300 days after the Petition Date,.

18.     As previously noted, the Milestone Awards recognize the value-preserving benefits of an expeditious and coordinated trip through chapter 11.  Likewise, the Milestone Awards implicitly require the Debtors' satisfaction of the financial performance requirements in the Debtors' proposed postpetition credit agreement.  Indeed, if the Debtors are unable to satisfy the financial performance criteria set forth in their proposed postpetiton credit agreement, they may default under the proposed postpetition credit facility and fail to achieve the timeline established under the Milestone Awards.

19.     The aggressive KMIP targets are consistent with, and directly support the achievement of, the Debtors' formidable goals for the Chapter 11 Cases.  Providing such targeted incentives helps maximize the likelihood that the Debtors will adhere to their desired accelerated timeline for the Chapter 11 Cases.  Emerging from chapter 11 within the short timeframe

provided by the Milestone Awards is critical to their financial restructuring and important to their maintaining competitive, world-leading businesses.

20.     Indeed, the Debtors and the parties to the Plan Support Agreements recognize the need for the Debtors to promptly emerge from the Chapter 11 Cases to preserve value.  Based upon actions taken in other automotive supplier chapter 11 cases, the Debtors believe their customers likely will be reluctant to provide the Debtors with substantial new business awards as long as the Debtors remain in chapter 11.  Moreover, during the pendency of the Chapter 11 Cases, existing business is subject to pouching from competitors not in bankruptcy.  Obtaining new business awards is critical to the Debtors' revenues, particularly because the Debtors roll off approximately 20 percent of their business each year as a result of their customers' retirement rate for vehicle models.  To ensure the Debtors are best positioned to increase their revenues and earnings, the Debtors believe it is necessary for them to promptly return to normal-course operations, which cannot be accomplished with bankruptcy related customer business holds in place.

21.     In addition, the Debtors' timely exit from bankruptcy will allow their creditors to realize value and receive recoveries accorded them under the Debtors' plan of reorganization more quickly and is especially appropriate given the pre-arranged nature of the Chapter 11 Cases.  Further, the timeline set forth in the Milestone Awards was negotiated with, and is supported by, a majority of the Debtors' prepetition secured lenders and noteholders.

22.     The Debtors have tied the 75 percent of the awards under the KMIP not simply to non-financial metrics but to milestones that contemplate the Debtors' achieving acceptable financial performance.  The Debtors believe that the current, unprecedented downturn in the automotive industry makes it inappropriate to rely heavily on short-term financial performance.

K&E 15168786.1

In light of the recent unpredictable nature of automotive vehicle production volumes, particularly with General Motors and Chrysler shutting down certain plants and eliminating certain vehicle models, it is difficult to determine at what level vehicle production volumes will stabilize. This unpredictability makes it difficult for the Debtors to project with specificity their potential future revenues or earnings. Faced with these circumstances, short-term financial results may not be indicative of the level of success of the Debtors' restructuring efforts. Moreover, given the current volatility automotive volumes, achieving a short-term benchmark is a less reliable creator of future value then swift passage through chapter 11.

**b.      The Financial Performance Awards**

23.     The Financial Performance Awards are based on the Debtors' achieving certain quarterly adjusted operating earnings targets set forth in the Debtors' long-term business plan developed during the first half of 2009. To the extent that the Debtors exceed these targets, payments on account of the Financial Performance Awards may exceed their target levels up to a maximum of 140 percent of such target level. If the Debtors' performance falls below the target levels but exceeds certain operating earnings thresholds set at a certain percentage of the target, the eligible employees may receive reduced payouts on account of the Financial Performance Awards. If performance is below the threshold level, no payments will be made. If the Debtors emerge from chapter 11 during the course of a quarter, the Financial Performance Awards shall be prorated for the portion of the quarter before the Debtors' emergence.

24.     As discussed above, 75 percent of the total KMIP award is based on the Debtors' obtaining certain chapter 11 milestones. However, to further ensure that the Debtors' management continue to maintain adequate incentives to achieve operational success, the Debtors have tied 25 percent of the total KMIP award to certain quarterly adjusted operating

earnings targets determined based upon the Debtors' 2009 long-term business plan. The Debtors believe that some specific reference to financial performance—especially in connection with their long-term business plan—is an appropriate gauge of their ongoing restructuring efforts. The Debtors have devised a long-term business plan to address the current industry downturn and to continue to operate viable, competitive businesses.

25.     The Debtors' ability to implement this plan will depend in large part on the work of the 29 key management employees participating in the KMIP, and their success in implementing the plan may be measured, in part, by short-term financial results. While the Debtors understand that it is important to avoid over-reliance on these financial results, they also believe that some reference to financial goals will motivate the Debtors' management employees to maximize financial performance during the Debtors' financial restructuring during the Chapter 11 Cases.

### 3.     Payments of KMIP Awards

26.     The Debtors believe that, if they meet the milestones on which the Milestone Awards are based and if they achieve target-level performance with respect to the metrics on which the Financial Performance Awards are based, then the aggregate amount payable under the KMIP will be approximately $20.6 million. Specifically, the Debtors estimate that payments under the KMIP will conform to the chart below.

| | | Target Award Opportunity and Estimated Individual Costs | | | |
| | | Milestone Awards | | Financial Performance Awards (per Quarter) | Total (at Target Assuming 2.5 Quarters) |
| Employee | Current/Average Base Salary | File Plan | Emerge | | |
| CEO | $1,250,000 | 125% $1,563,000 | 250% $3,125,000 | 31% $390,000 | 453% $5,664,000 |
| President, Seating Division | $640,000 | 68% $432,000 | 135% $864,000 | 17% $108,000 | 243% $1,556,000 |

11

| Employee | Current/Average Base Salary | Target Award Opportunity and Estimated Individual Costs | | | |
| | | Milestone Awards | | Financial Performance Awards (per Quarter) | Total (at Target Assuming 2.5 Quarters) |
| | | File Plan | Emerge | | |
|---|---|---|---|---|---|
| President, Elec. Division | $640,000 | 68% $432,000 | 135% $864,000 | 17% $108,000 | 243% $1,556,000 |
| CFO | $640,000 | 68% $432,000 | 135% $864,000 | 17% $108,000 | 243% $1,556,000 |
| General Counsel and Corporate Secretary | $640,000 | 68% $432,000 | 135% $864,000 | 17% $108,000 | 243% $1,556,000 |
| 24 Non-Insiders[5] | $330,000 | 30% $100,000 | 60% $200,000 | 7% $25,000 | 109% $361,000 |
| Total Awards for 29 Employees: | | $5,682,000 | $11,365,000 | $1,420,000 | $20,599,000 |

27.     With respect to any participating employee, all KMIP awards are based on a percentage of the employees' salary.  The Milestone Awards are binary in that the amounts of such awards are set, and those amounts are to be paid only if the Debtors are able to meet the chapter 11 milestones within the established timeframe.  For example, under the Milestone Awards, if the Debtors file a chapter 11 plan within 60 days after the Petition Date, an eligible employee will receive a prescribed percentage of his or her base salary.  Conversely, if the Debtors fail to file a chapter 11 plan within 60 days of the Petition Date, the eligible employee will not receive any payment with respect to this milestone.

28.     The Financial Performance Awards are based on the Debtors' achieving certain quarterly adjusted operating earnings targets derived from the Debtors' long-term business plan. To the extent that these targets are exceeded, a participating employee may receive up to 140 percent of the target-level award.  By way of example, if the Debtors meet but do not exceed

---

[5]     All amounts set forth in the chart with respect to the 24 non-insider eligible employee participants are per-employee amounts.

their threshold-level performance goals in a quarter, under the Financial Performance Awards, an eligible employee will receive a prescribed percentage of his or her base salary. If the Debtors exceed these goals, the eligible employee may receive up to 140 percent of his or her target-level award).

29. The Debtors believe that the KMIP awards will adequately and fairly incentivize the eligible employees. The Debtors, in consultation with Towers and their other advisors, conducted extensive due diligence and invested a great deal of thought into the best way to structure the KMIP awards to ensure that they were competitive, market-based and, above all, effective. Prior to the filing of this Motion, Towers, at the Debtors' request, vetted the potential payouts under the KMIP in a number of respects, including industry standards, and determined that the compensation set forth in the incentive-based KMIP proposed by the Debtors is well within the range of reasonableness of incentive programs at similarly situated companies.

### 4. Timing of KMIP Award Payments

30. For eligible employees other than the Debtors' chief executive officer, the Milestone Awards will be paid within 10 days following the Debtors' achieving the key milestones on which the payments are based, and the Financial Performance Awards are payable quarterly, within 30 days of completion of the quarter, upon the Debtors' achieving certain adjusted operating earnings targets determined based on the Debtors' long-term business plan.

31. All amounts payable to the Debtors' chief executive officer on account of the Milestone Awards and the Financial Performance Awards shall be aggregated and shall be paid in two installments: (a) 50 percent upon the Debtors' emergence from chapter 11; and (b) 50 percent upon the one-year anniversary of the Debtors' emergence.

32. The timing of payouts under the KMIP awards was carefully developed by the Debtors, with input from Towers, and was negotiated with the Debtors' prepetition lenders and

13

the ad hoc committee of noteholders. In particular, in recognition of the chief executive officer's importance to the Debtors' restructuring efforts and ongoing business and to best ensure that his incentives are aligned with those of the Debtors during and after the Chapter 11 Cases, the lenders and noteholders requested that payments to the Debtors' chief executive officer be deferred as described above. The Debtors believe that the payout timing of the KMIP awards is appropriate to correctly incentivize the employees participating in the KMIP and to ensure the ongoing viability of the Debtors' businesses.

## Relief Requested

33.     The Debtors believe that an incentive program such as the KMIP can be implemented in the ordinary course of business without the need for approval of this Court. Nonetheless, the Debtors respectfully request that the Court grant the relief requested in this Motion out of an abundance of caution.

34.     By this Motion, the Debtors seek entry of an order, substantially in the form attached hereto as Exhibit A, (a) approving and authorizing the KMIP and (b) authorizing, but not directing, the Debtors to make payments under the KMIP to the 29 eligible employees.

## Basis for Relief

**A.     Implementing the KMIP Is an Exercise of the Debtors' Sound Business Judgment and Is Authorized by Section 363(b) of the Bankruptcy Code**

35.     Section 363(b)(1) of the Bankruptcy Code provides that a debtor "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." To approve the use of estate property under section 363(b)(1) of the Bankruptcy Code, the Second Circuit requires a debtor to show that the decision to use the property outside of the ordinary course of business was based on the debtor's business judgment. Official Comm. of Unsecured Creditors v. LTV Corp. (In re Chateaugay Corp.), 973 F.2d 141, 143 (2d Cir. 1992);

14

Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1070 (2d Cir. 1983); In re Ionosphere Clubs, Inc., 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989); In re Global Crossing Ltd., 295 B.R. 726, 743 (Bankr. S.D.N.Y. 2003).

36.    The business judgment rule shields a debtor's management's decisions from judicial second guessing.  Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.), 60 B.R. 612, 615–16 (Bankr. S.D.N.Y. 1986) (a "presumption of reasonableness attaches to a [d]ebtor's management decisions" and courts will generally not entertain objections to the debtor's conduct after a reasonable basis is set forth).  Once a debtor articulates a valid business justification, the law vests the debtor's decision to use property outside of the ordinary course of business with a strong presumption that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company."  Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.), 147 B.R. 650, 656 (S.D.N.Y. 1992) (citations and internal quotations omitted), appeal dismissed, 3 F.3d 49 (2d Cir. 1993).  Thus, if a debtor's actions satisfy the business judgment rule, then the transaction in question should be approved under section 363(b)(1) of the Bankruptcy Code.

37.    The implementation of the KMIP is a proper exercise of the Debtors' business judgment and is in the best interests of the Debtors, their estates and all of their stakeholders.  In addition to their ordinary-course activities overseeing the Debtors' businesses and maintaining key relationships with employees, long-standing customers and suppliers, the participating employees must work diligently to drive the Debtors' reorganization process.  These employees and their skills, knowledge and motivation are essential to the Debtors' achieving a successful reorganization in the Chapter 11 Cases.  In fact, as noted above, the 29 participating employees

K&E 15168786.1

were identified precisely because of their contributions to the Debtors' prepetition restructuring efforts.

38.     Furthermore, the KMIP aligns the interests of the participating employees and all stakeholders in the Chapter 11 Cases.  The Debtors have structured the KMIP carefully to balance the Debtors' need to incentivize their management employees and to provide them with appropriate, market-competitive compensation with the need to ensure that the Debtors' estates receive enhanced value in exchange for incentive payments—the result being a net win for all. The critical goal of the Debtors for the Chapter 11 Cases is a prompt emergence from bankruptcy, which is in the best interests of the Debtors' estates and all parties in interest in the Chapter 11 Cases.  Because payments under the KMIP are made only upon the Debtors' achieving the milestones and target financial results described above, it is well tailored to motivate participating employees to drive a quick emergence from chapter 11 and attain certain financial targets that are critical to the Debtors' long-term business plan.  By so linking the participation employees' increased compensation opportunities to enhanced value for the Debtors' estates, the KMIP successfully and fairly aligns the interests of the Debtors, their employees and their creditors.  Accordingly, the Debtors believe that the KMIP will maximize value for all parties in interest in the Chapter 11 Cases and will facilitate the implementation of the Debtors' new long-term business plan and their speedy emergence from chapter 11.  Thus, the KMIP is designed to "achieve the desired performance."  See In re Dana Corp., 358 B.R. 567, 576 (Bankr. S.D.N.Y. 2006).

39.     Not only is the KMIP calculated to achieve the desired performance, but the payments to be made under the KMIP are reasonable.  Towers analyzed the potential payouts using benchmarks for senior management compensation in publicly disclosed incentive plans, as

well as information contained in Towers's proprietary database, and found the potential payouts to be reasonable and within market practice. Accordingly, the Debtors believe that the design of the KMIP will improve morale among the participating employees and incentivize them to maximize value for all stakeholders in the Chapter 11 Cases.

40. Further, as noted above, the KMIP has been negotiated and is fully supported by key parties in interest in the Chapter 11 Cases. Specifically, as noted above, prior to the Petition Date, a majority of the Debtors' prepetition secured lenders and noteholders have evidenced their support for the KMIP by executing plan support agreements providing for its implementation. This support clearly indicates that the KMIP offers considerable benefits for the Debtors' estates and fairly aligns the interests of the Debtors, their employees and their creditors.

41. Courts in this jurisdiction and others have recognized that programs such as the KMIP can be an efficient means of maximizing value for a debtor's estate and, accordingly, have approved similar incentive programs. See, e.g., Dana, 358 B.R. at 584 (approving management incentive plan); In re WCI Communities, Inc., Case No. 08-11643 (KJC) (Bankr. D. Del. Feb. 4, 2009) (approving incentive plan based in part on chapter 11 milestones and in part on financial performance); In re PlusFunds Group, Inc., Case No. 06-10402 (JMP) (Bankr. S.D.N.Y. Apr. 19, 2006) (approving incentive plan payable upon successful sale of debtor's assets); In re Musicland Holding Corp., Case No. 06-10064 (SMB) (Bankr. S.D.N.Y. Feb. 1, 2006) (approving continuation of management incentive plan); see also In re Kimball Hill, Inc., Case No. 08-10095 (SPS) (Bankr. N.D. Ill. Dec. 17, 2008) (approving management incentive plan in connection with wind-down of operations); In re Leiner Health Prods. Inc., Case No. 08-10446 (KJC) (Bankr. D. Del. Apr. 14, 2008) (approving sale-related incentive payments to senior management); In re Dura Auto. Sys., Inc., Case No. 06-11202 (KJC) (Bankr. D. Del. Apr. 25,

2007) (approving key management incentive plan for progress in achieving restructuring milestones); In re Riverstone Networks, Inc., Case No. 06-10110 (CSS) (Bankr. D. Del. Mar. 28, 2006) (approving employee bonus program for successful completion of individual and company performance goals); In re Pliant Corp., Case No. 06-10001 (MFW) (Bankr. D. Del. Mar. 14, 2006) (approving management incentive compensation plan providing for cash awards for achievement of organizational performance goals); In re Nobex Corp., Case No. 05-20050 (MFW) (Bankr. D. Del. Jan. 19, 2006) (approving sale-related incentive payments to certain employees).

42.     Further, the bankruptcy court in WCI Communities recently approved an incentive plan similar to the Debtors' proposed KMIP. See In re WCI Communities, Inc., Case No. 08-11643 (KJC) (Bankr. D. Del. Feb. 4, 2009). The WCI Communities plan, like the KMIP, was based upon chapter 11 milestones and financial performance. See id. Similar to the KMIP, the WCI Communities plan also recognized the importance of a short stay in chapter 11 for the debtors, awarding participants for consummating an exit from chapter 11 on a timely basis. See id. Specifically, the WCI Communities chapter 11 milestone awards were estimated to be almost 50 percent of the total incentive plan awards in the event the debtors emerged from bankruptcy in under one year. See id.

43.     In approving the proposed incentive program, the WCI Communities court found that, because the current economic landscape has made financial performance very uncertain, "that makes the [milestone awards] that much more important to drive management." See Transcript of Proceedings at 60, In re WCI Communities, Inc., Case No. 08-11643 (KJC) (Bankr. D. Del. Feb. 4, 2009). The court further explained that the proposed program accomplished "the dual goals of improving operational performance and heightening the incentive to exit a Chapter

18

11 through a confirmed plan," giving deference to the debtors' "business judgment[,] given the continuing trend in the loss of value[,] that incentive to exit is critical." Id. at 66–67. Here, the KMIP proposes an even more aggressive timeline for the Chapter 11 Cases than that in WCI Communities and, like the plan in that case, recognizes that quick emergence is critical to the Debtors' restructuring efforts in light of current conditions in the automotive industry and the general economy.

44.     Accordingly, the Debtors submit that implementing the KMIP is a valid exercise of the Debtors' business judgment and that approval of the KMIP is in the best interests of the Debtors, their estates and all parties in interest in the Chapter 11 Cases.

**B.     The KMIP Satisfies the Requirements of Section 503(c) of the Bankruptcy Code**

45.     Five of the Debtors' insiders participate in the KMIP, and, therefore, the KMIP implicates section 503(c) of the Bankruptcy Code. Section 503(c) of the Bankruptcy Code contains three subsections:  (a) section 503(c)(1) of the Bankruptcy Code contains a general prohibition of retention plans; (b) section 503(c)(2) of the Bankruptcy Code places limitations on severance payments; and (c) section 503(c)(3) of the Bankruptcy Code sets forth standards governing other transfers to managers. See 11 U.S.C. § 503(c). The Debtors submit that neither sections 503(c)(1) nor 503(c)(2) of the Bankruptcy Code are applicable to evaluating the KMIP. In addition, while section 503(c)(3) of the Bankruptcy may be applicable to the KMIP, that section mirrors section 363(b) of the Bankruptcy Code, and the standard for evaluating the KMIP under section 503(c)(3) of the Bankruptcy Code is consistent with, and based upon, the standard for section 363(b) discussed above. See id.; see also In re Dana Corp., 358 B.R. 567, 576 (Bankr. S.D.N.Y. 2006) (applying business judgment test to evaluate incentive plan). Accordingly, the Debtors' implementing the KMIP should be authorized as a sound exercise of the Debtors' business judgment.

1.    **The KMIP Is Not a Retention Plan Governed by Section 503(c)(1) or a Severance Plan Governed by Section 503(c)(2)**

46.    Section 503(c)(1) of the Bankruptcy Code pertains solely to retention plans.  <u>See</u> 11 U.S.C. § 503(c)(1).  Section 503(c)(2) provides for restrictions applicable only to severance plans.  <u>See</u> 11 U.S.C. § 503(c)(2).  Neither provision applies to performance-based incentive plans.  <u>See</u>, <u>e.g.</u>, <u>Dana Corp.</u>, 358 B.R. at 584 (concluding that sections 503(c)(1) and 503(c)(2) did not apply to incentive plan); Transcript of Hearing at 67, <u>In re Nobex Corp.</u>, Case No. 05-20050 (CSS) (Bankr. D. Del. Jan. 12, 2006) (explaining that section 503(c)(1) does not apply to incentive programs); <u>In re Musicland Holding Corp.</u>, Case No. 06-10064 (SMB) (Bankr. S.D.N.Y. Feb. 1, 2006) (finding that debtor continuing to provide incentive bonuses under management incentive plan did not violate section 503(c)); Transcript of Hearing at 84–85, <u>In re Calpine Corp.</u>, Case No. 05-60200 (BRL) (Bankr. S.D.N.Y. Apr. 26, 2006) (stating that sections 503(c)(1) and 503(c)(2) of the Bankruptcy Code do not apply to incentive programs).

47.    The KMIP contains neither retention nor severance components.  Participating employees are not paid in the event their employment is terminated, nor are they paid for merely maintaining their employment for a certain time period.  Rather, awards under the KMIP are paid only upon the Debtors' achieving certain goals as described above.  The Milestone Awards and the Financial Performance Awards under the KMIP constitute targeted incentive payments.  These incentive payments are based upon the achievement of the milestones and financial targets described above, which are very important to the Debtors' successful reorganization in the Chapter 11 Cases.  Furthermore, there is no guarantee that the participating employees will receive any payments under the KMIP.  If the Debtors do not meet the milestones required for payment of the Milestone Awards or the financial targets required for payment of the Financial Performance Awards, no payments will be made under the KMIP.  Therefore, the Debtors

respectfully submit that sections 503(c)(1) and 503(c)(2) do not apply to the KMIP or to this Motion.

### 2. The KMIP Satisfies the Requirements of Section 503(c)(3) of the Bankruptcy Code

48.     The Debtors' implementing the KMIP is authorized under section 503(c)(3) of the Bankruptcy Code.  See 11 U.S.C. § 503(c)(3).  Section 503(c)(3) prohibits certain transfers made to officers, managers, consultants and others that are both outside the ordinary course of business and not justified by the facts and circumstances of the case.  See id.  In applying section 503(c)(3), the court in Dana noted that the "test in section 503(c)(3) appears to be no more stringent a test than the one courts must apply in approving administrative expense under section 503(b)(1)(A) . . . [an] expense must be an actual, necessary cost, or expense of preserving the estate." Dana, 358 B.R. at 576.

49.     Further, courts that have analyzed the section's prohibition on "other transfers" have applied a standard based upon the standard applied under section 363(b)—specifically, transfers are approved if made as a sound exercise of a debtor's business judgment and warranted by the facts and circumstance of the case.  See Dana, 358 B.R. at 576 (citing In re Nobex Corp., Case No. 05-20050 (CSS), 2006 WL 4063024 (Bankr. D. Del. Jan. 19, 2006) and explaining that proposed incentive compensation plan should be approved if "proposal meet[s] the 'sound business judgment' test"); see also Transcript of Proceedings at 40:17-41:2, In re Dura Auto. Sys., Inc., Case No. 06-11202 (KJC) (Bankr. D. Del. Apr. 25, 2007) (section 503(c)(3) "mean[s] something above the business judgment standard but not much farther above it").

50.     As set forth above, the Debtors' implementing the KMIP is a valid exercise of their sound business judgment and is intended to preserve value for the Debtors' estates and

creditors. Specifically, the KMIP will maximize value for all parties in interest in the Chapter 11 Cases by motivating the participating employees to successfully drive the Debtors' restructuring efforts and business plan during the Chapter 11 Cases. Further, in developing the KMIP, the Debtors sought outside advice, considered business performance impact and carefully considered input from certain of their prepetition secured lenders and the ad hoc committee of their noteholders that resulted in these parties supporting the KMIP.

51. The KMIP provides market competitive incentives that the Debtors believe will motivate the eligible employees to achieve the Debtors' value-maximizing restructuring objectives that ultimately benefit all parties in interest. Accordingly, the KMIP is a proper exercise of the Debtors' business judgment and resources and is justified by the facts and circumstances of the Chapter 11 Cases and, therefore, satisfies the requirements of section 503(c)(3) of the Bankruptcy Code. The Debtors respectfully submit that the KMIP will truly incentivize the Debtors' eligible employee to the ultimate the benefit of all parties in interest in the Chapter 11 Cases and should be approved.

## Waiver of Bankruptcy Rule 6004(h)

52. To implement the foregoing successfully, the Debtors seek a waiver of 10-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

## Motion Practice

53. This Motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated, and a discussion of their application to this Motion. Accordingly, the Debtors submit that this Motion satisfies Rule 9013-1(a) of the Local Bankruptcy Rules for the Southern District of New York.

## Notice

54.     The Debtors have provided notice of this Motion to:  (a) the Office of the United States Trustee for the Southern District of New York; (b) counsel to the agent for the Debtors' prepetition senior lenders and proposed postpetition secured lenders; (c) counsel to the Creditors' Committee; (d) counsel to the ad hoc committee of the Debtors' unsecured noteholders; (e) the Internal Revenue Service; (f) the Securities and Exchange Commission; (g) the Environmental Protection Agency; (h) the Pension Benefit Guaranty Corporation; (i) each trustee for each of the Debtors' notes; (j) the attorneys general for each of the States in which the Debtors conduct operations; and (k) all entities that have filed a request for service of filings in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested, the Debtors respectfully submit that no further notice is necessary.

## No Prior Request

55.     No prior request for the relief sought in this Motion has been made to this or any other court.

K&E 15168786.1

WHEREFORE, the Debtors respectfully request entry of the Order, substantially in the form attached hereto as <u>Exhibit A</u>, (a) approving and authorizing the KMIP, (b) authorizing, but not directing, the Debtors to make payments to the participating employees under the KMIP and (c) granting such other and further relief as is just and proper.

New York, New York
Dated:  July 14, 2009

/s/ Marc Kieselstein

James H.M. Sprayregen
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York  10022
Telephone:     (212) 446-4800
Facsimile:      (212) 446-4900

- and -

Marc Kieselstein (admitted *pro hac vice*)
Ryan Blaine Bennett (admitted *pro hac vice*)
Paul Wierbicki (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois  60654
Telephone:     (312) 862-2000
Facsimile:      (312) 862-2200

Proposed Counsel to the Debtors and
Debtors in Possession

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| LEAR CORPORATION, et al.,[1] | ) | Case No. 09-14326 (ALG) |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |

## <u>ORDER APPROVING THE DEBTORS' KEY MANAGEMENT INCENTIVE PLAN</u>

Upon the motion (the "<u>Motion</u>")[2] of the above-captioned debtors (collectively, the

"<u>Debtors</u>") for the entry of an order (this "<u>Order</u>") (a) approving and authorizing the KMIP and

(b) authorizing, but not directing, the Debtors to make payments to the participating employees

under the KMIP; it appearing that the relief requested is in the best interests of the Debtors'

estates, their creditors and other parties in interest; the Court having jurisdiction to consider the

Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; consideration of

the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C.

§ 157(b); venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; notice of

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each U.S. Debtors' federal tax identification number (if any), include:  Lear Corporation (6776); Lear #50 Holdings, LLC (N/A); Lear Argentine Holdings Corporation #2 (7832); Lear Automotive Dearborn, Inc. (4976); Lear Automotive Manufacturing, LLC (3451); Lear Canada (5059); Lear Canada Investments Ltd. (a non-U.S. Debtor that does not maintain a U.S. Federal tax identification number); Lear Corporation (Germany) Ltd. (6716); Lear Corporation Canada Ltd. (a non-U.S. Debtor that does not maintain a U.S. Federal tax identification number); Lear Corporation EEDS and Interiors (6360); Lear Corporation Global Development, Inc. (3121); Lear EEDS Holdings, LLC (4474); Lear European Operations Corporation (8411); Lear Holdings, LLC (4476); Lear Investments Company, LLC (8771); Lear Mexican Holdings Corporation (7829); Lear Mexican Holdings, LLC (4476); Lear Mexican Seating Corporation (4599); Lear Operations Corporation (5872); Lear Seating Holdings Corp. #50 (9055); Lear South Africa Limited (a non-U.S. Debtor that does not maintain a U.S. Federal tax identification number); Lear South American Holdings Corporation (1365); Lear Trim L.P. (8386); and Renosol Seating, LLC (4745). The location of the Debtors' corporate headquarters and the service address for all of the Debtors is:  21557 Telegraph Road, Southfield, Michigan 48033.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

the Motion having been adequate and appropriate under the circumstances; and after due deliberation and sufficient cause appearing therefor, it is hereby ORDERED that:

1. The Motion is granted as set forth herein.

2. The KMIP is approved in its entirety.

3. The Debtors are authorized, but not directed, to make any and all payments to participating employees under the KMIP, including, without limitation, any and all Milestone Awards and Financial Performance Awards.

4. The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

5. Notice of the Motion as provided therein shall be deemed good and sufficient notice of such motion and the requirements of Bankruptcy Rule 6004(a) and the local rules of the Court are satisfied by such notice.

6. Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 7062, 9014 or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

7. The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

New York, New York
Date: _____, 2009

_____
United States Bankruptcy Judge

K&E 15168786.1