## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| LEAR CORPORATION, *et al.*, | ) | Case No. 09-14326 (ALG) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

FINAL ORDER UNDER 11 U.S.C. §§ 105, 361, 362, 363(c), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) AND 364(e) AND BANKRUPTCY RULES. 2002, 4001 AND 9014 (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING, (II) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL AND (III) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED LENDERS

Upon the motion, dated July 7, 2009 (the "Motion"), of Lear Corporation ("Lear") and certain of its subsidiaries, each as debtor and debtor-in-possession (collectively, the "Debtors")[1] in the above-captioned cases (the "Chapter 11 Cases") commenced on June 30, 2009 (the "Petition Date") for a final order under sections 105, 361, 362, 363(c), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "Bankruptcy Code"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules") and the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), seeking:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each U.S. Debtors' federal tax identification number (if any), include: Lear Corporation (6776); Lear #50 Holdings, LLC (N/A); Lear Argentine Holdings Corporation #2 (7832); Lear Automotive Dearborn, Inc. (4976); Lear Automotive Manufacturing, LLC (3451); Lear Canada (5059); Lear Canada Investments Ltd. (a non-U.S. Debtor that does not maintain a U.S. Federal tax identification number); Lear Corporation (Germany) Ltd. (6716); Lear Corporation Canada Ltd. (a non-U.S. Debtor that does not maintain a U.S. Federal tax identification number); Lear Corporation EEDS and Interiors (6360); Lear Corporation Global Development, Inc. (3121); Lear EEDS Holdings, LLC (4474); Lear European Operations Corporation (8411); Lear Holdings, LLC (4476); Lear Investments Company, LLC (8771); Lear Mexican Holdings Corporation (7829); Lear Mexican Holdings, LLC (4476); Lear Mexican Seating Corporation (4599); Lear Operations Corporation (5872); Lear Seating Holdings Corp. #50 (9055); Lear South Africa Limited (a non-U.S. Debtor that does not maintain a U.S. Federal tax identification number); Lear South American Holdings Corporation (1365); Lear Trim L.P. (8386); and Renosol Seating, LLC (4745).

(I)     authorization for (a) Lear to obtain $500,000,000 postpetition financing (the "DIP Loans") on the terms and conditions set forth in this Order (this "Order") and the Credit and Guarantee Agreement (substantially in the form attached to the Motion as Exhibit A, and as hereafter amended, supplemented or otherwise modified from time to time, the "DIP Agreement";[2] together with all agreements, documents and instruments delivered or executed in connection therewith, as hereafter amended, supplemented or otherwise modified from time to time, the "DIP Documents"), among Lear, the Guarantors (as defined below) and JPMorgan Chase Bank, N.A. ("JPMorgan"), as Administrative Agent (in such capacity, the "DIP Agent") for itself and a syndicate of other financial institutions (collectively, the "DIP Lenders"), and (b) the U.S. Debtors, other than Lear (collectively, the "Guarantors" and along with Lear, the "Domestic Debtors") along with Lear ASC Corporation, to guaranty on a secured basis Lear's obligations in respect of the DIP Loans;

(II)    authorization for the applicable Debtors to execute and deliver the DIP Agreement and the other DIP Documents and to perform such other and further acts as may be necessary or appropriate in connection therewith;

(III)   authorization for the Debtors to (a) use the Cash Collateral (as defined in paragraph 11 below) pursuant to section 363 of the Bankruptcy Code, and all other Prepetition Collateral (as defined in paragraph 3(b) below), and (b)

---

[2] Unless defined in this Order, capitalized terms are used herein as defined in the DIP Agreement.

provide adequate protection to the lenders (including their affiliates which entered into secured hedge agreements with the Debtors, collectively, the "Prepetition Lenders") under the Amended and Restated Credit and Guarantee Agreement, dated as of April 25, 2006 (as amended, supplemented or otherwise modified as of the Petition Date, the "Prepetition Credit Agreement"; and together with any security, pledge or guaranty agreements and all other documentation executed in connection with any of the foregoing, each as amended, supplemented or otherwise modified, in each case as of the Petition Date, the "Prepetition Loan Documents"), among Lear, Lear Canada, certain subsidiaries of Lear party thereto (together with Lear , collectively the "Debtor Loan Parties"), the Prepetition Lenders and JPMorgan, as administrative agent (in such capacity, the "Prepetition Agent") for the Prepetition Lenders;

(IV)    authorization for the DIP Agent to exercise remedies under the DIP Documents upon the occurrence and continuance of an Event of Default, including without limitation, upon the entry of an order or orders granting relief from the automatic stay applicable under section 362 of the Bankruptcy Code in respect of the Debtors' assets having a value in excess of $10,000,000;

(V)    authorization to grant liens to the DIP Lenders on the proceeds of the applicable Debtors' claims and causes of action (but not on the actual claims and causes of action) arising under sections 544, 545, 547, 548, 549 and 550 of the Bankruptcy Code (collectively, the "Avoidance Actions");

3

(VI)    the waiver by the Debtors of any right to seek to surcharge against the DIP Collateral (as defined in paragraph 7 below) pursuant to section 506(c) of the Bankruptcy Code;

(VII)    to schedule, pursuant to Bankruptcy Rule 4001, a hearing (the "Hearing") for this Court to consider entry of this Order authorizing and approving on a final basis the relief requested in the Motion, including without limitation, for Lear on a final basis to borrow the full amount of the DIP Loans and to use the Cash Collateral and the other Prepetition Collateral.

This Court having held a hearing on July 7, 2009 to consider the Debtors' use of the Cash Collateral on an interim basis;

At the conclusion of such hearing, this Court having entered the Interim Order (I) Authorizing the Use of the Lenders' Cash Collateral and (II) Granting Adequate Protection Pursuant to 11 U.S.C. §§ 361 and 363, dated July 7, 2009 (the "Cash Collateral Order") authorizing the Debtors to use the Cash Collateral during the period from the Petition Date through the date of entry of this Order, for general corporate purposes and costs and expenses relating to these Chapter 11 Cases in accordance with the terms and conditions thereof;

All objections to entry of this Order having been overruled, withdrawn or resolved pursuant to the terms of this Order;

4

The Hearing having been held by this Court on July 30, 2009, and upon the record made by the Debtors at the Hearing, and after due deliberation and consideration and sufficient cause appearing therefor;

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.      *Jurisdiction*.  This Court has core jurisdiction over the Chapter 11 Cases, this Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      *Notice*.  Notice of the Motion, the relief requested therein and the Hearing was served by the Debtors on (i) the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"), (ii) the entities listed on the Consolidated List of Creditors Holding the 50 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d), (iii) counsel to the DIP Agent, (iv) counsel to the Prepetition Agent, (v) each trustee for each of the Debtors' notes, (vi) counsel to the ad hoc committee of the Debtors' unsecured noteholders ("Ad Hoc Committee Counsel"), (vii) the Internal Revenue Service, and (viii) the Securities and Exchange Commission.  Under the circumstances, the notice given by the Debtors of the Motion, the relief requested therein and the Hearing constitutes due and sufficient notice thereof and complies with Bankruptcy Rules 4001(b) and (c), the local rules of the Southern District of New York, and no further notice of the relief sought at the hearing is necessary or required.

3.      *Debtors' Stipulations*.  Without prejudice to the rights of any other party (but subject to the limitations thereon contained in paragraphs 17 and 18 below) the Debtors admit, stipulate, and agree that:

5

(a)     as of the Petition Date, Lear and the other applicable Debtor Loan Parties were liable to the Prepetition Lenders in respect of loans made by the Prepetition Lenders to Lear pursuant to and to the extent set forth in the applicable Prepetition Loan Documents in the aggregate principal amount of approximately $2.177 billion, plus additional amounts in respect of termination payments under certain hedge agreements with Prepetition Lenders or their affiliates (to the extent such hedge agreements are terminated) that are secured ratably with the other Prepetition Obligations, plus approximately $73,200,000 on account of Lear's reimbursement obligations with respect to letters of credit issued pursuant to the Prepetition Credit Agreement which remained outstanding as of the Petition Date, plus additional amounts in respect of accrued but unpaid interest, fees and other charges and all other fees, costs, and expenses of the Prepetition Lenders and the Prepetition Agent, in each case payable pursuant to and to the extent set forth in the applicable Prepetition Loan Documents (collectively, the "Prepetition Obligations");

(b)     the Prepetition Obligations are secured (subject to the applicable limitation on secured amounts set forth in Section 17.24 of the Prepetition Credit Agreement (the "Limitation")) by perfected, valid and enforceable first priority liens and security interests granted by Lear and the other applicable Debtor Loan Parties pursuant to and to the extent set forth in the applicable Prepetition Loan Documents to the Prepetition Agent for the ratable benefit of the Prepetition Lenders, upon and in certain assets and property of the applicable Debtor Loan Parties, including without limitation, accounts, chattel paper, deposit accounts, documents, equipment, general intangibles, instruments, intellectual property, inventory,

6

investment property, letter-of-credit rights, certain commercial tort claims, pledged capital stock and other pledged interests of certain subsidiaries and other tangible and intangible personal property and the proceeds thereof (including the setoff rights described in the Prepetition Loan Documents and arising by operation of law, but in each case not including any "Excluded Property" (as defined in the Prepetition Credit Agreement), collectively the "Prepetition Collateral");

(c)     the liens and security interests in the Prepetition Collateral granted by the applicable Debtor Loan Parties to the Prepetition Agent to secure the Prepetition Obligations are (i) valid, binding, perfected, enforceable, first priority (subject to permitted exceptions under the Prepetition Credit Agreement) liens, subject to the Limitation, on and security interests in the Prepetition Collateral, (ii) not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law and (iii) subject and subordinate only to (A) after giving effect to this Order, the Carve Out (as defined in paragraph 6(b) below) and the liens and security interests granted to secure the DIP Loans and the Adequate Protection Obligations (as defined in paragraph 13 below) and (B) valid, perfected and unavoidable prepetition liens, including such liens in existence immediately prior to the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code, to the extent such permitted liens are senior to the liens securing the Prepetition Obligations (the "Prepetition Perfected Liens"); and

(d)     (i) no portion of the Prepetition Obligations is subject to avoidance, recharacterization, recovery or subordination pursuant to the Bankruptcy Code or applicable

7

nonbankruptcy law and (ii) the Debtors do not have any claims, counterclaims, causes of action, defenses or setoff rights, whether arising under the Bankruptcy Code or applicable nonbankruptcy law, against the Prepetition Agent, the Prepetition Lenders and their respective affiliates, subsidiaries, agents, officers, directors, employees, attorneys and advisors;

4. *Findings Regarding The DIP Financing.*

(a) Good cause has been shown for the entry of this Order.

(b) The Debtors require the DIP Loans and need to continue to use the Prepetition Collateral, including the Cash Collateral, in order to, among other things, permit the orderly continuation of their businesses, preserve the going concern value of the Loan Parties, make payroll and satisfy other working capital and general corporate purposes of the Loan Parties. The Debtors' use of the Prepetition Collateral (including the Cash Collateral) is necessary to ensure that the Debtors have sufficient working capital and liquidity to preserve and maintain the going concern value of the Debtors' estates.

(c) The Debtors are unable to obtain financing on more favorable terms from sources other than the DIP Lenders pursuant to, and for the purposes set forth in, the DIP Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtors are also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code without granting the priming DIP Liens (as defined in paragraph 7 below) and the Superpriority Claims (as defined in paragraph 6(a) below), in each case on the terms and conditions set forth in this Order and the DIP Documents.

(d)    The terms of the DIP Financing and the use of the Prepetition Collateral (including the Cash Collateral) pursuant to this Order are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

(e)    The DIP Documents and the use of the Prepetition Collateral (including the Cash Collateral) have been the subject of extensive negotiations conducted in good faith and at arm's length among the Debtors, the DIP Agent, the DIP Lenders, the Prepetition Agent and the Prepetition Lenders, and all of the Debtors' obligations and indebtedness arising under or in connection with the DIP Loans, including without limitation, (i) all loans made to Lear pursuant to the DIP Agreement and the obligations of the other Domestic Debtors in respect of the guarantees of the DIP Loans and (ii) all other obligations of the Debtors under the DIP Documents and this Order owing to any DIP Lenders, including, without limitation, the Upfront Fee and the Exit Fee and the fee payable in cash or warrants pursuant to Section 2.7 of the DIP Agreement (the "Conversion Fee") (collectively, the "DIP Obligations"), shall be deemed to have been extended by the DIP Agent and the DIP Lenders in "good faith" as such term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections set forth therein, and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Order or any provision hereof is vacated, reversed or modified on appeal or otherwise.

509265-0024-08706-Active.11685878.8

(f)     Consummation of the DIP Financing and the use of the Prepetition Collateral (including the Cash Collateral) in accordance with this Order and the DIP Documents are in the best interest of the Debtors' estates.

5.     *Authorization Of The DIP Financing And The DIP Documents.*

(a)     The Debtors are hereby authorized to enter into and perform under the DIP Documents and, in the case of Lear, to borrow under the DIP Agreement an aggregate principal amount of $500,000,000 of the DIP Loans for working capital and other general corporate purposes of the Debtors and the Loan Parties, including without limitation, to pay interest, fees and expenses in connection with the DIP Financing.

(b)     In furtherance of the foregoing and without further approval of this Court, each Debtor is authorized to perform all acts and to execute and deliver all instruments and documents that the DIP Agent determines to be reasonably required or necessary for the Debtors' performance of their obligations under the DIP Documents to the extent applicable, including without limitation:

(i)     the execution, delivery and performance of the DIP Documents;

(ii)     the execution, delivery and performance of the guarantees by the Domestic Debtors of the obligations of Lear;

(iii)     the execution, delivery and performance of one or more amendments, waivers, consents or other modifications to and under the DIP Documents, in each case in such form as the Debtors, the DIP Agent and the DIP Lenders may agree, and no further approval of this Court shall be required for amendments, waivers, consents or other

10

modifications to and under the DIP Documents (and any fees paid in connection therewith) that do not materially and adversely affect the Debtors; provided, however, that a copy of any such amendment, waiver, consent or other modification shall be filed by the Debtors with this Court and served by the Debtors on the U.S. Trustee, the Committee and Ad Hoc Committee Counsel with reasonable advance notice of such amendment, waiver, consent or other modification;

(iv)     the non-refundable payment to the DIP Agent, J.P. Morgan Securities Inc. (the "DIP Arranger") and the DIP Lenders, as the case may be, of the fees set forth in the DIP Documents and those agreed to among the Debtors and the DIP Arranger;

(v)     the non-refundable payment to each DIP Lender of the Upfront Fee, the Exit Fee and the Conversion Fee, in each case paid as and to the extent set forth in the DIP Documents and this Order; and

(vi)     the performance of all other acts required under or in connection with the DIP Documents.

(c)     Upon execution and delivery of the DIP Documents, the DIP Documents shall constitute valid and binding obligations of the Debtors as applicable, enforceable against the applicable Debtors in accordance with the terms of this Order and the DIP Documents. No obligation, payment, transfer or grant of security by the applicable Debtors under the DIP Documents or this Order shall be stayed, voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable nonbankruptcy law (including without limitation, under sections 502(d), 548 or 549 of the Bankruptcy Code or under any applicable state Uniform

11

Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment or counterclaim.

6. *Superpriority Claims.*

(a) Except to the extent expressly set forth in this Order in respect of the Carve Out, pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed senior administrative claims (the "Superpriority Claims") against the Domestic Debtors with priority over any and all administrative expenses, adequate protection claims and all other claims against the Domestic Debtors, now existing or hereafter arising, of any kind whatsoever, including without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment.

(b) As used in this Order, "Carve Out" shall mean the sum of (A) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code, (B) the costs of administrative expenses not to exceed $50,000 in the aggregate that are permitted to be incurred by any Chapter 7 trustee pursuant to any order of this Court following any conversion of any of the Chapter 11 Cases pursuant to section 1112 of the Bankruptcy Code, and (C) at any time after the first Business Day following delivery of a written notice delivered by the Administrative Agent to the Debtors, the United States Trustee, counsel for the Debtors and counsel for any

statutory committee appointed in the Chapter 11 Cases stating that an Event of Default (as defined below) has occurred and is continuing and that the Carve Out Cap (as defined below) is invoked, which notice may only be delivered following the occurrence and during the continuance of an Event of Default (a "Carve Out Trigger Notice"), to the extent allowed at any time, whether before or after delivery of a Carve Out Trigger Notice, whether by interim order, procedural order or otherwise, all unpaid fees, costs and expenses (collectively, the "Professional Fees") incurred by persons or firms retained by the Debtors pursuant to Section 327, 328 or 363 of the Bankruptcy Code and any official committee of unsecured creditors appointed in the Chapter 11 Cases pursuant to Section 1103 of the Bankruptcy Code (collectively, the "Professional Persons"), the payment of all Professional Fees incurred by the Professional Persons at any time after the first Business Day following delivery of a Carve Out Trigger Notice in an aggregate amount not exceeding $15,000,000 (the "Carve Out Cap") (plus all unpaid Professional Fees allowed at any time by the Bankruptcy Court, whether before or after delivery of a Carve Out Trigger Notice, whether by interim order, procedural order or otherwise, that were incurred by the Professional Persons on or prior to the first Business Day following the delivery of the Carve Out Trigger Notice), provided that (x) the Carve Out shall not be available to pay any such Professional Fees incurred in connection with the initiation or prosecution of any Avoidance Actions or the initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation, in all cases to the extent against the DIP Agent, the DIP Lenders, the Prepetition Agent or the Prepetition Lenders and (y) the Carve Out shall not be reduced by the payment of Professional Fees incurred prior to the first Business Day following delivery of a

13

Carve Out Trigger Notice without regard to when such amounts are allowed by the Bankruptcy Court and provided further, that the Committee reserves the right to file a motion seeking segregation of a portion of the Carve Out for payment of its Professional Fees. Upon delivery of a Carve Out Trigger Notice or the commencement of a liquidation, the Debtors are directed to deposit an amount equal to the unpaid Professional Fees, including the Carve Out Cap, prior to making any distributions to creditors in a segregated account solely for payment of Professional Fees that are within the Carve Out.  Nothing herein shall be construed as a waiver of the right of the DIP Agent, any DIP Lender, the Prepetition Agent or any Prepetition Lender to object to the allowance of any Professional Fees and disbursements.

7.     *DIP Liens*.  As security for the DIP Obligations, effective and perfected upon the date of this Order and without the necessity of the execution by the Domestic Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or the possession or control by the DIP Agent of any property, the following security interests and liens are hereby granted to the DIP Agent, for its own benefit and the benefit of the DIP Lenders (all property identified in clauses (a), (b) and (c) below, which to avoid any doubt, in any case shall exclude 35% of the total outstanding voting Capital Stock of any new or existing Foreign Subsidiary of any Domestic Debtor, being collectively referred to as the "DIP Collateral"), subject only to (i) the Carve Out (all such liens and security interests granted to the DIP Agent, for its benefit and for the benefit of the DIP Lenders, pursuant to this Order, the "DIP Liens") and (ii) the Prepetition Perfected Liens:

14

(a)     First Lien On Unencumbered Property.  Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority lien on, and security interest in, all tangible and intangible prepetition and postpetition property of the Domestic Debtors, whether existing on or as of the Petition Date or thereafter acquired, that is not subject to valid, perfected, non-avoidable and enforceable liens in existence on or as of the Petition Date (collectively, the "Unencumbered Property"), including without limitation, any and all unencumbered cash, accounts receivable, inventory, general intangibles, contracts, securities, chattel paper, owned real estate, real property leaseholds, fixtures, machinery, equipment, deposit accounts, patents, copyrights, trademarks, tradenames, rights under license agreements and other intellectual property, capital stock of the subsidiaries of Lear[3] and the proceeds of all of the foregoing, provided that, the Unencumbered Property shall not include the Avoidance Actions or the proceeds thereof, and any assets upon which security may not be lawfully granted.

(b)     Liens Junior To Certain Existing Liens.  Pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected junior lien on, and security interest in all tangible and intangible prepetition and postpetition property of the Domestic Debtors (other than the property described in paragraph 7(c), as to which the DIP Liens will be as described in such clause), whether now existing or hereafter acquired, that is subject to valid, perfected and unavoidable liens in existence immediately prior to the Petition Date or to valid and unavoidable liens in existence immediately prior to the Petition Date that are

---

[3] With respect to the capital stock of any foreign subsidiaries directly owned by a Domestic Debtor such capital stock shall only include 65% of the voting stock and 100% of any non-voting stock.

15

perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code, which security interests and liens in favor of the DIP Agent and the DIP Lenders shall be junior to such valid, perfected and unavoidable liens.

(c)     Liens Priming Prepetition Lenders' Liens.  Subject to the last sentence of this subparagraph (c), pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority, senior priming lien on, and security interest in, all Prepetition Collateral and any collateral that is subject to a valid Lien in effect on the Petition Date that is junior to the Liens that secure the Prepetition Obligations, provided that, notwithstanding anything to the contrary contained herein or in the DIP Credit Agreement, no such priming liens shall be granted in property of any Debtor other than the Domestic Debtors. The DIP Liens on the Prepetition Collateral shall be senior in all respects to the security interests in, and liens on, the Prepetition Collateral of the Prepetition Agent and the Prepetition Lenders (including, without limitation, the Adequate Protection Liens (as defined in paragraph 13(a) below)), but shall be junior to any Prepetition Perfected Liens.

(d)     Liens Senior To Certain Other Liens.  The DIP Liens and the Adequate Protection Liens shall not be (i) subject or subordinate to (A) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or (B) any liens arising after the Petition Date, except those liens in existence immediately prior to the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code or (ii) subordinated to or made *pari passu* with any other

16

lien or security interest under sections 363 or 364 of the Bankruptcy Code or otherwise (except as set forth in paragraph 16(a) below).

8.     *Remedies After Event of Default.*  The automatic stay under section 362 of the Bankruptcy Code is vacated and modified to the extent necessary to permit the DIP Agent and the DIP Lenders to exercise, upon the occurrence and during the continuance of an Event of Default, and the giving of five (5) business days' prior written notice to the Debtors (with a copy to counsel to the Committee and to the U.S. Trustee and Ad Hoc Committee Counsel), all rights and remedies against the DIP Collateral provided for in the DIP Documents and this Order (including, without limitation, the right to setoff monies of the Debtors in accounts maintained with the DIP Agent or any DIP Lender).  In any hearing regarding any exercise of rights or remedies, the only issue that may be raised by any party (other than the Court) in opposition thereto shall be whether, in fact, an Event of Default has occurred and is continuing.  In no event shall the DIP Agent, the DIP Lenders, the Prepetition Agent, or the Prepetition Lenders be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral or any other collateral securing the DIP Obligations.  The DIP Agent's or any DIP Lender's delay or failure to exercise rights and remedies under the DIP Documents or this Order shall not constitute a waiver of the DIP Agent's or any DIP Lender's rights hereunder, thereunder or otherwise, unless any such waiver is pursuant to a written instrument executed in accordance with the terms of the DIP Agreement.

9.     *Limitation On Charging Expenses Against Collateral*.  Except to the extent of the Carve Out, no expenses of administration of the Chapter 11 Cases or any future proceeding that

17

may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the DIP Collateral or the Prepetition Collateral, as the case may be, pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the DIP Agent, the Required Lenders (as defined in the DIP Agreement) or the Prepetition Agent, as the case may be, and no such consent shall be implied from any other action or inaction by the DIP Agent, the Required Lenders, the DIP Lenders, the Prepetition Agent, or the Prepetition Lenders.

10. *Payments Free and Clear.* Any and all payments or proceeds remitted to the DIP Agent on behalf of the DIP Lenders or the Prepetition Agent on behalf of the Prepetition Lenders pursuant to the provisions of this Order or any subsequent order of this Court shall be received free and clear of any claim, charge, assessment or other liability, except to the extent of the Carve Out.

11. *The Cash Collateral.* Subject to the Limitation and any applicable law, a portion of the Debtors' cash, including without limitation, all cash and other amounts on deposit or maintained by the applicable Debtor Loan Parties in any account or accounts with any Prepetition Lender and any cash proceeds of the disposition of any Prepetition Collateral, constitute Prepetition Collateral as proceeds of the Prepetition Collateral and, therefore, is cash collateral of the Prepetition Lenders within the meaning of section 363(a) of the Bankruptcy Code (the "Cash Collateral").

12. *Use Of Prepetition Collateral (including Cash Collateral).* The Debtors are hereby authorized to continue to use the Prepetition Collateral, including the Cash Collateral,

18

during the period from the date of entry of this Order through and including the "<u>Maturity Date</u>"

under the DIP Agreement for working capital and general corporate purposes in accordance with

the terms and conditions of this Order, <u>provided</u> that the Prepetition Lenders are granted

adequate protection as hereinafter set forth.  Pursuant to the Cash Collateral Order, this Court

authorized the Debtors to use the Cash Collateral during the period from the Petition Date

through the date of entry of this Order, for general corporate purposes and costs and expenses

relating to these Chapter 11 Cases in accordance with the terms and conditions thereof.

13.     *Adequate Protection*.  The Prepetition Agent and the Prepetition Lenders are

entitled, pursuant to sections 361, 363(c)(2) and 364(d)(1) of the Bankruptcy Code, to adequate

protection of their interests in the Prepetition Collateral, including the Cash Collateral, in an

amount equal to the aggregate diminution in value of the Prepetition Collateral, including

without limitation, any such diminution resulting from the sale, lease or use by the Debtors (or

other decline in value) of the Cash Collateral and any other Prepetition Collateral, the priming of

the Prepetition Agent's liens on the Prepetition Collateral by the DIP Liens, and the imposition

of the automatic stay pursuant to section 362 of the Bankruptcy Code (such diminution in value,

the "<u>Adequate Protection Obligations</u>").  As adequate protection, the Prepetition Agent and the

Prepetition Lenders are hereby granted the following:

(a)     <u>Adequate Protection Liens</u>.  As security for the payment of the Adequate

Protection Obligations, the Prepetition Agent (for itself and for the benefit of the Prepetition

Lenders) is hereby granted (effective and perfected as of the date of entry of the Cash Collateral

Order and without the necessity of the execution by the Domestic Debtors of security

19

agreements, pledge agreements, mortgages, financing statements or other agreements) a valid, perfected replacement security interest in and lien on all of the Domestic Debtors' DIP Collateral (the "Adequate Protection Liens"), subject and subordinate only to (i) the DIP Liens, (ii) the Carve Out and (iii) Prepetition Perfected Liens.

(b) <u>Section 507(b) Claim</u>. The Adequate Protection Obligations shall constitute superpriority claims as provided in section 507(b) of the Bankruptcy Code (the "507(b) Claims"), with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including without limitation, sections 326, 328, 330, 331 and 726 of the Bankruptcy Code, subject and subordinate only to (i) the Carve Out and (ii) the Superpriority Claims granted in respect of the DIP Obligations <u>provided</u> that the 507(b) Claims shall not be paid with the proceeds of Avoidance Actions. Except to the extent expressly set forth in this Order, the Prepetition Agent and the Prepetition Lenders shall not receive or retain any payments, property or other amounts in respect of the 507(b) Claims unless and until all DIP Obligations shall have indefeasibly been paid in full in cash, in addition and notwithstanding anything to the contrary contained herein, the Adequate Protection Obligations, notwithstanding their status as 507(b) Claims may be satisfied in a plan of reorganization confirmed in the Chapter 11 Cases in the manner set forth in such plan if holders of more than 66% (by value) of the Adequate Protection Obligations consent to such treatment.

(c) <u>Fees, And Expenses</u>. The applicable Debtors shall pay to the Prepetition Agent and the Issuing Lender all fees and expenses payable to the Prepetition Agent pursuant to

20

the terms of the Prepetition Loan Documents, including without limitation, the reasonable fees and disbursements of counsel and financial advisors or other third-party consultants to the Prepetition Agent <u>provided</u> that any such fees paid to the Issuing Lender shall not include any fees payable under section 9.5(e)(ii) of the Prepetition Credit Agreement.  None of the fees and expenses payable pursuant to this paragraph 13(c) shall be subject to separate approval by this Court (but this Court shall resolve any dispute as to the reasonableness of any such fees and expenses), and no recipient of any such payment shall be required to file any interim or final fee application with respect thereto.  The Debtors shall pay the fees and expenses provided for in this paragraph 13(c) within 20 days after receipt of invoices therefor, and the Debtors shall promptly provide copies of such invoices to the Committee and the U.S. Trustee.

(d)     <u>Information</u>.  The Debtors shall promptly provide to the Prepetition Agent, the Committee and Ad Hoc Committee Counsel any written financial information or periodic reporting that is provided to, or required to be provided to, the DIP Agent or the DIP Lenders.

14.     *Reservation of Rights of Prepetition Lenders*.  Based upon the consent of the Prepetition Lenders, this Court finds that the adequate protection provided herein is reasonable and sufficient to protect the interests of the Prepetition Agent and the Prepetition Lenders. Notwithstanding any other provision hereof, the grant of adequate protection to the Prepetition Agent and the Prepetition Lenders pursuant hereto is without prejudice to the right of the Prepetition Agent to seek modification of the grant of adequate protection provided hereby so as to provide different or additional adequate protection, and without prejudice to the right of the Debtors or any other party in interest to contest any such modification.  Except as expressly

21

provided herein, nothing contained in this Order (including without limitation, the authorization to use any Cash Collateral) shall impair or modify any rights, claims or defenses available in law or equity to the Prepetition Agent or any Prepetition Lender. The consent of the Prepetition Agent and the Prepetition Lenders to the priming of the Prepetition Agent's liens on the Prepetition Collateral by the DIP Liens (a) is limited to the DIP Financing and (b) does not constitute, and shall not be construed as constituting, an acknowledgement or stipulation by the Prepetition Agent or the Prepetition Lenders that, absent such consent, their interests in the Prepetition Collateral would be adequately protected pursuant to this Order.

15. *Perfection Of DIP Liens And Adequate Protection Liens.*

(a) The DIP Agent and the Prepetition Agent are hereby authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, notices of lien or similar instruments in any jurisdiction, take possession of or control over, or take any other action in order to validate and perfect the DIP Liens and the Adequate Protection Liens granted to them hereunder, as applicable. Whether or not the DIP Agent or the Prepetition Agent shall, in their respective sole discretion, choose to file such financing statements, intellectual property filings, mortgages, notices of lien or similar instruments, take possession of or control over, or otherwise confirm perfection of the DIP Liens and the Adequate Protection Liens, as the case may be, such DIP Liens and the Adequate Protection Liens shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination as of the date of entry of this Order, in the case of the DIP Liens, and as of the date of entry of the Cash Collateral Order, in the case of the Adequate Protection Liens.

22

(b)     A certified copy of this Order may, in the discretion of the DIP Agent or the Prepetition Agent, as the case may be, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Order for filing and recording.

(c)     The applicable Debtors shall execute and deliver to the DIP Agent and the Prepetition Agent, as the case may be, all such agreements, financing statements, instruments and other documents as the DIP Agent or the Prepetition Agent may reasonably request to evidence, confirm, validate or perfect the DIP Liens or the Adequate Protection Liens, as the case may be.

16.     *Preservation Of Rights Granted Under The Order.*

(a)     No claim or lien having a priority senior to or *pari passu* with those granted by this Order to the DIP Agent, the DIP Lenders, the Prepetition Agent or the Prepetition Lenders, shall be granted or allowed while any portion of the DIP Obligations (or any refinancing thereof), the Commitments or the Adequate Protection Obligations remain outstanding, and the DIP Liens and the Adequate Protection Liens shall not be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code or subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise. Notwithstanding the foregoing, the Debtors may, subject to the terms of the DIP Agreement, obtain letters of credit in an aggregate undrawn face amount not to exceed $250 million secured

23

by liens on the DIP Collateral that are *pari passu* with those securing the DIP Obligations or by cash collateral.

(b)      Unless all DIP Obligations and Adequate Protection Obligations shall have been indefeasibly paid in full in cash, the Debtors shall not seek, and it shall constitute an Event of Default under the DIP Agreement and a termination of the right to use the Cash Collateral if any of the Debtors seeks, or if there is entered, (i) any modification of this Order without the prior written consent of the DIP Agent, the Required Lenders and the Prepetition Agent, and no such consent shall be implied by any other action, inaction or acquiescence by the DIP Agent, the Required Lenders or the Prepetition Agent, or (ii) an order converting or dismissing any of the Chapter 11 Cases.  If an order dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (A) the Superpriority Claims, the 507(b) Claims, the other administrative claims granted pursuant to this Order, the DIP Liens and the Adequate Protection Liens shall continue in full force and effect and shall maintain their priorities as provided in this Order until all DIP Obligations and all Adequate Protection Obligations shall have been paid and satisfied in full (and that such Superpriority Claims, the 507(b) Claims, the other administrative claims granted pursuant to this Order, the DIP Liens and the Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all parties in interest) and (B) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in clause (A) above.

24

(c)     If any or all of the provisions of this Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacatur shall not affect (i) the validity, priority or enforceability of any DIP Obligations or the Adequate Protection Obligations incurred prior to the actual receipt of written notice by the DIP Agent or the Prepetition Agent, as applicable, of the effective date of such reversal, stay, modification or vacatur or (ii) the validity, priority or enforceability of the DIP liens or the Adequate Protection Liens.  Notwithstanding any such reversal, stay, modification or vacatur, any use of Cash Collateral, any DIP Obligations or any Adequate Protection Obligations incurred by the Debtors to the DIP Agent, the DIP Lenders, the Prepetition Agent or the Prepetition Lenders, as the case may be, prior to the actual receipt of written notice by the DIP Agent and the Prepetition Agent of the effective date of such reversal, stay, modification or vacatur shall be governed in all respects by the original provisions of this Order, and the DIP Agent, the DIP Lenders, the Prepetition Agent and the Prepetition Lenders, shall be entitled to all of the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, this Order and pursuant to the DIP Documents with respect to all uses of Cash Collateral, all DIP Obligations and all Adequate Protection Obligations.

(d)     Except as expressly provided in this Order or in the DIP Documents, the DIP Liens, the Superpriority Claims, the Adequate Protection Liens, the 507(b) Claims and all other rights and remedies of the DIP Agent, the DIP Lenders, the Prepetition Agent and the Prepetition Lenders, granted by this Order and the DIP Documents shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, dismissing any of the Chapter 11 Cases

25

or by any other act or omission, or (ii) the entry of an order confirming a plan of reorganization in any of the Chapter 11 Cases. The terms and provisions of this Order and the DIP Documents shall continue in the Chapter 11 Cases, in any successor cases if the Chapter 11 Cases cease to be jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code, and the DIP Liens, the Adequate Protection Liens, the DIP Obligations, the Superpriority Claims, the Section 507(b) Claims, the other administrative Claims granted pursuant to this Order, and all other rights and remedies of the DIP Agent, the DIP Lenders, the Prepetition Agent and the Prepetition Lenders granted by this Order and the DIP Documents shall continue in full force and effect until all DIP Obligations and all Adequate Protection Obligations are indefeasibly paid in full in cash, except for any unasserted and contingent DIP Obligations or Adequate Protection Obligations, as the case may be.

17. *Effect Of Stipulations On Third Parties.* The stipulations and admissions contained in this Order, including without limitation, in paragraphs 3 and 11 of this Order, shall be binding solely upon the Debtors and the other Debtor Loan Parties under all circumstances. The stipulations and admissions contained in this Order, including without limitation, in paragraphs 3 and 11 of this Order, shall be binding upon all other parties in interest, including without limitation, the Committee, unless (a) the Committee or any other party-in-interest with standing to do so has timely filed an adversary proceeding or contested matter (subject to the limitations contained herein, including without limitation, in paragraph 18) by no later than September 28, 2009, provided that if the Committee or any such party-in-interest has filed a motion seeking standing to prosecute any such adversary proceeding such deadline shall be

26

extended to the  fifth business day following entry of an order disposing of such motion (so long as such order is not subject to a stay), provided further such deadline may be extended with the written consent of the Prepetition Agent or by the Court for cause, (A) challenging the validity, enforceability, priority or extent of the Prepetition Obligations or the liens on the Prepetition Collateral securing the Prepetition Obligations or (B) otherwise asserting or prosecuting any Avoidance Actions or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, the "Claims and Defenses") against the Prepetition Agent, any of the Prepetition Lenders, or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors in connection with any matter related to the Prepetition Obligations or the Prepetition Collateral and (b) an order is entered and becomes final in favor of the plaintiff sustaining any such challenge or claim in any such timely filed adversary proceeding or contested matter, provided that, as to the Debtors and the other Debtor Loan Parties, all such Claims and Defenses are hereby ~~irrevocably waived and~~ relinquished as of the Petition Date.  If no such adversary proceeding or contested matter is timely filed in respect of the Prepetition Obligations, (x) the Prepetition Obligations shall constitute allowed claims, not subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance, for all purposes in the Chapter 11 Cases and any subsequent chapter 7 case, (y) the liens on the Prepetition Collateral securing the Prepetition Obligations shall be deemed to have been, as of the Petition Date, and to be, legal, valid, binding, perfected and of the priority specified in paragraph 3(b), not subject to defense, counterclaim, recharacterization, subordination or avoidance and (z) the Prepetition Obligations, the Prepetition Agent, the Prepetition Lenders, and the liens on the

509265-0024-08706-Active.11685878.8

Prepetition Collateral granted to secure the Prepetition Obligations shall not be subject to any other or further challenge by the Committee or any other party-in-interest, and the Committee or such party-in-interest shall be enjoined from seeking to exercise the rights of the Debtors' estates, including without limitation, any successor thereto (including, without limitation, any estate representative or a chapter 7 or 11 trustee appointed or elected for any of the Debtors). If any such adversary proceeding or contested matter is timely filed, the stipulations and admissions contained in paragraphs 3 and 11 of this Order shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on the Committee and any other party-in-interest, except as to any such findings and admissions that were expressly and successfully challenged in such adversary proceeding or contested matter. Nothing in this Order vests or confers on any "Person" (as defined in the Bankruptcy Code), including the Committee, standing or authority to pursue any cause of action belonging to the Debtors or their estates, including without limitation, Claims and Defenses with respect to the Prepetition Loan Documents, the Prepetition Obligations, or any liens granted by any Debtor to secure any of the foregoing.

18. *Limitation On Use Of DIP Financing And DIP Collateral*. The Debtors shall use the proceeds of the DIP Loans and the Prepetition Collateral (including the Cash Collateral) solely as provided in this Order and the DIP Documents. Notwithstanding anything herein or in any other order of this Court to the contrary, no DIP Loans under the DIP Agreement, no DIP Collateral, no Prepetition Collateral (including the Cash Collateral) or the Carve Out may be used to (a) object, contest or raise any defense to, the validity, perfection, priority, extent or

28

enforceability of any amount due under the DIP Documents, the Prepetition Loan Documents or the liens or claims granted under this Order, the DIP Documents or the Prepetition Loan Documents, (b) assert any Claims and Defenses or any other causes of action against the DIP Agent, the DIP Lenders, the Prepetition Agent, the Prepetition Lenders, or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors, (c) prevent, hinder or otherwise delay the DIP Agent's or the Prepetition Agent's assertion, enforcement or realization on the Prepetition Collateral or the DIP Collateral in accordance with the DIP Documents, the Prepetition Loan Documents or this Order, (d) seek to modify any of the rights granted to the DIP Agent, the DIP Lenders, the Prepetition Agent or the Prepetition Lenders hereunder or under the DIP Documents or the Prepetition Loan Documents, in the case of each of the foregoing clauses (a) through (d), without such party's prior written consent or (e) pay any amount on account of any claims arising prior to the Petition Date unless such payments are (i) approved by an Order of this Court and (ii) permitted under the DIP Documents, provided that, notwithstanding anything to the contrary herein, no more than an aggregate of $250,000 of the Prepetition Collateral (including the Cash Collateral), DIP Loans under the DIP Agreement, the DIP Collateral or the Carve Out may be used by the Committee to investigate the validity, enforceability or priority of the Prepetition Obligations or the liens on the Prepetition Collateral securing the Prepetition Obligations, or investigate any Claims and Defenses or other causes action against the Prepetition Agent or the Prepetition Lenders, provided that the Committee may, following notice and a hearing and for cause shown, seek to increase such amount, subject to opposition from any party-in-interest.

509265-0024-08706-Active.11685878.8

19.     *Insurance.*  To the extent the Prepetition Agent is listed as loss payee under any Debtor's insurance policies, the DIP Agent is also deemed to be the loss payee under such Debtor's insurance policies and shall act in that capacity and distribute any proceeds recovered or received in respect of any such insurance policies, <u>first</u>, to the payment in full of the DIP Obligations, and <u>second</u>, to the payment of the Prepetition Obligations.

20.     *City of Southfield.*  Nothing in this Order shall be construed to (i) affect the pre-petition or post-petition priority of or (ii) grant DIP Liens, Adequate Protection Liens and/or claims that prime, the asserted pre-petition and post-petition ad valorem property tax, special assessment, or special tax liens and/or claims of The City of Southfield, Michigan (the "<u>City of Southfield</u>") to the extent such ad valorem property tax, special assessment, or special tax liens and/or claims are pursuant to applicable law senior to the liens, security interests and claims of the DIP Agent, the DIP Lenders, the Prepetition Agent and the Prepetition Lenders and are not otherwise avoidable.  Nothing in this Order shall prohibit the attachment of such liens of the City of Southfield to property of the Debtors' estates to the extent such attachment is authorized by applicable law.  The provisions in this Order concerning the City of Southfield shall supersede the effect of the Cash Collateral Order *nunc pro tunc* to the Petition Date.

509265-0024-08706-Active.11685878.8

21.     *Master Proof of Claim.*

(a)     To facilitate the processing of claims, to ease the burden upon this Court and to reduce any unnecessary expense to the Debtors' estates, the Prepetition Agent is authorized to file a single master proof of claim in the Case of Lear on behalf of itself and the Prepetition Lenders on account of their claims arising under the Prepetition Loan Documents and hereunder against all Debtors (a "<u>Master Proof of Claim</u>"), and the Prepetition Agent shall not be required to file a verified statement pursuant to Rule 2019 of the Federal Rules of Bankruptcy Procedures in any of the Chapter 11 Cases; <u>provided</u>, nothing contained in this paragraph shall preclude a Prepetition Lender from filing a separate proof of claim for and on behalf of itself.

(b)     Upon filing of the Master Proof of Claim against Lear, the Prepetition Agent and each Prepetition Lender, and each of their respective successors and assigns, shall be deemed to have filed a proof of claim in the amount set forth opposite its name therein in respect of its claims against each of the Debtors arising under the Prepetition Loan Documents, and the Claims of the Prepetition Agent and each Prepetition Lender (and each of their respective successors and assigns), named in the Master Proof of Claim shall be allowed or disallowed as if each such entity had filed a separate proof of claim in each of the Chapter 11 Cases in the amount set forth in the Master Proof of Claim; <u>provided</u> that the Prepetition Agent may but shall not be required to amend the Master Proof of Claim from time to time to, among other things, reflect a change in the holders of the claims set forth therein or a reallocation among such holders of the claims asserted therein resulting from any transfer or any such claims.

509265-0024-08706-Active.11685878.8

(c)     The provisions set forth in paragraphs (a) and (b) above and the Master Proof of Claim are intended solely for the purpose of administrative convenience and, except to the extent set forth herein or therein, neither the provisions of this paragraph nor the Master Proof of Claim shall affect the substantive rights of the Debtors, the Committee, the Prepetition Agent, the Prepetition Lenders, or any other party in interest or their respective successors in interest, including without limitation, the right of each Prepetition Lender (or its successor in interest) to vote separately on any plan of reorganization proposed in the Chapter 11 Cases.

22.     *Order Governs*.  In the event of any inconsistency between the provisions of this Order and the DIP Documents, the provisions of this Order shall govern.  This Order supersedes the Cash Collateral Order.  To the extent not superseded hereby, in the event of any inconsistency between the Cash Collateral Order and this Order, the provisions of this Order shall govern.

23.     *Binding Effect; Successors And Assigns*.  The DIP Documents and the provisions of this Order, including all findings herein, shall be binding upon all parties-in-interest in the Chapter 11 Cases, including without limitation, the DIP Agent, the DIP Lenders, the Prepetition Agent, the Prepetition Lenders, the Committee, and the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the DIP Agent, the DIP Lenders, the Prepetition Agent, the Prepetition Lenders and the Debtors and their

509265-0024-08706-Active.11685878.8

respective successors and assigns, <u>provided</u> that, except to the extent expressly set forth in this Order, the DIP Agent, the Prepetition Agent, the DIP Lenders and the Prepetition Lenders shall have no obligation to permit the use of Cash Collateral or extend any financing to any chapter 7 trustee or similar responsible person appointed for the estates of the Debtors.

24.     *Limitation of Liability.*  In determining to make any loan under the DIP Agreement, permitting the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Order or the DIP Documents, the DIP Agent, the Prepetition Agent, the DIP Lenders and the Prepetition Lenders shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 <u>et</u> <u>seq.</u> as amended, or any similar federal or state statute).

25.     *Effectiveness.*  This Order shall constitute findings of fact and conclusions of law[4] and shall take effect immediately upon execution hereof, and there shall be no stay of execution of effectiveness of this Order.

---

[4] The findings of fact and conclusions of law contained herein constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to these proceedings by Bankruptcy Rule 9014.  To the extent that any finding of act shall be determined to be a conclusion of law, it shall be so deemed and *vice versa*.

509265-0024-08706-Active.11685878.8

Dated:  August 4, 2009
        New York, New York

_____
        */s/ Allan L. Gropper*
HONORABLE ALLAN L. GROPPER
UNITED STATES BANKRUPTCY JUDGE