James H.M. Sprayregen, P.C.
Marc Kieselstein, P.C. (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

- and -

Ryan Blaine Bennett (admitted *pro hac vice*)
Paul Wierbicki (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200

Counsel to the Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| LEAR CORPORATION, <u>et al.</u>,[1] | ) Case No. 09-14326 (ALG) |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |

**FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER**
**CONFIRMING DEBTORS' FIRST AMENDED JOINT PLAN OF REORGANIZATION**
<u>**UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**</u>

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each U.S. Debtors' federal tax identification number (if any), include:  Lear Corporation (6776); Lear #50 Holdings, LLC (N/A); Lear Argentine Holdings Corporation #2 (7832); Lear Automotive Dearborn, Inc. (4976); Lear Automotive Manufacturing, LLC (3451); Lear Canada (5059); Lear Canada Investments Ltd. (a non-U.S. Debtor that does not maintain a U.S. Federal tax identification number); Lear Corporation (Germany) Ltd. (6716); Lear Corporation Canada Ltd. (a non-U.S. Debtor that does not maintain a U.S. Federal tax identification number); Lear Corporation EEDS and Interiors (6360); Lear Corporation Global Development, Inc. (3121); Lear EEDS Holdings, LLC (4474); Lear European Operations Corporation (8411); Lear Holdings, LLC (4476); Lear Investments Company, LLC (8771); Lear Mexican Holdings Corporation (7829); Lear Mexican Holdings, LLC (4476); Lear Mexican Seating Corporation (4599); Lear Operations Corporation (5872); Lear Seating Holdings Corp. #50 (9055); Lear South Africa Limited (a non-U.S. Debtor that does not maintain a U.S. Federal tax identification number); Lear South American Holdings Corporation (1365); Lear Trim L.P. (8386); and Renosol Seating, LLC (4745). The location of the Debtors' corporate headquarters and the service address for all of the Debtors is:  21557 Telegraph Road, Southfield, Michigan 48033.

Lear Corporation and certain of its direct and indirect subsidiaries, as debtors and debtors in possession (collectively, the "Debtors") having:

- commenced, on July 7, 2009 (the "Petition Date"), chapter 11 cases by voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code") (collectively, the "Chapter 11 Cases");

- continued to operate their businesses and manage their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

- filed, on September 18, 2009, the *Debtors' First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. 633] (as amended through the date hereof, the "Plan"), attached hereto as Exhibit A;[2]

- filed, on September 18, 2009, the *Disclosure Statement for Debtors' First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. 634] (the "Disclosure Statement");

- distributed solicitation materials beginning on or about September 23, 2009, consistent with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Local Bankruptcy Rules for the Southern District of New York (the "Local Bankruptcy Rules") and Disclosure Statement Order (as defined below), as evidenced by the Affidavit of Service [Docket Nos. 713, 749, 750, 830, 832, 833, 896, 897, 968, 987] (collectively, the "Affidavits of Service") filed by Kurtzman Carson Consultants LLC, the Debtors' claims and balloting agent;

- published notice of the Confirmation Hearing (as defined below) (the "Confirmation Hearing Notice") in *The Wall Street Journal*, *USA Today*, *The Globe and Mail (National Edition)* and the *Detroit Free Press*, consistent with the Disclosure Statement Order, as evidenced by the: *Affidavit of Publication of Patricia Tabone in the Globe and Mail* [Docket No. 767]; *Affidavit of Publication of Erin Ostenson in The Wall Street Journal* [Docket No. 768]; *Affidavit of Publication of Antoinette Chase in the USA Today* [Docket No. 769]; and *Affidavit of Publication of Ericka Campbell in the Detroit News and Detroit Free Press* [Docket No. 828] (collectively, the "Publication Affidavits");

- filed, on October 29, 2009, and in accordance with Local Bankruptcy Rule 3018-1(a), the *Certification of Alison M. Tearnen Pursuant to Local Bankruptcy Rule 3018-1(a) with Respect to the Tabulation of Votes on the Debtors' First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. 994] (the "Voting Report"); and

---

[2]   Capitalized terms used but not defined in these Findings of Fact, Conclusion of Law and Confirmation Order (this "Confirmation Order"), shall have the meanings ascribed to them in the Plan.  This Confirmation Order shall be governed by the rules of interpretation set forth in Article I.A of the Plan.

- filed on November 2, 2009, the *Debtors' Memorandum of Law (A) in Support of Confirmation of the Debtors' First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code and (B) in Response to Objections Thereto* [Docket No. 1030] (the "<u>Plan Confirmation Brief</u>"), together with the *Declaration and Expert Report of Durc Savini in Support of Confirmation of the Debtors' First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. 1027] (the "<u>Savini Declaration</u>"), the *Declaration of Matthew J. Simoncini in Support of Confirmation of the Debtors' First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. 1028] (the "<u>Simoncini Declaration</u>"); the *Declaration of John Stuart in Support of Confirmation of the Debtors' First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. 1029] (the "<u>Stuart Declaration</u>").

This Court having:

- entered an order on September 18, 2009 [Docket No. 631] (the "<u>Disclosure Statement Order</u>"), which (a) approved the Disclosure Statement as containing "adequate information" in accordance with section 1125 of the Bankruptcy Code, (b) approved certain dates related to solicitation and Confirmation of the Plan, (c) established certain solicitation, noticing and other related procedures (the "<u>Solicitation Procedures</u>") and (d) approved certain documents to be distributed in connection with solicitation of the Plan pursuant to the Solicitation Procedures (the "<u>Solicitation Package</u>");

- set November 5, 2009, at 10:00 a.m., prevailing Eastern Time, as the date and time of a hearing pursuant to Bankruptcy Rules 3017 and 3018 and sections 1126, 1128 and 1129 of the Bankruptcy Code to consider Confirmation of the Plan (the "<u>Confirmation Hearing</u>");

- reviewed the Plan, the Disclosure Statement, the Plan Confirmation Brief, the Savini Declaration, the Simoncini Declaration; the Stuart Declaration, the Voting Report and all filed pleadings, exhibits, statements and comments regarding Confirmation (collectively, the "<u>Confirmation Papers</u>");

- heard the statements of counsel in respect of Confirmation;

- considered all oral representations, testimony, documents, filings and other evidence regarding Confirmation; and

- taken judicial notice of the papers and pleadings on file in the Chapter 11 Cases.

NOW, THEREFORE, it appearing to the Court that (a) notice of the Confirmation Hearing was adequate and appropriate as to all parties to be affected by the Plan and the transactions contemplated thereby, and (b) the legal and factual bases set forth in the Confirmation Papers and presented at the Confirmation Hearing establish just cause for the relief

K&E 15622550.17

granted here; and after due deliberation thereon and good cause appearing therefor, the Court hereby makes and issues the following Findings of Fact, Conclusions of Law and Orders:[3]

## I. FINDINGS OF FACT AND CONCLUSION OF LAW

IT IS HEREBY FOUND AND DETERMINED THAT:

### A. Jurisdiction and Venue

1. Beginning on the Petition Date, the Debtors commenced the Chapter 11 Cases. Venue in this Court was proper as of the Petition Date pursuant to 28 U.S.C. §§ 1408 and 1409. Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(2). This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

### B. Eligibility for Relief

2. The Debtors were and are entities eligible for relief under section 109 of the Bankruptcy Code.

### C. Commencement and Joint Administration of the Chapter 11 Cases

3. On the Petition Date, the Debtors commenced the Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. By prior order of this Court, the Chapter 11 Cases have been consolidated for procedural purposes and are being jointly administered pursuant to Bankruptcy Rule 1015 [Docket No. 57]. The Debtors have operated their businesses and managed their properties as debtors in possession pursuant to

---

[3] This Confirmation Order constitutes the Court's findings of fact and conclusions of law under FED. R. CIV. P. 52, as made applicable by Bankruptcy Rules 7052 and 9014. Any and all findings of fact shall constitute findings of fact even if they are stated as conclusions of law, and any and all conclusions of law shall constitute conclusions of law even if they are stated as findings of facts.

4

sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Chapter 11 Cases.

**D.      Plan Supplement**

4.      On September 11, 2009, and October 12, 2009, the Debtors filed the Plan Supplement. On or about November 2, 2009, the Debtors filed certain amendments to the Plan Supplement. The Plan Supplement complies with the terms of the Plan, and the filing and notice of such documents was good and proper in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order, and no other or further notice is or shall be required. The Debtors are authorized to modify the Plan Supplement following entry of the Confirmation Order in accordance with the terms of the Plan.

**E.      Modifications to the Plan**

5.      Any modifications to the Plan described or set forth herein constitute technical changes or changes with respect to particular Claims made pursuant to the agreement of the Holders of such Claims and do not materially or adversely affect or change the treatment of any other Claims or Interests. Pursuant to Bankruptcy Rule 3019, these modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the resolicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that the Holders of Claims or Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan.

**F.      Judicial Notice**

6.      This Court takes judicial notice of (and deems admitted into evidence for Confirmation) the docket of the Chapter 11 Cases and all related adversary proceedings and appeals maintained by the clerk of the applicable court or its duly appointed agent, including all pleadings and other documents on file, all orders entered, all hearing transcripts, and all evidence

and arguments made, proffered, or adduced at the hearings held before the applicable court during the pendency of the Chapter 11 Cases. Any resolutions of objections to Confirmation explained on the record at the Confirmation Hearing are hereby incorporated by reference. All unresolved objections, statements, and reservations of rights are hereby overruled on the merits.

## G. Disclosure Statement Order

7. On September 18, 2009, this Court entered the Disclosure Statement Order, which, among other things: (a) approved the Disclosure Statement as containing adequate information within the meaning of section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017; (b) fixed September 14, 2009, as the record date for purposes of determining, among other things, Holders of Claims or Interests which are entitled to vote on the Plan; (c) fixed October 26, 2009, at 5:00 p.m. prevailing Eastern Time, as the Voting Deadline; (d) fixed October 26, 2009, at 4:00 p.m. prevailing Eastern Time, as the deadline for objecting to the Plan; (e) fixed November 5, 2009, at 10:00 a.m. prevailing Eastern Time, as the date and time for the commencement of the Confirmation Hearing; (e) approved the Solicitation Procedures and the Solicitation Package; and (f) approved the form and method of notice of the Confirmation Hearing Notice set forth therein.

## H. Notice and Transmittal, Mailing and Publication of Materials

8. As evidenced by the Affidavits of Service, due, adequate and sufficient notice of the Disclosure Statement, the Plan, the Plan Supplement and the Confirmation Hearing, together with all deadlines for voting on or objecting to the Plan, has been given to: (a) all known Holders of Claims and Interests; (b) parties that requested notice in accordance with Bankruptcy Rule 2002; (c) all counterparties to unexpired leases and executory contracts with the Debtors; and (d) all taxing authorities listed on the Debtors' Schedules or Claims Register, in substantial compliance with the Disclosure Statement Order and Bankruptcy Rules 2002(b), 3017 and

3020(b), and no other or further notice is or shall be required. Adequate and sufficient notice of the Confirmation Hearing, as may be continued from time to time and of any applicable bar dates and hearings described in the Disclosure Statement Order was given in compliance with the Bankruptcy Rules and the Disclosure Statement Order, and no other or further notice is or shall be required.

9.  The Debtors published the Confirmation Hearing Notice once each in *The Wall Street Journal*, *USA Today*, *The Globe and Mail (National Edition)* and the *Detroit Free Press*, on a date no fewer than 15 calendar days prior to the Voting Deadline, in substantial compliance with the Disclosure Statement Order and the Solicitation Procedures, as well as Bankruptcy Rule 2002(l), as evidenced by the Publication Affidavits.

## I.  Plan Solicitation

10. Votes for acceptance and rejection of the Plan were solicited in good faith and in compliance with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, the Disclosure Statement, the Disclosure Statement Order, all other applicable provisions of the Bankruptcy Code and all other applicable rules, laws and regulations. Specifically, the Solicitation Package approved by this Court in the Disclosure Statement Order (including the Disclosure Statement, the Plan, the Ballots, the Master Ballots and any and all related notices) were transmitted to and served on all Holders of Claims in Classes that were entitled to vote to accept or reject the Plan and relevant portions of the Solicitation Package were transmitted to and served on other parties in interest in the Chapter 11 Cases, all in compliance with section 1125 of the Bankruptcy Code, the Disclosure Statement Order, the Solicitation Procedures and the Bankruptcy Rules. Transmittal and service was adequate and sufficient, and no further notice is or shall be required. In addition, Holders of Claims or Interests in Classes that were not entitled to vote to accept or reject the Plan were provided with certain non-voting materials approved by

7

this Court in compliance with the Disclosure Statement Order and the Solicitation Procedures. Pursuant to the Disclosure Statement Order, the Debtors were excused from distributing Solicitation Packages to those entities at addresses from which Disclosure Statement Hearing notices were returned as undeliverable by the United States Postal Service unless the Debtors were able, using reasonable efforts, to obtain an accurate alternative address for such entities before the Solicitation Date, and failure to distribute the Solicitation Package to such entities does not constitute inadequate notice of the Confirmation Hearing or the Voting Deadline, or a violation of Bankruptcy Rule 3017(d). All procedures used to distribute the Solicitation Package to Holders of Claims and Interests were fair, and conducted in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and all other applicable rules, laws and regulations.

**J.      Voting Report**

11.      Prior to the Confirmation Hearing, on October 30, 2009, the Debtors filed the Voting Report, in compliance with Local Bankruptcy Rule 3018-1(a). All procedures used to tabulate the Ballots and the Master Ballots were fair and conducted in accordance with the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules and all other applicable rules, laws and regulations.

12.      As set forth in the Plan and the Disclosure Statement, Holders of Claims in Classes 3A, 5A and 6A (collectively, the "Voting Classes") are eligible to vote on the Plan pursuant to the Solicitation Procedures. In addition, Holders of Claims in Classes 1A, 2A, 4A, 1B, 2B and 3B and Holders of Interests in Classes 8A-2 and 4B are Unimpaired and deemed to accept the Plan and, therefore, are not entitled to vote to accept or reject the Plan. Holders of Claims in Class 7A and Holders of Interests in Class 8A-1 (collectively, the "Deemed Rejecting

K&E 15622550.17

<u>Classes</u>") are deemed to reject the Plan and, therefore, are not entitled to vote to accept or reject the Plan.

13.     As evidenced by the Voting Report or otherwise, all of the Voting Classes voted to accept the Plan.

**K.     Compliance with Bankruptcy Rule 3016**

14.     The Plan is dated and identifies the entities submitting it, thereby satisfying Bankruptcy Rule 3016(a). The filing of the Disclosure Statement with the clerk of this Court satisfied Bankruptcy Rule 3016(b).

**L.     Satisfaction of Confirmation Requirements and Compliance with Section 1129 of the Bankruptcy Code**

15.     Based upon the findings of fact and conclusions of law set forth herein, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code. In particular, the Plan complies with all applicable provisions of section 1129 of the Bankruptcy Code as follows:

**1.     Section 1129(a)(1)—Compliance of the Plan with Applicable Provisions of the Bankruptcy Code**

16.     The Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code, including sections 1122 and 1123 of the Bankruptcy Code.

**a.     Sections 1122 and 1123(a)(1)—Proper Classification**

17.     The classification of Claims and Interests under the Plan is proper under the Bankruptcy Code. Pursuant to sections 1122(a) and 1123(a)(1) of the Bankruptcy Code, Article III of the Plan provides for the separate classification of Claims and Interests into 13 Classes, based on differences in the legal nature or priority of such Claims and Interests (other than Administrative Claims and Priority Tax Claims, which are addressed in Article II of the

9

Plan, and which are required not to be designated as separate Classes pursuant to section 1123(a)(1) of the Bankruptcy Code). Valid business, factual and legal reasons exist for the separate classification of the various Classes of Claims and Interests created under the Plan, the classifications were not done for any improper purpose, and the creation of such Classes does not unfairly discriminate between or among Holders of Claims or Interests.

### b. Section 1123(a)(2)—Specification of Unimpaired Classes

18. Article III of the Plan specifies that Claims in Classes 1A, 2A, 4A, 1B, 2B and 3B and Holders of Interests in Classes 8A-2 and 4B are Unimpaired under the Plan. Additionally, Article II of the Plan specifies that Administrative Claims and Priority Tax Claims are Unimpaired, although these Claims are not classified under the Plan. Accordingly, the requirements of section 1123(a)(2) of the Bankruptcy Code have been satisfied.

### c. Section 1123(a)(3)—Specification of Treatment of Impaired Classes

19. Article III of the Plan specifies the treatment of each Impaired Class under the Plan, including Classes 3A, 5A, 6A and 7A and Holders of Equity Interests in Class 8A-1. Accordingly, the requirements of section 1123(a)(3) of the Bankruptcy Code have been satisfied.

### d. Section 1123(a)(4)—No Discrimination

20. Pursuant to section 1123(a)(4) of the Bankruptcy Code, Article III of the Plan uniformly provides for the same treatment of each Claim or Interest in a particular Class, as the case may be, unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment with respect to such Claim or Interest. Accordingly, the requirements of section 1123(a)(4) of the Bankruptcy Code have been satisfied.

### e. Section 1123(a)(5)—Adequate Means for Plan Implementation

21. Pursuant to section 1123(a)(5) of the Bankruptcy Code, Article IV and various other provisions of the Plan specifically provide, in detail, adequate and proper means for the

Plan's implementation. Moreover, as set forth in the Confirmation Papers, the Reorganized Debtors will have, immediately upon the Effective Date, sufficient Cash to make all payments required to be made on or around the Effective Date pursuant to the terms of the Plan. Accordingly, the requirements of section 1123(a)(5) of the Bankruptcy Code have been satisfied.

### f. Section 1123(a)(6)—Voting Power of Equity Securities

22. Article IV.F of the Amended and Restated Certificate of Incorporation of Reorganized Lear Corporation, attached as <u>Exhibit K</u> to the Plan Supplement, prohibits the issuance of non-voting equity securities to the extent prohibited by section 1123(a)(6) of the Bankruptcy Code, thereby satisfying section 1123(a)(6) of the Bankruptcy Code.

### g. Section 1123(a)(7)—Selection of Officers and Directors

23. The identity and affiliations of the members of the New Board of Reorganized Lear Corporation are listed in <u>Exhibit N</u> to the Plan Supplement or have been identified at the Confirmation Hearing.

24. Pursuant to Article IV.P of the Plan, the senior management of the Reorganized Debtors shall be the same senior management that existed for the Debtors as of the Effective Date. The selection of the New Board and the officers of Reorganized Lear Corporation was, is and will be consistent with the interests of Holders of Claims and Interests and public policy. Accordingly, the requirements of section 1123(a)(7) of the Bankruptcy Code have been satisfied.

### h. Section 1123(b)—Discretionary Contents of the Plan

25. The Plan contains various provisions that may be construed as discretionary, but are not required for Confirmation under the Bankruptcy Code. As set forth below, such discretionary provisions comply with section 1123(b) of the Bankruptcy Code and are not inconsistent with the applicable provisions of the Bankruptcy Code. Thus, section 1123(b) of the Bankruptcy Code is satisfied.

K&E 15622550.17

### i. Section 1123(b)(1), (2)—Claims and Executory Contracts

26.     Pursuant to sections 1123(b)(1) and 1123(b)(2) of the Bankruptcy Code, Article III of the Plan provides that the Plan impairs or leaves unimpaired, as the case may be, each Class of Claims and Interests, and Article V of the Plan provides for the assumption or rejection of the Debtors' Executory Contracts and Unexpired Leases not previously assumed or rejected pursuant to section 365 of the Bankruptcy Code and appropriate authorizing orders of this Court.

### ii. Section 1123(b)(3)—Settlement, Release, Exculpation, Injunction and Preservation of Claims and Causes of Action

27.     **Settlement**.     Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan constitute a good faith compromise of all Claims, Interests and controversies relating to the contractual, legal and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest.  Such compromise or settlement is in the best interests of the Debtors, their Estates and Holders of Claims and Interests and is fair, equitable and reasonable.

28.     **Debtor Release**.  The Debtor Release described in Article IX.D of the Plan is an integral part of the Plan and represents a valid exercise of the Debtors' business judgment. Pursuing any such claims against the Debtor Releasees is not in the best interest of the Debtors' estates' various constituencies as the costs involved likely would outweigh any potential benefit from pursuing such claims.  The Debtor Release is:  (a) in exchange for good and valuable consideration provided by the Debtor Releasees; (b) a good-faith compromise and settlement of the Causes of Action released by the Debtor Releasees; (c) in the best interests of the Debtors

12

and all Holders of Claims and Interests; (d) fair, equitable and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any of the Debtors, the Reorganized Debtors or any Holder of a Claim or Interest that would have been legally entitled to assert any Cause of Action on behalf of any of the Debtors or the Estates from asserting any Cause of Action released by the Debtor Release against any of the Debtor Releasees.

29.     **Third Party Release**.  The Third Party Release described in Article IX.E of the Plan is an integral part of the Plan.  The Third Party Release is:  (a) in exchange for good and valuable consideration provided by the Third Party Releasees; (b) a good-faith compromise and settlement of the Causes of Action released by the Third Party Releasees; (c) in the best interests of the Debtors and all Holders of Claims and Interests; (d) fair, equitable and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any of the Releasing Parties asserting any Cause of Action released by the Third Party Release against any of the Third Party Releasees.  Such releases are given by Holders of Claims other than Holders of Claims and Interests that vote to reject the Plan or are in a Class deemed to reject the Plan. The Ballots stated that a vote to accept the Plan or abstention from voting constitutes an acceptance and assent to the releases, injunction and related provisions set forth in Article IX of the Plan.  Thus, those Holders of Claims or Interests voting to accept the Plan or abstaining from voting were given due and adequate notice that they would be granting the Third Party Release by acting in such a manner.

30.     **Exculpation**.  The exculpation provisions set forth in Article IX.F of the Plan are essential to the Plan.  The record in the Chapter 11 Cases fully supports the exculpation, and the exculpation provisions set forth in Article IX.F of the Plan are appropriately tailored to protect the Exculpated Parties from inappropriate litigation.

K&E 15622550.17

31.     **Injunction**.  The injunction provisions set forth in Article IX.H of the Plan are essential to the Plan and are necessary to preserve and enforce the Debtor Releases, the Third Party Releases and the exculpation provisions in Article IX of the Plan, and are narrowly tailored to achieve that purpose.

32.     The Debtor Release, the Third Party Release and the injunction and exculpation provisions set forth in the Plan:  (a) are within the jurisdiction of this Court under 28 U.S.C. §§ 1334(a), 1334(b), and 1334(d); (b) are an essential means of implementing the Plan pursuant to section 1123(a)(6) of the Bankruptcy Code; (c) are an integral element of the transactions incorporated into the Plan; (d) confer material benefits on, and are in the best interests of, the Debtors, the Estates and their creditors; (e) are important to the overall objectives of the Plan to finally resolve all Claims among or against the parties in interest in the Chapter 11 Cases with respect to the Debtors; and (f) are consistent with sections 105, 1123 and 1129 of the Bankruptcy Code, other provisions of the Bankruptcy Code and other applicable law.  The record of the Confirmation Hearing and the Chapter 11 Cases is sufficient to support the Debtor Release, the Third Party Release and the injunction and exculpation provisions contained in Article IX of the Plan.

33.     **Preservation of Claims and Causes of Action**.  Article IV.R of the Plan appropriately provides for the preservation by the Debtors of the Causes of Action in accordance with section 1123(b)(3)(B) of the Bankruptcy Code; provided, however, that, notwithstanding anything to the contrary in the Plan, this Confirmation Order or otherwise, upon the Effective Date, the Debtors specifically waive the right to bring any Avoidance Actions.  The provisions regarding Causes of Action in the Plan are appropriate and are in the best interests of the Debtors, the Estates and Holders of Claims and Interests.

K&E 15622550.17

## 2. Section 1129(a)(2)—Compliance of the Debtors and Others with Applicable Provisions of the Bankruptcy Code

34.     The Debtors, as proponents of the Plan, have complied with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(2) of the Bankruptcy Code, including sections 1122, 1123, 1124, 1125, 1126 and 1128 of the Bankruptcy Code and Bankruptcy Rules 3017, 3018 and 3019.

35.     Votes to accept or reject the Plan were solicited by the Debtors and their respective members, partners, representatives, officers, directors, employees, advisors, attorneys and agents after the Court approved the adequacy of the Disclosure Statement pursuant to section 1125(a) of the Bankruptcy Code.

36.     The Debtors and their respective members, partners, representatives, officers, directors, employees, advisors, attorneys and agents have solicited and tabulated votes on the Plan and have participated in the activities described in section 1125 of the Bankruptcy Code fairly, in good faith within the meaning of section 1125(e) of the Bankruptcy Code and in a manner consistent with the applicable provisions of the Disclosure Statement Order, the Disclosure Statement, the Bankruptcy Code, the Bankruptcy Rules and all other applicable laws, rules and regulations and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in Article IX.F of the Plan.

37.     The Debtors and their respective members, officers, directors, employees, advisors, attorneys and agents have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the offering, issuance and distribution of recoveries under the Plan and, therefore, are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of the Plan or distributions

15

made pursuant to the Plan, so long as such distributions are made consistent with and pursuant to the Plan.

### 3. Section 1129(a)(3)—Proposal of Plan in Good Faith

38. The Debtors have proposed the Plan in good faith and not by any means forbidden by law. In determining that the Plan has been proposed in good faith, this Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the Plan itself and the process leading to its formulation. The Debtors' good faith is evident from the facts and record of the Chapter 11 Cases, the Disclosure Statement and the hearing thereon, and the record of the Confirmation Hearing and other proceedings held in the Chapter 11 Cases.

39. The Plan is the product of arm's-length negotiations between, among others, the Debtors, the Committee, the Prepetition Administrative Agent and the other Prepetition Credit Agreement Lenders party to the Lender Plan Support Agreement, the Noteholder Steering Committee and the other Holders of Unsecured Note Claims party to the Noteholder Plan Support Agreement. The Plan itself and the process leading to its formulation provide independent evidence of the Debtors' good faith, serve the public interest and assure fair treatment of Holders of Claims and Interests. Consistent with the overriding purpose of chapter 11, the Chapter 11 Cases were filed, and the Plan was proposed, with the legitimate purpose of allowing the Debtors to reorganize and emerge from chapter 11 with a capital structure that will allow them to satisfy their obligations with sufficient liquidity and capital resources. Accordingly, the requirements of section 1129(a)(3) of the Bankruptcy Code are satisfied.

### 4. Section 1129(a)(4)—Bankruptcy Court Approval of Certain Payments as Reasonable

40. The procedures set forth in the Plan for this Court's review and ultimate determination of the fees and expenses to be paid by the Debtors in connection with the Chapter

16

11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, satisfy the objectives of and are in compliance with section 1129(a)(4) of the Bankruptcy Code. Accordingly, the requirements of section 1129(a)(4) of the Bankruptcy Code are satisfied, **and the condition to effectiveness of the Debtors' Key Management Incentive Plan and Management Equity Plan is satisfied.**

5. **Section 1129(a)(5)—Disclosure of Identity of Proposed Management, Compensation of Insiders and Consistency of Management Proposals with the Interests of Creditors and Public Policy**

41. The Plan complies with the requirements of section 1129(a)(5) of the Bankruptcy Code because, in the Disclosure Statement, the Plan and the Plan Supplement, the Debtors have disclosed (a) the identity, affiliations and committee designations of each proposed director, the identity of the senior management of the Reorganized Debtors and the manner in which additional officers and directors of Reorganized Debtors will be chosen following Confirmation and (b) the identity of and nature of any compensation for any insider who will be employed or retained by the Reorganized Debtors. The method of appointment of directors and officers of the Debtors was, is and will be consistent with the interests of Holders of Claims and Interests and public policy. Accordingly, the requirements of section 1129(a)(5) of the Bankruptcy Code are satisfied.

6. **Section 1129(a)(6)—Approval of Rate Changes**

42. The Plan does not contain any rate changes subject to the jurisdiction of any governmental regulatory commission and therefore will not require governmental regulatory approval. Therefore, section 1129(a)(6) of the Bankruptcy Code is inapplicable to the Chapter 11 Cases.

K&E 15622550.17

### 7. Section 1129(a)(7)—Best Interests of Holders of Claims and Interests

43. The liquidation analysis attached as <u>Exhibit E</u> to the Disclosure Statement (the "<u>Liquidation Analysis</u>") and the other evidence related thereto in support of the Plan that was proffered or adduced at or prior to, or in declarations in connection with, the Confirmation Hearing: (a) are reasonable, persuasive, credible and accurate as of the dates such analysis or evidence was prepared, presented or proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; and (d) establish that, as of the Effective Date, under the Plan, Holders of Allowed Claims or Interests in every Class will recover property on account of such Claims or Interests equal to or greater than the amount such Holders would receive if the Debtors were liquidated on the Effective Date under chapter 7 of the Bankruptcy Code.

### 8. Section 1129(a)(8)—Conclusive Presumption of Acceptance by Unimpaired Classes; Acceptance of the Plan by Each Impaired Class

44. Claims in Classes 1A, 2A, 4A, 1B, 2B and 3B and Interests in Classes 8A-2 and 4B are Unimpaired Claims or Interests that are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.

45. Because the Plan has not been accepted by the Deemed Rejecting Classes, the Debtors seek Confirmation under section 1129(b), rather than section 1129(a)(8), of the Bankruptcy Code. Thus, although section 1129(a)(8) of the Bankruptcy Code has not been satisfied with respect to the Deemed Rejecting Classes, the Plan is confirmable because the Plan does not discriminate unfairly with respect to the Deemed Rejecting Classes, is fair and equitable with respect to the Deemed Rejecting Classes and, thus, satisfies section 1129(b) of the Bankruptcy Code with respect to such Classes as described further below. As a result, the requirements of section 1129(b) of the Bankruptcy Code are satisfied.

K&E 15622550.17

**9. Section 1129(a)(9)—Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code**

46.     The treatment of Allowed Administrative Claims, DIP Facility Claims and Allowed Priority Tax Claims under Article II, Article VI and Article X of the Plan satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code. Accordingly, the requirements of section 1129(a)(9) of the Bankruptcy Code are satisfied.

**10. Section 1129(a)(10)—Acceptance by at Least One Impaired Class**

47.     As set forth in the Voting Report, all of the Voting Classes voted to accept the Plan. Specifically, the requisite majorities of Holders of Claims in Classes 3A, 5A and 6A voted to accept the Plan. <u>See</u> Voting Report. As such, there is at least one Class of Claims that is Impaired under the Plan and has accepted the Plan, determined without including any acceptance of the Plan by any insider (as defined by the Bankruptcy Code). Accordingly, the requirements of section 1129(a)(10) of the Bankruptcy Code have been satisfied.

**11. Section 1129(a)(11)—Feasibility of the Plan**

48.     The Plan satisfies section 1129(a)(11) of the Bankruptcy Code. The evidence supporting the Plan proffered or adduced by the Debtors at, prior to or in declarations filed in connection with the Confirmation Hearing: (a) is reasonable, persuasive, credible and accurate as of the dates such analysis or evidence was prepared, presented or proffered; (b) utilizes reasonable and appropriate methodologies and assumptions; (c) has not been controverted by other evidence; (d) establishes that the Plan is feasible and Confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Reorganized Debtors or any successor to the Reorganized Debtors under the Plan; and (e) establishes that the Reorganized Debtors will have sufficient funds available to meet their

K&E 15622550.17

obligations under the Plan. Accordingly, the requirements of section 1129(a)(11) of the Bankruptcy Code have been satisfied.

## 12. Section 1129(a)(12)—Payment of Bankruptcy Fees

49. Article XII.C of the Plan provides that all fees payable pursuant to section 1930 of the United States Judicial Code, as determined by this Court at a hearing pursuant to section 1128 of the Bankruptcy Code, shall be paid for each quarter (including any fraction thereof) until the earliest of the Chapter 11 Cases' being converted, dismissed or closed. Accordingly, the requirements of section 1129(a)(12) of the Bankruptcy Code have been satisfied.

## 13. Section 1129(a)(13)—Retiree Benefits

50. Section 1129(a)(13) of the Bankruptcy Code requires a plan to provide for "retiree benefits" (as defined in section 1114 of the Bankruptcy Code) at levels established pursuant to section 1114 of the Bankruptcy Code. Article V.G of the Plan provides that, on and after the Effective Date, the Reorganized Debtors' obligations, if any, to pay all retiree benefits shall continue. Accordingly, the requirements of section 1129(a)(13) of the Bankruptcy Code have been satisfied.

## 14. Section 1129(b)—Confirmation of Plan Over Nonacceptance of Impaired Class

51. Notwithstanding the fact that the Deemed Rejecting Classes have been deemed not to accept the Plan, the Plan may be confirmed pursuant to section 1129(b)(1) of the Bankruptcy Code because, as evidenced in the Plan Confirmation Brief and the Confirmation Papers: (a) the Voting Classes all have voted to accept the Plan; and (b) the Plan does not discriminate unfairly with respect to the Deemed Rejecting Classes and is fair and equitable with respect to the Deemed Rejecting Classes. Accordingly, the Plan is fair and equitable towards all Holders of Claims and Equity Interests in the Deemed Rejecting Classes.

20

As a result, the Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code. Thus, the Plan may be confirmed even though section 1129(a)(8) of the Bankruptcy Code is not satisfied. After entry of the Confirmation Order and upon the occurrence of the Effective Date, the Plan shall be binding upon the members of the Deemed Rejecting Classes.

**15.**      **Section 1129(c)—Only One Plan**

52.      Other than the Plan (including previous versions thereof), no other chapter 11 plan has been filed in the Chapter 11 Cases. Accordingly, the requirements of section 1129(c) of the Bankruptcy Code have been satisfied.

**16.**      **Section 1129(d)—Principal Purpose of the Plan Is Not Avoidance of Taxes**

53.      No governmental unit has requested that this Court refuse to confirm the Plan on the grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act. As evidenced by its terms, the principal purpose of the Plan is not such avoidance. Accordingly, the requirements of section 1129(d) of the Bankruptcy Code have been satisfied.

**M.**      **Burden of Proof**

54.      The Debtors, as proponents of the Plan, have met their burden of proving the elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for Confirmation. Further, the Debtors have proven the elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by clear and convincing evidence. **The proffers and declarations of** each of the witnesses who testified on behalf of the Debtors were credible, reliable and **adequate** ~~qualified to testify~~ as to the topics addressed in ~~his or her~~ **the** testimony.

**N.**      **Good Faith**

55. The Debtors have proposed the Plan in good faith, with the legitimate and honest purposes of reorganizing the Debtors' ongoing business and maximizing the value of each of the Debtors and the recovery to stakeholders. The Plan gives effect to many of the Debtors' restructuring initiatives. Accordingly, the Debtors, the Prepetition Administrative Agent and the other Prepetition Credit Agreement Lenders party to the Lender Plan Support Agreement, the Noteholder Steering Committee and the other Holders of Unsecured Note Claims party to the Noteholder Plan Support Agreement and the Committee (and all of their respective members, officers, directors, agents, financial advisers, attorneys, employees, partners, affiliates and representatives) **appear to** have acted, are **to be** acting ~~and will continue to act~~ in good faith if they proceed to: (a) consummate the Plan and all of the agreements, settlements, transactions and transfers contemplated thereby (including, without limitation, the entry into, performance under and effectuation of the New Term Loans Agreement, the Exit Financing Agreement, the Other General Unsecured Claims Warrant Agreement, the Certificate of Designation, the Registration Rights Agreement, the Management Equity Plan, the Amended and Restated Certificate of Incorporation and the Amended and Restated Bylaws); and (b) take the actions authorized and directed or contemplated by the Confirmation Order. Therefore, the Plan has been proposed in good faith to achieve a result consistent with the objectives and purposes of the Bankruptcy Code.

**O.      Disclosure of Agreements and Other Documents**

56. The Debtors **appear to** have disclosed all material facts regarding:   (a) the adoption of the Amended and Restated Certificate of Incorporation and the Amended and Restated Bylaws and similar constituent documents; (b) the selection of directors and officers for the Reorganized Debtors; (c) the distribution of Cash; (d) the issuance of new equity or other securities in Reorganized Lear Corporation consisting of the New Common Stock, the Series A

22

Preferred Stock and the Other General Unsecured Claims Warrants; (e) the entry into the New Term Loans Agreement and the Exit Financing Agreement; (f) the adoption, execution, and implementation of the other matters provided for under the Plan involving corporate action to be taken by or required of the Reorganized Debtors; (g) the Key Management Incentive Plan; (h) the Management Equity Plan; (i) securities registration exemptions; (j) the exemption under section 1146(a) of the Bankruptcy Code; and (k) the adoption, execution and delivery of all contracts, leases, instruments, securities, releases, indentures and other agreements related to any of the foregoing.

**P.      Transfers by Debtors; Vesting of Assets**

57.      Except as otherwise provided in the Plan, the Confirmation Order or any agreement, instrument or other document incorporated therein, on the Effective Date, all property in each Debtor's Estate, all Causes of Action, and any property acquired by any of the Debtors pursuant to the Plan shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges or other encumbrances.  On and after the Effective Date, except as otherwise provided in the Plan or the Confirmation Order, each Reorganized Debtor may operate its business and may use, acquire or dispose of property and compromise or settle any Claims, Interests or Causes of Action without supervision or approval by this Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules.

**Q.      Valuation**

58.      Pursuant to the valuation analyses set forth in Article VIII.A of the Disclosure Statement and in the Savini Declaration, the distributable value of the Debtors is insufficient to support a distribution to Holders of Claims or Interests not entitled to receive distributions under the Plan under absolute priority principles.  The valuation set forth in the Disclosure Statement and in the Savini Declaration was prepared by the Debtors' financial

23

advisor, Miller Buckfire & Co., LLC, in accordance with standard and customary valuation principles and practices, and is a fair and reasonable estimate of the value of the Debtors' businesses as a going concern.

**R.      Satisfaction of Conditions Precedent to Consummation**

59.      Each of the conditions precedent to the Effective Date, as set forth in Article VIII.B of the Plan, will have been satisfied or waived in accordance with the provisions of the Plan, or is reasonably likely to be satisfied.

**S.      Implementation**

60.      All documents and agreements necessary to implement the Plan, including those contained in the Plan Supplement, and all other relevant and necessary documents (including, without limitation, the entry into, amendment of, performance under and effectuation of the New Term Loans Agreement, the Exit Financing Agreement, the Other General Unsecured Claims Warrant Agreement, the Certificate of Designation, the Registration Rights Agreement, the Management Equity Plan, the Employment Agreements, the Amended and Restated Certificate of Incorporation, the Amended and Restated Bylaws and any other document assumed or contained within the Plan Supplement), have been negotiated in good faith and at arm's length and are in the best interests of the Debtors and the Reorganized Debtors and shall, upon completion of documentation and execution be valid, binding and enforceable documents and agreements not in conflict with any federal or state law.  The Plan Support Agreements are valid, in full force and effect and have not been terminated.

**T.      Issuance of Common Stock, Preferred Stock and Warrants**

61.      The issuance of the New Common Stock, the Series A Preferred Stock and the Other General Unsecured Claims Warrants is an essential element of the Plan and is in the best interests of the Debtors, their Estates and their Creditors.

K&E 15622550.17

**U.     Entry into New Term Loans and Exit Facility**

62.     The entry into the New Term Loans and the Exit Facility is an essential element of the Plan and is in the best interests of the Debtors, their Estates and their Creditors.

63.     Upon diligent inquiry, the Debtors have determined that the Exit Facility and the New Term Loans, to be provided in accordance with the Exit Facility Agreement and the New Term Loans Agreement, respectively, each including any and all amendments and modifications thereto, any other agreements, instruments, certificates or documents related thereto and any and all transactions contemplated thereby, present the best alternative available to the Debtors. Each of the Exit Facility Agreement and the New Term Loans Agreement, including any and all amendments and modifications thereto, any other agreements, instruments, certificates or documents related thereto and any and all transactions contemplated thereby, has been negotiated in good faith and on an arm's length basis, without intent to hinder, delay or defraud any creditor of the Debtors, and each party thereto may rely upon the provisions of this Confirmation Order in closing the Exit Facility Agreement and the New Term Loans Agreement, including any and all amendments and modifications thereto, any other agreements, instruments, certificates or documents related thereto and any and all transactions contemplated thereby. The Exit Facility Agreement and the New Term Loans Agreement, including any and all amendments and modifications thereto, any other agreements, instruments, certificates or documents related thereto and any and all transactions contemplated thereby, are necessary to the consummation of the Plan. The terms and conditions of the Exit Facility Agreement and the New Term Loans Agreement, including any and all amendments and modifications thereto, any other agreements, instruments, certificates or documents related thereto and any and all transactions contemplated thereby, are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, are supported by reasonably equivalent value and fair

consideration and are in the best interests of the Debtors' estates and their creditors. The execution, delivery or performance by the Debtors or the Reorganized Debtors, as the case may be, of or in accordance with any documents in connection with the Exit Facility Agreement and the New Term Loans Agreement, including any and all amendments and modifications thereto, any other agreements, instruments, certificates or documents related thereto and any and all transactions contemplated thereby, and compliance by the Debtors or the Reorganized Debtors, as the case may be, with the terms thereof are authorized by and will not conflict with the terms of the Plan or this Confirmation Order. The financial accommodations to be extended pursuant to the Exit Facility Agreement and the New Term Loans Agreement, including any and all amendments and modifications thereto, any other agreements, instruments, certificates or documents related thereto and any and all transactions contemplated thereby, are being extended in good faith, for legitimate business purposes, and are reasonable. The Exit Facility Agreement and the New Term Loans Agreement, including any and all amendments and modifications thereto, any other agreements, instruments, certificates or documents related thereto and any and all transactions contemplated thereby, shall constitute legal, valid, binding and authorized obligations of the Debtors and the Reorganized Debtors enforceable in accordance with their terms and will not conflict with any federal or state law. The Debtors have provided sufficient and adequate notice of the Exit Facility Agreement and the New Term Loans Agreement, including any and all amendments and modifications thereto, any other agreements, instruments, certificates or documents related thereto and any and all transactions contemplated thereby, to all parties in interest in the Chapter 11 Cases. On the Effective Date, all of the liens and security interests to be granted in accordance with the Exit Facility Agreement and the New Term Loans Agreement, including any and all amendments and modifications thereto, any other agreements,

instruments, certificates or documents related thereto and any and all transactions contemplated thereby, shall be deemed approved and shall be legal, valid, binding and enforceable liens on the collateral therefor. The security interests and liens granted in accordance with the Exit Facility Agreement and the New Term Loans Agreement, including any and all amendments and modifications thereto, any other agreements, instruments, certificates or documents related thereto and any and all transactions contemplated thereby, shall not be subject to recharacterization or equitable subordination for any purposes whatsoever and shall not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any applicable non-bankruptcy law. The Debtors, the Reorganized Debtors and the persons granted such liens and security interests are authorized to make all filings and recordings and to obtain any and all governmental approvals and consents necessary to establish and perfect such liens and security interests under the provisions of the applicable state, provincial, federal or other law (whether domestic or foreign) that would be applicable in the absence of this Confirmation Order. All fees, costs and expenses paid in connection with the Exit Facility Agreement and the New Term Loans Agreement, including any and all amendments and modifications thereto, any other agreements, instruments, certificates or documents related thereto and any and all transactions contemplated thereby are hereby ratified and approved.

**V.      Assumption and Rejection of Executory Contracts and Unexpired Leases**

64.      The Plan satisfies all requirements for the assumption or rejection of executory contracts and unexpired leases contained in the Bankruptcy Code, including, without limitation, the requirement that the Debtors cure all outstanding defaults, if any, and to provide adequate assurance of performance under any such contracts and leases.

K&E 15622550.17

**W.** **Substantive Consolidation**

65.     Pursuant to section 1123(a)(5)(C) of the Bankruptcy Code, the Plan provides for the substantive consolidation of all of the Estates of the Group A Debtors into a single consolidated Estate and of all of the Estates of the Group B Debtors into a single consolidated Estate for all Plan purposes, including voting, Confirmation and distribution pursuant to the Plan. For the reasons set forth in the Simoncini Declaration, substantive consolidation is an essential element of the Plan.  Further, substantive consolidation of the Estates of the Group A Debtors, on the one hand, and of the Estates of the Group B Debtors, on the other hand, is in the best interests of the Debtors, their Estates and all Holders of Claims in the Chapter 11 Cases and is necessary and appropriate in the Chapter 11 Cases **and does not adversely affect any creditor**.

**X.** **Retention of Jurisdiction**

66.     This Court properly may retain jurisdiction over the matters set forth in Article XI and other applicable provisions of the Plan.

## II.     ORDER

BASED ON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED THAT:

**A.** **Order**

67.     This Confirmation Order shall confirm the Plan.  A copy of the Plan is attached hereto as Exhibit A.

**B.** **Objections**

68.     ~~To the extent that any~~ **All** objections, reservations of rights, statements or joinders to Confirmation have ~~not~~ been withdrawn, waived, settled or otherwise resolved prior to entry of this Confirmation Order or otherwise resolved as stated on the record of the Confirmation Hearing. ~~they are hereby overruled on the merits.~~

28

## C. Findings of Fact and Conclusions of Law

69. The findings of fact and the conclusions of law set forth herein shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding by Bankruptcy Rule 9014. All findings of fact and conclusions of law announced by the Court at the Confirmation Hearing in relation to Confirmation are hereby incorporated herein to the extent not inconsistent herewith. To the extent that any of the following constitute findings of fact or conclusions of law, they are adopted as such. To the extent any of the prior findings of fact or conclusions of law constitutes an order of this Court, they are adopted as such.

## D. Confirmation of the Plan

70. The Plan and Plan Supplement (as such may be amended by the Confirmation Order or in accordance with the Plan) ~~and each of their provisions are~~ **is** confirmed ~~in each and every respect~~ pursuant to section 1129 of the Bankruptcy Code. The documents contained in the Plan Supplement, including any amendments, modifications and supplements thereto, all documents and agreements related thereto (including all exhibits and attachments thereto and documents referred to in such papers) and the execution, delivery and performance thereof by the Debtors or the Reorganized Debtors, are authorized and approved as finalized, executed and delivered. Without further order or authorization of this Court, the Debtors, the Reorganized Debtors, their respective successors and assigns and their members, partners, representatives, officers, directors, employees, advisors, attorneys and agents are authorized and empowered to make all modifications to all documents included as part of the Plan Supplement that are consistent with the Plan, as may be necessary to carry out its purpose and intent. As set forth in the Plan, once finalized and executed, the documents comprising the Plan Supplement and all other documents contemplated by the Plan shall constitute legal, valid, binding and authorized

obligations of the respective parties thereto, enforceable in accordance with their terms and, to the extent applicable, shall create, as of the Effective Date, all Liens and other security interests purported to be created thereby.

71. ~~The terms of the Plan, the Plan Supplement and any and all exhibits thereto are incorporated by reference into, and are an integral part of, this Confirmation Order.~~ The terms of the Plan, the Plan Supplement, any and all exhibits thereto and all other relevant and necessary documents shall be effective and binding as of the Effective Date of the Plan.

## E. Plan Classification Controlling

72. The terms of the Plan shall govern the classification of Claims and Interests for purposes of the distributions to be made thereunder. The classifications set forth on the Ballots tendered to or returned by the Holders of Claims or Interests in connection with voting on the Plan: (a) were set forth on the Ballots solely for purposes of voting to accept or to reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims and Interests under the Plan for distribution purposes; (c) may not be relied upon by any Holder of a Claim or Interest as representing the actual classification of such Claim or Interest under the Plan for distribution purposes; and (d) shall not be binding on the Debtors and the Reorganized Debtors except for voting purposes.

## F. Compromise and Settlement

73. The compromise or settlement, pursuant to the Plan, of all Claims, Interests and controversies relating to the contractual, legal and subordination rights that a Holder of a Claim may have with respect to any Allowed Claim or Interest or any distribution to be made on account of such Allowed Claim or Interest, is approved. On or after the Effective Date, the Debtors may compromise and settle Claims against them and Causes of Action against other Entities in accordance with the provisions of the Plan, pursuant to section 363 of the Bankruptcy

K&E 15622550.17

Code and Bankruptcy Rule 9019(a), without any further notice to or action, order or approval of this Court.

**G.      Release, Injunctive, Exculpation and Related Provisions**

74.      The following releases, injunctions, exculpations and related provisions set forth in Article IX of the Plan are hereby approved and authorized. ~~in their entirety:~~

**1.      Debtor Release**

75.      The Debtor Release set forth in Article IX.D of the Plan is hereby approved and authorized. ~~in its entirety.~~

**2.      Third Party Release**

76.      The Third Party Release set forth in Article IX.E of the Plan is hereby approved and authorized. ~~in its entirety.~~

**3.      Exculpation**

77.      The exculpation provisions set forth in Article IX.F of the Plan are hereby approved and authorized. ~~in their entirety.~~

**4.      Injunction**

78.      The injunction provisions set forth in Article IX.H of the Plan are hereby approved and authorized, **subject to further Court order.** ~~in their entirety.~~

**H.      Release of Liens**

79.      Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim and the Prepetition Credit Agreement Secured Claims, satisfaction in full of the portion of the Secured Claim and the Prepetition Credit Agreement Secured Claims that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security

31

interests against any property of the Estates shall be fully released and discharged, and all of the right, title and interest of any Holder of such mortgages, deeds of trust, Liens, pledges or other security interests shall revert to the Reorganized Debtor and its successors and assigns.

## I. Preservation of Rights of Action

80. The provisions of Article IV.R of the Plan are hereby approved. ~~in their entirety.~~ Except for Avoidance Actions and the actions released by the Debtors pursuant to Article IX.D of the Plan, and in accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtors shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, including, but not limited to, any actions specifically enumerated in the Plan Supplement, and the Reorganized Debtors' rights to commence, prosecute or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date; provided, however that, notwithstanding anything to the contrary in the Plan or otherwise, the Debtors specifically waive the right to bring any Avoidance Actions.

81. No Person may rely on the absence of a specific reference in the Plan, the Plan Supplement or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors or Reorganized Debtors, as applicable, will not pursue any and all available Causes of Action against them.  The Debtors or Reorganized Debtors, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Person, except as otherwise expressly provided in the Plan.  Unless any Causes of Action against a Person are expressly waived, relinquished, exculpated, released, compromised or settled in the Plan or a Bankruptcy Court order, the Reorganized Debtors expressly reserve all Causes of Action, for later adjudication, and, therefore, ~~no~~ **it is intended that** preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel

(judicial, equitable or otherwise) or laches, shall **not** apply to such Causes of Action upon, after or as a consequence of the Confirmation or the Effective Date.

**J.      Notice of the Confirmation Order**

82.      In accordance with Bankruptcy Rules 2002 and 3020(c), as soon as practicable after the Effective Date, the Debtors shall serve notice of Confirmation and of the occurrence of the Effective Date, in substantially the form attached hereto as Exhibit B, by United States mail, first class postage prepaid, by hand or by overnight courier service to all parties served with the Confirmation Hearing Notice; provided, however, that no notice or service of any kind shall be required to be mailed or made upon any Entity to whom the Debtors mailed a Confirmation Hearing Notice, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address" or "forwarding order expired" or for similar reason, unless the Debtors have been informed in writing by such Entity, or are otherwise aware, of that Entity's new address.  To supplement the notice described in the preceding sentence, the Debtors shall publish notice of Confirmation and of the occurrence of the Effective Date, again in substantially the form attached hereto as Exhibit B, once in *The Wall Street Journal* (National Edition) and in the *Globe and Mail* (National Edition).  Mailing and publication of the notice of Confirmation and of the occurrence of the Effective Date in the time and manner set forth in the this paragraph shall be good and sufficient notice under the particular circumstances and in accordance with the requirements of Bankruptcy Rules 2002 and 3020(c), and no further notice is necessary.

83.      The notice of Confirmation and of the occurrence of the Effective Date shall have the effect of an order of this Court, shall constitute sufficient notice of the entry of the Confirmation Order to such filing and recording officers and shall be a recordable instrument notwithstanding any contrary provision of applicable non-bankruptcy law.

33

**K.     Professional Compensation, Administrative Claims and Bar Dates**

   **1.     Professional Compensation**

84.     All final requests for Professional Compensation and Reimbursement Claims shall be Filed no later than 45 days after the Effective Date.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior Bankruptcy Court orders, the Allowed amounts of such Professional Compensation and Reimbursement Claims shall be determined by this Court.

85.     On the Effective Date, the Reorganized Debtors shall fund the Professional Fee Escrow Account with Cash equal to the aggregate Professional Fee Reserve Amount for all Retained Professionals.  The Professional Fee Escrow Account shall be maintained in trust for the Retained Professionals with respect to whom fees or expenses have been held back pursuant to the Interim Compensation Order.  The remaining amount of Professional Compensation and Reimbursement Claims owing to the Retained Professionals shall be paid in Cash to such Retained Professionals by the Reorganized Debtors from the Professional Fee Escrow Account, without interest or other earnings therefrom, when such Professional Compensation and Reimbursement Claims are Allowed by a Bankruptcy Court order.  When all Professional Compensation and Reimbursement Claims have been paid in full, amounts remaining in the Professional Fee Escrow Account, if any, shall be paid to the Reorganized Debtors.

86.     From and after the date of Confirmation, each Reorganized Debtor shall pay in Cash the reasonable legal fees and expenses incurred by that Reorganized Debtor after Confirmation in the ordinary course of business and without any further notice to or action, order or approval of this Court.  Upon Confirmation, any requirement that Retained Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and each Reorganized Debtor

may employ and pay any Retained Professional in the ordinary course of business without any further notice to or action, order or approval of this Court.

87. Except as otherwise specifically provided in the Plan, any Entity that requests compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to section 503(b)(3), (4) and (5) of the Bankruptcy Code must File an application and serve such application on counsel for the Debtors or Reorganized Debtors, as applicable, by no later than ~~30~~ **45** days after the Effective Date and as otherwise required by this Court, the Bankruptcy Code and the Bankruptcy Rules.

### ~~2. Other Administrative Claims~~

88. ~~All requests for payment of an Administrative Claim must be Filed with the Notice, Claims and Solicitation Agent and served upon counsel to the Debtors or Reorganized Debtors, as applicable, on or before the date that is 30 days after the Effective Date. The Reorganized Debtors may settle and pay any Administrative Claim in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court. In the event that any party with standing objects to an Administrative Claim, the Bankruptcy Court shall determine the Allowed amount of such Administrative Claim. Notwithstanding the foregoing, no request for payment of an Administrative Claim need be Filed with respect to an Administrative Claim previously Allowed by Final Order.~~

### L. United States Trustee's Fees

89. Notwithstanding anything to the contrary in the Plan or this Confirmation Order, the quarterly fees of the United States Trustee for the Southern District of New York shall be paid in accordance with section 1930 of title 28 of the United States Code until the earlier of entry of a final decree of the Court closing the Chapter 11 Cases or dissolution of the Debtors under applicable law.

K&E 15622550.17

## M.     Exemption from Securities Laws

90.     The solicitation of acceptances and rejections of the Plan was exempt from the registration requirements of the Securities Act (as amended, and including the rules and regulations promulgated thereunder) and applicable state securities laws, and no other non-bankruptcy law applies to the solicitation.

91.     Pursuant to section 1145 of the Bankruptcy Code, **and subject to the exceptions therein,** the offering, issuance and distribution of any Securities pursuant to the Plan (including any Securities issued or issuable pursuant to the terms of the Warrants or any other Securities distributed pursuant to the Plan) ~~and any and all settlement agreements incorporated herein~~ shall be exempt from, among other things, the registration requirements of section 5 of the Securities Act and any other applicable law requiring registration prior to the offering, issuance, distribution or sale of Securities.  In addition, under section 1145 of the Bankruptcy Code, any Securities contemplated by the Plan (including any Securities issued or issuable pursuant to the terms of the Warrants or any other Securities contemplated by the Plan) ~~and any and all settlement agreements incorporated therein~~ will be freely tradable by the recipients thereof, subject to (a) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act and (b) applicable regulatory approval.

92.     Notwithstanding the foregoing, holders of New Common Stock and holders of Warrants shall receive registration rights as set forth in the Registration Rights Agreement.

## N.     Exemption from Taxation

93.     Pursuant to section 1146(a) of the Bankruptcy Code, any transfer from a Debtor to a Reorganized Debtor or to any Entity pursuant to, ~~in contemplation of~~ or in connection with the Plan or pursuant to:  (a) the issuance, distribution, transfer or exchange of any debt, equity

36

Security or other interest in the Debtors or the Reorganized Debtors; (b) the creation, modification, consolidation or recording of any mortgage, deed of trust or other security interest or the securing of additional indebtedness by such or other means; (c) the making, assignment or recording of any lease or sublease; or (d) the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of or in connection with the Plan, including any deeds, bills of sale, assignments or other instrument of transfer executed in connection with ~~any transaction arising out of, contemplated by or in any way related to~~ the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee or other similar tax or governmental assessment, and the appropriate federal, state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

## O. Retention of Jurisdiction

94.     Notwithstanding the entry of this Confirmation Order and the occurrence of the Effective Date, this Court shall retain jurisdiction over all matters arising out of or related to the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including as set forth in Article XI of the Plan.

## P. References to Plan Provisions

95.     The failure specifically to include or to refer to any particular article, section or provision of the Plan, Plan Supplement or any related document in this Confirmation Order shall not diminish or impair the effectiveness of such article, section, or provision it being the intent of the Bankruptcy Court that the Plan and any related documents be confirmed in their entirety.

**Q.      Treatment of Executory Contracts and Unexpired Leases**

96.      The provisions regarding Executory Contracts and Unexpired Leases set forth in Article V of the Plan shall be approved and hereby are approved. ~~in their entirety.~~

**R.      Provisions Governing Distributions**

97.      The provisions governing distributions set forth in Article VI of the Plan shall be approved and hereby are approved ~~in their entirety~~; <u>provided</u>, <u>however</u>, that, notwithstanding anything to the contrary in the Plan or this Confirmation Order, the Prepetition Credit Agreement Deficiency Claims shall be Allowed in an amount equal to approximately $704 million.  Except as otherwise set forth in the Plan, the Reorganized Debtors shall make all distributions required under the Plan.

**S.      Procedures for Resolving Disputed, Contingent and Unliquidated Claims or Interests**

98.      The procedures for resolving Claims and Interests set forth in Article VII of the Plan shall be approved and hereby are approved ~~in their entirety~~; <u>provided</u>, <u>however</u>, that, notwithstanding anything to the contrary in the Plan or this Confirmation Order, the Debtors and the Reorganized Debtors, as the case may be, shall cash collateralize all letters of credit issued under the Prepetition Credit Agreement (the "<u>Outstanding Letters of Credit</u>") that remain outstanding and undrawn as of the Effective Date by depositing an amount equal to 105 percent of the face amount of the Outstanding Letters of Credit into a cash collateral account, maintained by, and for the benefit of, the issuer of such Outstanding Letters of Credit (the "<u>Issuing Bank</u>"). The Debtors and Reorganized Debtors are authorized and directed to enter into a cash collateral agreement governing such deposit, in form and substance reasonably satisfactory to the Debtors and the Issuing Bank (the "<u>LC Cash Collateral Agreement</u>").  The execution, delivery or performance by the Debtors or the Reorganized Debtors, as the case may be, of or in accordance

with any documents in connection with the LC Cash Collateral Agreement, including any and all amendments and modifications thereto, any other agreements, instruments, certificates or documents related thereto and any and all transactions contemplated thereby, and compliance by the Debtors or the Reorganized Debtors, as the case may be, with the terms thereof are authorized by and will not conflict with the terms of the Plan or this Confirmation Order. The LC Cash Collateral Agreement, including any and all amendments and modifications thereto, any other agreements, instruments, certificates or documents related thereto and any and all transactions contemplated thereby, shall constitute legal, valid, binding and authorized obligations of the Debtors and the Reorganized Debtors enforceable in accordance with its terms and will not conflict with any federal or state law. The Issuing Bank is authorized to pay or reimburse draws under the Outstanding Letters of Credit from amounts on deposit in such cash collateral account without further Court order and to account to the Reorganized Debtors for any excess therein after the draw and/or expiration of all such Outstanding Letters of Credit.

**T.      Cancellation of Agreements, Unsecured Notes and Equity Interests**

99.      On the Effective Date, except to the extent otherwise provided by the Plan, all notes, stock, instruments, certificates and other documents evidencing the Unsecured Notes and Equity Interests in Lear Corporation shall be canceled and of no further force, whether surrendered for cancellation or otherwise, and the obligations of the Debtors thereunder or in any way related thereto shall be discharged.

100.      On the Effective Date, except to the extent otherwise provided by the Plan, any Indentures relating to any of the foregoing shall be deemed to be canceled, as permitted by section 1123(a)(5)(F) of the Bankruptcy Code, and the obligations of the Debtors thereunder shall be discharged; provided that the Unsecured Notes and the Indentures shall continue in effect solely to (a) allow Holders of the Unsecured Claims to receive distributions provided for

39

hereunder, (b) preserve the right of the Indenture Trustees to the reimbursement of the Indenture Trustees' Fees and (c) preserve the Indenture Trustees' right to indemnification from the Debtors pursuant to the terms of the Indentures. Notwithstanding the foregoing, the charging liens held by the Indenture Trustees against distributions to holders of Unsecured Notes shall be deemed released only upon payment of the Indenture Trustees' fees.

101. As of the Effective Date, the transfer register or ledger maintained by Indenture Trustees for the Unsecured Notes shall be closed, and there shall be no further changes in the record holders of any Unsecured Notes.

102. As of the Effective Date, except to the extent otherwise provided by the Plan, the Prepetition Credit Agreement shall be deemed to be cancelled, and the obligations of the Debtors thereunder shall be discharged; provided that the Prepetition Credit Agreement shall continue in effect solely to (a) allow Holders of the Prepetition Credit Agreement Claims to receive the distributions provided for hereunder, (b) allow the Prepetition Administrative Agent to receive distributions from the Debtors and to make further distributions to the Holders of Prepetition Credit Agreement Claims on account of such Claims, as set forth in Article VI.C.2 of the Plan and (c) preserve the Prepetition Administrative Agent's right to indemnification, pursuant and subject to the terms of the Prepetition Credit Agreement, from (i) the Prepetition Credit Agreement Lenders, in respect of any claim or cause of action asserted against the Prepetition Administrative Agent and (ii) the Debtors, in respect of any claim or cause of action asserted against the Prepetition Administrative Agent by a Person or Entity that is not party to the Prepetition Credit Agreement; provided that any claim or right to payment on account of such indemnification asserted against the Debtors or the Reorganized Debtors, as applicable, shall be an unsecured claim and shall not be secured in any of the assets of the Debtors, the Reorganized

Debtors or their affiliates; provided, further, that all revolving credit Prepetition Credit Agreement Lenders are, as of the Effective Date, released and discharged from their Participating Interest (as defined in the Prepetition Credit Agreement) with respect to any Outstanding Letters of Credit.

**U.  New Common Stock, Series A Preferred Stock and Warrants**

103.  In accordance with the terms of Article IV.F of the Plan, on the Effective Date, or as soon as reasonably practicable thereafter, the Reorganized Debtors shall issue or reserve for issuance all Securities to be issued pursuant to the terms of the Plan and the Amended and Restated Certificate of Incorporation, without need for any further corporate or shareholder action, including, without limitation, the New Common Stock, the Series A Preferred Stock and the Warrants.  Upon issuance, all shares of New Common Stock, Series A Preferred Stock and any such securities delivered upon the exercise of the Warrants shall be deemed validly issued.

104.  Except as otherwise provided in the applicable Plan Supplement documents, the Reorganized Debtors shall not be required to make partial distributions or payments of fractions of shares of New Common Stock, Series A Preferred Stock or Warrants.

105.  On or following the Effective Date, Reorganized Lear Corporation shall as soon as reasonably practicable file with the Commission a registration statement for the New Common Stock on Form 8-A or Form 10 (as determined in the Debtors' reasonable discretion) under the Securities Exchange Act of 1934.  Following the Effective Date, Reorganized Lear Corporation shall use reasonable best efforts to list the New Common Stock on the NASDAQ or The New York Stock Exchange as soon as reasonably practicable.

**V.  DIP Facility Claims**

106.  On the Effective Date, all DIP Facility Claims shall be indefeasibly repaid in full in cash in accordance with the terms of the Credit and Guarantee Agreement governing the

DIP Facility (the "DIP Facility Agreement").  Upon compliance with the foregoing sentence, all liens and security interests granted to secure the DIP Facility Claims shall be deemed cancelled and shall be of no further force and effect; provided that the DIP Facility Agreement shall continue in effect solely to (a) allow Holders of the DIP Facility Claims to receive the distributions provided for hereunder, (b) allow the DIP Agent to receive distributions from the Debtors and to make further distributions to the Holders of DIP Facility Claims on account of such Claims and (c) preserve the DIP Agent's right to indemnification from the Debtors pursuant and subject to the terms of the DIP Facility Agreement in respect of any claim or cause of action asserted against the DIP Facility Agent by a Person or Entity that is not party to the DIP Facility Agreement; provided that any claim or right to payment on account of such indemnification shall be an unsecured claim against the Debtors or the Reorganized Debtors, as applicable, and shall not be secured in any of the assets of the Debtors, the Reorganized Debtors or their affiliates.

## W. Exit Facility

107.    On the Effective Date, the Reorganized Debtors will consummate the Exit Facility.  In accordance with the Exit Financing Agreement, including any and all amendments and modifications thereto and any other agreements, instruments, certificates or documents related thereto, the Reorganized Debtors will use proceeds of the Exit Facility to pay the DIP Facility Claims.

108.    The Exit Facility and the Exit Financing Agreement, including any and all amendments and modifications thereto, any other agreements, instruments, certificates or documents related thereto and any and all transactions contemplated thereby, are hereby approved.  The Debtors and the Reorganized Debtors, as the case may be, are hereby authorized to enter into and to execute the Exit Financing Agreement, including any and all amendments and modifications thereto and any other agreements, instruments, certificates or documents

42

related thereto, and are hereby authorized to enter into and to consummate any and all transactions contemplated thereby.

109.    The automatic stay imposed pursuant to section 362 of the Bankruptcy Code is vacated and modified to the extent necessary to permit, without further application to this Court, the execution, delivery, filing and recordation of the Exit Financing Agreement, including any and all amendments and modifications thereto and any other agreements, instruments, certificates or documents related thereto, and all transactions contemplated by such documents with respect to the Exit Facility.  The liens contemplated by and related to the Exit Facility shall be legal, valid and enforceable liens, as and to the extent provided in the Exit Financing Agreement, including any and all amendments and modifications thereto and any other agreements, instruments, certificates or documents related thereto, and the documents to be executed and delivered pursuant thereto shall constitute the legal, valid and binding obligations of the Reorganized Debtors.  The obligations under the Exit Facility and all related mortgages and security agreements shall, upon execution, constitute legal, valid, binding and authorized obligations of each of the parties thereto, enforceable in accordance with their terms and not in contravention of any state or federal law.  Neither the obligations created under the Exit Facility, including any and all amendments and modifications thereto any other agreements, instruments, certificates or documents related thereto, nor the liens granted thereunder shall constitute a preferential transfer or fraudulent conveyance under applicable federal or state laws and will not subject the Exit Facility Agent or the Exit Facility Lenders to any liability by reason of incurrence of such obligation or grant of such liens under applicable federal or state laws, including, but not limited to, successor or transferee liability.  ~~In the event an order dismissing any of these Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise is at any~~

~~time entered, such liens shall not be affected and shall continue in full force and effect in all~~ ~~respects and shall maintain their priorities and perfected status as provided in such documents~~ ~~until all obligations in respect thereof shall have been paid and satisfied in full.~~

**X.    New Term Loans**

110.    On the Effective Date, Reorganized Lear Corporation will issue the New Term Loans.  The New Term Loans shall be guaranteed by Reorganized Lear Corporation's domestic direct and indirect subsidiaries pursuant to the New Term Loans Agreement, including any and all amendments and modifications thereto and any other agreements, instruments, certificates or documents related thereto, and, further, shall be subject to prepayment on account of the Excess Cash Paydown, if applicable.  On or before the Effective Date, the Reorganized Debtors and each Holder of an Allowed Prepetition Credit Agreement Secured Claim shall execute the New Term Loans Agreement, including any and all amendments and modifications thereto and any other agreements, instruments, certificates or documents related thereto.

111.    The New Term Loans and the New Term Loans Agreement, including any and all amendments and modifications thereto, any other agreements, instruments, certificates or documents related thereto and any and all transactions contemplated thereby, are hereby approved.  The Debtors and the Reorganized Debtors, as the case may be, are hereby authorized to enter into and to execute the New Term Loans Agreement, including any and all amendments and modifications thereto and any other agreements, instruments, certificates or documents related thereto, and are hereby authorized to enter into and to consummate any and all transactions contemplated thereby.

112.    The automatic stay imposed pursuant to section 362 of the Bankruptcy Code is vacated and modified to the extent necessary to permit, without further application to this Court, the execution, delivery, filing and recordation of the New Term Loans Agreement, including any

44

and all amendments and modifications thereto and any other agreements, instruments, certificates or documents related thereto, and all transactions contemplated by such documents with respect to the New Term Loans. The liens contemplated by and related to the New Term Loans shall be legal, valid and enforceable liens, as and to the extent provided in the New Term Loans Agreement, including any and all amendments and modifications thereto and any other agreements, instruments, certificates or documents related thereto, and the documents to be executed and delivered pursuant thereto shall constitute the legal, valid and binding obligations of the Reorganized Debtors. The obligations under the New Term Loans and all related mortgages and security agreements shall, upon execution, constitute legal, valid, binding and authorized obligations of each of the parties thereto, enforceable in accordance with their terms and not in contravention of any state or federal law. Neither the obligations created under the New Term Loans, including any and all amendments and modifications thereto any other agreements, instruments, certificates or documents related thereto, nor the liens granted thereunder shall constitute a preferential transfer or fraudulent conveyance under applicable federal or state laws and will not subject the lenders under the New Term Loans to any liability by reason of incurrence of such obligation or grant of such liens under applicable federal or state laws, including, but not limited to, successor or transferee liability. ~~In the event an order dismissing any of these Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such liens shall not be affected and shall continue in full force and effect in all respects and shall maintain their priorities and perfected status as provided in such documents until all obligations in respect thereof shall have been paid and satisfied in full.~~

K&E 15622550.17

**Y.  Compensation and Benefit Programs**

113.   Subject to the provisions of the Plan, all Compensation and Benefits Programs shall be treated as Executory Contracts under the Plan and deemed assumed on the Effective Date pursuant to the provisions of sections 365 and 1123 of the Bankruptcy Code, except for:

    a.   all employee equity or equity-based incentive plans, and any provisions set forth in the Compensation and Benefits Program that provide for rights to acquire Equity Interests in Lear Corporation;

    b.   Compensation and Benefits Programs listed in the Plan Supplement as executory contracts to be rejected;

    c.   Compensation and Benefits Programs that have previously been rejected; and

    d.   Compensation and Benefits Programs that, as of the entry of this Confirmation Order, are the subject of pending rejection procedures or a motion to reject, or have been specifically waived by the beneficiaries of any employee benefit plan or contract.

114.   Any assumption of Compensation and Benefits Programs pursuant to the Plan shall not trigger any applicable change of control, immediate vesting, termination, or similar provisions therein (unless a Compensation and Benefits Program counterparty timely objects to the assumption contemplated by the Plan, in which case any such Compensation and Benefits Program shall be deemed rejected as of immediately prior to the Petition Date).  No counterparty shall have rights under a Compensation and Benefits Program assumed pursuant to the Plan other than those applicable immediately prior to such assumption.  Consistent with the Plan Support Agreements and the term sheet attached thereto and notwithstanding anything to the contrary in the Plan or otherwise, any and all Compensation and Benefit Claims (including, but not limited to, Claims relating to the Debtors' supplemental employee retirement program) are Unimpaired and entitled to full payment pursuant to their terms.

K&E 15622550.17

115.     Notwithstanding anything to the contrary in the Plan, this Confirmation Order or otherwise, (a) the Reorganized Debtors' obligations, if any, to pay all "retiree benefits" (as that term is defined in section 1114(a) of the Bankruptcy Code) shall continue and (b) all of the Debtors' qualified pension plans shall continue.

## Z.     Key Management Incentive Plan and Management Equity Plan

116.     Reorganized Lear Corporation has adopted the Key Management Incentive Plan and the Management Equity Plan, and, to the extent necessary and not already accomplished by order of this Court, the Key Management Incentive Plan and the Management Equity Plan are hereby approved. ~~in their entirety.~~

117.     Payments under the Key Management Incentive Plan are hereby deemed earned and payable in accordance with the *Order Approving the Debtors' Key Management Incentive Plan* [Docket No. 530].  On the Effective Date, the Reorganized Debtors shall make any and all payments under the Key Management Incentive Plan; provided, however, that 50 percent of all amounts payable to the chief executive officer of Debtor Lear Corporation or Reorganized Lear Corporation, as applicable, shall be paid upon the one-year anniversary of the Effective Date.

118.     On the Effective Date, the Reorganized Debtors shall grant and issue restricted stock up to 2.7 percent of the New Common Stock (on a fully diluted basis) to eligible employees, pursuant to the terms of the Management Equity Plan, as set forth in the Plan Supplement.  On the Effective Date, the Reorganized Debtors shall reserve the balance of 10 percent of the New Common Stock (after issuance of the New Common Stock set forth in the immediately prior sentence) for future issuance of grants to the Debtors' or the Reorganized Debtors' management and directors of equity or equity-based awards pursuant to the terms of the Management Equity Plan.

K&E 15622550.17

**AA.    Other Essential Documents and Agreements**

119.    The Amended and Restated Certificate of Incorporation and Amended and Restated Bylaws of Reorganized Lear Corporation, the Other General Unsecured Claims Warrant Agreement, the Warrants, the Certificate of Designation, the Employment Agreements, the Registration Rights Agreement, the LC Cash Collateral Agreement, any other agreements, instruments, certificates or documents related thereto and the transactions contemplated by each of the foregoing are approved ~~in their entirety~~ and, upon execution and delivery of the agreements and documents relating thereto by the applicable parties, the Amended and Restated Certificate of Incorporation and Amended and Restated Bylaws of Reorganized Lear Corporation, the Other General Unsecured Claims Warrant Agreement, the Warrants, the Certificate of Designation, the Employment Agreements, the Registration Rights Agreement, the LC Cash Collateral Agreement and any other agreements, instruments, certificates or documents related thereto shall be in full force and effect and valid, binding and enforceable in accordance with their terms without the need for any further notice to or action, order or approval of this Court, or other act or action under applicable law, regulation, order or rule.  The Debtors, and after the Effective Date, the Reorganized Debtors, are authorized, without further approval of this Court or any other party, to execute and deliver all agreements, documents, instruments, securities and certificates relating to such agreements and perform their obligations thereunder, including, without limitation, pay all fees due thereunder or in connection therewith.

120.    On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtors or Reorganized Debtors, as applicable, and **upon request** all Holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver

any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

## BB.    Return of Deposits

121.    ~~All utilities, including any Person who received a deposit or other form of adequate assurance of performance pursuant to section 366 of the Bankruptcy Code during these Chapter 11 Cases (collectively, the "Deposits"), including, without limitation, gas, electric, telephone, trash and sewer services, shall return such Deposits to the Debtors and/or the Reorganized Debtors, as applicable, either by setoff against postpetition indebtedness or by cash refund, by no later than 10 days following the Effective Date and as of the Effective Date, such utilities are not entitled to make requests for or receive Deposits.~~

## CC.    Governing Law

122.    Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction and implementation of the Plan, any agreements, documents, instruments or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control), and corporate governance matters; provided, however, that corporate governance matters relating to Debtors or Reorganized Debtors, as applicable, not incorporated in New York shall be governed by the laws of the state of incorporation of the applicable Debtor or Reorganized Debtor, as applicable.

## DD.    Effectiveness of All Actions

123.    Except as set forth in the Plan, all actions authorized to be taken pursuant to the Plan shall be effective on, prior to, or after the Effective Date pursuant to this Confirmation

Order, without further application to, or order of this Court, or further action by the respective officers, directors, members or stockholders of the Reorganized Debtors and with the effect that such actions had been taken by unanimous action of such officers, directors, members, or stockholders. As of the Effective Date, the Debtors shall be substantively consolidated for the purposes set forth in the Plan.

**EE.    Approval of Consents and Authorization to Take Acts Necessary to Implement Plan**

124.    Pursuant to section 1142(b) of the Bankruptcy Code, section 303 of the Delaware General Corporation Law and any comparable provision of the business corporation laws of any other state, each of the Debtors and the Reorganized Debtors hereby is authorized and empowered to take such actions and to perform such acts as may be necessary, desirable or appropriate to comply with or implement the Plan, the Plan Supplement, the Amended and Restated Bylaws of Reorganized Lear Corporation, the New Term Loans Agreement, the Exit Financing Agreement, the Other General Unsecured Claims Warrant Agreement, the Warrants, the Certificate of Designation, the Employment Agreements, the Registration Rights Agreement, the LC Cash Collateral Agreement, any other Plan documents, including the election or appointment, as the case may be, of directors and officers of Reorganized Lear Corporation as contemplated in the Plan, and all documents, instruments, securities and agreements related thereto and all annexes, exhibits and schedules appended thereto, and the obligations thereunder shall constitute legal, valid, binding and authorized obligations of each of the respective parties thereto, enforceable in accordance with their terms without the need for any stockholder or board of directors' approval. Each of the Debtors and the Reorganized Debtors hereby is authorized and empowered to take such actions, to perform all acts, to make, execute, and deliver all instruments and documents, and to pay all fees and expenses as set forth in the documents relating to the Plan and including without limitation, the Plan Supplement, the Amended and

Restated Bylaws of Reorganized Lear Corporation, the New Term Loans Agreement, the Exit Financing Agreement, the Other General Unsecured Claims Warrant Agreement, the Warrants, the Certificate of Designation, the Employment Agreements, the Registration Rights Agreement, the LC Cash Collateral Agreement, any other Plan documents, including the election or appointment, as the case may be, of directors and officers of Reorganized Lear Corporation as contemplated in the Plan, and all documents, instruments, securities and agreements related thereto and all annexes, exhibits and schedules appended thereto and that may be required or necessary for its performance thereunder without the need for any stockholder or board of directors' approval. On the Effective Date, the appropriate officers of Reorganized Lear Corporation and members of the New Board are authorized and empowered to issue, execute and deliver the agreements, documents, securities and instruments contemplated by the Plan in the name of and on behalf of the Reorganized Debtors. Subject to the terms of this Confirmation Order, each of the Debtors, the Reorganized Debtors and the officers and directors thereof are authorized to take any such actions without further corporate action or action of the directors or stockholders of the Debtors or the Reorganized Debtors. On the Effective Date, or as soon thereafter as is practicable, the Reorganized Debtors shall file their amended certificates of incorporation with the Secretary of State of the state in which each such entity is (or will be) organized, in accordance with the applicable general business law of each such jurisdiction.

125. This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules and regulations of all states and any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments, agreements, any amendments or modifications thereto and any other acts and transactions referred to in or contemplated by the Plan, the Plan Supplement, the Disclosure Statement, and

51

any documents, instruments, securities, agreements and any amendments or modifications thereto.

**FF.     Ownership and Control**

126.    The Consummation of the Plan shall not constitute a change of ownership or change in control, as such terms are used in any statute, regulation, contract or agreement, including, but not limited to, any credit agreement, indenture or other evidence of indebtedness, employment, severance, termination, or insurance agreements, in effect on the Effective Date and to which any of the Debtors is a party or under any applicable law of any applicable governmental unit, other than a change of control for purposes of section 382 of the U.S. Internal Revenue Code of 1986, as amended, on the Effective Date.  Notwithstanding the foregoing, the Debtors and Reorganized Debtors reserve the right to selectively waive this provision of the Plan.

**GG.     Effect of Conflict Between Plan and Confirmation Order**

127.    If there is any direct conflict between the terms of the Plan or the Plan Supplement and the terms of this Confirmation Order, the terms of this Confirmation Order shall control.

**HH.     Immediate Binding Effect**

128.    Notwithstanding Bankruptcy Rules 3020(e), 6004(h) or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors and any and all Holders of Claims or Interests (irrespective of whether Holders of such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges and injunctions

described in the Plan or herein, each Entity acquiring property under the Plan and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

## II. Payment of Statutory Fees

129. All fees payable pursuant to section 1930(a) of the Judicial Code, as determined by this Court at a hearing pursuant to section 1128 of the Bankruptcy Code, shall be paid for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed or closed, whichever occurs first.

## JJ. Reservation of Rights

130. Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order. None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

## KK. Injunctions and Automatic Stay

131. Unless otherwise provided in the Plan or in this Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of this Court and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms, **subject to further Court order.**

132. This Confirmation Order will permanently enjoin the commencement or prosecution by any Person, whether directly, derivatively or otherwise, of any Claims, Interests,

Causes of Action, obligations, suits, judgments, damages, demands, debts, rights or liabilities released pursuant to the Plan.

## LL.    Nonseverability of Plan Provisions

133.    Each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is:  (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the consent of the Debtors, the Prepetition Administrative Agent, the Committee and the Noteholder Steering Committee; and (3) nonseverable and mutually dependent.

## MM.   Waiver or Estoppel

134.    ~~Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed with this Court prior to the Confirmation Date.~~

## NN.    Authorization to Consummate

135.    The Debtors are authorized to consummate the Plan at any time after the entry of this Confirmation Order subject to satisfaction or waiver (by the required parties) of the conditions precedent to Consummation set forth in Article VII.B of the Plan.

## OO.    Priority Tax Claims

**136.**    Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment or has been paid by any applicable Debtor prior to the Effective Date, in full and final satisfaction, settlement, release, and discharge of and in exchange for release of each such Allowed Claim, each Holder of such Allowed  Claim shall receive on account of such Claim, in accordance with section 1129(a)(9)(C) of the Bankruptcy Code, regular installment

payments in Cash over a period ending not later than five years after the Petition Date of a total value, as of the Effective Date, equal to the Allowed amount of such Claim, which total value shall include simple interest to accrue on any outstanding balance of such Allowed Priority Tax Claim starting on the Effective Date at the rate of interest determined under applicable non-bankruptcy law pursuant to section 511 of the Bankruptcy Code, **provided that any such payment shall not be less favorable than the treatment accorded the most favored non-priority unsecured claim provided for by the Plan.**

**PP.    Effect of Non-Occurrence of Conditions to the Effective Date**

137.    If the Effective Date does not occur, the Debtors may determine, upon notice to this Court, that the Plan is null and void in all respects, and nothing contained in the Plan, this Confirmation Order or the Disclosure Statement shall:  (1) constitute a waiver or release of any Cause of Action or Claim; (2) constitute an admission, acknowledgment, offer or undertaking in any respect by any party, including the Debtors; or (3) otherwise prejudice in any manner the rights of any party, including the Debtors.

**QQ.    Specific Creditor Provisions**

138.    **Hudson Plaintiffs**.    With respect to the plaintiffs (collectively, the "Hudson Plaintiffs") in that certain action styled Hudson v. Renosol Seating, LLC, No. 08-900180 (Al. Cir. Ct., Dallas County) (the "Hudson Litigation"), any Claims of the Hudson Plaintiffs on account of the Hudson Litigation shall survive confirmation, and the Hudson Plaintiffs shall be entitled to liquidate such Claims to final judgment in the Hudson Litigation and shall further be entitled to recover any amounts against any applicable available insurance for these Claims.  No distributions under the Plan will be made on account of a Claim based on the Hudson Litigation that is payable pursuant to any applicable insurance policies until the Hudson Plaintiffs have exhausted all remedies with respect to such insurance

policies. Except as otherwise provided in the Plan, distributions to the Hudson Plaintiffs shall be in accordance with the provisions of any applicable insurance policy. Nothing contained in the Plan shall constitute or be deemed a waiver of any cause of action related to the Hudson Litigation that the Debtors, the Reorganized Debtors or any entity may hold against any other entity, including insurers under any policies of insurance, nor shall anything contained in the Plan constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, with respect to the Hudson Litigation.

139. **Insurance Programs**. Notwithstanding anything to the contrary in the Disclosure Statement, Plan, any exhibit to the Plan, any other Plan document or this Confirmation Order (including, without limitation, any other provision that purports to be preemptory or supervening), (a) the Debtors and the Reorganized Debtors: (i) shall assume the ACE Insurance Program and any insurance policies or programs maintained with Zurich American Insurance Company and its affiliates (collectively, "Zurich") on the Effective Date (the "Zurich Insurance Program" and, together with the ACE Insurance Program, the "Insurance Programs"); and (ii) shall cure the ACE-Related Cure in accordance with Article V.B of the Plan and shall pay any cure amount related to or payable under the Zurich Insurance Program (the "Zurich-Related Cure"); provided, however, that Reorganized Debtors shall remain liable for any Claim under the Insurance Programs that becomes liquidated or is due and owing after the time of assumption (regardless of when the underlying cause of action and/or claim arose) and shall pay such Claim in the ordinary course of business; (b) as of the Effective Date, the Reorganized Debtors are bound by the terms of the Insurance Programs and shall be liable for all of the Debtors' obligations and liabilities, whether now existing or hereafter arising, under the Insurance Programs including, without limitation, the ACE-Related Cure and the Zurich-Related

Cure and the duty to continue to provide collateral and security as required by the Insurance Programs; (c) except as otherwise provided in part (a) hereof regarding the ACE-Related Cure and the Zurich-Related Cure, the Claims of ACE Companies and of Zurich pursuant to the Insurance Programs arising after the Petition Date shall be Administrative Claims that (i) are Allowed; provided, however, that nothing limits the ability of any applicable Debtor or Reorganized Debtor to contest any such Administrative Claim on any basis provided for under the Insurance Programs, applicable law or any other valid grounds and (ii) the ACE Companies' and Zurich's Administrative Claims that are not contested shall be due and payable in the ordinary course of business by the Debtors (or after the Effective Date, by the Reorganized Debtors) pursuant to the Insurance Programs, and the ACE Companies and Zurich shall not be required to file or serve a request for payment of such Administrative Claims and shall not be subject to any bar date or similar deadline; and (d) nothing in the Plan, the Confirmation Order, any exhibit to the Plan or any other Plan document (including any provision that purports to be preemptory or supervening), (i) shall in any way operate to, or have the effect of, impairing ACE Companies' or Zurich's legal, equitable or contractual rights and defenses with respect to the Insurance Programs, in any respect, including without limitation, the ACE Companies' or Zurich's rights of recoupment, setoff, rescission, contribution and subrogation and the rights of ACE Companies or Zurich to contest and/or litigate with any party (including, without limitation, the Debtors and Reorganized Debtors) the existence, primacy and/or scope of available coverage under any alleged applicable policy; (ii) alters the rights and obligations of the ACE Companies, Zurich or the Debtors (or after the Effective Date, the Reorganized Debtors) under the Insurance Programs and applicable non-bankruptcy law; or (iii) discharges, releases or relieves the Debtors (or after the Effective Date, the Reorganized Debtors) from any

K&E 15622550.17

obligations or liabilities due and owing to the ACE Companies or Zurich under the Insurance Programs; provided that, notwithstanding anything to the contrary herein or otherwise, to the extent the Debtors' obligations to any third party are released, relieved or discharged under the Plan or otherwise, the Debtors shall not maintain any liability on account of such obligations to any party other than to the ACE Companies or Zurich with respect to the Debtors' obligations under the Insurance Programs.

140. **International Automotive Components**. Notwithstanding anything to the contrary in this Confirmation Order or the Plan, the assumption or rejection of the agreements between the Debtors and IACNA Investor, LLC, International Automotive Components Group North America, LLC and International Automotive Components Group North America, Inc. (collectively, "IAC") listed in Exhibit H to the Plan Supplement is hereby reserved for a later hearing, if necessary; provided that notwithstanding anything to the contrary in this paragraph or otherwise, the rejection of the Debtors' agreements or other contracts with Reyes Holdings, LLP and Reyes Automotive Group, LLC set forth on Exhibit H to the Plan Supplement is hereby approved in all respects. IAC and the Debtors and the Reorganized Debtors reserve all of their respective rights, claims, objections, defenses or otherwise with respect to rejection and assumption of any such agreements. Further, following entry of this Confirmation Order, the Debtors or Reorganized Debtors (as the case may be) are authorized to resolve and settle with IAC relative to all or any of the agreements between IAC and the Debtors, without further order of the Court.

141. **Oakland County**. The Reorganized Debtors shall pay, on or before February 14, 2010, the Winter 2009 ad valorem property taxes owed to the Oakland County Treasurer on behalf of Rochester Hills, Michigan, Troy, Michigan, Southfield, Michigan, and other similarly

situated municipalities in Oakland County, Michigan (collectively, the "<u>Oakland County Taxing Authorities</u>"), that are due on or before February 14, 2010 (collectively, the "<u>Winter 2009 Property Taxes</u>"), in full and final satisfaction, settlement, release and discharge of any and all liens, security interests, encumbrances, interests and claims held by the Oakland County Treasurer or any of the Oakland County Taxing Authorities on account of such Winter 2009 Property Taxes, and the Oakland County Treasurer shall be entitled to retain any lien held against assets and/or real property owned by the Reorganized Debtors in Oakland County, if any, until the Reorganized Debtors have paid the Winter 2009 Property Taxes. Upon payment of the Winter 2009 Property Taxes, any liens or other interests held on account of the Winter 2009 Property Taxes shall be immediately released and discharged without need for any further action by the Debtors, Reorganized Debtors or otherwise. The Reorganized Debtors further agree to satisfy in full, when due, all amounts owing to any municipalities in Oakland County, Michigan, arising from water services provided to the Debtors or Reorganized Debtors as stated in invoices provided to the Debtors or Reorganized Debtors, subject to the right of the Debtors or Reorganized Debtors to dispute any such invoices. Claims, if any, held by municipalities in Oakland County for unpaid invoices arising from prepetition water services shall be treated as Class 4A Claims under the Plan, subject to the right of the Debtors or Reorganized Debtors to dispute any such claims on any basis.

## RR.    Final Confirmation Order

142.    This Confirmation Order is **intended to be** a final order and the period in which an appeal must be filed ~~shall~~ **to** commence upon the entry hereof.

IT IS SO ORDERED.

K&E 15622550.17

New York, New York
Date:  November 5, 2009

/s/ Allan L. Gropper
United States Bankruptcy Judge

K&E 15622550.17