Hearing Date: May 27, 2014, 2014 at 10:00 a.m. (Eastern Daylight Time)
Objection Deadline: May 14, 2014, 2014 at 4:00 p.m. (Eastern Daylight Time)

Ryan Blaine Bennett (admitted *pro hac vice*)
Michael B. Slade (admitted *pro hac vice*)
Brad Weiland (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois  60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel to the Reorganized Debtors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| LEAR CORPORATION, et al.,[1] | ) | Case No. 09-14326 (ALG) |
| | ) | |
| Reorganized Debtors. | ) | Jointly Administered |
| | ) | |

**NOTICE OF REORGANIZED DEBTORS' MOTION FOR ENTRY OF**
**AN ORDER APPROVING DISTRIBUTIONS FROM STOCK AND WARRANT**
**RESERVE TO FACILITATE SETTLEMENT OF ANTITRUST ACTIONS**

**PLEASE TAKE NOTICE** that a hearing on the *Reorganized Debtors' Motion for Entry of an Order Approving Distributions from Stock and Warrant Reserve to Facilitate Settlement of Antitrust Actions* (the "**Motion**") will be held before the Honorable Allan L. Gropper of the United States Bankruptcy Court for the Southern District of New York (the "**Court**"),

---

[1]    The Reorganized Debtors in these Chapter 11 Cases, along with the last four digits of each U.S. Reorganized Debtors' federal tax identification number (if any), include:  Lear Corporation (6776); Lear #50 Holdings, LLC (N/A); Lear Argentine Holdings Corporation #2 (7832); Lear Automotive Dearborn, Inc. (4976); Lear Automotive Manufacturing, LLC (3451); Lear Canada (5059); Lear Canada Investments Ltd. (a non-U.S. Reorganized Debtor that does not maintain a U.S. Federal tax identification number); Lear Corporation (Germany) Ltd. (6716); Lear Corporation Canada Ltd. (a non-U.S. Reorganized Debtor that does not maintain a U.S. Federal tax identification number); Lear Corporation EEDS and Interiors (6360); Lear Corporation Global Development, Inc. (3121); Lear EEDS Holdings, LLC (4474); Lear European Operations Corporation (8411); Lear Holdings, LLC (4476); Lear Investments Company, LLC (8771); Lear Mexican Holdings Corporation (7829); Lear Mexican Holdings, LLC (4476); Lear Mexican Seating Corporation (4599); Lear Operations Corporation (5872); Lear Seating Holdings Corp. #50 (9055); Lear South Africa Limited (a non-U.S. Reorganized Debtor that does not maintain a U.S. Federal tax identification number); Lear South American Holdings Corporation (1365); Lear Trim L.P. (8386); and Renosol Seating, LLC (4745).  The location of the Reorganized Debtors' corporate headquarters and the service address for all of the Reorganized Debtors is:  21557 Telegraph Road, Southfield, Michigan 48033.

Alexander Hamilton Custom House, One Bowling Green, Room 617, New York, New York 10004, on **May 27, 2014 at 10:00 a.m. (Eastern Daylight Time)**.

**PLEASE TAKE FURTHER NOTICE** that any **responses or objections to the relief requested in the Motion** must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York and shall be filed with the Court electronically by registered users of the Court's case filing system (the User's Manual for the Electronic Case Filing System can be found at www.nysb.uscourts.gov, the official website for the Court) and by all other parties in interest, on a 3.5-inch disk, in text-searchable Portable Document Format (PDF), Wordperfect or any other Windows-based word processing format (in either case, with a hard copy marked "Chambers Copy" and delivered directly to the Court) and shall be served so as to be actually received by no later than **May 14, 2014 at 4:00 p.m. (Eastern Daylight Time)** by the following parties:   (a) the above-captioned debtors and debtors in possession (collectively, the "**Reorganized Debtors**"), 21557 Telegraph Road, Southfield, Michigan 48033, Attn: Terrence B. Larkin; (b) the undersigned counsel to the Reorganized Debtors at the address set forth below; (c) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004, Attn: Paul K. Schwartzberg; (d) counsel to the agent for Reorganized Debtors' prepetition senior lenders and postpetition secured lenders, Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New York, New York 10017, Attn: Peter Pantaleo; (e) counsel to the ad hoc committee of the Reorganized Debtors' unsecured noteholders, Stroock & Stroock & Lavan LLP, 180 Maiden Lane, New York, New York 10038, Attn: Kristopher M. Hansen; (f) the Internal Revenue Service, 500 North Capitol Street NW, Washington, D.C. 20221; (g) State of Michigan

Department of Treasury, Lansing, Michigan, 48922, Attn: Mary Ann Nye; (h) State of Michigan

Department of Treasury, State Office Building, 411-I, East Genesee Street, Saginaw, Michigan,

48607, Attn: Kaye Zurek; (i) the Securities and Exchange Commission, 100 F Street NE,

Washington, D.C. 20549; (j) the Environmental Protection Agency, Ariel Rios Building,

1200 Pennsylvania Avenue NW, Washington, D.C. 20460; (k) the Pension Benefit Guaranty

Corporation, 1200 K Street NW, Washington, D.C. 20005; (l) each trustee for each of the

Reorganized Debtors' notes; (m) the attorneys general for each of the States in which the

Reorganized Debtors conduct operations; and (n) all entities that have filed a request for service

of filings in the above-captioned Chapter 11 Cases pursuant to Rule 2002 of the Federal Rules of

Bankruptcy Procedure. Only those responses that are timely filed, served and received will be

considered at the hearing. Failure to file a timely objection may result in entry of a final order

granting the Motion as requested by the Reorganized Debtors.

New York, New York
Dated: May 7, 2014

/s/ Ryan Blaine Bennett
Ryan Blaine Bennett (admitted *pro hac vice*)
Michael B. Slade (admitted *pro hac vice*)
Brad Weiland (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel to the Reorganized Debtors*

KE 28623866

**Hearing Date: May 27, 2014, 2014 at 10:00 a.m. (Eastern Daylight Time)**
**Objection Deadline: May 14, 2014, 2014 at 4:00 p.m. (Eastern Daylight Time)**

Ryan Blaine Bennett (admitted *pro hac vice*)
Michael B. Slade (admitted *pro hac vice*)
Brad Weiland (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois  60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel to the Reorganized Debtors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| LEAR CORPORATION, <u>et al.</u>,[1] | ) Case No. 09-14326 (ALG) |
| | ) |
| Reorganized Debtors. | ) Jointly Administered |
| | ) |

**REORGANIZED DEBTORS' MOTION FOR ENTRY OF**
**AN ORDER APPROVING DISTRIBUTIONS FROM STOCK AND WARRANT**
**RESERVE TO FACILITATE SETTLEMENT OF ANTITRUST ACTIONS**

Lear Corporation ("**Lear**") and certain of its affiliates, as reorganized debtors

(collectively with Lear, the "**Reorganized Debtors**"), file this motion (the "**Motion**") for

authorization to make distributions from the Disputed Claims Reserve (as defined below)

established to satisfy allowed Class 5A Claims (as defined below) in the above-captioned

---

[1]     The Reorganized Debtors in these Chapter 11 Cases, along with the last four digits of each U.S. Debtors'
federal tax identification number (if any), include: Lear Corporation (6776); Lear #50 Holdings, LLC (N/A);
Lear Argentine Holdings Corporation #2 (7832); Lear Automotive Dearborn, Inc. (4976); Lear Automotive
Manufacturing, LLC (3451); Lear Canada (5059); Lear Canada Investments Ltd. (a non-U.S. Debtor that does
not maintain a U.S. Federal tax identification number); Lear Corporation (Germany) Ltd. (6716); Lear
Corporation Canada Ltd. (a non-U.S. Debtor that does not maintain a U.S. Federal tax identification number);
Lear Corporation EEDS and Interiors (6360); Lear Corporation Global Development, Inc. (3121); Lear EEDS
Holdings, LLC (4474); Lear European Operations Corporation (8411); Lear Holdings, LLC (4476); Lear
Investments Company, LLC (8771); Lear Mexican Holdings Corporation (7829); Lear Mexican Holdings, LLC
(4476); Lear Mexican Seating Corporation (4599); Lear Operations Corporation (5872); Lear Seating Holdings
Corp. #50 (9055); Lear South Africa Limited (a non-U.S. Debtor that does not maintain a U.S. Federal tax
identification number); Lear South American Holdings Corporation (1365); Lear Trim L.P. (8386); and Renosol
Seating, LLC (4745).  The location of the Debtors' corporate headquarters and the service address for all of the
Debtors is: 21557 Telegraph Road, Southfield, Michigan 48033.

chapter 11 cases (collectively, the "**Chapter 11 Cases**"), to facilitate settlement of

Antitrust Actions[2] on the terms of settlements set forth in the agreements attached as

**Annexes 1–3** (collectively, the "**Settlement Agreements**"), together with any additional

future settlements of Antitrust Actions and related documents, pursuant to the order

attached as **Exhibit A** hereto (the "**Order**"), including use of the Disputed Claims

Reserve to satisfy other costs, including costs of professionals, incurred by the

Reorganized Debtors in connection with the Antitrust Actions and satisfy any additional

liabilities that might arise from the Reorganized Debtors' efforts to facilitate the MDL

Court's (as defined below) final approval of the settlements.  In support of the Motion, the

Reorganized Debtors respectfully state as follows.

## Jurisdiction

1.    The United States Bankruptcy Court for the Southern District of New York

(the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 as well as

pursuant to Article XI(4), (5), (7) and (10) of the *Debtor's First Amended Joint Plan of*

*Reorganization Under Chapter 11 of the Bankruptcy Code* (the "**Plan**").[3]  This matter is a core

proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.    Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[2]    The "**Antitrust Actions**" are those claims asserted or assertable against the Reorganized Debtors by plaintiffs (collectively with all past, present or future plaintiffs that have asserted or may assert similar claims, the "**Antitrust Plaintiffs**") in the three consolidated complaints currently pending, *see* Direct Purchaser Complaint, End Payor Complaint, and Auto Dealer Complaint (each as defined below), as well as any other (or identical) claims that may be or have been filed in similar actions or jurisdictions, *see, e.g., Class Action Complaint*, Master File No. 12-md-02311, Case No. 2:14-cv-10795 (E.D. Mich. Feb. 20, 2014) [Docket No. 1] (the "**Public Entity Complaint**"); *Sheridan Chevrolet Cadillac Ltd. v. Delphi Auto. PLC, et al.*, No. CV-12-446737700CP (Can. Ont. Super. Ct. Feb. 17, 2012); *Asselin v. Delphi Auto. LLP, et al.*, No. 200-06-000147-127 (Can. Que. Super. Ct. Apr. 30, 2012); *Ewert v. Delphi Auto. LLP, et al.*, No. S-132353 (Can. B.C. Sup. Ct. Apr. 9, 2013) (collectively, the "**Canadian Complaints**").  Those Antitrust Plaintiffs that are parties to the Settlement Agreements (as defined herein) shall be referred to as the "**Settling Plaintiffs**."

[3]    *See Findings of Fact, Conclusions of Law and Order Confirming Debtors' First Amended Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code*, Ex. A [Docket No. 1070].

2

3.      The statutory bases for the relief requested herein are section 363 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

**Preliminary Statement**

4.      Lear and the Settling Plaintiffs have entered into settlement agreements regarding certain of the Antitrust Actions.   Final approval of the settlements by the applicable non-bankruptcy courts would result in the dismissal of Lear and the Reorganized Debtors from these significant cases and bring to an end over two years of contested litigation before this Court. Lear and the Settling Plaintiffs negotiated extensively regarding the terms of the Settlement Agreements, and the Reorganized Debtors believe that they are in the best interests of the Lear estate and the estates of all of the Debtors.

5.      The Settlement Agreements give the Settling Plaintiffs a deemed allowed general unsecured claim against the Lear estate on account of alleged prepetition liabilities and contemplate distributions to the Settling Plaintiffs of Lear common stock and warrants from the Disputed Claims Reserve, consistent with the Plan (as defined below).   The Reorganized Debtors' settlement of the alleged claims (and attendant distributions from the Disputed Claims Reserve) is permitted under the terms of the Plan and in the best interests of the Lear estate.

6.      Absent entry into the Settlement Agreements, the Reorganized Debtors could face both significant potential antitrust liability under the theory of joint and several liability and years of continued litigation across multiple venues including this Court, the district courts (including substantial time and expense related to discovery), and the courts of appeal. Moreover, the Settlement Agreements should help to facilitate the Reorganized Debtors' finalization of the claims pool and an eventual final distribution to creditors other than the Antitrust Plaintiffs.   In light of the significant benefits offered by the Settlement Agreements and

3

the uncertain risks posed by continuing the contested matters pending before this and the MDL Court (as defined below), the Reorganized Debtors respectfully request that the Court enter the Order authorizing the transactions contemplated therein.

### Procedural History

7.    The Reorganized Debtors are leading global suppliers of automotive seating systems and electrical systems.  The Reorganized Debtors maintain their global headquarters in Southfield, Michigan, and employ over 122,000 workers worldwide, including approximately 9,200 employees in the United States and Canada, as of December 2013.[4]  Among other things, the Reorganized Debtors manufacture wire harness systems for automobiles ("**Automotive Wire Harness Systems**"), which are part of the electrical distribution systems used to control electronic components, wiring, and circuit boards.[5]

8.    On July 7, 2009 (the "**Petition Date**"), the Reorganized Debtors commenced these Chapter 11 Cases.  On September 18, 2009, the Debtors filed the Plan, which provided for, among other things, a customary injunction pursuant to 11 U.S.C. § 1141, *see* Plan Art. IX, as well as establishment of a reserve of Lear common stock and warrants (the "**Disputed Claims Reserve**") to settle "claims" (as defined in section 101(5) of the Bankruptcy Code) against the Reorganized Debtors that remained disputed, unliquidated or contingent as of the date of this Court's approval of the Plan.  *See* Plan Art. VI.B.3.  The Plan also provided the Reorganized Debtors broad authority to settle disputed claims.  *See* Plan Art. VII.B.  The Plan was overwhelmingly accepted by each class of creditors entitled to vote.[6]  On November 5, 2009, the

---

[4]    *See* Lear Corporation, Annual Report (Form 10-K), at 12 (Feb. 11, 2014).

[5]    *See Declaration of Shari L. Burgess of Lear Corporation (I) in Support of Debtors' Chapter 11 Petitions and First Day Motions and (II) Pursuant to Local Bankruptcy Rule 1007-2* [Docket No. 32].

[6]    *See Certification of Alison M. Tearnen Pursuant to Local Bankruptcy Rule 3018-1(a) with Respect to the Tabulation of Votes on the Debtors' First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. 994].

4

Court entered its *Findings of Fact, Conclusions of Law and Order Confirming Debtors' First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. 1070] (the "**Confirmation Order**"), and the Plan became effective on November 9, 2009 (the "**Effective Date**").

9.      Beginning on October 5, 2011, the Settling Plaintiffs commenced putative class actions in the United States District Court for the Eastern District of Michigan (the "**MDL Court**") against a number of Automotive Wire Harness System manufacturers, including Lear (collectively, the "**Antitrust Defendants**").[7]  The complaints allege, among other things, that the Antitrust Defendants conspired, during the period of January 2000 through at least February 2010, to fix the prices of Automotive Wire Harness Systems in violation of state and federal antitrust law.  The Settling Plaintiffs are seeking to recover damages purportedly arising and continuing from January 2000, as well as injunctive relief.

10.      On November 17, 2011, the Reorganized Debtors filed a *Motion for Entry of an Order (A) Enforcing Chapter 11 Plan Discharge and Injunction and (B) Directing Dismissal of Pending Litigation* [Docket No. 1660], asking the Court to enforce the discharge and injunction in the Confirmation Order and section 1141 to bar the Antitrust Actions in their entirety.  In response, the Settling Plaintiffs asserted that the Reorganized Debtors should be held jointly and severally liable for damages caused during the entire alleged conspiracy.[8]  The Reorganized Debtors filed a reply contesting these allegations.[9]

---

[7]    *See Second Consolidated Amended Class Action Complaint*, Master File No. 12-md-02311, Case No. 2:12-cv-101 (E.D. Mich. June 20, 2013) [Docket No. 103] (the "**Direct Purchaser Complaint**"); *Corrected Third Amended Consolidated Class Action Complaint*, Master File No. 12-md-02311, Case No. 2:12-cv-103 (E.D. Mich. Apr. 10, 2014) [Docket No. 192] (the "**End Payor Complaint**"); *Dealership Second Consolidated Class Action Complaint*, Master File No. 12-md-02311, Case No. 2:12-cv-102 (E.D. Mich. Jul. 17, 2013) [Docket No. 125] (the "**Auto Dealer Complaint**").

[8]    *See Plaintiffs' Joint Response in Opposition to Debtor's Motion for Entry of an Order A) Enforcing Chapter 11 Plan of Discharge and Injunction and B) Directing Dismissal of Pending Litigation* [Docket No. 1665] at 2–3.  *See also Declaration of Bernard Persky in Support of Plaintiffs' Joint Response in*

5

11.    The Court issued a memorandum opinion [Docket No. 1676] on February 10, 2012 (the "**Memorandum Opinion**") and an *Order Granting in Part and Denying in Part Debtors' Motion for Entry of an Order (A) Enforcing Chapter 11 Plan Discharge and Injunction and (B) Directing Dismissal of Pending Litigation* [Docket No. 1686] (the "**Discharge Order**") on March 12, 2012.

12.    The Reorganized Debtors appealed a portion of the Memorandum Opinion to the United States District Court for the Southern District of New York (the "**District Court**"),[10] and on November 5, 2012, the proceedings were remanded to this Court.  Since that time, the parties engaged in settlement discussions.  No opinion or order has been entered by this Court in those proceedings.

## Relief Requested

13.    By this Motion, the Reorganized Debtors request entry of the Order authorizing the terms of the Settlement Agreements and the use of Lear common stock and warrants from the Disputed Claims Reserve to finally and conclusively facilitate settlement of the Antitrust Actions with respect to the Reorganized Debtors, including satisfaction of professional fees incurred by the Reorganized Debtors in connection with the Antitrust Actions and any additional liabilities that might arise from efforts to facilitate the final approval of any applicable settlements.

---

*Opposition to Debtor's Motion for Entry of an Order (A) Enforcing Chapter 11 Plan of Discharge and Injunction and (B) Directing Dismissal of Pending Litigation* [Docket No. 1666].

[9]    *See Reorganized Debtors' Reply to Antitrust Plaintiffs' Response to Motion Seeking Enforcement of Plan Discharge and Injunction* [Docket No. 1668].

[10]    *See Reorganized Debtors' Notice of Appeal* [Docket No. 1678]; *Reorganized Debtors' Designation of Record and Statement of Issues on Appeal* [Docket No. 1687]; *Plaintiffs' Designation of Additional Items to be Included in the Record* [Docket No. 1691]; *Declaration of Bernard Persky in Support of Plaintiffs' Designation of Additional Items to be Included in the Record* [Docket No. 1692].

KE 28623866

## **Terms of the Settlement**

14.    The Settlement Agreements are substantially similar in form and provide for the

complete settlement of the applicable Antitrust Actions with respect to the Reorganized Debtors

on, among others, the following terms:

- ***MDL Court Motion for Preliminary Approval.***  Within 20 days of entry of the Order (and it having become final and non-appealable), the Settling Plaintiffs will submit motions for preliminary approval to the MDL Court, as well as a preliminary stay of all proceedings against Lear in that court (*see* Settlement Agreements § 4).

- ***Class Notice Requirements.***  The Settling Plaintiffs will undertake fulfillment of the notice requirements contemplated by Rule 23 of the Federal Rules of Civil Procedure and the MDL Court's anticipated order preliminary approving the Settlement Agreements (*see* Settlement Agreements § 5).

- ***MDL Court Motion for Final Approval and Dismissal.***  Following the notice period, the Settling Plaintiffs will file motions for final approval of the Settlement Agreements and seek entry of orders, among other things, certifying the classes, fully and finally approving the Settlement Agreements, directing dismissal of the applicable Antitrust Actions with prejudice against Lear, and approving the discharges and releases contemplated in the Settlement Agreements (*see* Settlement Agreements § 6).

- ***Cash Component of Settlement.***  Lear shall make cash payments to facilitate settlement of those claims asserted by the Settling Plaintiffs relating to the period subsequent to the Petition Date (*see* Settlement Agreements § 7(a)).

- ***Deemed Allowed Claim.***  On account of those claims asserted by the Settling Plaintiffs relating to the period prior to the Petition Date, the Settling Plaintiffs shall be deemed to hold an Allowed Other General Unsecured Claim (as defined in the Plan) in an amount such that, upon distribution on account of the claims, the Settling Plaintiffs shall receive Lear common stock and warrants with a market value in the aggregate of $8,379,737, measured using the approximate current closing trading price of Lear common stock as of the date of execution of the Settlement Agreements (*see* Settlement Agreements § 7(b)).

- ***Stock and Warrant Component of Settlement.***  In turn, Lear was required to cause a distribution of Lear common stock and warrants to be made from the Disputed Claims Reserve (*see* Settlement Agreements § 7(b)) to resolve the claims asserted by the Settling Plaintiffs relating to the period prior to the Petition Date.

- ***Conditions Precedent.***  Effectiveness of the Settlement Agreements (and Lear's obligations thereunder) are conditioned on, among other things, this Court's entry of the Order and that Order becoming final and non-appealable (*see* Settlement Agreements § 3).

7

- **_Release._**  The Settling Plaintiffs and class members, as well as various related parties, shall provide a general release to the Reorganized Debtors and various related parties of all liability arising in connection Lear's activities with respect to Automotive Wire Harness Systems and for any conduct relating in any way to conduct alleged in the applicable Antitrust Actions (_see_ Settlement Agreements § 18).

- **_Reservation of Rights._**  All parties reserve their rights, including with respect to proceedings before this Court, to the extent the required approvals are not met or required conditions not fulfilled (_see_ Settlement Agreements § 20).

### Basis for Relief

15.    In the interest of providing assurance to the MDL Court of the Reorganized Debtors' authority to consummate the transactions contemplated by the Settlement Agreements and potential future settlements and to maximize notice to creditors still holding Claims against the Lear estate, the Reorganized Debtors seek formal authorization to make distributions from the Disputed Claims Reserve, including under the Settlement Agreements, to obtain finality with respect to their alleged potential liability in the Antitrust Actions and to satisfy professional fees that have been or will be incurred by the Reorganized Debtors in connection with the Antitrust Actions.

**I.    The Plan and Bankruptcy Code and Rules Authorize Consummation of the Settlement Agreements.**

16.    Article VII.B of the Plan provides, in relevant part:

> [T]he Reorganized Debtors, after the Effective Date, shall have the sole authority: (1) to File, withdraw or litigate to judgment, objections to Claims or Interests; (2) to settle or compromise any Disputed Claim without any further notice to or action, order or approval by the Bankruptcy Court; and (3) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order or approval by the Bankruptcy Court.

Plan Art VII.B.

KE 28623866

17.    Article VI.B.3 of the Plan established the Disputed Claims Reserve "to pay Holders of **Disputed Claims** that are **Other General Unsecured Claims** that become Allowed Claims pursuant to the terms of the Plan." *See* Plan Art. VI.B.3 (emphasis added).

18.    The Antitrust Plaintiffs' asserted claims are unsecured and not held by the Reorganized Debtors' ongoing suppliers and other commercial counterparties. Thus, they fall squarely within the definition of "Other General Unsecured Claims." *See* Plan Art. I.B.114.

19.    The Plan defines "Disputed Claim" broadly to encompass the claims asserted by the Antitrust Plaintiffs against the Reorganized Debtors in the Antitrust Actions. Specifically, Article I.B.64 defines "Disputed Claim" as "with respect to any Claim or Interest, any Claim or Interest that is not yet Allowed." Plan Art. I.B.64. "Claim" is, in turn, defined by reference to section 101(5) of the Bankruptcy Code, *see* Plan Art. I.B.35, while "Allowed" is defined to include "any Claim allowed pursuant to . . . a Final Order of the Bankruptcy Court." *See* Plan Art. I.B.14.

20.    The Settlement Agreements provide that the Settling Plaintiffs shall have allowed unsecured claims without the need to file a formal proof of claim in these Chapter 11 Cases (*see* § 7.b). The Reorganized Debtors are asking this Court to approve their consummation of the transactions contemplated in the Settlement Agreements, including allowing the Settling Plaintiffs' claim against the estate on those terms. Accordingly, subsequent to this Court's entry of the Order, the Settling Plaintiffs will hold a "Disputed Claim" that the Reorganized Debtors are authorized to settle pursuant to the terms of the Plan through use of the Disputed Claims Reserve.

21.    Finally, although the Debtors believe that the Plan provides more than sufficient authority to settle the Antitrust Actions in a manner consistent with the terms of the Settlement

9

Agreements and the terms of any future settlement agreements, to the extent the transactions contemplated therein should be deemed to fall outside the Reorganized Debtors' ordinary course of business, the Reorganized Debtors believe that those transactions are authorized by the Bankruptcy Code and Rules.

22.    A court may authorize a debtor to enter into a settlement and use property of the estate outside the ordinary course of business so long as such actions fall within the debtor's business judgment.  *See* 11 U.S.C. § 363(b)(1).[11]  In addition, Bankruptcy Rule 9019(a) permits a bankruptcy court to approve a "compromise or settlement" after notice and a hearing, *see* Fed. R. Bankr. P. 9019(a), if the settlement is beneficial and supported by reasonable business judgment, the likelihood of complex and protracted litigation is high, the settlement serves creditors' interests, other parties in interest support the settlement, any releases to be obtained by directors and officers are reasonable, counsel supporting the settlement is competent and experienced and the settlement is the product of arm's length bargaining.  *See In re Iridium Operating LLC*, 478 F.3d 452, 462 (2d Cir. 2007); *see also Drexel Burnham Lambert Grp. Inc.*, 960 F.2d 285, 292 (2d Cir. 1992); *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 428 (S.D.N.Y. 1993).

23.    Here, the Settlement Agreements are the product of extensive good faith, arm's-length negotiations between the Settling Plaintiffs and the Reorganized Debtors, each having been represented by competent and experienced legal counsel, and are a sound exercise of the Reorganized Debtors' business judgment.  The terms of the Settlement Agreements are equitable and consummation of the transactions contemplated in the Settlement Agreements is in the best

---

[11]  *See also In re Global Crossing Ltd.*, 295 B.R. 726, 743 (Bankr. S.D.N.Y. 2003); *Official Comm. of Unsecured Creditors v. LTV Corp.* (*In re Chateaugay Corp.*), 973 F.2d 141, 143 (2d Cir. 1992); *Comm. of Equity Sec. Holders v. Lionel Corp.* (*In re Lionel Corp.*), 722 F.2d 1063, 1070 (2d Cir. 1983); *In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989).

interests of the estate.  The Settlement Agreements bring to conclusion over two years of costly litigation between the Settling Plaintiffs and the Reorganized Debtors and secure for the Reorganized Debtors a valuable release of claims against the estate.  If the Settlement Agreements were not consummated, the parties likely would face additional years of costly litigation, along with the associated burden of significant discovery, both before this Court and the MDL Court, as well as, potentially, multiple appellate courts.  In addition, the Reorganized Debtors and the estate could face considerable liability, under principles of joint and several liability, were they to be unsuccessful in their defense of these cases.  The Reorganized Debtors believe that all parties to the Settlement Agreements have made considerable concessions and that the Settlement Agreements represent the most cost-efficient and expeditious means of bringing conclusion to this costly and prolonged litigation.

24.    In addition, the Reorganized Debtors believe that no stakeholders in the Chapter 11 Cases or any other third parties will be harmed by the distributions contemplated by the Settlement Agreements or by potential future distributions.  In fact, stakeholders will benefit from the Reorganized Debtors' resolution of the Antitrust Actions, as this addresses an important remaining contingency regarding the Reorganized Debtors' chapter 11 restructuring and marks an important step toward finally closing the Chapter 11 Cases and an eventual final distribution to creditors.  By contrast, if the Settlement Agreements were not consummated, the Reorganized Debtors and their stakeholders would have to continue to contend with uncertainty regarding the Antitrust Actions (and any claims arising therefrom)—including the risk that the Settling Plaintiffs could obtain a judgment that would dilute existing or future distributions. Accordingly, the Reorganized Debtors believe that remaining claimants benefit from consummation of the Settlement Agreements.

11

## Motion Practice

25.     This Motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated and a discussion of their application to this Motion.  Accordingly, the Reorganized Debtors submit that this Motion satisfies rule 9013-1(a) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Southern District of New York.

## Notice

26.     Notice of this Motion has been given to (a) the United States Trustee for the Southern District of New York; (b) the Committee; (c) counsel to the Reorganized Debtors' prepetition secured lenders; (d) counsel to the ad hoc committee of the Reorganized Debtors' unsecured noteholders; (e) the indenture trustees pursuant to the Debtors' secured indentures; (f) counsel to the Reorganized Debtors' postpetition lenders; (g) the Securities and Exchange Commission; (h) the Internal Revenue Service; (i) the State of Michigan Department of Treasury (j) the United States Department of Justice; (k) the Environmental Protection Agency; (l) the Pension Benefit Guaranty Corporation; (m) the attorneys general for each of the States in which the Reorganized Debtors conduct operations; (n) all creditors and parties in interest to the Chapter 11 Cases; and (o) all parties entitled to notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested, the Debtors submit that no further notice is required.

## No Prior Request

27.     No prior request for the relief requested herein has been made to this or any other court.

WHEREFORE, the Reorganized Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and granting such other and further relief as the Court deems appropriate.

New York, New York
Dated:  May 7, 2014

/s/ Ryan Blaine Bennett
Ryan Blaine Bennett (admitted *pro hac vice*)
Michael B. Slade (admitted *pro hac vice*)
Brad Weiland (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois  60654
Telephone:    (312) 862-2000
Facsimile:     (312) 862-2200

*Counsel to the Reorganized Debtors*

13

**<u>Exhibit A</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| LEAR CORPORATION, et al.,[1] | ) Case No. 09-14326 (ALG) |
| | ) |
| Reorganized Debtors. | ) Jointly Administered |
| | ) |

## ORDER APPROVING DISTRIBUTIONS FROM STOCK AND WARRANT RESERVE TO FACILITATE SETTLEMENT OF ANTITRUST ACTIONS

Upon the motion (the "**Motion**")[2] of the above-captioned reorganized debtors (collectively, the "**Reorganized Debtors**") in the above-captioned chapter 11 cases (collectively, the "**Chapter 11 Cases**") for authorization to settle certain pending Antitrust Actions[3] on the terms of settlement set forth in the agreements attached as **Annexes 1–3** hereto, and approval of the use of the reserve of Lear Corporation common stock and warrants established to satisfy allowed disputed claims against the estate to facilitate such

---

[1] The Reorganized Debtors in these Chapter 11 Cases, along with the last four digits of each U.S. Reorganized Debtors' federal tax identification number (if any), include: Lear Corporation (6776); Lear #50 Holdings, LLC (N/A); Lear Argentine Holdings Corporation #2 (7832); Lear Automotive Dearborn, Inc. (4976); Lear Automotive Manufacturing, LLC (3451); Lear Canada (5059); Lear Canada Investments Ltd. (a non-U.S. Reorganized Debtor that does not maintain a U.S. Federal tax identification number); Lear Corporation (Germany) Ltd. (6716); Lear Corporation Canada Ltd. (a non-U.S. Reorganized Debtor that does not maintain a U.S. Federal tax identification number); Lear Corporation EEDS and Interiors (6360); Lear Corporation Global Development, Inc. (3121); Lear EEDS Holdings, LLC (4474); Lear European Operations Corporation (8411); Lear Holdings, LLC (4476); Lear Investments Company, LLC (8771); Lear Mexican Holdings Corporation (7829); Lear Mexican Holdings, LLC (4476); Lear Mexican Seating Corporation (4599); Lear Operations Corporation (5872); Lear Seating Holdings Corp. #50 (9055); Lear South Africa Limited (a non-U.S. Reorganized Debtor that does not maintain a U.S. Federal tax identification number); Lear South American Holdings Corporation (1365); Lear Trim L.P. (8386); and Renosol Seating, LLC (4745). The location of the Reorganized Debtors' corporate headquarters and the service address for all of the Reorganized Debtors is: 21557 Telegraph Road, Southfield, Michigan 48033.

[2] Capitalized terms used but not defined herein shall have the meaning set forth in the Motion.

[3] The "**Antitrust Actions**" are those claims asserted or assertable against the Reorganized Debtors by plaintiffs (collectively with all past, present or future plaintiffs that have asserted or may assert similar claims, the "**Antitrust Plaintiffs**") in the three consolidated complaints currently pending, *see* Direct Purchaser Complaint, End Payor Complaint, and Auto Dealer Complaint, as well as any other (or identical) claims that may be or have been filed in similar actions or jurisdictions, *see, e.g.*, Public Entity Complaint, Canadian Complaints. Those Antitrust Plaintiffs that are parties to the Settlement Agreements (as defined herein) shall be referred to as the "**Settling Plaintiffs**."

settlement and other future settlements; the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); venue being proper in this District and before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; service and notice of the Motion having been adequate and appropriate under the circumstances and no other or further notice being required; and after due deliberation and sufficient cause appearing therefor; for the reasons set forth in the Motion, the Court hereby orders:

1.      The Motion is granted.

2.      The Reorganized Debtors' settlement of the Antitrust Actions is authorized.

3.      The Reorganized Debtors' use of the Disputed Claims Reserve to facilitate settlement of the Antitrust Actions and to and satisfy other costs, including professionals costs that have been or will be incurred by the Reorganized Debtors in connection with the Reorganized Debtors defense and settlement of the Antitrust Actions, is authorized.

4.      The Settling Plaintiffs and any future settling plaintiffs in any of the Antitrust Actions shall have an Allowed Other General Unsecured Claim (as defined in the Plan) in the amount set forth in the respective Settlement Agreements or future settlement agreements, but subject to all terms and conditions set forth therein, including, without limiting the generality of the foregoing, section 20 of the respective Settlement Agreements.

5.      The Reorganized Debtors are authorized to take all actions necessary to effectuate this Order and the Settlement Agreements.

KE 28623866

6.       Notwithstanding the possible applicability of Fed. R. Bankr. P. 6004(g), 7062, 9014, or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

Date: _____, 2014
      New York, New York                   _____
                                United States Bankruptcy Judge

KE 28623866

**<u>Annex 1</u>**

**Direct Purchaser Settlement Agreement**

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

_____     :
                                      :
In Re:  AUTOMOTIVE PARTS              :
ANTITRUST LITIGATION                  :
_____     :
                                      :     **12-MD-02311**
In Re: WIRE HARNESS CASES             :     **Honorable Marianne O. Battani**
_____     :
                                      :
THIS RELATES TO:                      :
ALL DIRECT PURCHASER CASES            :     **W:12-cv-00101-MOB-MKM**
_____     :

## SETTLEMENT AGREEMENT BETWEEN THE DIRECT PURCHASER PLAINTIFF CLASS AND DEFENDANT LEAR CORPORATION

This Settlement Agreement is made and entered into as of the 5th day of May, 2014, by and between defendant Lear Corporation ("Lear") and the Direct Purchaser Plaintiffs (defined herein) in the above-captioned action, a multidistrict consolidated class action, and each action brought individually and on behalf of a class of direct purchasers of Wire Harness Products (defined herein) consolidated therein, including, without limitation, the actions set forth on **Exhibit A** hereto.

WHEREAS, the plaintiffs have alleged that Lear participated in a conspiracy with other manufacturers of Wire Harness Products to rig bids for, and to raise, fix, maintain, or stabilize the prices of, Wire Harness Products sold in the United States from at least as early as January 1, 2000, until at least February 28, 2010, in violation of the antitrust laws of the United States;

WHEREAS, Lear denies the allegations in plaintiffs' complaints, has asserted affirmative defenses against the claims alleged in the Actions (defined herein), and denies any liability whatsoever;

WHEREAS, Lear represents that it never received a subpoena in connection with the Department of Justice's recent investigation into automotive wire harness collusion, never was

identified as the subject or target of any such investigation, never pled guilty to any crime, and never was named or implicated by the guilty pleas entered by other defendants;

WHEREAS, in November 2011, Lear moved the Bankruptcy Court (defined herein) for entry of an order enforcing the discharge and injunction entered in connection with the Bankruptcy Court's confirmation of Lear's reorganization Plan (defined herein), which would have the effect of barring the Actions in whole or substantial part;

WHEREAS, that motion has been briefed, argued, and is pending before the Bankruptcy Court;

WHEREAS, Direct Purchaser Plaintiffs, on behalf of themselves and the Settlement Class Members (defined herein), and Lear agree that this Settlement Agreement shall not be deemed or construed to be an admission or evidence of the truth of any of plaintiffs' claims or allegations in the Actions;

WHEREAS, arm's-length settlement negotiations have taken place between Class Plaintiffs' Co-Lead Counsel (defined herein) and Lear, and this Settlement Agreement, including its exhibits, embodies all of the terms and conditions of the good-faith settlement between Lear and Direct Purchaser Plaintiffs, both individually and on behalf of the Settlement Class Members, and has been reached as a result of the parties' negotiations, subject to approval of the Court (defined herein) as provided herein;

WHEREAS, the parties recognize that because of joint and several liability, the Settlement Agreement with Lear does not impair Direct Purchaser Plaintiffs' ability to collect the full amount of damages to which they and the Settlement Class claim entitlement in these Actions;

WHEREAS, Class Plaintiffs' Co-Lead Counsel (defined herein) have concluded, after due investigation and after carefully considering the relevant circumstances, including, without limitation, the claims asserted in the complaints filed in the Actions, the legal and factual defenses thereto, and the applicable law, that it would be in the best interests of the Settlement

Class (defined herein) to enter into this Settlement Agreement in order to avoid the uncertainties of litigation and to assure that the benefits reflected herein are obtained for the Settlement Class and, further, that Class Plaintiffs' Co-Lead Counsel consider the settlement set forth herein to be fair, reasonable, adequate, and in the best interests of the Settlement Class; and

WHEREAS, Lear has agreed to enter into this Settlement Agreement in order to avoid the expenses, risk, and burden of further litigation, to obtain the releases, orders, and judgment contemplated by this Settlement Agreement, and to put to rest with finality all claims that have been or could have been asserted against Lear based on the allegations in plaintiffs' complaints;

NOW, THEREFORE, in consideration of the agreements herein set forth, it is agreed by and among the undersigned that the claims of the Direct Purchaser Plaintiffs and the Settlement Class Members be settled, compromised, and dismissed on the merits and with prejudice as to Lear and all other Released Parties (defined herein) and, except as hereafter provided, without costs against the Settlement Class or Lear, subject to the approval of the Court, on the following terms and conditions:

1.    <u>Definitions.</u>

The following capitalized terms, as used in this Settlement Agreement, have the following meanings:

a.    "*Actions*" means the direct purchaser antitrust class actions consolidated under the caption *In re Automotive Parts Antitrust Litigation, Wire Harness Cases,* Master Case No. 12-cv-00101 (MOB), currently pending in the United States District Court for the Eastern District of Michigan, Southern Division.

b.    "*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of New York.

c.    "*Bankruptcy Reserve*" means the assets held in reserve pursuant to Article VI.B.3 of the Plan on account of disputed claims against the Debtors that became or become "Allowed Claims" (as defined in the Plan) subsequent to the Plan Effective Date.

3

d.    "*Bankruptcy Reserve Settlement Proceeds*" means New Common Stock and Other General Unsecured Claims Warrants with a market value, in the aggregate, of four million, five hundred forty-nine thousand US Dollars ($4,549,000 USD), measured using the closing trading price of New Common Stock on the Execution Date to be paid as set forth in paragraph 7 herein and as may be adjusted as set forth in paragraph 8 herein.

e.    "*Class Plaintiffs' Co-Lead Counsel*" means the law firms of Freed Kanner London & Millen LLC, 2201 Waukegan Road, Suite 130, Bannockburn, IL 60015; Kohn, Swift & Graf, P.C., One South Broad Street, Suite 2100, Philadelphia, PA 19107; Preti, Flaherty, Beliveau & Pachios, LLP, One City Center, Portland, ME 04101; and Spector Roseman Kodroff & Willis, P.C., 1818 Market Street, Suite 2500, Philadelphia, PA 19103.

f.    "*Court*" means the United States District Court for the Eastern District of Michigan where the Actions are pending.

g.    "*Debtors*" shall mean, collectively, Lear Corporation; Lear #50 Holdings, LLC; Lear Argentine Holdings Corporation #2; Lear Automotive Dearborn, Inc.; Lear Automotive Manufacturing, LLC; Lear Canada; Lear Canada Investments Ltd.; Lear Corporation (Germany) Ltd.; Lear Corporation Canada Ltd.; Lear Corporation EEDS and Interiors; Lear Corporation Global Development, Inc.; Lear EEDS Holdings, LLC; Lear European Operations Corporation; Lear Holdings, LLC; Lear Investments Company, LLC; Lear Mexican Holdings Corporation; Lear Mexican Holdings, LLC; Lear Mexican Seating Corporation; Lear Operations Corporation; Lear Seating Holdings Corp. #50; Lear South Africa Limited; Lear South American Holdings Corporation; Lear Trim L.P.; and Renosol Seating, LLC.

h.    "*Defendant*" means, for purposes of this Settlement Agreement only, any one or more of the following: Denso Corporation; Denso International America, Inc.; Fujikura Ltd.; Fujikura Automotive America LLC; Furukawa Electric Co., Ltd.; American Furukawa, Inc.; Furukawa Wiring Systems America, Inc**.** f/k/a Furukawa Lear Corporation and Lear Furukawa Corporation; G.S. Electech, Inc.; G.S. Wiring Systems Inc.; G.S.W. Manufacturing,

4

Inc.; Lear Corporation; Sumitomo Electric Industries, Ltd.; Sumitomo Wiring Systems, Ltd.; Sumitomo Electric Wiring Systems, Inc.; K&S Wiring Systems, Inc.; Sumitomo Wiring Systems (U.S.A.); Yazaki Corporation; Yazaki North America, Inc.; Tokai Rika Co., Ltd.; and TRAM, Inc.

i.      "*Direct Purchaser Plaintiffs*" means Mexican Industries in Michigan, Inc. by and through Timothy Miller, its Trustee in Bankruptcy; Paesano Connecting Systems, Inc.; Craft-Co Enterprises, Inc.; Findlay Industries, Inc.; Cesar-Scott, Inc.; Martinez Manufacturing, Inc.; and South Star Corporation.

j.      "*Document*" is defined to be synonymous in meaning and equal in scope to the usage of this term in Fed. R. Civ. P. 34(a), including, without limitation, electronic or computerized data compilations.  A draft or non-identical copy is a separate document within the meaning of this term.

k.      "*Effective Date*" means the date on which Final Approval of this settlement has been obtained.

l.      "*Escrow Account*" means the account or accounts meeting the requirements of Treas. Reg. § 1.468B-1(c)(3) to be established by Class Plaintiffs' Co-Lead Counsel for receipt of the Settlement Amount to be paid by Lear pursuant to this Settlement Agreement.

m.      "*Escrow Agent*" means the escrow agent responsible for administering the Escrow Account.

n.      "*Execution Date*" means the date first appearing above.

o.      "*Final Approval*" means the first date upon which all of the following three conditions shall have been satisfied:

    i.   This settlement has been approved in all respects by the Court as required by Rule 23(e) of the Federal Rules of Civil Procedure;

    ii.  Entry has been made, as provided in paragraph 6 hereof, of the final judgment of dismissal in the form of **Exhibit B** hereto; and

      iii.  Either (a) the time to appeal, or to seek permission to appeal, the Court's approval of the settlement as described in (i) hereof and entry of final judgment as described in (ii) hereof has expired with no appeal having been taken or permission to appeal having been sought; or (b) such approval and final judgment have been affirmed in their entirety by the court of last resort to which any appeal has been taken or petition for review has been presented, and such affirmance has become no longer subject to the possibility of further appeal or review.  It is agreed that in determining the times for appeal, further appeal, or review, the provisions of Fed. R. Civ. P. 60 and of the All Writs Act, 28 U.S.C. § 1651, shall not be taken into account.

p.     *"Final Bankruptcy Order"* shall mean a Final Order authorizing and approving Lear's distribution of assets as contemplated in this Settlement Agreement in an amount equivalent to the Bankruptcy Reserve Settlement Proceeds from the Bankruptcy Reserve to the Escrow Account for the purpose of settling the Actions pursuant to the terms of this Settlement Agreement.

q.     *"Final Order"* shall mean an order or judgment of a court of competent jurisdiction with respect to the subject matter, which has not been reversed, stayed, modified, or amended, and as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or has otherwise been dismissed with prejudice.

r.     *"Liquidation Date"* shall mean the date on which the Direct Purchaser Plaintiffs liquidate or cause liquidation of the Bankruptcy Reserve Settlement Proceeds.

s.     *"Motion"* as used in paragraph 4 herein means a motion for preliminary approval of the settlement and final judgment contemplated by this Settlement Agreement and

for a stay of all proceedings in the Actions against Lear until the Court renders a final decision regarding the approval of the settlement and, if it approves the settlement, enters the final judgment.

t.      "*Notice Costs*" means the fees and costs necessary to provide notice of the settlement to Settlement Class members.

u.      "*Plaintiffs' Counsel*" means those attorneys or law firms retained as counsel for any of the plaintiffs in any of the Actions.

v.      "*Plan*" means, collectively, (a) the Debtors' joint plan of reorganization under chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101-1531, either in its present form, or as it may be altered, amended, modified, or supplemented from time to time in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure or the terms thereof, and (b) the supplements to the Plan filed with the Bankruptcy Court in conjunction with the Plan, and which were incorporated therein by reference.

w.      "*Plan Effective Date*" means November 9, 2009.

x.      "*Released Claims*" shall have the meaning set forth in paragraphs 18 and 19 hereof.

y.      "*Released Parties*" shall refer jointly and severally, individually and collectively to Lear Corporation; the Debtors; the present and former direct and indirect parents, subsidiaries, divisions, affiliates, or associates (as defined in SEC Rule 12b-2 promulgated pursuant to the Securities Exchange Act of 1934 and including, without limitation, Kyungshin-Lear Sales & Engineering, LLC ("Kyungshin-Lear")), of any of the foregoing; the present and former officers, directors, employees, agents, attorneys, servants, representatives, non-Defendant stockholders other than Lear, members, managers, and partners of any of the above entities (with respect to any conduct of any of the above entities, except that Furukawa Electric Co., Ltd., American Furukawa, Inc., Furukawa Wiring Systems America, Inc., Lear Furukawa Corporation, Furukawa Lear Corporation, and Furukawa Automotive Systems Inc. are not

Released Parties); and the predecessors, heirs, executors, administrators, successors, and assigns of any of the above persons or entities.

z.    "*Releasing Parties*" shall refer jointly and severally, individually and collectively to Direct Purchaser Plaintiffs and the Settlement Class Members, as well as each of their past and present officers, directors, members, managers, agents, employees, legal representatives, trustees, parents, affiliates, heirs, executors, administrators, purchasers, predecessors, successors, and assigns (and the parents', subsidiaries', and affiliates' past and present officers, directors, agents, employees, legal representatives, trustees, parents, affiliates, heirs, executors, administrators, and purchasers) and officers, directors, agents, employees, legal representatives, trustees, parents, affiliates, heirs, executors, administrators, purchasers, predecessors, successors, and assigns of each of the foregoing.

aa.    "*Settlement Agreement*" means this agreement by and between Lear and Direct Purchaser Plaintiffs, both individually and on behalf of the Settlement Class Members.

bb.    "*Settlement Amount*" means a total, as of the Execution Date, of four million, seven hundred fifty thousand US Dollars ($4,750,000 USD) comprised of (1) a cash payment of two hundred one thousand US Dollars ($201,000 USD) and (2) the Bankruptcy Reserve Settlement Proceeds to be paid as set forth in paragraph 7 herein.

cc.    "*Settlement Class*" means all individuals and entities that purchased Wire Harness Products in the United States directly from one or more Defendants from January 1, 2000 through the Execution Date.

dd.    "*Settlement Class Member*" or "*Settlement Class Members*" means, individually or collectively, members of the Settlement Class who do not timely and validly request exclusion from the Settlement Class in accordance with paragraph 9 hereof.

ee.    "*Settlement Fund*" means the dollar amount of the Settlement Amount plus any interest earned thereon after payment thereof by Lear into the Escrow Account.

ff.      *"Settlement Hearing"* means the final approval hearing scheduled by the Court to consider the fairness, adequacy, and reasonableness of the proposed settlement.

gg.      *"Wire Harness Products"* for purposes of this Settlement Agreement only, has the same definition as set forth in the Direct Purchaser Plaintiffs' Second Consolidated Amended Class Action Complaint, Dkt. 103, filed June 20, 2013, specifically "wire harnesses and the following related products: automotive electrical wiring, lead wire assemblies, cable bond, automotive wiring connectors, automotive wiring terminals, high voltage wiring, electronic control units, fuse boxes, relay boxes, junction blocks, and power distributors used in motor vehicles" as well as speed sensor wire assemblies; provided, however, that for purposes of paragraphs 5 and 22 hereof, the term shall be limited to Wire Harness Products as and to the extent used by Lear in manufacturing its automotive wire harnesses.

2.      <u>Reasonable Best Efforts to Effectuate this Settlement</u>.  Class Plaintiffs' Co-Lead Counsel agree to recommend approval of this settlement by the Court and by Settlement Class Members without qualification or condition not set forth herein.  Class Plaintiffs' Co-Lead Counsel, Settlement Class Members, and counsel for Lear agree to undertake their reasonable best efforts, including, without limitation, all steps and efforts contemplated by this Settlement Agreement and any other steps and efforts that may become necessary by order of the Court or otherwise, to carry out the terms of this Settlement Agreement and to obtain Final Approval of this Settlement Agreement.  The Court's certification of the Settlement Class as provided herein is without prejudice to, or waiver of: (i) the rights of any non-settling Defendant to contest certification of any putative class proposed in the consolidated actions; or (ii) the rights or arguments asserted by any Defendant in defending against such claims.  The Court's findings and rulings in connection with this settlement shall have no effect on the Court's ruling on any motion to certify any class in the Actions or any other action, and no party may cite or refer to the Court's approval of the Settlement Class as persuasive or binding authority with respect to any motion to certify any class or with respect to any defense asserted by any Defendant.

3.    Approval by the Bankruptcy Court.    The effectiveness of this Settlement Agreement and Lear's obligation to pay the Settlement Amount shall be subject to and contingent upon the entry of a Final Bankruptcy Order authorizing Lear to distribute the Bankruptcy Reserve Settlement Proceeds to the Escrow Account.    If no such Final Bankruptcy Order is entered as provided in this paragraph, the Settlement Agreement shall be immediately and automatically terminated (excepting paragraphs 13, 23, 28, and 29 hereof), with no further action required by the parties, and all proceedings had in connection therewith shall be null and void, without prejudice to the *status quo ante* rights of Direct Purchaser Plaintiffs, Settlement Class Members, or Lear, including without limitation for purposes of the Debtors' *Motion for Entry of an Order (A) Enforcing Chapter 11 Plan Discharge and Injunction and (B) Directing Dismissal of Pending Litigation* [Docket No. 1660 - Case No. 09-14326 (ALG)] pending before the Bankruptcy Court and all pleadings and proceedings related thereto.    In that event, all negotiations and proceedings connected with this Settlement Agreement shall be without prejudice to the rights of any party hereto, shall not be deemed or construed to be an admission by any party of any fact or matter, and shall not be used in any way in the Actions or in any related actions or proceedings, including without limitation, for the avoidance of doubt, in connection with any assertion by the Direct Purchaser Plaintiffs, on behalf of themselves or the Settlement Class, of any claim (as defined in section 101(5) of the Bankruptcy Code) against the Debtors in their voluntary cases pending before the Bankruptcy Court pursuant to chapter 11 of title 11 of the United States Code, unless the undersigned parties agree in writing to proceed with the settlement as and if modified by the Court.    Similarly, if a Final Bankruptcy Order is not entered in connection with Lear's settlements or settlement agreements (or any part thereof) with the putative class plaintiffs in the matters captioned *In re Automotive Parts Antitrust Litigation / In re Wire Harness Cases,* Case No. 12-CV-102 ("Dealership Plaintiffs") and *In re Automotive Parts Antitrust Litigation / In re Wire Harness Cases,* Case No. 12-CV-103 ("End-Payor Plaintiffs"), this Settlement Agreement shall be immediately and automatically terminated (excepting paragraphs 13, 23, 28, and 29 hereof), with no further action required by the parties,

and all proceedings had in connection therewith shall be null and void, without prejudice to the *status quo ante* rights of Direct Purchaser Plaintiffs, Settlement Class Members, or Lear, including without limitation for purposes of the Debtors' *Motion for Entry of an Order (A) Enforcing Chapter 11 Plan Discharge and Injunction and (B) Directing Dismissal of Pending Litigation* [Docket No. 1660 - Case No. 09-14326 (ALG)] pending before the Bankruptcy Court and all pleadings and proceedings related thereto.  In that event, all negotiations and proceedings connected with this Settlement Agreement shall be without prejudice to the rights of any party hereto, shall not be deemed or construed to be an admission by any party of any fact or matter, and shall not be used in any way in the Actions or in any related actions or proceedings, including without limitation, for the avoidance of doubt, in connection with any assertion by the Direct Purchaser Plaintiffs, on behalf of themselves or the Settlement Class, of any claim (as defined in section 101(5) of the Bankruptcy Code) against the Debtors in their voluntary cases pending before the Bankruptcy Court pursuant to chapter 11 of title 11 of the United States Code, unless the undersigned parties agree in writing to proceed with the settlement as and if modified by the Court.  If this Settlement Agreement is rescinded, cancelled, or terminated in accordance with this paragraph 3, the Escrow Agent shall, within ten (10) business days of termination of the Settlement Agreement, refund (1) the $201,000 Cash Payment (including any and all income earned thereon) to Lear and (2) the Bankruptcy Reserve Settlement Proceeds (including any and all income earned thereon), less any expenditures authorized pursuant to paragraph 13 of this Settlement Agreement that were incurred prior to termination, to Lear for redeposit in the Bankruptcy Reserve.

   4. <u>Motion for Preliminary Approval</u>.  Within twenty (20) days of the Final Bankruptcy Order as set forth in paragraph 3 hereto, Direct Purchaser Plaintiffs shall submit to the Court, in a form mutually agreed upon by counsel for Lear and Class Plaintiffs' Co-Lead Counsel, a motion for preliminary approval of the settlement and final judgment contemplated by this Settlement Agreement and for a stay of all proceedings in the Actions against Lear until the Court renders a final decision regarding the approval of the settlement and, if it approves the

settlement, enters the final judgment. The Motion shall include: (a) the proposed form of order and final judgment attached as **Exhibit B** hereto, (b) the proposed forms of mail notice and publication notice of the settlement to members of the Settlement Class attached as **Exhibit C** hereto, and (c) the proposed form of order preliminarily approving this settlement attached as **Exhibit D** hereto.

     5.   <u>Notice to Settlement Class</u>. In the event that the Court preliminarily approves the settlement, Class Plaintiffs' Co-Lead Counsel shall, in accordance with Rule 23 of the Federal Rules of Civil Procedure and the Court's Order, provide each Settlement Class Member who can be identified by reasonable means with notice by first class mail of the settlement, the proposed plan of distribution of the settlement proceeds among the Settlement Class Members (if any), and the date of the Settlement Hearing. Notice shall also be given by publication once in the national edition of *The Wall Street Journal*, in *Automotive News*, and in such other publications as the Court may direct. The Notice also shall be posted on the Internet on a website dedicated to this litigation, as soon after preliminary approval by the Court of the settlement as reasonably practical. Direct Purchaser Plaintiffs shall take all necessary and appropriate steps to ensure that notice is provided in accordance with the order of the Court. In addition:

     a.  Lear agrees to permit a maximum of one hundred twenty-five thousand US dollars ($125,000 USD) of the Settlement Fund to be used towards Notice Costs. Funds expended pursuant to this paragraph may be paid without further approval from the Court and, in accordance with the provisions of paragraph 13, any amounts expended for Notice Costs are not recoverable if this settlement does not become final or is terminated.

     b.  Lear will supply to Class Plaintiffs' Co-Lead Counsel, in electronic format, the names and addresses of putative Settlement Class Members to whom it has sold Wire Harness Products to the extent such information is reasonably available in its records, such data is reasonably accessible, and to the extent not previously provided.

c.  In no event shall Lear be responsible for giving notice of this settlement to members of the Settlement Class or for the administration of the Settlement Fund, including but not limited to the expense and cost of such notice and claims administration, except insofar as provided in this Settlement Agreement.

d.  If and to the extent a claims administrator is selected to administer any distribution from the Settlement Fund, that claims administrator shall determine through an audit process of claims filed that claimants qualify as Settlement Class Members.

6.  <u>Motion for Entry of Final Judgment</u>.  Direct Purchaser Plaintiffs shall submit, in a form mutually agreed upon by counsel for Lear and Class Plaintiffs' Co-Lead Counsel, a motion for final approval of the settlement by the Court, after notice to the members of the Settlement Class of the Settlement Hearing, and shall seek entry of an order and final judgment, in the form attached hereto as **Exhibit B**:

a.  certifying the Settlement Class described in paragraph 1(cc), pursuant to Rule 23 of the Federal Rules of Civil Procedure, solely for purposes of this settlement as a settlement class;

b.  fully and finally approving the settlement contemplated by this Settlement Agreement and its terms as being a fair, reasonable, and adequate settlement as to the Settlement Class within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation pursuant to its terms and conditions;

c.  directing that the Actions be dismissed with prejudice as to Lear and, except as provided for herein, without costs;

d.  discharging and releasing the Released Parties from all Released Claims;

e.  reserving continuing and exclusive jurisdiction over the settlement, including its administration; and

f. determining pursuant to Fed. R. Civ. P. 54(b) that there is no just reason for delay and directing that the judgment of dismissal of the Actions as to Lear shall be final and appealable.

7.    <u>Settlement Consideration and Payment</u>.  As soon as reasonably practicable but in no event later than five (5) business days after the Execution Date, and in full, complete, and final settlement of the Actions as provided herein, Lear shall cause the Settlement Amount to be deposited into the Escrow Account as follows:

a. **Cash Payment.**  Lear shall deposit two hundred one thousand US dollars ($201,000) into the Escrow Account (the "Cash Payment").  In the event that the foregoing date falls on a Saturday, Sunday, or U.S. bank holiday, the payment will be made on the next business day.  The payment shall be made by wire transfer in immediately available funds.

b. **Proceeds of Bankruptcy Claim.**  Except as provided to the contrary in paragraph 3, the Settlement Class shall have, without the need to file a proof of claim against Lear in the Bankruptcy Court or seek to have any claim allowed on a class basis, a prepetition claim (which will be deemed an Allowed Other General Unsecured Claim (as defined in the Plan) in that class of claims designated in the Plan as Class 5A), in an amount such that, upon distribution on account of such claim in accordance with this Settlement Agreement, the Settlement Class shall receive the Bankruptcy Reserve Settlement Proceeds; *provided* that, for the avoidance of doubt and without limiting the generality of paragraph 3 above, if a Final Bankruptcy Order is not entered, the Settlement Class shall have no such claim, nor right to assert such claim absent entry of a Final Order authorizing it to do so. On account of such claim, Lear shall cause a distribution of the Bankruptcy Reserve Settlement Proceeds to be deposited into the Escrow Account.  For the avoidance of doubt, neither the Direct Purchaser Plaintiffs nor the Settlement Class Members, nor anyone acting on their behalf, shall receive, in connection

14

with this distribution or otherwise, any additional escrow CUSIP with respect to or right to any future distributions out of the Bankruptcy Reserve.

8.    <u>Net Settlement Amount</u>.    The Direct Purchaser Plaintiffs shall cause the liquidation of the New Common Stock and Other General Unsecured Claims Warrants deposited by Lear into the Escrow Account ("Stock and Warrants"), which shall be at least equal to the Bankruptcy Reserve Settlement Proceeds, to occur as promptly as practicable upon distribution into the Escrow Account.  If, following such liquidation, the value of the liquidated Stocks and Warrants plus the Cash Payment is less than the Settlement Amount plus any reasonable out-of-pocket costs and capital gains tax in liquidating the Stocks and Warrants, then Lear shall cause additional New Common Stock and Other General Unsecured Claims Warrants from the Bankruptcy Reserve or an additional Cash Payment, at Lear's sole discretion, to be distributed to the Escrow Account (and Direct Purchaser Plaintiffs immediately will liquidate, if necessary, such proceeds upon receipt) until the aggregate value of the liquidated Stocks and Warrants plus Cash Payment equals the Settlement Amount plus the reasonable out-of-pocket costs and capital gains tax in liquidating the Stocks and Warrants.  If, on the other hand, the value of the liquidated Stocks and Warrants plus the Cash Payment is greater than the Settlement Amount plus any reasonable out of pocket costs and capital gains tax in liquidating the Stocks and Warrants then the Direct Purchaser Plaintiffs shall cause the Escrow Agent to pay to Lear, in cash, the amount of such excess as soon as practicable following the Liquidation Date.  The parties agree that the agreement establishing and governing administration of the Escrow Account shall provide that, for the avoidance of doubt, subsequent to transfer to the Direct Purchaser Plaintiffs from the Escrow Account of the Settlement Fund, the Direct Purchaser Plaintiffs shall transfer to Lear any amounts remaining in the Escrow Account.

9.    <u>Exclusions</u>.  Any person or entity seeking exclusion from the Settlement Class must file a timely written request for exclusion as described in **Exhibit C** hereto.  Any person or entity that files such a request shall be excluded from the Settlement Class and shall have no rights with respect to this settlement.  A request for exclusion that does not comply with all of

the provisions set forth in **Exhibit C** hereto, including but not limited to not containing all of the requested information, not bearing the proper signature, being sent to an address other than the one designated, or not being sent within the time specified, will be invalid, and the person(s) or entity serving such an invalid request shall be deemed Settlement Class Member(s) and shall be bound by this Settlement Agreement upon Final Approval.  The request must be mailed to Class Plaintiffs' Co-Lead Counsel and counsel for Lear at the addresses provided in the class notice (**Exhibit C**), and postmarked no later than sixty (60) days after the date on which written notice of this settlement is first given to the Settlement Class or any other date set by the Court.  Class Plaintiffs' Co-Lead Counsel and counsel for Lear shall promptly forward to each other complete copies of all requests for exclusion as they are received.  To the extent a claims administrator is retained to administer any distribution of the Settlement Fund, Class Plaintiffs' Co-Lead Counsel are responsible for promptly providing such claims administrator with copies of any requests for exclusion received pursuant to this paragraph.  Further, Class Plaintiffs' Co-Lead Counsel shall, within ten (10) business days after the Court-ordered deadline for timely requests for exclusion from the Settlement Class, cause to be provided to counsel for Lear a list of those Settlement Class members who have timely excluded themselves from the Settlement Class.  With respect to any potential Settlement Class member who validly requests exclusion from the Settlement Class, Lear reserves all of its legal rights and defenses, including but not limited to any defenses relating to whether the excluded Settlement Class member is a direct purchaser of Wire Harness Products and/or has standing to bring any claim against Lear.  Within twenty (20) days following the deadline for the submission of requests for exclusion from the Settlement Class in accordance with the terms of this paragraph, or as soon thereafter as practicable, the parties shall calculate the aggregate dollar volume of Wire Harness Products purchased from all Defendants during the period from January 1, 2000 through the Execution Date by the person(s) or entity(ies) requesting exclusion divided by the total dollar volume of Wire Harness Products purchased from all Defendants during the period from January 1, 2000 through the Execution Date by the Settlement Class (the "Total Opt-Out Percentage").  In the event that the Total Opt-Out

Percentage exceeds the percentage set forth in a separate confidential side letter agreement, Lear shall, at its sole discretion, have the option to rescind, cancel, and terminate this Settlement Agreement (excepting paragraphs 13, 23, 28, and 29 hereof).  If Lear elects to rescind, cancel, and/or terminate this Settlement Agreement in accordance with this paragraph 9, the Escrow Agent shall, within ten (10) business days of termination of the Settlement Agreement, refund the Settlement Fund (including any and all income earned thereon) to Lear, less only any taxes paid or owed on the earnings of the Settlement Fund and any Notice Costs or other expenditures authorized by this Settlement Agreement that were incurred prior to termination.  The parties expressly reserve all of their rights if the settlement does not become final in accordance with the terms of this Settlement Agreement or if it is rescinded or terminated by Lear pursuant to this paragraph.  Specifically, all negotiations and proceedings connected with this Settlement Agreement shall be without prejudice to the rights of any party hereto, including without limitation, specifically, the *status quo ante* rights of Direct Purchaser Plaintiffs, Settlement Class Members, or Lear, including without limitation for purposes of the Debtors' *Motion for Entry of an Order (A) Enforcing Chapter 11 Plan Discharge and Injunction and (B) Directing Dismissal of Pending Litigation* [Docket No. 1660 - Case No. 09-14326 (ALG)] pending before the Bankruptcy Court and all pleadings and proceedings related thereto, shall not be deemed or construed to be an admission by any party of any fact or matter, and shall not be used in any way in the Actions or in any related actions or proceedings, including without limitation, for the avoidance of doubt, in connection with any assertion by the Direct Purchaser Plaintiffs, on behalf of themselves or the Settlement Class, of any claim (as defined in section 101(5) of the Bankruptcy Code) against the Debtors in their voluntary cases pending before the Bankruptcy Court pursuant to chapter 11 of title 11 of the United States Code, unless the undersigned parties agree in writing to proceed with the settlement as and if modified by the Court.

   10. <u>Investment of Settlement Fund</u>.  All payments into the Escrow Account shall, when made, be invested in United States Government Treasury obligations or United States Treasury money market funds; *provided*, *however*, that such portions of the Settlement Fund as

may reasonably be needed to pay current expenses associated with providing notice to the Settlement Class pursuant to paragraph 5 hereof, and any other amounts approved by the Court following Final Approval, may be deposited in a federally insured interest bearing bank account. Any interest earned on any of the foregoing shall become part of the Settlement Fund. Lear shall have no responsibility for, or liability in connection with, the Settlement Fund, including, without limitation, the investment, administration, maintenance, or distribution thereof.

11.    Custody of the Court.  All funds held in the Escrow Account shall be deemed and considered to be *in custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to this Settlement Agreement and/or further order(s) of the Court.

12.    Qualified Settlement Fund.  The Escrow Account is intended by the parties hereto to be treated as a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1, and to that end the parties hereto shall cooperate with each other and shall not take a position in any filing or before any tax authority that is inconsistent with such treatment.  At the request of Lear, a "relation back election" as described in Treas. Reg. § 1.468B-1(j) shall be made so as to enable the Escrow Account to be treated as a qualified settlement fund from the earliest date possible, and the Escrow Agent shall take all actions as may be necessary or appropriate to this end.  At the direction of Class Plaintiffs' Co-Lead Counsel and with notification to Lear's counsel, the Escrow Agent shall pay taxes or estimated taxes on any income earned on the funds in the Escrow Account and all related costs and expenses from the Escrow Account, whether or not Final Approval has occurred.  In the event federal or state income tax liability is finally assessed against and paid by Lear as a result of any income earned on the funds in the Escrow Account, Lear shall be entitled to reimbursement of such payment from the funds in the Escrow Account after approval of the Court and whether or not Final Approval has occurred.  Lear will use reasonable efforts to resist any such assessment or payment.  Except as set forth in this paragraph, Lear shall have no responsibility to make any tax filings related to the Settlement Fund or to pay any taxes with respect thereto.

13.     <u>Payments of Costs From the Settlement Fund</u>.    Reasonable disbursements for expenses associated with providing Notice of the settlement to the Settlement Class pursuant to paragraph 5 hereof, expenses for maintaining the Escrow Account, and expenses incurred in connection with taxation matters pursuant to paragraphs 12 and 21 hereof, may be paid without approval from the Court and shall not be refundable to Lear in the event the Agreement is disapproved, rescinded, or otherwise fails to become effective.    No other disbursement from or distribution of the Settlement Fund shall be made without prior approval of the Court.  Lear shall have no responsibility for, or liability in connection with, the Settlement Fund, including without limitation the investment, administration, maintenance, or distribution thereof.

14.     <u>All Claims Satisfied by Settlement Fund</u>.    Each Settlement Class Member shall look solely to the Settlement Fund for settlement and satisfaction, as provided herein, of all claims released by the Settlement Class pursuant to paragraphs 18 and 19 hereof.  Except as provided by order of the Court pursuant to this Settlement Agreement, no Settlement Class Member shall have any interest in the Settlement Fund or any portion thereof.

15.     <u>All Expenses Paid from Settlement Fund</u>.    Lear shall not be liable for any of the costs or expenses of the litigation of the Actions or of this settlement, including but not limited to those (a) of any of the Direct Purchaser Plaintiffs' or Settlement Class Members' counsel, experts, consultants, agents, and representatives; (b) incurred in giving notice (except insofar as provided in paragraph 5 hereof); or (c) incurred in administering the settlement or distributing the Settlement Funds.

16.     <u>Attorneys' Fees</u>.    Lear shall not be liable for any costs or attorneys' fees of Plaintiffs' Counsel, and any and all such costs, fees, payments, or awards as may be approved by the Court shall be paid out of the Settlement Fund.  There shall be no payment of attorneys' fees, costs, or expenses of Plaintiffs' Counsel, or any other awards the Court may make, out of the Settlement Fund until Final Approval has occurred.

17.     <u>Plan of Distribution and Proof of Claim</u>.    Unless otherwise ordered by the Court, the Settlement Fund shall be distributed to Settlement Class Members in accordance with a plan

of distribution to be submitted to and approved by the Court. Any proof of claim form that may be used in connection with the distribution of the Settlement Fund to Settlement Class Members shall be provided in advance for consultation with counsel for Lear, and thereafter shall be submitted to and approved by the Court.

18. <u>Releases</u>. In addition to the effect of any final judgment entered in accordance with this Settlement Agreement, in the event that this settlement is approved by the Court the Released Parties shall be released and forever discharged from all manner of claims, demands, actions, suits, causes of action, whether class, individual, or otherwise in nature, damages whenever incurred, liabilities of any nature whatsoever, including without limitation costs, penalties, and attorneys' fees, known or unknown, suspected or unsuspected, asserted or unasserted, in law or equity, that any of the Releasing Parties, or any one of them, whether directly, representatively, derivatively, or in any other capacity, ever had, now have, or hereafter can, shall, or may have, relating in any way to any conduct related to, arising from, or described in the Actions prior to the Effective Date on account of, arising out of, resulting from, or related to in any respect the purchase, sale, pricing, discounting, manufacturing, offering, or distributing of Wire Harness Products or relating, in any way, to any conduct alleged in the Actions including, without limitation, any such claims which have been asserted or could have been asserted in the Actions, or any one of them, against Lear including, but not limited to, claims arising under federal or state antitrust, unfair competition, unfair practices, price discrimination, unitary pricing, trade practice, or civil conspiracy law, including without limitation the Sherman Antitrust Act, 15 U.S.C. § 1 *et seq.* However, the Released Claims do not include: (1) claims based on indirect purchases of Wire Harness Products; (2) claims based on negligence, personal injury, bailment, failure to deliver lost goods, damaged or delayed goods, product defects, or breach of product warranty, or breach of contract claims relating to Wire Harness Products; (3) claims brought outside the United States relating to purchases of Wire Harness Products outside the United States; (4) claims brought under laws other than those of the United States relating to purchases of Wire Harness Products outside the United States; or (5) claims concerning any

automotive part other than Wire Harness Products. The Releasing Parties covenant and agree that they, and each of them, will forever refrain from instituting, maintaining, prosecuting, or continuing to maintain or prosecute any suit or action, or collecting from, seeking to recover from, or proceeding against the Released Parties in connection with any of the Released Claims. Direct Purchaser Plaintiffs and their counsel acknowledge that Lear considers it to be a material term of this Settlement Agreement that all Settlement Class Members will be bound by the provisions of this paragraph 18; *provided*, *however*, that should there be a breach of this covenant not to sue by any Settlement Class Member other than Direct Purchaser Plaintiffs, or any one of them, Direct Purchaser Plaintiffs and Class Plaintiffs' Co-Lead Counsel will cooperate with Lear's efforts to seek the dismissal of any such claim or action. Claimants on the Settlement Fund shall execute a release of the Released Parties as a condition precedent to receipt of any part of the Settlement Fund, but the failure of any claimant to execute such a release shall not in any way affect the validity of the release provided in this paragraph 18, and they shall nonetheless be bound by the terms of such release. Class Plaintiffs' Co-Lead Counsel shall provide counsel for Lear with copies of the releases referred to in this paragraph.

19.    Waiver of Rights.  In addition to the provisions of paragraph 18, each Settlement Class Member hereby expressly agrees that, upon Final Approval, it will waive and release with respect to the Released Claims that such Settlement Class Member has released pursuant to paragraph 18 hereof any and all provisions, rights, and benefits conferred either (a) by § 1542 of the California Civil Code, which reads:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor,

(b) by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to § 1542 of the California Civil Code, or (c) any law or principle of law of any jurisdiction that would limit or restrict the effect or scope of the provisions of the release set forth in paragraph 18 hereof. Each Settlement Class Member may

hereafter discover facts other than or different from those that it knows or believes to be true with respect to the subject matter of the Released Claims that such Settlement Class Member has released pursuant to paragraph 18 hereof, but each Settlement Class Member hereby expressly agrees that, upon Final Approval, it shall have waived and fully, finally, and forever settled and released any known or unknown, suspected or unsuspected, asserted or unasserted, contingent or non-contingent claim with respect to the Released Claims that such Settlement Class Member has released pursuant to paragraph 18 hereof, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.  The release of unknown, unanticipated, and unsuspected losses or claims is contractual, and not a mere recital.

20.    <u>Effect of Disapproval</u>.  If the Court refuses, preliminarily or otherwise, to approve the settlement or this Settlement Agreement or any part hereof, or if such approval is modified or set aside on appeal, or if the Court does not enter the final judgment provided for in paragraph 6 hereof, or if the Court enters the final judgment and appellate review is sought and, on such review, such final judgment is not affirmed in its entirety, Lear and Class Plaintiffs Co-Lead Counsel shall, at their sole discretion, each have the option to rescind, cancel, and terminate this Settlement Agreement (excepting paragraphs 13, 23, 28, and 29 hereof).  Similarly, if the Court refuses to preliminarily approve Lear's settlements or settlement agreements (or any part thereof) with the Dealership Plaintiffs and the End-Payor Plaintiffs, Lear shall, at its sole discretion, have the option to rescind, cancel, and terminate this Settlement Agreement (excepting paragraphs 13, 23, 28, and 29 hereof).  If either Lear or Class Plaintiffs' Co-Lead Counsel elect to rescind, cancel, and/or terminate this Settlement Agreement in accordance with this paragraph 20, the Escrow Agent shall, within ten (10) business days of termination of the Settlement Agreement, refund (a) the $201,000 cash payment (including any and all income earned thereon) to Lear and (b) the Bankruptcy Reserve Settlement Proceeds, less any expenditures authorized pursuant to paragraph 13 of this Settlement Agreement that were incurred prior to termination, to Lear for redeposit in the Bankruptcy Reserve.  The parties expressly reserve all of their rights if the settlement does not become final in accordance with the terms of this Settlement Agreement or if

it is rescinded or terminated by either Lear or Class Plaintiffs' Co-Lead Counsel pursuant to this paragraph, including but not limited to the *status quo ante* rights of Direct Purchaser Plaintiffs, Settlement Class Members, or Lear, including without limitation for purposes of the Debtors' *Motion for Entry of an Order (A) Enforcing Chapter 11 Plan Discharge and Injunction and (B) Directing Dismissal of Pending Litigation* [Docket No. 1660 - Case No. 09-14326 (ALG)] pending before the Bankruptcy Court and all pleadings and proceedings related thereto. Specifically, all negotiations and proceedings connected with this Settlement Agreement shall be without prejudice to the rights of any party hereto, shall not be deemed or construed to be an admission by any party of any fact or matter, and shall not be used in any way in the Actions or in any related actions or proceedings, including without limitation, for the avoidance of doubt, in connection with any assertion by the Direct Purchaser Plaintiffs, on behalf of themselves or the Settlement Class, of any claim (as defined in section 101(5) of the Bankruptcy Code) against the Debtors in their voluntary cases pending before the Bankruptcy Court pursuant to chapter 11 of title 11 of the United States Code, unless the undersigned parties agree in writing to proceed with the settlement as and if modified by the Court.

Notwithstanding the foregoing, any modification or reversal on appeal of any award of attorneys' fees or expenses or of any plan of allocation of settlement proceeds among Settlement Class Members in the Actions shall not be deemed a modification of this Settlement Agreement or of a final judgment in these Actions.  To the extent that any award of attorneys' fees or expenses is modified or reversed on appeal, the balance shall be returned to the Settlement Fund within thirty (30) days of such modification or reversal becoming final and not subject to further appellate review.

21.    <u>Taxes and Tax Expenses</u>.  Class Plaintiffs' Co-Lead Counsel or their designee shall be solely responsible for filing all informational and other tax returns necessary to report any taxable income earned by the Settlement Fund and shall file all informational and other tax returns necessary to report any income earned by the Settlement Fund and pay any estimated or actual taxes due thereon out of the Settlement Fund, as and when legally required, including

interest and penalties due on income earned by the Settlement Fund.  Class Plaintiffs' Co-Lead Counsel shall be entitled to pay customary and reasonable tax expenses, including without limitation professional fees and expenses incurred in connection with carrying out their responsibilities set forth in this paragraph from the Settlement Fund, when incurred and upon written notice to the Escrow Agent without prior approval by the Court.  Except as set forth in paragraph 12 hereof, Lear shall have no responsibility to make any tax filings related to this Settlement Agreement or the Settlement Fund or to pay any taxes with respect thereto.

22.    <u>Cooperation</u>.  In addition to its payment of the Settlement Amount set forth in paragraph 7 hereof and its provision of names and addresses of putative Settlement Class Members to whom it has sold Wire Harness Products to the extent reasonably available in its records pursuant to paragraph 5.b. hereof, Lear's obligations, as set forth below, shall be limited to: (a) the production of transactional sales data, which shall be compiled and produced in the form in which it is kept in the ordinary course of Lear's business, reflecting Lear's sales of Wire Harness Products sold directly in the United States, to the extent such data exists and to the extent it is reasonably accessible and is reasonably available in Lear's records for the period January 1, 1998 to December 31, 2013; (b) the production of transactional cost data, which shall be compiled and produced in the form in which it is kept in the ordinary course of Lear's business, for the production and sale of Wire Harness Products in the United States to the extent such data exists and to the extent it is reasonably accessible and is reasonably available in Lear's records for the period January 1, 1998 to December 31, 2013; (c) reasonable assistance by Lear to Direct Purchaser Plaintiffs in understanding the transactional sales and cost data produced, including, if appropriate, a reasonable number of communications with plaintiffs' experts and between technical personnel; (d) the production of Documents within the files of the Lear individuals identified in Lear's Rule 26(a)(1) Initial Disclosures, served August 1, 2012 sent to or received from any employees of Furukawa Lear Corporation, later known as Lear Furukawa Corporation, which was a separately incorporated joint venture owned by Lear ESD Joint Venture Holdings LLC f/k/a Lear Corporation EEDS and Interiors and Furukawa Automotive

24

Systems Inc. and Furukawa Electric Co., Ltd., during the period January 1, 2000 to February 28, 2010, to the extent such Documents exist, are relevant to the claims and/or defenses in the Actions, and are within Lear's possession, custody, and control and to the extent such Documents are reasonably available in Lear's records; (e) the production of Documents within the files of the Lear individuals identified in Lear's Rule 26(a)(1) Initial Disclosures, served August 1, 2012 sent to or received from any employees of Kyungshin-Lear during the period January 1, 2000 to February 28, 2010, to the extent such Documents exist, are relevant to the claims and/or defenses in the Actions, are within Lear's possession, custody, and control, and to the extent such documents are reasonably available in Lear's records; (f) the authentication of any Documents referenced in subparts (a) through (e) of this paragraph that Direct Purchaser Plaintiffs notify Lear they intend to use on summary judgment or trial, to the extent that they properly are subject to authentication by Lear; and (g) one presentment of one or two witnesses, to be identified by Lear, upon a single date to be coordinated at Lear's discretion with counsel for class plaintiffs representing other putative classes in this litigation, who can generally describe (i) the United States marketplace for Wire Harness Products, (ii) Lear's sales of such products, (iii) Lear's participation in the separately incorporated Kyungshin-Lear joint venture, and (iv) Lear's participation in the separately incorporated joint venture owned by Lear ESD Joint Venture Holdings LLC f/k/a Lear Corporation EEDS and Interiors and Furukawa Automotive Systems Inc. and Furukawa Electric Co., Ltd.  Lear's obligations pursuant to subparts (b) through (g) of this paragraph 22 shall be triggered by Final Approval.  In making any production contemplated by this paragraph 22, Lear is entitled to withhold from production any Documents protected from disclosure by the attorney-client privilege, work product doctrine, joint defense privilege, applicable privacy laws, or any other applicable privilege, doctrine, or law.  In doing so, Lear is not required to create a privilege log or otherwise provide Direct Purchaser Plaintiffs with identifying information regarding the Documents withheld.  All Documents and other information provided pursuant to this Settlement Agreement will be deemed "Highly Confidential – Outside Attorneys Only," as said designation is described in the

Protective Order in this Action (Dkt. 200), and subject to the Protective Order entered in the Action as if they had been produced in response to discovery requests and so designated.  For the avoidance of doubt, Direct Purchaser Plaintiffs expressly agree that they will not seek any discovery from Lear or the Released Parties in the Actions after the Execution Date including but not limited to written discovery, document discovery, or deposition discovery.   Lear's obligations pursuant to this paragraph 22 shall not be affected by the Release set forth in paragraphs 18 and 19 of the Settlement Agreement.  These obligations shall cease as of the date that final judgment has been rendered in the Actions against all Defendants.

23.    Resolution of Disputes; Retention of Jurisdiction.    Any disputes between or among Lear and any Settlement Class Member or Settlement Class Members concerning matters contained in this Settlement Agreement shall, if they cannot be resolved by negotiation and agreement, be submitted to the Court.    The Court shall retain jurisdiction over the implementation and enforcement of this Settlement Agreement.

24.    Other Claims.  This Settlement Agreement does not settle or compromise any claim other than the Released Claims against the Released Parties.  All rights of any Settlement Class Member against any person or entity other than the Released Parties for sales made by the Released Parties are specifically reserved by Direct Purchaser Plaintiffs and the Settlement Class Members.  To the extent permitted and/or authorized by law, sales of Wire Harness Products by the Released Parties in or into the United States shall remain in the Actions against the non-settling Defendants and/or any future defendants other than the Released Parties as a basis for damage claims, and shall be part of any joint and several liability claims in the Actions against the non-settling Defendants and/or any future defendants or persons or entities other than the Released Parties.

25.    Binding Effect.  This Settlement Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto.  Without limiting the generality of the foregoing, each and every covenant and agreement herein by the Direct Purchaser Plaintiffs and their counsel shall be binding upon all Settlement Class Members and Releasing Parties.

26.     <u>Authorization to Enter Settlement Agreement</u>.  The undersigned representative of

Lear covenants and represents that such representative is fully authorized to enter into and to

execute this Settlement Agreement on behalf of Lear.  Class Plaintiffs' Co-Lead Counsel

represent that they are fully authorized on behalf of the Direct Purchaser Plaintiffs to conduct

settlement negotiations with defense counsel and to enter into, and to execute, this Settlement

Agreement on behalf of the Settlement Class.

27.     <u>Notices</u>.  All notices under this Settlement Agreement shall be in writing.  Each

such notice shall be given either by (a) hand delivery; (b) registered or certified mail, return

receipt requested, postage pre-paid; or (c) Federal Express, UPS, or similar overnight courier and

in the case of either (a), (b), or (c) shall be addressed, if directed to any Direct Purchaser Plaintiff

or Settlement Class Member, to Class Plaintiffs' Co-Lead Counsel at their addresses set forth on

the signature pages hereof, and if directed to Lear, to its representative(s) at the addresses set

forth on the signature pages hereof, or such other address as Class Plaintiffs' Co-Lead Counsel or

Lear, respectively, may designate from time to time by giving notice to all parties hereto in the

manner described in this paragraph.  Copies of all notices under this Settlement Agreement may,

at the notifying party's option, be transmitted by email to the appropriate parties.  Providing a

copy by email shall only be in addition to, and not a substitute for, the formal notice mechanisms

provided for in (a), (b), or (c) of this paragraph.

28.     <u>No Admission</u>.  Whether or not this Settlement Agreement becomes final or is

terminated pursuant its terms, the parties expressly agree that this Settlement Agreement and its

contents, including without limitation its exhibits and any and all statements, negotiations,

documents, and discussions associated with it, shall not be deemed or construed to be an

admission or evidence of any violation of any statute or law or of any liability or wrongdoing or

of the truth of any of the claims or allegations contained in the complaints in the Actions or any

other pleading or filing, and evidence thereof shall not be discoverable or used, directly or

indirectly, in any way, whether in the Actions or in any other action or proceeding, including

without limitation, for the avoidance of doubt, in connection with any assertion by the Direct

Purchaser Plaintiffs on behalf of themselves or the Settlement Class, of any claim (as defined in section 101(5) of the Bankruptcy Code) against the Debtors in their voluntary cases pending before the Bankruptcy Court pursuant to chapter 11 of title 11 of the United States Code.

29.    <u>Confidentiality of Settlement Negotiations</u>.  Class Plaintiffs' Co-Lead Counsel and Plaintiffs' Counsel shall keep strictly confidential and not disclose to any third party any non-public information regarding the parties' negotiation of this settlement and/or this Settlement Agreement.  For the sake of clarity, information contained within this Settlement Agreement shall be considered public.

30.    <u>Intended Beneficiaries</u>.  No provision of this Settlement Agreement shall provide any rights to, or be enforceable by, any person or entity that is not a Direct Purchaser Plaintiff, Settlement Class Member, a Released Party, or Plaintiffs' Counsel.  No Direct Purchaser Plaintiff, Settlement Class Member, or Plaintiffs' Counsel may assign or otherwise convey any right to enforce any provision of this Settlement Agreement.

31.    <u>No Conflict Intended</u>.  Any inconsistency between this Settlement Agreement and the exhibits attached hereto shall be resolved in favor of this Settlement Agreement.  The headings used in this Settlement Agreement are intended for the convenience of the reader only and shall not affect the meaning or interpretation of this Settlement Agreement.

32.    <u>No Party is the Drafter</u>.  None of the parties hereto shall be considered to be the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

33.    <u>Choice of Law</u>.  All terms of this Settlement Agreement shall be governed by and interpreted according to the substantive laws of Michigan without regard to its choice of law or conflict of law principles.

34.    <u>Amendment; Waiver</u>.  This Settlement Agreement shall not be modified in any respect except by a writing executed by all the parties hereto, and the waiver of any rights conferred hereunder shall be effective only if made by written instrument of the waiving party.

The waiver by any party of any breach of this Settlement Agreement shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of this Settlement Agreement.

35.    <u>Execution in Counterparts</u>.    This Settlement Agreement may be executed in counterparts.  Facsimile or emailed .pdf signatures shall be considered as valid signatures as of the date hereof, although the original signature pages shall thereafter be appended to this Settlement Agreement and filed with the Court.

36.    <u>Integrated Agreement</u>.  This Settlement Agreement and the confidential side letter agreement referenced in paragraph 9, hereof, contain an entire, complete, and integrated statement of each and every term and provision agreed to by the parties hereto, and is not subject to any condition not provided for herein.  This Settlement Agreement supersedes any and all prior and contemporaneous undertakings of Direct Purchaser Plaintiffs and Lear in connection herewith.  The Settlement Class Members and Class Plaintiffs' Co-Lead Counsel, or any of them, may hereafter discover facts other than or different from those that it knows or believes to be true with respect to the subject matter of this settlement, but the subsequent discovery or existence of such different or additional facts shall have no bearing on the validity of this Settlement Agreement once executed and shall not serve as a basis for any Party to challenge or otherwise seek to rescind, terminate, or cancel the settlement.

37.    <u>Class Action Fairness Act</u>.  Lear shall submit all materials required to be sent to appropriate Federal and State officials pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

*[Signatures Appear on the Following Page]*

Dated: May 5, 2014

Steven A. Kanner
William H. London
Michael E. Moskovitz
Michael L. Silverman
FREED KANNER LONDON & MILLEN LLC
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015
Telephone: (224) 632-4500
Facsimile: (224) 632-4521
skanner@fklmlaw.com
blondon@fklmlaw.com
mmoskovitz@fklmlaw.com
msilverman@fklmlaw.com


Joseph C. Kohn
William E. Hoese
Douglas A. Abrahams
KOHN, SWIFT & GRAF, P.C.
One South Broad Street, Suite 2100
Philadelphia, PA 19107
Telephone: (215) 238-1700
Facsimile: (215) 238-1968
jkohn@kohnswift.com
whoese@kohnswift.com
dabrahams@kohnswift.com


Gregory P. Hansel
Randall B. Weill
Michael Smith
PRETI, FLAHERTY, BELIVEAU & PACHIOS
    LLP
One City Center, P.O. Box 9546
Portland, ME 04101
Telephone: (207) 791-3000
Facsimile: (207) 791-3111
ghansel@preti.com
rweill@preti.com
msmith@preti.com

Eugene A. Spector
William G. Caldes
Jonathan M. Jagher
Jeffrey L. Spector
SPECTOR ROSEMAN KODROFF & WILLIS,
    P.C.
1818 Market Street, Suite 2500
Philadelphia, PA 19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611
espector@srkw-law.com
bcaldes@srkw-law.com
jjagher@srkw-law.com
jspector@srkw-law.com

**Class Plaintiffs' Co-Lead Counsel**


Andrew S. Marovitz
Britt M. Miller
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
Telephone: (312) 782-0600
Facsimile: (312) 701-7711
amarovitz@mayerbrown.com
bmiller@mayerbrown.com

Howard B. Iwrey
Dante Stella
DYKEMA GOSSETT PLLC
39577 Woodward Ave.
Bloomfield Hills, Michigan 48304
Telephone: (248) 203-0526
Facsimile: (248) 203-0763
hiwrey@dykema.com
dstella@dykema.com

**Counsel for Lear Corporation**

Dated: May 5, 2014

---

Steven A. Kanner
William H. London
Michael E. Moskovitz
Michael L. Silverman
FREED KANNER LONDON & MILLEN LLC
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015
Telephone: (224) 632-4500
Facsimile: (224) 632-4521
skanner@fklmlaw.com
blondon@fklmlaw.com
mmoskovitz@fklmlaw.com
msilverman@fklmlaw.com

Joseph C. Kohn
William E. Hoese
Douglas A. Abrahams
KOHN, SWIFT & GRAF, P.C.
One South Broad Street, Suite 2100
Philadelphia, PA 19107
Telephone: (215) 238-1700
Facsimile: (215) 238-1968
jkohn@kohnswift.com
whoese@kohnswift.com
dabrahams@kohnswift.com

---

Gregory P. Hansel
Randall B. Weill
Michael Smith
PRETI, FLAHERTY, BELIVEAU & PACHIOS
LLP
One City Center, P.O. Box 9546
Portland, ME 04101
Telephone: (207) 791-3000
Facsimile: (207) 791-3111
ghansel@preti.com
rweill@preti.com
msmith@preti.com

---

Eugene A. Spector
William G. Caldes
Jonathan M. Jagher
Jeffrey L. Spector
SPECTOR ROSEMAN KODROFF & WILLIS,
    P.C.
1818 Market Street, Suite 2500
Philadelphia, PA 19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611
espector@srkw-law.com
bcaldes@srkw-law.com
jjagher@srkw-law.com
jspector@srkw-law.com

**Class Plaintiffs' Co-Lead Counsel**

---

Andrew S. Marovitz
Britt M. Miller
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
Telephone: (312) 782-0600
Facsimile: (312) 701-7711
amarovitz@mayerbrown.com
bmiller@mayerbrown.com

Howard B. Iwrey
Dante Stella
DYKEMA GOSSETT PLLC
39577 Woodward Ave.
Bloomfield Hills, Michigan 48304
Telephone: (248) 203-0526
Facsimile: (248) 203-0763
hiwrey@dykema.com
dstella@dykema.com

**Counsel for Lear Corporation**

Dated: May 5, 2014

Steven A. Kanner
William H. London
Michael E. Moskovitz
Michael L. Silverman
FREED KANNER LONDON & MILLEN LLC
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015
Telephone: (224) 632-4500
Facsimile:  (224) 632-4521
skanner@fklmlaw.com
blondon@fklmlaw.com
mmoskovitz@fklmlaw.com
msilverman@fklmlaw.com


Joseph C. Kohn
William E. Hoese
Douglas A. Abrahams
KOHN, SWIFT & GRAF, P.C.
One South Broad Street, Suite 2100
Philadelphia, PA 19107
Telephone: (215) 238-1700
Facsimile:  (215) 238-1968
jkohn@kohnswift.com
whoese@kohnswift.com
dabrahams@kohnswift.com

*[signature: Gregory P. Hansel]*

Gregory P. Hansel
Randall B. Weill
Michael Smith
PRETI, FLAHERTY, BELIVEAU & PACHIOS
    LLP
One City Center, P.O. Box 9546
Portland, ME 04101
Telephone: (207) 791-3000
Facsimile:  (207) 791-3111
ghansel@preti.com
rweill@preti.com
msmith@preti.com

Eugene A. Spector
William G. Caldes
Jonathan M. Jagher
Jeffrey L. Spector
SPECTOR ROSEMAN KODROFF & WILLIS,
    P.C.
1818 Market Street, Suite 2500
Philadelphia, PA 19103
Telephone: (215) 496-0300
Facsimile:  (215) 496-6611
espector@srkw-law.com
bcaldes@srkw-law.com
jjagher@srkw-law.com
jspector@srkw-law.com

**Class Plaintiffs' Co-Lead Counsel**


Andrew S. Marovitz
Britt M. Miller
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL  60606
Telephone:  (312) 782-0600
Facsimile:  (312) 701-7711
amarovitz@mayerbrown.com
bmiller@mayerbrown.com

Howard B. Iwrey
Dante Stella
DYKEMA GOSSETT PLLC
39577 Woodward Ave.
Bloomfield Hills, Michigan 48304
Telephone:  (248) 203-0526
Facsimile:  (248) 203-0763
hiwrey@dykema.com
dstella@dykema.com

**Counsel for Lear Corporation**

Dated: May 5, 2014

Steven A. Kanner
William H. London
Michael E. Moskovitz
Michael L. Silverman
FREED KANNER LONDON & MILLEN LLC
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015
Telephone: (224) 632-4500
Facsimile: (224) 632-4521
skanner@fklmlaw.com
blondon@fklmlaw.com
mmoskovitz@fklmlaw.com
msilverman@fklmlaw.com

Joseph C. Kohn
William E. Hoese
Douglas A. Abrahams
KOHN, SWIFT & GRAF, P.C.
One South Broad Street, Suite 2100
Philadelphia, PA 19107
Telephone: (215) 238-1700
Facsimile: (215) 238-1968
jkohn@kohnswift.com
whoese@kohnswift.com
dabrahams@kohnswift.com

Gregory P. Hansel
Randall B. Weill
Michael Smith
PRETI, FLAHERTY, BELIVEAU & PACHIOS
   LLP
One City Center, P.O. Box 9546
Portland, ME 04101
Telephone: (207) 791-3000
Facsimile: (207) 791-3111
ghansel@preti.com
rweill@preti.com
msmith@preti.com

Eugene A. Spector
William G. Caldes
Jonathan M. Jagher
Jeffrey L. Spector
SPECTOR ROSEMAN KODROFF & WILLIS,
   P.C.
1818 Market Street, Suite 2500
Philadelphia, PA 19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611
espector@srkw-law.com
bcaldes@srkw-law.com
jjagher@srkw-law.com
jspector@srkw-law.com

**Class Plaintiffs' Co-Lead Counsel**

Andrew S. Marovitz
Britt M. Miller
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
Telephone: (312) 782-0600
Facsimile: (312) 701-7711
amarovitz@mayerbrown.com
bmiller@mayerbrown.com

Howard B. Iwrey
Dante Stella
DYKEMA GOSSETT PLLC
39577 Woodward Ave.
Bloomfield Hills, Michigan 48304
Telephone: (248) 203-0526
Facsimile: (248) 203-0763
hiwrey@dykema.com
dstella@dykema.com

**Counsel for Lear Corporation**

Dated: May 5, 2014

Steven A. Kanner
William H. London
Michael E. Moskovitz
Michael L. Silverman
FREED KANNER LONDON & MILLEN LLC
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015
Telephone: (224) 632-4500
Facsimile: (224) 632-4521
skanner@fklmlaw.com
blondon@fklmlaw.com
mmoskovitz@fklmlaw.com
msilverman@fklmlaw.com

Joseph C. Kohn
William E. Hoese
Douglas A. Abrahams
KOHN, SWIFT & GRAF, P.C.
One South Broad Street, Suite 2100
Philadelphia, PA 19107
Telephone: (215) 238-1700
Facsimile: (215) 238-1968
jkohn@kohnswift.com
whoese@kohnswift.com
dabrahams@kohnswift.com

Gregory P. Hansel
Randall B. Weill
Michael Smith
PRETI, FLAHERTY, BELIVEAU & PACHIOS
    LLP
One City Center, P.O. Box 9546
Portland, ME 04101
Telephone: (207) 791-3000
Facsimile: (207) 791-3111
ghansel@preti.com
rweill@preti.com
msmith@preti.com

Eugene A. Spector
William G. Caldes
Jonathan M. Jagher
Jeffrey L. Spector
SPECTOR ROSEMAN KODROFF & WILLIS,
    P.C.
1818 Market Street, Suite 2500
Philadelphia, PA 19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611
espector@srkw-law.com
bcaldes@srkw-law.com
jjagher@srkw-law.com
jspector@srkw-law.com

**Class Plaintiffs' Co-Lead Counsel**

Andrew S. Marovitz
Britt M. Miller
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
Telephone: (312) 782-0600
Facsimile: (312) 701-7711
amarovitz@mayerbrown.com
bmiller@mayerbrown.com

Howard B. Iwrey
Dante Stella
DYKEMA GOSSETT PLLC
39577 Woodward Ave.
Bloomfield Hills, Michigan 48304
Telephone: (248) 203-0526
Facsimile: (248) 203-0763
hiwrey@dykema.com
dstella@dykema.com

**Counsel for Lear Corporation**

30

**Exhibit A to the Settlement Agreement**

| Named Direct Purchaser Plaintiff | E.D. Michigan Case No.[1] | Date Filed |
|---|---|---|
| Martinez Manufacturing, Inc. | 11-cv-15186 | 11/23/11 |
| ACAP, LLC, et al. | 11-cv-15362 | 12/6/11 |
| Technical Aids to Independence, Inc. | 11-cv-15428 | 12/9/11 |
| Mexican Industries in Michigan, Inc. | 11-cv-15553 | 12/19/11 |
| T.M. Morris Manufacturing Company, Inc. | 12-cv-10130 | 01/11/12 |
| Timberline Manufacturing Company | 12-cv-10153 | 01/12/12 |
| Dos Manos Technologies, LLC | 12-cv-10155 | 01/12/12 |
| Cesar-Scott, Inc. | 12-cv-10177 | 01/13/12 |
| Craft-Co Enterprises, Inc. | 12-cv-10336 | 01/25/12 |
| Paesano Connecting Systems, Inc. | 12-cv-10336 | 01/17/12 |
| Q.C. Onics Ventures, LP | 12-cv-10720 | 02/16/12 |
| South Star Corporation | 12-cv-11165 | 3/15/12 |
| *Consolidated Amended Class Action Complaint* (adding Findlay Industries, Inc. as a named plaintiff) | 12-md-02311 | 5/14/12 |

---

[1] All of the Direct Purchaser Plaintiffs' Actions were initially filed in the United States District Court for the Eastern District of Michigan.

<u>Exhibit B to the Settlement Agreement</u>

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

———————————————————          :
                                  :
**In Re:  AUTOMOTIVE PARTS**      :     **12-MD-02311**
**ANTITRUST LITIGATION**          :     **Honorable Marianne O. Battani**
—————————————————             :
                                  :
**In Re: WIRE HARNESS CASES**     :
—————————————————             :
                                  :
**THIS RELATES TO:**              :
**ALL DIRECT PURCHASER CASES**    :     **W:12-cv-00101-MOB-MKM**
—————————————————             :

<u>[PROPOSED] ORDER AND FINAL JUDGMENT</u>

Direct Purchaser Plaintiffs, on behalf of themselves and the Settlement Class Members, and Defendant Lear Corporation ("Lear") entered into a Settlement Agreement to fully and finally resolve the Settlement Class's claims against Lear and the other Released Parties.  On _____, 2014, the Court entered its Order granting preliminary approval of the proposed settlement ("Preliminary Approval Order").  Among other things, the Preliminary Approval Order authorized Direct Purchaser Plaintiffs to disseminate notice of the settlement, the fairness hearing, and related matters to the Settlement Class.  Notice was provided to the Settlement Class pursuant to the Preliminary Approval Order and the Court held a fairness hearing on _____, 2014.

Having considered Direct Purchaser Plaintiffs' Motion for Final Approval of Proposed Settlement with Defendant Lear Corporation, oral argument presented at the fairness hearing, and the complete records and files in this matter,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:**

1.      This Court has jurisdiction over the subject matter of this litigation.

2.      Terms capitalized in this Order and Final Judgment and not otherwise defined herein have the same meanings as those used in the Settlement Agreement.

3.      The Preliminary Approval Order outlined the form and manner by which the Direct Purchaser Plaintiffs would provide the Settlement Class with notice of the settlement, the fairness hearing, and related matters.  The notice program included individual notice via first class mail to members of the Settlement Class who could be identified through reasonable efforts, as well as the publication of a summary notice in *The Wall Street Journal* and in *Automotive News*, and posting of the Notice on the Internet on a website dedicated to this litigation.  Proof that mailing, publication, and posting conformed with the Preliminary Approval Order has been filed with the Court.  This notice program fully complied with Fed. R. Civ. P. 23, and the requirements of due process.  It provided due and adequate notice to the Settlement Class.

4.      The settlement was attained following an extensive investigation of the facts.  It resulted from vigorous arm's-length negotiations that were undertaken in good faith by counsel with significant experience litigating antitrust class actions.

5.      The settlement was entered into by the parties in good faith.

6.      Final approval of the settlement with Lear is hereby granted pursuant to Fed. R. Civ. P. 23(e), because it is "fair, reasonable, and adequate" to the Settlement Class.  In reaching this conclusion, the Court considered the complexity, expense, and likely duration of the litigation, the Settlement Class's reaction to the settlement, and the result achieved.

7.      The settlement class provisionally certified by Order of this Court in its Preliminary Approval Order is hereby certified as a settlement class pursuant to Rule 23 of the Federal Rules of Civil Procedure and is comprised of:   "All individuals and entities that purchased Wire Harness Products in the United States directly from one or more Defendants from January 1, 2000 through May 5, 2014."   The Court adopts and incorporates herein all findings made under Rule 23 in its Preliminary Approval Order.

8.      The Court's certification of the Settlement Class as provided herein is without prejudice to, or waiver of, the rights of any Defendant to contest certification of any other class proposed in these coordinated actions.  The Court's findings in this Order shall have no effect on the Court's ruling on any motion to certify any class in these actions or on the Court's rulings concerning any Defendant's motion; and no party may cite or refer to the Court's approval of the Settlement Class as persuasive or binding authority with respect to any motion to certify any such class or any Defendant's motion.

9.      The entities identified on **Exhibit 1** hereto have timely and validly requested exclusion from the Settlement Class and, therefore, are excluded.  Such entities are not included in or bound by this Order and Final Judgment.  Such entities are not entitled to any recovery from the settlement proceeds obtained through this settlement.

10.     The Actions, including but not limited to those listed on **Exhibit A** to the Settlement Agreement, and all Released Claims are hereby dismissed with prejudice with respect to the Released Parties and without costs.  The Releasing Parties are barred from instituting or prosecuting, in any capacity, any action or proceeding that asserts a Released Claim against any of the Released Parties.  This dismissal applies only in favor of Lear and the other Released Parties.

11.     The Escrow Account, into which Lear has deposited assets with a total value of at least $4,750,000 as of the Execution Date of the Settlement Agreement as the settlement amount, plus accrued interest thereon, is approved as a Qualified Settlement Fund pursuant to Internal Revenue Code Section 468B and the Treasury Regulations promulgated thereunder.

12.     Neither the Settlement Agreement, nor any act performed or document executed pursuant to the Settlement Agreement, may be deemed or used as an admission of wrongdoing in any civil, criminal, administrative, or other proceeding in any jurisdiction.

13.     Any objections to the proposed settlement have been considered and will be denied by separate order.

14.     This Order and Final Judgment does not settle or compromise any claims by Direct Purchaser Plaintiffs or the Settlement Class against any other Defendant or other person or entity other than Lear and the other Released Parties, and all rights against any other Defendant or other person or entity are specifically reserved.

15.     Without affecting the finality of this Order and Final Judgment, the Court retains exclusive jurisdiction over: (a) the enforcement of this Order and Final Judgment; (b) the enforcement of the Settlement Agreement; (c) any application for distribution of funds, attorneys' fees, or reimbursement made by Plaintiffs' Counsel; (d) any application for incentive awards for the Direct Purchaser Plaintiffs; and (e) the distribution of the settlement proceeds to the Settlement Class Members.

16.     Pursuant to Fed. R. Civ. P. 54, the Court finds that there is no just reason for delay and hereby directs the entry of judgment as to Lear.

**IT IS SO ORDERED.**

Dated: _____, 2014

_____
HON. MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE

<u>**Exhibit C to the Settlement Agreement**</u>

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | | |
|---|---|---|
| _____ : | | |
| **In Re:  AUTOMOTIVE PARTS** | : | **12-MD-02311** |
| **ANTITRUST LITIGATION** | : | **Honorable Marianne O. Battani** |
| _____ : | | |
| | : | |
| **In Re: WIRE HARNESS CASES** | : | |
| _____ : | | |
| | : | |
| **THIS RELATES TO:** | : | |
| **ALL DIRECT PURCHASER CASES** | : | **W:12-cv-00101-MOB-MKM** |
| _____ : | | |

**NOTICE OF PROPOSED SETTLEMENT OF DIRECT PURCHASER
CLASS ACTION WITH DEFENDANT LEAR CORPORATION
<u>AND HEARING ON SETTLEMENT APPROVAL</u>**

TO:    ALL PERSONS AND ENTITIES WHO PURCHASED WIRE HARNESS PRODUCTS
IN THE UNITED STATES DIRECTLY FROM A DEFENDANT DURING THE
PERIOD FROM JANUARY 1, 2000 THROUGH MAY 5, 2014.

PLEASE READ THIS ENTIRE NOTICE CAREFULLY.  YOUR LEGAL RIGHTS
MAY BE AFFECTED BY LITIGATION NOW PENDING IN THIS COURT.

<u>**WHAT IS THE PURPOSE OF THIS NOTICE AND WHY WAS IT SENT TO ME?**</u>

This Notice is given pursuant to Rule 23 of the Federal Rules of Civil Procedure and an

Order of the United States District Court for the Eastern District of Michigan, Southern Division.

The purpose of this Notice is to inform you of a proposed settlement with Defendant Lear

Corporation ("Lear").  Under the terms of the proposed settlement, Lear will make a payment of

cash and securities with a total value of $4.75 million (the "Settlement Fund"), and will provide

certain information that the Direct Purchaser Plaintiffs may use in the prosecution of their

remaining claims.

1

This litigation is part of coordinated legal proceedings involving a number of parts used in motor vehicles.  The litigation, and the proposed settlement, relate solely to Wire Harness Products purchased directly from a Defendant.  These proceedings do not relate to, and have no effect upon, cases involving any other product or purchaser.

Wire harnesses are electrical distribution systems used to direct and control electronic components, wiring, and circuit boards in motor vehicles.  "Wire Harness Products," for purposes of the Lear settlement, means wire harnesses and the following related products: automotive electrical wiring, lead wire assemblies, cable bond, automotive wiring connectors, automotive wiring terminals, high voltage wiring, electronic control units, fuse boxes, relay boxes, junction blocks, power distributors, and speed sensor wire assemblies used in motor vehicles.

If you purchased Wire Harness Products in the United States directly from any of the Defendants identified below during the period from January 1, 2000 through May 5, 2014 (the "Settlement Class Period"), you are a member of the Direct Purchaser Settlement Class and have the rights and options summarized here:

- You may remain in the Direct Purchaser Settlement Class and be eligible to share in the Lear Settlement Fund under a claims procedure that will be instituted in the future;

- You may exclude yourself from the Direct Purchaser Settlement Class, in which case you will **not** be bound by the settlement and will **not** be eligible to share in the Lear Settlement Fund;

- If you do not exclude yourself from the Direct Purchaser Settlement Class, you may object in writing to the proposed Lear settlement or the request to use a portion of  the Settlement Fund to pay litigation expenses and appear at the hearing where the Court will determine

whether the proposed settlement should be approved as fair, adequate, and reasonable and whether a portion of the Settlement Fund may be used to pay litigation expenses; and

- You may enter an appearance in the litigation through your own counsel at your own expense.

You do **not** need to take any action at this time if you wish to remain in the Direct Purchaser Settlement Class. You should retain all of your records of Wire Harness Products purchases for use in the claims procedure that will be instituted at a later date.

## WHO IS IN THE DIRECT PURCHASER SETTLEMENT CLASS?

On _____, 2014, the Court certified a Direct Purchaser Settlement Class for purposes of disseminating notice of the proposed Lear settlement, defined as follows:

> All individuals and entities that purchased Wire Harness Products
> in the United States directly from one or more Defendants from
> January 1, 2000 through May 5, 2014.

For purposes of the settlement with Lear and specifically with respect to the Direct Purchaser Settlement Class definition set forth above, the following entities are Defendants:

Denso Corporation;
Denso International America, Inc.;
Fujikura Ltd.;
Fujikura Automotive America LLC;
Furukawa Electric Co., Ltd.;
American Furukawa, Inc.;
Furukawa Wiring Systems America, Inc. f/k/a Furukawa Lear
      Corporation and Lear Furukawa Corporation;
G.S. Electech, Inc.;
G.S. Wiring Systems Inc.;
G.S.W. Manufacturing, Inc.;
Lear Corporation;
Sumitomo Electric Industries, Ltd.;
Sumitomo Wiring Systems, Ltd.;
Sumitomo Electric Wiring Systems, Inc.;
K&S Wiring Systems, Inc.;
Sumitomo Wiring Systems (U.S.A.);
Yazaki Corporation;

Yazaki North America, Inc.;
Tokai Rika Co., Ltd.; and
TRAM, Inc.

Direct Purchaser Plaintiffs Mexican Industries in Michigan, Inc. by and through Timothy Miller, its Trustee in Bankruptcy; Paesano Connecting Systems, Inc.; Craft-Co Enterprises, Inc.; Findlay Industries, Inc.; Cesar-Scott, Inc.; Martinez Manufacturing, Inc.; and South Star Corporation have been appointed by the Court to serve as class representatives for the Direct Purchaser Settlement Class. The Court has appointed the law firms of Freed Kanner London & Millen LLC; Kohn, Swift & Graf, P.C.; Preti, Flaherty, Beliveau & Pachios LLP; and Spector Roseman Kodroff & Willis, P.C. to serve as Co-Lead Counsel for the Direct Purchaser Settlement Class (hereinafter, "Class Plaintiffs' Co-Lead Counsel").

## WHAT IS THIS LITIGATION ABOUT?

Beginning in 2011, class actions were filed against Defendants by direct purchasers of Wire Harness Products. Those lawsuits have been consolidated before the Court. Direct Purchaser Plaintiffs allege that Defendants entered into a conspiracy to suppress and eliminate competition for Wire Harness Products by agreeing to rig bids for, and to raise, fix, stabilize, or maintain the prices of, Wire Harness Products, in violation of federal antitrust laws. Direct Purchaser Plaintiffs further allege that as a result of the conspiracy, they and other direct purchasers of Wire Harness Products have been injured by paying more for those products than they would have paid in the absence of the alleged illegal conduct, and they seek recovery of treble damages, together with reimbursement of costs and an award of attorneys' fees.

Lear denies Direct Purchaser Plaintiffs' allegations, and has agreed to settle this matter in order to avoid the expense and burden of further litigation. The Court has not issued any findings or rulings with respect to the merits of Direct Purchaser Plaintiffs' claims or Defendants'

defenses.  This is a settlement with Lear only.  The Direct Purchaser Plaintiffs are continuing to prosecute the case against the remaining, non-settling Defendants.

### WHAT RELIEF DOES THE PROPOSED SETTLEMENT PROVIDE?

Direct Purchaser Plaintiffs, on behalf of the Direct Purchaser Settlement Class, have entered into a settlement agreement with Lear dated May 5, 2014 (the "Settlement Agreement") under which Lear has agreed to pay the amount of $4.75 million in cash and securities.  Lear has also agreed to provide the Direct Purchaser Plaintiffs with certain information that the Direct Purchaser Plaintiffs may use in their prosecution of their remaining claims.  The cooperation provided for under the Settlement Agreement includes: (a) the production by Lear of certain documents and data potentially relevant to Direct Purchaser Plaintiffs' claims; (b) interviews with certain of Lear's officers, directors, and employees; (c) and the assistance of Lear in understanding the information produced to Direct Purchaser Plaintiffs and facilitating the use of such information at trial.

Class Plaintiffs' Co-Lead Counsel agreed to the proposed settlement to ensure a fair and reasonable resolution to this matter, and to provide benefits to the members of the Direct Purchaser Settlement Class while recognizing the existence of complex, contested issues of law and fact (including that Lear is not part of the Department of Justice's investigation and the effect of Lear's emergence from its 2009 Chapter 11 proceedings); the risks inherent in such complex litigation; the likelihood that in the absence of settlement, future proceedings would take several years and be extremely costly; and the magnitude of the benefits resulting from the settlement in light of the possible range of recovery that could be obtained through further litigation, including the risk of no recovery.  Class Plaintiffs' Co-Lead Counsel believe that it is

in the best interests of the Direct Purchaser Settlement Class to enter into the proposed settlement and resolve this litigation as to Lear.

This Notice is only a summary of the terms of the proposed settlement. The Settlement Agreement contains other important provisions, including the release of certain claims against Lear, and you are referred to the Agreement, which is on file with the Clerk of Court and is available on-line at _____.com, for the complete terms of the settlement. The proposed settlement must receive final approval by the Court in order to become effective.

If you are a member of the Direct Purchaser Settlement Class and the proposed settlement is approved and becomes effective, you will be bound by its terms, including the release provisions. If you wish to object to approval of the settlement, you may do so, but only in accordance with the procedures set forth below. If you do not object to the settlement, you do not need to take any action at this time to indicate your support for, or lack of objection to, the settlement.

## HOW DO I REMAIN IN THE SETTLEMENT CLASS AND WHAT HAPPENS IF I DO?

If you are a member of the Direct Purchaser Settlement Class as defined above, you will automatically remain a Settlement Class Member with respect to the Lear settlement unless you elect to be excluded. If you wish to remain in the Direct Purchaser Settlement Class, you do not need to take any action at this time and your interests will be represented by Direct Purchaser Plaintiffs and by Settlement Class Counsel. You will have no responsibility to individually pay attorneys' fees or expenses. Any such fees and expenses will be paid solely from amounts obtained from the Defendants, whether by settlement or judgment, and must be approved by the Court after notice to you and a hearing. If you choose, you may also have your own attorney enter an appearance on your behalf and at your expense.

If you remain in the Direct Purchaser Settlement Class and the final judgment order dismissing Lear from the litigation becomes final and unappealable, you will be bound by that judgment.

As a member of the Direct Purchaser Settlement Class, you will be eligible to share in the Lear Settlement Fund pursuant to a claims procedure that will begin at a later date.   Settlement Class Counsel are not presently asking the Court to distribute the Settlement Fund proceeds to Direct Purchaser Settlement Class Members.  If you remain a member of the Direct Purchaser Settlement Class, you will receive additional notice at a later date and you will have an opportunity to object to and be heard in connection with the proposed plan of distribution at that time.

**Do not dispose of any document that reflects your purchases of Wire Harness Products in the United States directly from any Defendant during the period from January 1, 1990 to May 5 , 2014.  You may need those documents to complete a claim form in the future, which would be subject to inquiry and verification, if the settlement is approved or if damages are otherwise recovered from Lear or another Defendant.**

Settlement Class Counsel also are not seeking payment of attorneys' fees or reimbursement of litigation costs incurred by Settlement Class Counsel at this time.   In connection with seeking final approval of the Lear settlement, Direct Purchaser Plaintiffs will seek permission from the Court to use up to twenty percent (20%) of the Settlement Fund to pay Direct Purchaser Plaintiffs' litigation expenses, including, but not limited to, costs for economic experts, depositions, costs related to document reproduction and review, and other costs incurred in prosecuting the case.

At a later date, Settlement Class Counsel will ask the Court for an award of attorneys' fees and reimbursement of litigation expenses, as well as payment of incentive awards to the class representatives for their service to the Class.   When Settlement Class Counsel seek payment of attorneys' fees, reimbursement of litigation expenses, and incentive awards from the Settlement Fund, you will receive notice and be given an opportunity to object and be heard by the Court at that time.

### **WHAT IF I DO NOT WANT TO REMAIN IN THE SETTLEMENT CLASS?**

If you wish to exclude yourself from the Direct Purchaser Settlement Class, you must send a request for exclusion, in writing, via certified mail, return receipt requested, **postmarked no later than _____, 2014**, to Class Plaintiffs' Co-Lead Counsel, and to counsel for Lear, at the addresses set forth below, and to the following address:

    Wire Harness Products Direct Purchaser Antitrust Litigation
    P.O. Box 5110
    Portland, OR 97208-5110

Your request for exclusion must include the full name and address of the purchaser (including any predecessor or successor entities and any trade names).  You are also requested to identify the Defendant(s) from which you purchased Wire Harness Products during the Class Period, the Wire Harness Products purchased, and the dollar amount of those purchases.  If you validly exclude yourself from the Direct Purchaser Settlement Class you will not be bound by any decision concerning the Lear settlement and you may pursue individually any claims you may have against Lear, but you will not be eligible to share in the Settlement Fund created by the Lear settlement.

**WHEN WILL THE COURT DECIDE WHETHER TO APPROVE THE SETTLEMENT AND HOW CAN I TELL THE COURT WHAT I THINK ABOUT THE SETTLEMENT?**

The Court will hold a hearing on _____, 2014, at _____ __.m., at the Theodore Levin United States Courthouse, 231 West Lafayette Boulevard, Detroit, MI 48226, Courtroom 272, to determine whether the proposed Lear settlement should be approved as fair, reasonable, and adequate. The Court will also consider at the hearing whether to approve Direct Purchaser Plaintiffs' request to utilize a portion of the Settlement Fund to pay Direct Purchaser Plaintiffs' litigation expenses incurred in the prosecution of the case against the non-settling Defendants. The hearing may be continued without further notice.

If you do not exclude yourself from the Direct Purchaser Settlement Class and you wish to object to the Settlement Agreement or Direct Purchaser Plaintiffs' request to utilize a portion of the Settlement Fund to pay Direct Purchaser Plaintiffs' litigation expenses, you must do so in writing. Your objection must include the caption of this litigation, must be signed, and be **filed no later than _____, 2014**, with the Clerk of Court, United States District Court for the Eastern District of Michigan, Southern Division, Theodore Levin United States Courthouse, 231 West Lafayette Boulevard, Detroit, MI 48226, and mailed to the following counsel:

Steven A. Kanner
FREED KANNER LONDON
  &amp; MILLEN LLC
2201 Waukegan Road, Suite 130
Bannockburn, IL  60015
Telephone:  (224) 632-4500

Gregory P. Hansel
PRETI, FLAHERTY, BELIVEAU
  &amp; PACHIOS LLP
One City Center, P.O. Box 9546
Portland, ME  04112-9546
Telephone:  (207) 791-3000

Joseph C. Kohn
KOHN, SWIFT & GRAF, P.C.
One South Broad Street, Suite 2100
Philadelphia, PA  19107
Telephone:  (215) 238-1700

Eugene A. Spector
SPECTOR ROSEMAN KODROFF
  &amp; WILLIS, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone:  (215) 496-0300

*Class Plaintiffs' Co-Lead Counsel*

Howard B. Iwrey                         Andrew S. Marovitz
DYKEMA GOSSETT PLLC                     MAYER BROWN LLP
39577 Woodward Avenue, Suite 300        71 S. Wacker Drive
Bloomfield Hills, MI 48304              Chicago, IL 60606
Telephone: (248) 203-0526              Telephone: (312) 782-0600

*Counsel for Lear Corporation*

If you do not object to the proposed Lear settlement or Direct Purchaser Plaintiffs' request to utilize a portion of the Settlement Fund to pay Direct Purchaser Plaintiffs' litigation expenses, you do not need to appear at the hearing or take any other action at this time.

### WHAT SHOULD I DO IF I WANT ADDITIONAL INFORMATION OR IF MY ADDRESS CHANGES?

If this Notice reached you at an address other than the one on the mailing label, or if your address changes, please send your correct address to the above referenced Post Office Box.

The Settlement Agreement, Complaint, and other public documents filed in this litigation are available for review during normal business hours at the offices of the Clerk of Court, United States District Court for the Eastern District of Michigan, Southern Division, Theodore Levin United States Courthouse, 231 West Lafayette Boulevard, Detroit, MI 48226.  Copies of the Settlement Agreement and certain other documents relevant to this litigation are available at _____.com.  Questions concerning the proposed Lear settlement, this Notice, or the litigation, may be directed to any of the Settlement Class Counsel identified above.

**Please do <u>not</u> contact the Clerk of the Court or the Judge.**

Dated: _____, 2014              BY ORDER OF:

                                          The United States District Court for the Eastern
                                          District of Michigan, Southern Division

10

**IF YOU PURCHASED WIRE HARNESS PRODUCTS DIRECTLY FROM LEAR, DENSO, GS ELECTECH, FUJIKURA, FURUKAWA, SUMITOMO, TOKAI RIKA, OR YAZAKI  BETWEEN JANUARY 1, 2000 AND MAY 5, 2014 YOUR LEGAL RIGHTS MAY BE AFFECTED BY A PROPOSED SETTLEMENT WITH LEAR CORPORATION**

A proposed $4.75 million settlement has been reached in *In re Automotive Parts Antitrust Litigation*, MDL 2311, W:12-cv-00101-MOB-MKM (E.D. Mich.), with defendant Lear Corporation ("Lear").

**What is the lawsuit about?**    This class action litigation, and the proposed settlement, relates solely to Wire Harness Products purchased **directly** from a defendant (as defined below). These proceedings do not relate to, and have no effect upon, cases involving any other product or purchaser.  As detailed below, Lear denies all of the Direct Purchaser Plaintiffs' allegations in this action and has agreed to settle the matter in order to avoid the expense and burden of further litigation.

Wire harnesses are electrical distribution systems used to direct and control electronic components, wiring, and circuit boards in motor vehicles.  "Wire Harness Products," for purposes of the Lear settlement, means wire harnesses and the following related products: automotive electrical wiring, lead wire assemblies, cable bond, automotive wiring connectors, automotive wiring terminals, high voltage wiring, electronic control units, fuse boxes, relay boxes, junction blocks, power distributors, and speed sensor wire assemblies used in motor vehicles.

Direct Purchaser Plaintiffs allege that defendants entered into a conspiracy to suppress and eliminate competition for Wire Harness Products by agreeing to rig bids for, and to raise, fix, stabilize, or maintain the prices of, Wire Harness Products, in violation of federal antitrust laws. Direct Purchaser Plaintiffs further allege that as a result of the conspiracy, they and other direct

purchasers of Wire Harness Products were injured by paying more for those products than they should have paid, and seek recovery of treble damages, together with reimbursement of costs and an award of attorneys' fees.

Lear denies the Direct Purchaser Plaintiffs' allegations, and the Court has not issued any findings or rulings with respect to the merits of Direct Purchaser Plaintiffs' claims or defendants' defenses. This is a settlement with Lear only. The litigation is continuing against the remaining defendants.

**Who is included?** The Settlement Class is composed of purchasers of Wire Harness Products in the United States directly from any defendant during the period from January 1, 2000 through May 5, 2014 (the "Settlement Class Period"). For purposes of the proposed settlement, the following entities are defendants: Denso Corporation; Denso International America, Inc.; Fujikura Ltd.; Fujikura Automotive America LLC; Furukawa Electric Co., Ltd.; American Furukawa, Inc.; Furukawa Wiring Systems America, Inc. f/k/a Furukawa Lear Corporation and Lear Furukawa Corporation; G.S. Electech, Inc., G.S. Wiring Systems Inc., and G.S.W. Manufacturing, Inc.; Lear Corporation; Sumitomo Electric Industries, Ltd.; Sumitomo Wiring Systems, Ltd.; Sumitomo Electric Wiring Systems, Inc.; K&S Wiring Systems, Inc.; Sumitomo Wiring Systems (U.S.A.); Yazaki Corporation; Yazaki North America, Inc.; Tokai Rika Co., Ltd.; and TRAM, Inc.

A Notice of Proposed Settlement ("Notice") was mailed to potential Settlement Class Members on or about _____, 2014. The Notice describes the litigation and options available to Direct Purchaser Settlement Class members with respect to the Lear settlement in more detail. If you have not received the Notice you may obtain a copy on the internet at

_____.com, or by calling or writing to the following Class Plaintiffs' Co-Lead

Counsel:

Gregory P. Hansel                         Joseph C. Kohn
PRETI, FLAHERTY, BELIVEAU                 KOHN, SWIFT & GRAF, P.C.
   & PACHIOS LLP                          One South Broad Street, Suite 2100
One City Center, P.O. Box 9546            Philadelphia, PA  19107
Portland, ME  04112-9546                  Telephone:  (215) 238-1700
Telephone:  (207) 791-3000


Steven A. Kanner                          Eugene A. Spector
FREED KANNER LONDON                       SPECTOR ROSEMAN KODROFF
   & MILLEN LLC                              & WILLIS, P.C.
2201 Waukegan Road, Suite 130             1818 Market Street, Suite 2500
Bannockburn, IL  60015                    Philadelphia, PA  19103
Telephone:  (224) 632-4500                Telephone:  (215) 496-0300

**What does the settlement provide?**  Lear has agreed to pay the amount of $4.75 million

(the "Settlement Fund") and to provide the Direct Purchaser Plaintiffs with information they may

use in the prosecution of their remaining claims.

**Your rights may be affected**.  If you purchased Wire Harness Products in the United

States directly from any defendant during the Class Period, you will automatically remain a

Direct Purchaser Settlement Class member as to the Lear settlement unless you elect to be

excluded.  If you wish to remain in the Direct Purchaser Settlement Class, you do not need to

take any action at this time and your interests will be represented by Direct Purchaser Plaintiffs

and by Class Plaintiffs' Co-Lead Counsel.

If you do not want to be bound by the Lear settlement, you must submit a written request

for exclusion, **postmarked no later than _____, 2014.**  If you validly exclude

yourself from the Direct Purchaser Settlement Class you will not be bound by any decision

concerning the Lear settlement and you can pursue individually any claims you may have against

Lear, but you will not be eligible to share in the Settlement Fund created by the Lear settlement.

If you stay in the Settlement Class, you have the right to object to the proposed Lear settlement and to Direct Purchaser Plaintiffs' request to utilize a portion of the Settlement Fund to pay for litigation expenses, by following the procedures set forth in the Notice.   Your objection must be filed no later than _____, 2014.

The Court has scheduled a hearing on _____, 2014, to consider whether to approve the proposed settlement and Direct Purchaser Plaintiffs' request to utilize a portion of the Settlement Fund to pay Direct Purchaser Plaintiffs' litigation expenses.  The hearing may be continued without further notice.

If you believe you are a member of the Direct Purchaser Settlement Class, you are urged to obtain a copy of the detailed Notice, which discusses your rights regarding the Lear settlement.

If you have questions concerning this litigation, you may contact Class Plaintiffs' Co-Lead Counsel identified above.  **Please do <u>not</u> contact the Clerk of the Court or the Judge.**

Dated: _____, 2014                   BY ORDER OF:

                                                The United States District Court for the Eastern
                                                District of Michigan, Southern Division

**Exhibit D to the Settlement**

### UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| **In Re: AUTOMOTIVE PARTS** | : | **12-MD-02311** |
| **ANTITRUST LITIGATION** | : | **Honorable Marianne O. Battani** |
|  | : |  |
| **In Re: WIRE HARNESS CASES** | : |  |
|  | : |  |
| **THIS RELATES TO:** | : |  |
| **ALL DIRECT PURCHASER CASES** | : | **W:12-cv-00101-MOB-MKM** |

### [PROPOSED] ORDER GRANTING
### PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT, CERTIFYING
### SETTLEMENT CLASS AND AUTHORIZING DISSEMINATION OF NOTICE

THIS MATTER coming to be heard on Direct Purchaser Plaintiffs' Motion for Preliminary Approval of Proposed Settlement with Defendant Lear Corporation and for Authorization to Disseminate Notice to the Direct Purchaser Settlement Class, filed May ___, 2014 (the "Motion"), the Court having reviewed the Motion, its accompanying memorandum and the exhibits thereto, the Settlement Agreement, the pleadings, and other papers on file in this action, hereby finds the motion should be **GRANTED**, as set forth below:

**Preliminary Approval of Settlement**

1.      Terms capitalized in this Order and not otherwise defined herein have the same meanings as those used in the Settlement Agreement.

2.      This Court has jurisdiction over this action and each of the parties to the Settlement Agreement.  Upon review of the record, the Court finds that the proposed settlement, which was arrived at by arm's-length negotiations by highly experienced counsel, falls within the range of possible approval and is hereby preliminarily approved, subject to further consideration at a final approval hearing (the "Fairness Hearing").  The Court further finds there is a sufficient

1

basis for notifying the class of the proposed settlement and for enjoining class members from proceeding in any other action pending the conclusion of the Fairness Hearing.

### Settlement Class Certification

3.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure and in light of the proposed settlement, the Court hereby finds that the prerequisites for a class action have been met and provisionally certifies the following class for settlement purposes only (the "Settlement Class"):

> All individuals and entities that purchased Wire Harness Products in the United States directly from one or more Defendants from January 1, 2000 through May 5, 2014.

4.     The Court finds that the prerequisites to a class action under Rule 23 are satisfied for settlement purposes only in that:

(a)     The Settlement Class is sufficiently numerous and geographically dispersed across the United States so that joinder is sufficiently impracticable, satisfying the numerosity requirement;

(b)     There are sufficient legal and factual issues common to the Settlement Class to meet the commonality requirement, including, but not limited to whether:

- Defendants engaged in a contract, combination, or conspiracy to rig bids for, or to raise, fix, maintain, or stabilize prices of, Wire Harness Products sold in the United States;

- Defendants agreed to allocate the supply of Wire Harness Products sold to direct purchasers in the United States;

- Defendants' conduct caused Wire Harness Products to be sold in the United States at artificially high prices;

- Direct Purchaser Plaintiffs and other members of the Settlement Class were injured by Defendants' conduct, and, if so, the appropriate classwide measure of damages for Settlement Class Members; and

- Direct Purchaser Plaintiffs and other members of the Settlement Class are entitled to injunctive relief and, if so, the nature and extent of such relief.

2

(c)    Direct Purchaser Plaintiffs' and the Settlement Class's claims arise out of the same alleged conduct and are based upon the same legal theories and therefore satisfy the typicality requirement;

(d)    Mexican Industries in Michigan, Inc. by and through Timothy Miller, its Trustee in Bankruptcy; Paesano Connecting Systems, Inc.; Craft-Co Enterprises, Inc.; Findlay Industries, Inc.; Cesar-Scott, Inc.; Martinez Manufacturing, Inc.; and South Star Corporation have retained experienced counsel and do not have interests antagonistic to the class, so these Plaintiffs will fairly and adequately represent the Settlement Class and protect its interests; and

(e)    The Court also finds that common issues predominate over any individual issues affecting the members of the Settlement Class and that settlement of these Actions on a class basis is superior to other means of adjudicating this matter.

<u>**Appointment of Settlement Class Representatives and Counsel**</u>

5.    The Court appoints plaintiffs Mexican Industries in Michigan, Inc. by and through Timothy Miller, its Trustee in Bankruptcy; Paesano Connecting Systems, Inc.; Craft-Co Enterprises, Inc.; Findlay Industries, Inc.; Cesar-Scott, Inc.; Martinez Manufacturing, Inc.; and South Star Corporation  (collectively "Direct Purchaser Plaintiffs") as class representatives of the Settlement Class.

6.    The Court appoints Freed Kanner London & Millen LLC; Kohn, Swift & Graf, P.C.; Preti, Flaherty, Beliveau & Pachios LLP; and Spector Roseman Kodroff & Willis, P.C. to serve as Co-Lead Counsel for the Direct Purchaser Settlement Class ("Class Plaintiffs' Co-Lead Counsel").

<u>**Class Notice**</u>

7.    The Court approves the form and contents of the long form of notice ("Notice") and the Summary Notice ("Summary Notice") attached hereto as Exhibits "A" and "B."

8.    The Court finds that taken together, mailing of the long form of Notice, publication of the Summary Notice, and Internet posting of the Notice and the Summary Notice, are (i) the best practicable notice; (ii) reasonably calculated, under the circumstances, to apprise

settlement class members of the proposed settlement and their right to object or to exclude themselves from the proposed settlement; (iii) reasonable and constitute due, adequate, and sufficient notice to all persons entitled to receive notice; and (iv) meet all applicable requirements of Federal Rule of Civil Procedure 23 and the due process requirements of the Constitution of the United States and any other applicable requirements under federal law.

9.      Notice to members of the Settlement Class, except statutory notice required to be given by Defendants pursuant to 28 U.S.C. § 1715, shall be the responsibility of Class Plaintiffs' Co-Lead Counsel.

10.      Class Plaintiffs' Co-Lead Counsel shall cause the Notice, in substantially the same form as Exhibit "A," to be sent by first class mail, postage prepaid, on or before **[insert date]** to all members of the Settlement Class whose names and addresses can be derived from information produced by Defendants.  The Notice shall be posted on the Internet on a website dedicated to this litigation and shall be provided to all persons who request it in response to the published Summary Notice provided for in Paragraph 7 herein.  Class Plaintiffs' Co-Lead Counsel are hereby directed to cause a Summary Notice, in substantially the same form as Exhibit "B," to be published, on or before **[dates]**, on one occasion in the national edition of *The Wall Street Journal* and in one edition of *Automotive News*. The Summary Notice shall also be posted on the website established by Class Plaintiffs' Co-Lead Counsel in connection with this litigation.  At or before the Final Approval Hearing, Class Plaintiffs' Co-Lead Counsel shall file evidence of the dissemination of notice in accordance with this Order.

11.      The reasonable costs of notification to potential Settlement Class Members, including printing, mailing, and publication of all required notices, shall be paid out of the Settlement Amount.

## Final Approval

12.      Class Plaintiffs' Co-Lead Counsel shall file with the Court and serve on the parties their motion for final approval of the Settlement Agreement and any other appropriate motion papers related to final approval on or before **[insert date]**.

4

13.     The Court will hold a hearing (the "Fairness Hearing") on _____, **2014, at**

_____ **a.m.**, at the Theodore Levin U.S. Courthouse, Courtroom 272, 231 West Lafayette

Blvd., Detroit MI, 48226, to determine the fairness, reasonableness, and adequacy of the

proposed settlement with Lear, whether a final judgment should be entered thereon, and whether

to grant any other appropriate motion papers related to final approval. Any member of the

Settlement Class who follows the procedure set forth in the notices may appear and be heard at

this hearing. The Fairness Hearing may be continued without further notice.

### Exclusion Rights and Procedure

14.     Each class member who follows the procedure set forth in the Notice shall have

the right to be excluded from the Settlement Class by mailing a request for exclusion,

postmarked no later than **[insert date]**.  Requests for exclusion must be in writing and must

otherwise comply with the requirements set forth in the Notice.

15.     Except for those potential members of the Settlement Class who file a timely and

proper request for exclusion, all others will be deemed members of the Settlement Class for all

purposes under the Settlement Agreement.  All members of the Settlement Class shall be bound

by the Settlement Agreement and by all subsequent proceedings, orders, and judgments in this

Action.  No Settlement Class member who elects to opt out of the Settlement Class pursuant to

these provisions will be entitled to relief under or be affected by the Settlement Agreement.

### Objections to the Settlement or to the Request for Expenses

16.     Any Settlement Class Member who has not requested exclusion from the

Settlement Class and who wishes to object to the fairness, reasonableness or adequacy of this

settlement or to the request for expenses must do so no later than **[insert]**.  Any objection must

be in writing and must otherwise comply with the requirements set forth in the Notice.

Settlement Class Members may so act either on their own or through any attorney hired at their

own expense.  Class Plaintiffs' Co-Lead Counsel or Counsel for Lear may file memoranda of

law responding to any objections of members of the Settlement Class filed with the Court.

17.     No person shall be entitled to contest the approval of the terms and conditions of the settlement or the Final Judgment requested therein except by filing and serving written objections in accordance with the provisions of this Order.  Any member of the Settlement Class who does not submit a timely written objection in compliance with all of the procedures set forth in the Notice and this Order will be deemed to and shall have waived all such objections and will, therefore, be bound by all proceedings, orders, and judgments in this case, which will be preclusive in all pending or future lawsuits or other proceedings.

### Other Provisions

18.     Terms used in this Order that are defined in the Settlement Agreement are, unless otherwise defined herein, used in this Order as defined in the Settlement Agreement.

19.     As of the date of the entry of this Order, Direct Purchaser Plaintiffs and all members of the Settlement Class shall be preliminarily enjoined from commencing, prosecuting, or continuing any action against Lear based upon or related to the Released Claims pending Final Approval of the settlement or until such time as this Court lifts such injunction by subsequent order, except in connection with preliminary or final approval of the Lear settlement.

20.     The Court approves the establishment of an escrow account, as set forth in the Settlement Agreement and the Escrow Agreement, as a "Qualified Settlement Fund" pursuant to Treas. Reg. §1.468B-1.  The Court retains continuing jurisdiction over any issues regarding the formation or administration of the escrow account.  Class Plaintiffs' Co-Lead Counsel and their designees are authorized to expend funds from the escrow account to pay taxes, tax expenses, Escrow Account expenses, and Notice costs, as set forth in the Settlement Agreement.

21.     In the event that the Settlement Agreement is terminated in accordance with its provisions, the Settlement Agreement and all proceedings had in connection therewith shall be null and void, except insofar as expressly provided to the contrary in the Settlement Agreement, and without prejudice to the *status quo ante* rights of Direct Purchaser Plaintiffs, Lear, or the members of the Settlement Class.

6

22.     If the Settlement Agreement is terminated or is ultimately not approved, the Court will modify any existing schedule to ensure that the Direct Purchaser Plaintiffs and Lear will have sufficient time to prepare for the resumption of litigation, including but not limited to the completion of discovery, preparation of expert reports, the filing of class certification motion(s), the filing of summary judgment motion(s), and preparation for trial.

23.     The Direct Purchaser Plaintiffs and Lear have agreed, and the Court so orders, that this Settlement Agreement and its contents, including its exhibits, and any and all statements, negotiations, documents, and discussions associated with it, shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing or of the truth of any of the claims, allegations, or defenses contained in the complaints in the Actions or any other pleading or filing, and evidence thereof shall not be discoverable or used, directly or indirectly, in any way, whether in the Actions or in any other action or proceeding.   Neither this Settlement Agreement, nor any of the negotiations or proceedings connected with it, nor any other action taken to carry out its terms by Lear, shall be referred to, offered as evidence, or received in evidence in any pending or future civil, criminal, or administrative action or proceedings, except in a proceeding to enforce this Settlement Agreement, or to defend against the assertion of the Released Claims, or as otherwise required by law.

24.     The Court's provisional certification of the Settlement Class as provided herein is without prejudice to, or waiver of, the rights of any Defendant to contest certification of any other class proposed in these coordinated actions.  The Court's findings in this Order shall have no effect on the Court's ruling on any motion to certify any class in these actions or on the Court's rulings concerning any Defendant's motion; and no party may cite or refer to the Court's approval of the Settlement Class as persuasive or binding authority with respect to any motion to certify any such class or any Defendant's motion.

25.     The litigation against Lear in the Actions is stayed except as provided for in the Settlement Agreement.

7

**IT IS SO ORDERED.**

Dated: _____, 2014                    _____
                                                  HON. MARIANNE O. BATTANI
                                                  UNITED STATES DISTRICT JUDGE

**<u>Annex 2</u>**

**End Payor Settlement Agreement**

KE 28623866

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | | |
|---|---|---|
| ———————————————— | : | |
| In Re: AUTOMOTIVE PARTS | : | **12-MD-02311** |
| ANTITRUST LITIGATION | : | **Honorable Marianne O. Battani** |
| ———————————————— | : | |
| | : | |
| In Re: WIRE HARNESS CASES | : | |
| ———————————————— | : | |
| | : | |
| THIS RELATES TO: | : | |
| ALL END-PAYOR CASES | : | **W:12-cv-00103-MOB-MKM** |
| ———————————————— | : | |

## SETTLEMENT AGREEMENT BETWEEN THE END-PAYOR PLAINTIFF CLASS AND DEFENDANTS LEAR CORPORATION AND KYUNGSHIN-LEAR SALES AND ENGINEERING, LLC

This Settlement Agreement is made and entered into as of the 5th day of May, 2014, by and between defendants Lear Corporation ("Lear") and Kyungshin-Lear Sales and Engineering, LLC ("KL Sales") and the End-Payor Plaintiffs (defined herein) in the above-captioned action, a multidistrict consolidated class action, and each action brought individually and on behalf of a class of end-payor purchasers of Automotive Wire Harness Systems (defined herein) consolidated therein, including without limitation the actions set forth on **Exhibit A** hereto.

WHEREAS, the plaintiffs have alleged that Lear and KL Sales participated in a conspiracy with other manufacturers of Automotive Wire Harness Systems to rig bids for, and to raise, fix, maintain, or stabilize the prices of, Automotive Wire Harness Systems sold in the United States from at least as early as January 1, 2000, until at least February 28, 2010, in violation of the antitrust laws of the United States and various State antitrust, consumer protection, and unjust enrichment laws;

WHEREAS, Lear and KL Sales each deny the allegations in plaintiffs' complaints, have asserted affirmative defenses against the claims alleged in the Actions (defined herein), and deny any liability whatsoever;

1

WHEREAS, Lear represents that it never received a subpoena in connection with the Department of Justice's recent investigation into automotive wire harness collusion, never was identified as the subject or target of any such investigation, never was indicted, never pled guilty to any crime, and never was named in or implicated by the guilty pleas entered by other defendants;

WHEREAS, KL Sales represents that it never received a subpoena in connection with the Department of Justice's recent investigation into automotive wire harness collusion, never was identified as the subject or target of any such investigation, never was indicted, never pled guilty to any crime, and never was named in or implicated by the guilty pleas entered by other defendants;

WHEREAS, in November 2011, Lear moved the Bankruptcy Court (defined herein) for entry of an order enforcing the discharge and injunction entered in connection with the Bankruptcy Court's confirmation of Lear's reorganization Plan (defined herein), which would have the effect of barring the Actions in whole or substantial part;

WHEREAS, that motion has been briefed, argued, and is pending before the Bankruptcy Court;

WHEREAS, End-Payor Plaintiffs, on behalf of themselves and the Settlement Class Members (defined herein), Lear, and KL Sales agree that this Settlement Agreement shall not be deemed or construed to be an admission or evidence of the truth of any of plaintiffs' claims or allegations in the Actions;

WHEREAS, arm's-length settlement negotiations have taken place between Class Plaintiffs' Co-Lead Counsel (defined herein) and Lear and KL Sales, respectively, and this Settlement Agreement, including its exhibits, embodies all of the terms and conditions of the good-faith settlement between Lear, KL Sales, and End-Payor Plaintiffs, both individually and on behalf of the Settlement Class Members, and has been reached as a result of the parties' negotiations, subject to approval of the Court (defined herein) as provided herein;

WHEREAS, the parties recognize that because of joint and several liability, the Settlement Agreement with Lear and KL Sales does not impair End-Payor Plaintiffs' ability to collect from others the full amount of damages to which they and the Settlement Class claim entitlement in these Actions;

WHEREAS, Class Plaintiffs' Co-Lead Counsel (defined herein) have concluded, after due investigation and after carefully considering the relevant circumstances, including, without limitation, the claims asserted in the complaints filed in the Actions, the legal and factual defenses thereto, and the applicable law, that it would be in the best interests of the Settlement Class (defined herein) to enter into this Settlement Agreement in order to avoid the uncertainties of litigation and to assure that the benefits reflected herein are obtained for the Settlement Class and, further, that Class Plaintiffs' Co-Lead Counsel consider the settlement set forth herein to be fair, reasonable, adequate, and in the best interests of the Settlement Class; and

WHEREAS, Lear and KL Sales have agreed to enter into this Settlement Agreement in order to avoid the expenses, risk, and burden of further litigation, to obtain the releases, orders, and judgment contemplated by this Settlement Agreement, and to put to rest with finality all claims that have been or could have been asserted against them based on the allegations in plaintiffs' complaints;

NOW, THEREFORE, in consideration of the agreements herein set forth, it is agreed by and among the undersigned that the claims of the End-Payor Plaintiffs and the Settlement Class Members be settled, compromised, and dismissed on the merits and with prejudice as to Lear, KL Sales, and all other Released Parties (defined herein) and, except as hereafter provided, without costs against the Settlement Class, Lear, or KL Sales, subject to the approval of the Court, on the following terms and conditions:

1.    <u>Definitions</u>.

The following capitalized terms, as used in this Settlement Agreement, have the following meanings:

a.    "*Actions*" means the end-payor antitrust class actions consolidated under the caption *In re Automotive Parts Antitrust Litigation, Wire Harness Cases,* Master Case No. 12-cv-00103 (MOB), currently pending in the United States District Court for the Eastern District of Michigan, Southern Division.

b.    "*Automotive Wire Harness Systems*" for purposes of this Settlement Agreement only, has the same definition as set forth in ¶ 3 of the Complaint, specifically "automotive electrical distribution systems used to direct and control components, wiring, and circuit boards in an automotive vehicle…. Automotive Wire Harness Systems include the following:  automotive electrical, lead wire assemblies, cable bond, automotive wiring connectors, automotive wiring terminals, electronic control units, fuse boxes, relay boxes, junction blocks, power distributors, and speed sensor wire assemblies"; *provided*, *however*, that for purposes of paragraphs 5 and 22 hereof, the term shall be limited to Automotive Wire Harness Systems as and to the extent used by Lear and/or KL Sales in their manufacture of automotive wire harnesses.

c.    "*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of New York.

d.    "*Bankruptcy Reserve*" means the assets held in reserve pursuant to Article VI.B.3 of the Plan on account of disputed claims against the Debtors that became or become "Allowed Claims" (as defined in the Plan) subsequent to the the Plan Effective Date.

e.    "*Bankruptcy Reserve Settlement Proceeds*" means New Common Stock and Other General Unsecured Claims Warrants with a market value, in the aggregate, of two million, nine hundred eleven thousand, three hundred sixty US Dollars ($2,911,360 USD),

4

measured using the closing trading price of New Common Stock on the Execution Date to be paid as set forth in paragraph 7 herein and as may be adjusted as set forth in paragraph 8 herein.

f.      "*Class Plaintiffs' Co-Lead Counsel*" means the law firms of Cotchett, Pitre & McCarthy LLP, San Francisco Airport Office Center, 840 Malcolm Road, Suite 200, Burlingame, CA 94010; Robins, Kaplan, Miller & Ciresi L.L.P., 601 Lexington Avenue, Suite 3400, New York, NY 10022; and Susman Godfrey LLP, 1901 Avenue of the Stars, Suite 950, Los Angeles, CA 90067.

g.      "*Complaint*" means End-Payor Plaintiffs' Corrected Third Amended Consolidated Class Action Complaint, Dkt. 192, filed April 10, 2014.

h.      "*Court*" means the United States District Court for the Eastern District of Michigan where the Actions are pending.

i.      "*Debtors*" shall mean, collectively, Lear Corporation; Lear #50 Holdings, LLC; Lear Argentine Holdings Corporation #2; Lear Automotive Dearborn, Inc.; Lear Automotive Manufacturing, LLC; Lear Canada; Lear Canada Investments Ltd.; Lear Corporation (Germany) Ltd.; Lear Corporation Canada Ltd.; Lear Corporation EEDS and Interiors; Lear Corporation Global Development, Inc.; Lear EEDS Holdings, LLC; Lear European Operations Corporation; Lear Holdings, LLC; Lear Investments Company, LLC; Lear Mexican Holdings Corporation; Lear Mexican Holdings, LLC; Lear Mexican Seating Corporation; Lear Operations Corporation; Lear Seating Holdings Corp. #50; Lear South Africa Limited; Lear South American Holdings Corporation; Lear Trim L.P.; and Renosol Seating, LLC.

j.      "*Defendant*" means any person or entity named as a defendant in the Complaint.

k.      "*Document*" is defined to be synonymous in meaning and equal in scope to the usage of this term in Fed. R. Civ. P. 34(a), including, without limitation, electronic or computerized data compilations.  A draft or non-identical copy is a separate document within the meaning of this term.

l.        "*Effective Date*" means the date on which Final Approval of this settlement has been obtained.

m.       "*End-Payor Plaintiffs*" means each plaintiff named in the Complaint.

n.        "*Escrow Account*" means the account or accounts meeting the requirements of Treas. Reg. § 1.468B-1(c)(3) to be established by Class Plaintiffs' Co-Lead Counsel for receipt of the Settlement Amounts to be paid by Lear and KL Sales pursuant to this Settlement Agreement.

o.        "*Escrow Agent*" means the escrow agent responsible for administering the Escrow Account.

p.        "*Execution Date*" means the date first appearing above.

q.        "*Final Approval*" means the first date upon which all of the following three conditions shall have been satisfied:

      i.    This settlement has been approved in all respects by the Court as required by Rule 23(e) of the Federal Rules of Civil Procedure;

      ii.   Entry has been made, as provided in paragraph 6 hereof, of the final judgment of dismissal that shall be provided in advance to and agreed to by Lear and KL Sales; and

      iii.  Either (a) the time to appeal, or to seek permission to appeal, the Court's approval of the settlement as described in (i) hereof and entry of final judgment as described in (ii) hereof has expired with no appeal having been taken or permission to appeal having been sought; or (b) such approval and final judgment have been affirmed in their entirety by the court of last resort to which any appeal has been taken or petition for review has been presented, and such affirmance has become no longer subject to the possibility of further appeal or review.  It is agreed that in determining the times for appeal, further appeal, or review, the provisions

of Fed. R. Civ. P. 60 and of the All Writs Act, 28 U.S.C. § 1651, shall not be taken into account.

r.     "*Final Bankruptcy Order*" shall mean a Final Order authorizing and approving Lear's distribution of assets as contemplated in this Settlement Agreement in an amount equivalent to the Bankruptcy Reserve Settlement Proceeds from the Bankruptcy Reserve to the Escrow Account for the purpose of settling the Actions pursuant to the terms of this Settlement Agreement.

s.     "*Final Order*" shall mean an order or judgment of a court of competent jurisdiction with respect to the subject matter, which has not been reversed, stayed, modified, or amended, and as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or has otherwise been dismissed with prejudice.

t.     "*Indirect Purchaser States*" for purposes of this Settlement Agreement only means Arizona, Arkansas, California, District of Columbia, Florida, Hawaii, Iowa, Kansas, Maine, Massachussetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin.

u.     "*Liquidation Date*" shall mean the date on which the End-Payor Plaintiffs liquidate or cause liquidation of the Bankruptcy Reserve Settlement Proceeds.

v.     "*Motion*" as used in paragraph 4 herein means a motion for preliminary approval of the settlement contemplated by this Settlement Agreement and for a stay of all proceedings in the Actions against Lear and KL Sales until the Court renders a final decision regarding the approval of the settlement and, if it approves the settlement, enters the final judgment.

w.      "*Notice Costs*" means the fees and costs necessary to provide notice of the settlement to Settlement Class members.

x.      "*Plaintiffs' Counsel*" means those attorneys or law firms retained as counsel for any of the plaintiffs in any of the Actions.

y.      "*Plan*" means, collectively, (a) the Debtors' joint plan of reorganization under chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101-1531, either in its present form, or as it may be altered, amended, modified, or supplemented from time to time in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure or the terms thereof, and (b) the supplements to the Plan filed with the Bankruptcy Court in conjunction with the Plan, and which were incorporated therein by reference.

z.      "*Plan Effective Date*" means November 9, 2009.

aa.      "*Released Claims*" shall have the meaning set forth in paragraphs 18 and 19 hereof.

bb.      "*Released Parties*" shall refer jointly and severally, individually and collectively to Lear Corporation; the Debtors; Kyungshin-Lear Sales and Engineering, LLC; the present and former direct and indirect parents, owners, subsidiaries, divisions, affiliates, or associates (as defined in SEC Rule 12b-2 promulgated pursuant to the Securities Exchange Act of 1934), of any of the foregoing; the present and former officers, directors, employees, agents, attorneys, servants, representatives, non-Defendant stockholders other than Lear, members, managers, and partners of any of the above entities (with respect to any conduct of any of the above entities, except that Furukawa Electric Co., Ltd., American Furukawa, Inc., Furukawa Wiring Systems America, Inc., Lear Furukawa Corporation, Furukawa Lear Corporation, and Furukawa Automotive Systems Inc. are not Released Parties); and the predecessors, heirs, executors, administrators, successors, and assigns of any of the above persons or entities.

cc.      "*Releasing Parties*" shall refer jointly and severally, individually and collectively to End-Payor Plaintiffs and the Settlement Class Members, as well as each of their past and present officers, directors, members, managers, agents, employees, legal

representatives, trustees, parents, affiliates, heirs, executors, administrators, purchasers, predecessors, successors, and assigns (and the parents', subsidiaries', and affiliates' past and present officers, directors, agents, employees, legal representatives, trustees, parents, affiliates, heirs, executors, administrators, and purchasers) and officers, directors, agents, employees, legal representatives, trustees, parents, affiliates, heirs, executors, administrators, purchasers, predecessors, successors, and assigns of each of the foregoing.

dd.    "*Settlement Agreement*" means this agreement by and between Lear, KL Sales, and End-Payor Plaintiffs, both individually and on behalf of the Settlement Class Members.

ee.    "*Settlement Amounts*"

i.    "*Lear Settlement Amount*" means a total, as of the Execution Date, of three million, forty thousand US Dollars ($3,040,000 USD) comprised of (1) a cash payment of one hundred twenty eight thousand, six hundred forty US Dollars ($128,640 USD) and (2) the Bankruptcy Reserve Settlement Proceeds to be paid as set forth in paragraph 7 herein.

ii.    "*KL Sales Settlement Amount*" means a total of two hundred twenty-eight thousand US Dollars ($228,000 USD).

iii.    The Lear Settlement Amount and the KL Sales Settlement Amount shall collectively be referred to as the "Settlement Amounts."

ff.    "*Settlement Class*" for purposes of this Settlement Agreement only shall mean "all persons and entities from January 1, 2000 through the Execution Date who:  (1) purchased or leased a new motor vehicle in the United States for personal use and not for resale which included one or more Automotive Wire Harness System(s) as a component part, which were manufactureed or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of the Defendants, or (2) indirectly purchased one or more Automotive Wire Harness System(s) as a replacement part, which were manufactured or sold by a Defendant, any current or fomer subsisdiary of a Defendant, or any co-conspirator of the Defendants."  Excluded

from the Settlement Class are Defendants, their parent companies, subsidiaries, and affiliates, any co-conspirators, federal government entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased Automotive Wire Harness Systems directly for resale.

gg.    "*Settlement Class Member*" or "*Settlement Class Members*" means, individually or collectively, members of the Settlement Class who do not timely and validly request exclusion from the Settlement Class in accordance with paragraph 9 hereof.

hh.    "*Settlement Fund*" means the collective dollar amount of the Settlement Amounts plus any interest earned thereon after payment thereof by Lear and KL Sales into the Escrow Account.

ii.    "*Settlement Hearing*" means the final approval hearing scheduled by the Court to consider the fairness, adequacy, and reasonableness of the proposed settlement.

2.    <u>Reasonable Best Efforts to Effectuate this Settlement</u>.    Class Plaintiffs' Co-Lead Counsel agree to recommend approval of this settlement by the Court and by Settlement Class Members without qualification or condition not set forth herein.    Class Plaintiffs' Co-Lead Counsel, Settlement Class Members, and counsel for Lear and KL Sales agree to undertake their reasonable best efforts, including, without limitation, all steps and efforts contemplated by this Settlement Agreement and any other steps and efforts that may become necessary or appropriate by order of the Court or otherwise, to carry out the terms of this Settlement Agreement and to obtain Final Approval of this Settlement Agreement.    The Court's certification of the Settlement Class as provided herein is without prejudice to, or waiver of: (i) the rights of any non-settling Defendant to contest certification of any putative class proposed in the consolidated actions; or (ii) the rights or arguments asserted by any Defendant in defending against such claims.    The Court's findings and rulings in connection with this settlement shall have no effect on the Court's ruling on any motion to certify any class in the Actions or any other action, and no party may cite or refer to the Court's approval of the Settlement Class as persuasive or binding

authority with respect to any motion to certify any class or with respect to any defense asserted by any Defendant.

3.    <u>Approval by the Bankruptcy Court</u>.    The effectiveness of this Settlement Agreement as to Lear and Lear's obligation to pay the Lear Settlement Amount shall be subject to and contingent upon the entry of a Final Bankruptcy Order authorizing Lear to distribute the Bankruptcy Reserve Settlement Proceeds to the Escrow Account.    If no such Final Bankruptcy Order is entered as provided in this paragraph, the Settlement Agreement as to Lear shall be immediately and automatically terminated (excepting paragraphs 13, 23, 28, and 29 hereof), with no further action required by the parties, and all proceedings had in connection therewith shall be null and void, without prejudice to the *status quo ante* rights of End-Payor Plaintiffs, Settlement Class Members, or Lear, including without limitation for purposes of the Debtors' *Motion for Entry of an Order (A) Enforcing Chapter 11 Plan Discharge and Injunction and (B) Directing Dismissal of Pending Litigation* [Docket No. 1660 - Case No. 09-14326 (ALG)] pending before the Bankruptcy Court and all pleadings and proceedings related thereto.    In that event, all negotiations and proceedings connected with this Settlement Agreement shall be without prejudice to the rights of any party hereto, shall not be deemed or construed to be an admission by any party of any fact or matter, and shall not be used with respect to Lear in any way in the Actions or in any related actions or proceedings, including without limitation, for the avoidance of doubt, in connection with any assertion by the End-Payor Plaintiffs, on behalf of themselves or the Settlement Class, of any claim (as defined in section 101(5) of the Bankruptcy Code) against the Debtors in their voluntary cases pending before the Bankruptcy Court pursuant to chapter 11 of title 11 of the United States Code, unless Lear and Class Plaintiffs' Co-Lead Counsel agree in writing to proceed with the settlement as and if modified by the Court. Similarly, if a Final Bankruptcy Order is not entered in connection with Lear's settlements or settlement agreements (or any part thereof) with the putative class plaintiffs in the matters captioned *In re Automotive Parts Antitrust Litigation / In re Wire Harness Cases,* Case No. 12-CV-101 ("Direct Purchaser Plaintiffs") and *In re Automotive Parts Antitrust Litigation / In re*

*Wire Harness Cases,* Case No. 12-CV-102 ("Dealership Plaintiffs"), this Settlement Agreement as to Lear shall be immediately and automatically terminated (excepting paragraphs 13, 23, 28, and 29 hereof), with no further action required by the parties, and all proceedings had in connection therewith shall be null and void, without prejudice to the *status quo ante* rights of End-Payor Plaintiffs, Settlement Class Members, or Lear, including without limitation for purposes of the Debtors' *Motion for Entry of an Order (A) Enforcing Chapter 11 Plan Discharge and Injunction and (B) Directing Dismissal of Pending Litigation* [Docket No. 1660 - Case No. 09-14326 (ALG)] pending before the Bankruptcy Court and all pleadings and proceedings related thereto.  In that event, all negotiations and proceedings connected with this Settlement Agreement shall be without prejudice to the rights of any party hereto, shall not be deemed or construed to be an admission by any party of any fact or matter, and shall not be used with respect to Lear in any way in the Actions or in any related actions or proceedings, including without limitation, for the avoidance of doubt, in connection with any assertion by the End-Payor Plaintiffs, on behalf of themselves or the Settlement Class, of any claim (as defined in section 101(5) of the Bankruptcy Code) against the Debtors in their voluntary cases pending before the Bankruptcy Court pursuant to chapter 11 of title 11 of the United States Code, unless Lear and Class Plaintiffs' Co-Lead Counsel agree in writing to proceed with the settlement as and if modified by the Court.  If this Settlement Agreement is rescinded, cancelled, or terminated as to Lear in accordance with this paragraph 3, the Escrow Agent shall, within ten (10) business days of termination of the Settlement Agreement, refund (1) the $128,640 Cash Payment (including any and all income earned thereon) to Lear and (2) the Bankruptcy Reserve Settlement Proceeds (including any and all income earned thereon), less any expenditures (allocated between Lear and KL Sales on a pro rata basis) authorized pursuant to paragraph 13 of this Settlement Agreement that were paid out of the Settlement Fund prior to termination, to Lear for redeposit in the Bankruptcy Reserve.

4.    <u>Motion for Preliminary Approval</u>.    Within twenty (20) days of the Final Bankruptcy Order as set forth in paragraph 3 hereto, End-Payor Plaintiffs shall submit to the

Court, in a form mutually agreed upon by counsel for Lear, KL Sales, and Class Plaintiffs' Co-Lead Counsel, a motion for preliminary approval of the settlement contemplated by this Settlement Agreement and for a stay of all proceedings in the Actions against Lear and KL Sales until the Court renders a final decision regarding the approval of the settlement and, if it approves the settlement, enters the final judgment. The Motion shall include the proposed form of order preliminarily approving this settlement substantially in the form of **Exhibit B** hereto that shall be provided to and agreed to by Lear and KL Sales. Lear and KL Sales shall not unreasonably withhold their agreement to the Motion and proposed form of order preliminarily approving this settlement. If no Final Bankruptcy Order is entered as provided in paragraph 3, the Motion contemplated by this paragraph 4 shall be limited to KL Sales and shall be filed within twenty (20) days of the entry of an order by the Bankruptcy Court denying Lear's request for issuance of the Final Bankruptcy Order.

5.    Notice to Settlement Class. In the event that the Court preliminarily approves the settlement, Class Plaintiffs' Co-Lead Counsel shall, in accordance with Rule 23 of the Federal Rules of Civil Procedure and the Court's Order, provide each Settlement Class Member who can be identified by reasonable means with notice in a reasonable manner as approved by the Court, the proposed plan of distribution of the settlement proceeds among the Settlement Class Members, and the date of the Settlement Hearing. In order to mitigate the costs of notice, End-Payor Plaintiffs shall endeavor, if practicable, to disseminate notice of this settlement with notice of any other settlements that are reached with any other Defendant. Prior to providing notice pursuant to this paragraph, End-Payor Plaintiffs shall submit to the Court within a reasonable period of time following preliminary approval, as determined in good faith by Class Plaintiffs' Co-Lead Counsel, consistent with the parties' goal of obtaining Final Approval of this settlement, a motion, subject to review by Lear and KL Sales and consistent with the content of this Settlement Agreement, for authorization to disseminate notice of the settlement to all Settlement Class Members (the "Notice Motion"). The Notice Motion shall include a proposed form of, method for, and date of dissemination of notice. End-Payor Plaintiffs shall take all

necessary and appropriate steps to ensure that notice is provided in accordance with the order of the Court.  In addition:

    a.  Lear and KL Sales agree to permit a maximum of one hundred twenty-five thousand US dollars ($125,000 USD) of the Settlement Fund to be used towards Notice Costs.  Funds expended pursuant to this paragraph may be paid without further approval from the Court and, in accordance with the provisions of paragraph 13, any amounts expended for Notice Costs are not recoverable if this settlement does not become final or is terminated.

    b.  In no event shall Lear and/or KL Sales be responsible for giving notice of this settlement to members of the Settlement Class or for the administration of the Settlement Fund, including but not limited to the expense and cost of such notice and claims administration, except insofar as provided in this Settlement Agreement.

    c.  If and to the extent a claims administrator is selected to administer any distribution from the Settlement Fund, that claims administrator shall determine through an audit process of claims filed that claimants qualify as Settlement Class Members.

    6.   <u>Motion for Entry of Final Judgment</u>.  End-Payor Plaintiffs shall submit, in a form mutually agreed upon by counsel for Lear, KL Sales, and Class Plaintiffs' Co-Lead Counsel, a motion for final approval of the settlement by the Court, after notice to the members of the Settlement Class of the Settlement Hearing, and shall seek entry of an order and final judgment, which shall be provided in advance to and agreed to by Lear and KL Sales:

    a.  certifying the Settlement Class described in paragraph 1.ff., pursuant to Rule 23 of the Federal Rules of Civil Procedure, solely for purposes of this settlement as a settlement class;

    b.  fully and finally approving the settlement contemplated by this Settlement Agreement and its terms as being a fair, reasonable, and adequate settlement as to

the Settlement Class within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation pursuant to its terms and conditions;

c.  directing that the Actions be dismissed with prejudice as to Lear and KL Sales, and, except as provided for herein, without costs;

d.  discharging and releasing the Released Parties from all Released Claims;

e.  reserving continuing and exclusive jurisdiction over the settlement, including its administration; and

f.  determining pursuant to Fed. R. Civ. P. 54(b) that there is no just reason for delay and directing that the judgment of dismissal of the Actions as to Lear and KL Sales shall be final and appealable.

Lear and KL Sales shall not unreasonably withhold their agreement to the motion for final approval of the settlement and the proposed order of final judgment.

7.  <u>Settlement Consideration and Payment</u>.  As soon as reasonably practicable but in no event later than five (5) business days after the Execution Date, and in full, complete, and final settlement of the Actions as provided herein, Lear shall cause the Lear Settlement Amount and KL Sales shall cause the KL Sales Settlement Amount to be deposited into the Escrow Account as follows:

a.  **Cash Payment.**  Lear shall deposit one hundred twenty-eight thousand, six hundred forty US Dollars ($128,640 USD) into the Escrow Account (the "Cash Payment").  KL Sales shall deposit the full amount of the KL Sales Settlement Amount into the Escrow Account.  In the event that the foregoing deadline falls on a Saturday, Sunday, or U.S. bank holiday, the deadline will be extended to the next business day.  The payments shall be made by wire transfer in immediately available funds.

b.  **Proceeds of Bankruptcy Claim.**  Except as provided to the contrary in paragraph 3, the Settlement Class shall have, without the need to file a proof of claim against Lear in the Bankruptcy Court or seek to have any claim allowed on a class basis, a

prepetition claim (which will be deemed an Allowed Other General Unsecured Claim (as defined in the Plan) in that class of claims designated in the Plan as Class 5A), in an amount such that, upon distribution on account of such claim in accordance with this Settlement Agreement, the Settlement Class shall receive the Bankruptcy Reserve Settlement Proceeds; *provided* that, for the avoidance of doubt and without limiting the generality of paragraph 3 above, if a Final Bankruptcy Order is not entered, the Settlement Class shall have no such claim, nor right to assert such claim absent entry of a Final Order authorizing it to do so. On account of such claim, Lear shall cause a distribution of the Bankruptcy Reserve Settlement Proceeds to be deposited into the Escrow Account. For the avoidance of doubt, neither the End-Payor Plaintiffs nor the Settlement Class Members, nor anyone acting on their behalf, shall receive, in connection with this distribution or otherwise, any additional escrow CUSIP with respect to or right to any future distributions out of the Bankruptcy Reserve.

8.    <u>Net Lear Settlement Amount</u>. The End-Payor Plaintiffs shall cause the liquidation of the New Common Stock and Other General Unsecured Claims Warrants deposited by Lear into the Escrow Account ("Stock and Warrants"), which shall be at least equal to the Bankruptcy Reserve Settlement Proceeds, to occur as promptly as practicable upon distribution into the Escrow Account. If, following such liquidation, the value of the liquidated Stocks and Warrants plus the Cash Payment is less than the Lear Settlement Amount plus any reasonable out-of-pocket costs and capital gains tax in liquidating the Stocks and Warrants, then Lear shall cause additional New Common Stock and Other General Unsecured Claims Warrants from the Bankruptcy Reserve or an additional Cash Payment, at Lear's sole discretion, to be distributed to the Escrow Account (and End-Payor Plaintiffs immediately will liquidate, if necessary, such proceeds upon receipt) until the aggregate value of the liquidated Stocks and Warrants plus Cash Payment equals the Lear Settlement Amount plus the reasonable out-of-pocket costs and capital gains tax in liquidating the Stocks and Warrants. If, on the other hand, the value of the

liquidated Stocks and Warrants plus the Cash Payment is greater than the Lear Settlement Amount plus any reasonable out-of-pocket costs and capital gains tax in liquidating the Stocks and Warrants then the End-Payor Plaintiffs shall cause the Escrow Agent to pay to Lear, in cash, the amount of such excess as soon as practicable following the Liquidation Date.  The parties agree that the agreement establishing and governing administration of the Escrow Account shall provide that, for the avoidance of doubt, subsequent to transfer to the End-Payor Plaintiffs from the Escrow Account of the Settlement Fund, the End-Payor Plaintiffs shall transfer to Lear any amounts remaining in the Escrow Account, net of any reasonable out-of-pocket costs and capital gains tax in liquidating the Stocks and Warrants.

9.    Exclusions.  Any person or entity seeking exclusion from the Settlement Class must file a timely written request for exclusion.  Any person or entity that files such a request shall be excluded from the Settlement Class and shall have no rights with respect to this settlement.  A request for exclusion that does not comply with all of the provisions set forth in the class notice, including but not limited to not containing all of the requested information, not bearing the proper signature, being sent to an address other than the one designated, or not being sent within the time specified, will, subject to the Court's review, be invalid, and the person(s) or entity serving such an invalid request shall be deemed Settlement Class Member(s) and shall be bound by this Settlement Agreement upon Final Approval.  The request must be mailed to Class Plaintiffs' Co-Lead Counsel, counsel for Lear, and counsel for KL Sales at the addresses provided in the class notice, and postmarked no later than sixty (60) days after the date on which written notice of this settlement is first given to the Settlement Class or any other date set by the Court.  Class Plaintiffs' Co-Lead Counsel, counsel for Lear, and counsel for KL Sales shall promptly forward to each other complete copies of all requests for exclusion, as they are received.  To the extent a claims administrator is retained to administer any distribution of the Settlement Fund, Class Plaintiffs' Co-Lead Counsel are responsible for promptly providing such claims administrator with copies of any requests for exclusion received pursuant to this paragraph.  Further, Class Plaintiffs' Co-Lead Counsel shall, within ten (10) business days after

the Court-ordered deadline for timely requests for exclusion from the Settlement Class, cause to be provided to counsel for Lear and counsel for KL Sales a list of those Settlement Class members who have timely excluded themselves from the Settlement Class.  With respect to any potential Settlement Class member who validly requests exclusion from the Settlement Class, Lear and KL Sales reserve all of their legal rights and defenses, including but not limited to any defenses relating to whether the excluded Settlement Class member is an indirect purchaser of Automotive Wire Harness Systems and/or has standing to bring any claim against Lear or KL Sales.  Within twenty (20) business days following the deadline for the submission of requests for exclusion from the Settlement Class in accordance with the terms of this paragraph, or as soon thereafter as practicable, the parties shall determine the total number of persons and entities in the Indirect Purchaser States from January 1, 2000 through the Execution Date that:  (1) purchased or leased a new motor vehicle for personal use and not for resale that included an Automotive Wire Harness System manufactured or sold by a Defendant or any current or former subsidiary or affiliate thereof or any co-conspirator identified to counsel for Lear and KL Sales by Class Plaintiffs' Co-Lead Counsel, or (2) indirectly purchased an Automotive Wire Harness System as a replacement part, which was manufactured or sold by a Defendant or any current or former subsidiary or affiliate thereof or any co-conspirator identified to counsel for Lear and KL Sales by Class Plaintiffs' Co-Lead Counsel (defined as "Total Number of Damages Class Members" for purposes of calculating the Total Opt-Out Percentage defined below).  The parties shall determine the Total Number of Damages Class Members based upon reasonably available public information.   In the event that the parties mutually agree that non-public information is required to determine the Total Number of Damages Class Members, the parties shall identify an appropropriate source of, and Lear shall pay for, the reasonable costs incurred in securing the necessary information.  Within ten (10) business days following the determination of the Total Number of Damages Class Members, the parties shall calculate the percentage of the Total Number of Damages Class Members that have validly and timely requested to be excluded from the Settlement Class ("Total Opt-Out Percentage"), provided that Lear and KL Sales,

respectively, shall have the sole option to waive the calculation and, by doing so, waive its termination rights under this paragraph.  The Total Opt-Out Percentage is a fraction, the numerator of which is the Total Number of Damages Class Members that have validly and timely requested to be excluded from the Settlement Class, and the denominator of which is the Total Number of Damages Class Members.  In the event that the Total Opt-Out Percentage exceeds the percentage set forth in a separate confidential side letter agreement, Lear and KL Sales shall each, at their sole discretion, have the option to rescind, cancel, and terminate this Settlement Agreement (excepting paragraphs 13, 23, 28, and 29 hereof) as with respect to them; *provided*, *however*, that (i) these termination rights shall be exercised within five (5) business days of the receipt of Total Opt-Out Percentage calculation or be deemed waived and (ii) the party exercising their termination rights shall have the burden of demonstrating that the Total Opt-Out Percentage has been met.  Lear and KL Sales' respective termination rights regarding the End-Payor Plaintiffs, members of the Settlement Class, and the Total Opt-Out Percentage are fully set forth in the confidential side letter. If either Lear or KL Sales elects to rescind, cancel, and/or terminate this Settlement Agreement in accordance with this paragraph 9 (the "Terminating Party") as it relates to each of them, the Escrow Agent shall, within ten (10) business days of termination of the Settlement Agreement with respect to the Terminating Party, refund to the Terminating Party the portion of the Settlement Fund (including any and all income earned thereon) paid by the Terminating Party, less only any taxes paid or owed on the earnings of the Settlement Fund, any reasonable out-of-pocket costs and capital gains tax in liquidating the Stocks and Warrants, and any Notice Costs or other expenditures authorized by this Settlement Agreement that were paid out of the Settlement Fund prior to termination.  The parties expressly reserve all of their rights if the settlement does not become final in accordance with the terms of this Settlement Agreement or if it is rescinded or terminated by Lear and/or KL Sales pursuant to this paragraph.  Specifically, all negotiations and proceedings connected with this Settlement Agreement shall be without prejudice to the rights of any party hereto, including without limitation, specifically, the *status quo ante* rights of End-Payor Plaintiffs, Settlement

Class Members, Lear, or KL Sales, including without limitation for purposes of the Debtors' *Motion for Entry of an Order (A) Enforcing Chapter 11 Plan Discharge and Injunction and (B) Directing Dismissal of Pending Litigation* [Docket No. 1660 - Case No. 09-14326 (ALG)] pending before the Bankruptcy Court and all pleadings and proceedings related thereto, shall not be deemed or construed to be an admission by any party of any fact or matter, and shall not be used with respect to any party as to which this Settlement Agreement has been terminated in any way in the Actions or in any related actions or proceedings, including without limitation, for the avoidance of doubt, in connection with any assertion by the End-Payor Plaintiffs, on behalf of themselves or the Settlement Class, of any claim (as defined in section 101(5) of the Bankruptcy Code) against the Debtors in their voluntary cases pending before the Bankruptcy Court pursuant to chapter 11 of title 11 of the United States Code, unless the respective parties agree in writing to proceed with the settlement as and if modified by the Court.

10.    Investment of Settlement Fund.  All payments into the Escrow Account shall, when made, be invested in United States Government Treasury obligations or United States Treasury money market funds; *provided, however,* that such portions of the Settlement Fund as may reasonably be needed to pay current expenses associated with providing notice to the Settlement Class pursuant to paragraph 5 hereof, and any other amounts approved by the Court following Final Approval, may be deposited in a federally insured interest-bearing bank account. Any interest earned on any of the foregoing shall become part of the Settlement Fund.  Neither Lear nor KL Sales shall have any responsibility for, or liability in connection with, the Settlement Fund, including, without limitation, the investment, administration, maintenance, or distribution thereof.

11.    Custody of the Court.  All funds held in the Escrow Account shall be deemed and considered to be *in custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to this Settlement Agreement and/or further order(s) of the Court.

12.    <u>Qualified Settlement Fund</u>.  The Escrow Account is intended by the parties hereto to be treated as a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1, and to that end the parties hereto shall cooperate with each other and shall not take a position in any filing or before any tax authority that is inconsistent with such treatment.  At the request of Lear and/or KL Sales, a "relation back election" as described in Treas. Reg. § 1.468B-1(j) shall be made so as to enable the Escrow Account to be treated as a qualified settlement fund from the earliest date possible, and the Escrow Agent shall take all actions as may be necessary or appropriate to this end.   At the direction of Class Plaintiffs' Co-Lead Counsel and with notification to Lear's and KL Sales' counsel, the Escrow Agent shall pay taxes or estimated taxes on any income earned on the funds in the Escrow Account and all related costs and expenses from the Escrow Account, whether or not Final Approval has occurred.  In the event federal or state income tax liability is finally assessed against and paid by Lear or KL Sales as a result of any income earned on the funds in the Escrow Account, Lear and KL Sales shall be entitled to their respective pro rata reimbursement of such payment from the funds in the Escrow Account, after approval of the Court and whether or not Final Approval has occurred.  Lear and KL Sales will use reasonable efforts to resist any such assessment or payment.  Except as set forth in this paragraph, neither Lear nor KL Sales shall have any responsibility to make any tax filings related to the Settlement Fund or to pay any taxes with respect thereto.

13.    <u>Payments of Costs From the Settlement Fund</u>.  Reasonable disbursements for expenses associated with providing Notice of the settlement to the Settlement Class pursuant to paragraph 5 hereof, any reasonable out-of-pocket costs in liquidating the Stocks and Warrants, and expenses incurred in connection with taxation matters pursuant to paragraphs 8, 12 and 21 hereof, may be paid without approval from the Court and shall not be refundable to Lear or KL Sales in the event the Agreement is disapproved, rescinded, or otherwise fails to become effective.   No other disbursement from or distribution of the Settlement Fund shall be made without prior approval of the Court.  Neither Lear nor KL Sales shall have any responsibility for,

or liability in connection with, the Settlement Fund, including, without limitation the investment, administration, maintenance, or distribution thereof.

14.    <u>All Claims Satisfied by Settlement Fund</u>.  Each Settlement Class Member shall look solely to the Settlement Fund and/or other relief expressly provided in this Settlement Agreement for settlement and satisfaction, as provided herein, of all claims released by the Settlement Class pursuant to paragraphs 18 and 19 hereof.  Except as provided by order of the Court pursuant to this Settlement Agreement, no Settlement Class Member shall have any interest in the Settlement Fund or any portion thereof.

15.    <u>All Expenses Paid from Settlement Fund</u>.  Neither Lear nor KL Sales shall be liable for any of the costs or expenses of the litigation of the Actions or of this settlement, including but not limited to those (a) of any of the End-Payor Plaintiffs' or Settlement Class Members' counsel, experts, consultants, agents, and representatives; (b) incurred in giving notice (except insofar as provided in paragraph 5 hereof); or (c) incurred in administering the settlement or distributing the Settlement Funds.

16.    <u>Attorneys' Fees, Reimbursement of Costs and Expenses, and Incentive Awards for Class Representatives</u>.

(a)    Class Plaintiffs' Co-Lead Counsel may submit an application or applications to the Court (the "Fee and Expense Application") for: (i) an award of attorneys' fees; (ii) reimbursement of costs and expenses incurred in connection with prosecuting the Actions and incentive awards, plus interest on such attorneys' fees, costs, and expenses at the same rate and for the same period as earned by the Settlement Fund (until paid) as may be awarded by the Court (the "Fee and Expense Award"); and (iii) incentive awards for the End-Payor Plaintiffs. Class Plaintiffs' Co-Lead Counsel reserve the right to make additional applications for fees and expenses incurred and reasonable incentive awards.  In no event shall the Released Parties be responsible to pay any such fees, expenses, costs, or incentive awards except to the extent they are paid out of the Settlement Fund.

(b)     Subject to Court approval, End-Payor Plaintiffs and Class Plaintiffs' Co-Lead Counsel shall be reimbursed and paid solely out of the Settlement Fund for all expenses, including but not limited to attorneys' fees and past, current, or future litigation expenses, and incentive awards.  There shall be no payment of attorneys' fees, costs, or expenses of Plaintiffs' Counsel, or any other award the Court may make, including but not limited to incentive awards for the End-Payor Plaintiffs, out of the Settlement Fund until after the Court enters an order finally approving the settlement and awarding such payment.

(c)     In the event the settlement is reversed on appeal or the awards of attorneys' fees and reimbursement of costs are reduced on appeal, Class Plaintiffs' Co-Lead Counsel shall, within ten (10) business days from receiving notice of the applicable court order, refund to the Settlement Fund the fees, expenses, and costs paid from the Settlement Fund plus interest thereon at the same rate(s) as earned on the Settlement Fund in an amount consistent with such reversal or modification.

(d)     Lear and KL Sales agree to take no position with respect to any application to the Court by Class Plaintiffs' Co-Lead Counsel for an award of attorneys' fees, reimbursement of costs and expenses incurred in the prosecution of these Actions, and incentive awards for the End-Payor Plaintiffs, *provided* that the application is made in accordance with this Settlement Agreement.

(e)     The procedures for and the allowance or disallowance by the Court of the application by Class Plaintiffs' Co-Lead Counsel for attorneys' fees, costs, and expenses to be paid out of the Settlement Fund are not part of this Settlement Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the settlement.  Any order or proceeding relating to the Fee and Expense Application or any appeal from any such order shall not operate to terminate or cancel this Settlement Agreement, affect or delay the finality of the judgment approving settlement, or affect or delay the payment of the Fee and Expense Award as provided in paragraph 16(a) above.

(f)    Neither Settling Defendants nor any other of the Released Parties shall have any responsibility for, or interest in, or liability whatsoever with respect to any payment to Plaintiffs' Counsel of any Fee and Expense Award in the Actions.

(g)    Neither Settling Defendants nor any other of the Released Parties shall have any responsibility for, or interest in, or liability whatsoever with respect to allocation among Plaintiffs' Counsel, and/or any other person who may assert some claim thereto, of any Fee and Expense Award that the Court may make in the Actions.

17.    <u>Plan of Distribution and Proof of Claim</u>.  Unless otherwise ordered by the Court, the Settlement Fund shall be distributed to Settlement Class Members in accordance with a plan of distribution to be submitted to and approved by the Court.  Any proof of claim form that may be used in connection with the distribution of the Settlement Fund to Settlement Class Members shall be provided in advance for consultation with counsel for Lear and KL Sales, and thereafter shall be submitted to and approved by the Court.

18.    <u>Releases</u>.  In addition to the effect of any final judgment entered in accordance with this Settlement Agreement, in the event that this settlement is approved by the Court the Released Parties shall be released and forever discharged from all manner of claims, demands, actions, suits, causes of action, whether class, individual, or otherwise in nature, damages whenever incurred, liabilities of any nature whatsoever, including without limitation costs, penalties, and attorneys' fees, known or unknown, suspected or unsuspected, asserted or unasserted, in law or equity, that any of the Releasing Parties, or any one of them, whether directly, representatively, derivatively, or in any other capacity, ever had, now have, could have, or hereafter can, shall, or may have, relating in any way to any conduct related to, arising from, or described in the Actions prior to the Effective Date on account of, arising out of, resulting from, or related to in any respect the purchase, sale, pricing, discounting, manufacturing, offering, or distributing of Automotive Wire Harness Systems or relating, in any way, to any conduct alleged in the Actions including, without limitation, any such claims which have been asserted or could have been asserted in the Actions, or any one of them, against the Released

Parties including, but not limited to, claims arising under federal or state antitrust, unfair competition, unfair practices, price discrimination, unitary pricing, trade practice, or civil conspiracy law, including without limitation the Sherman Antitrust Act, 15 U.S.C. § 1 *et seq.* However, the Released Claims do not include: (1) claims based on direct purchases of Automotive Wire Harness Systems; (2) claims made by automotive dealerships that are indirect purchasers of Automotive Wire Harness Systems; (3) claims based on negligence, personal injury, bailment, failure to deliver lost goods, damaged or delayed goods, product defects, or breach of product warranty, or breach of contract claims relating to Automotive Wire Harness Systems; (4) claims concerning any automotive part other than Automotive Wire Harness Systems; (5) claims made by any State as to government purchases and/or penalties; (6) claims for damages under the state or local laws of any jurisdiction in the United States other than the Indirect Purchaser States; and (7) claims brought outside the United States under laws other than those of the United States relating to purchases of Automotive Wire Harness Systems outside the United States.  The Releasing Parties covenant and agree that they, and each of them, will forever refrain from instituting, maintaining, prosecuting, or continuing to maintain or prosecute any suit or action, or collecting from, seeking to recover from, or proceeding against the Released Parties in connection with any of the Released Claims.  End-Payor Plaintiffs and their counsel acknowledge that Lear and KL Sales consider it to be a material term of this Settlement Agreement that all Settlement Class Members will be bound by the provisions of this paragraph 18; *provided*, *however*, that should there be a breach of this covenant not to sue by any Settlement Class Member other than End-Payor Plaintiffs, or any one of them, End-Payor Plaintiffs and Class Plaintiffs' Co-Lead Counsel shall fully cooperate with Lear and KL Sales in seeking the dismissal of any such claim or action.  Claimants on the Settlement Fund shall execute a release of the Released Parties as a condition precedent to receipt of any part of the Settlement Fund, but the failure of any claimant to execute such a release shall not in any way affect the validity of the release provided in this paragraph 18, and they shall nonetheless be

bound by the terms of such release.  Class Plaintiffs' Co-Lead Counsel shall provide counsel for Lear and KL Sales with copies of the releases referred to in this paragraph.

19.    <u>Waiver of Rights</u>.  In addition to the provisions of paragraph 18, each Settlement Class Member hereby expressly agrees that, upon Final Approval, it will waive and release with respect to the Released Claims that such Settlement Class Member has released pursuant to paragraph 18 hereof any and all provisions, rights, and benefits conferred either (a) by § 1542 of the California Civil Code, which reads:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor,

(b) by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to § 1542 of the California Civil Code, or (c) any law or principle of law of any jurisdiction that would limit or restrict the effect or scope of the provisions of the release set forth in paragraph 18 hereof.  Each Settlement Class Member may hereafter discover facts other than or different from those that it knows or believes to be true with respect to the subject matter of the Released Claims that such Settlement Class Member has released pursuant to paragraph 18 hereof, but each Settlement Class Member hereby expressly agrees that, upon Final Approval, it shall have waived and fully, finally, and forever settled and released any known or unknown, suspected or unsuspected, asserted or unasserted, contingent or non-contingent claim with respect to the Released Claims that such Settlement Class Member has released pursuant to paragraph 18 hereof, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.  The release of unknown, unanticipated, and unsuspected losses or claims is contractual, and not a mere recital.

20.    <u>Effect of Disapproval</u>.  If the Court refuses, preliminarily or otherwise, to approve the settlement or this Settlement Agreement or any part hereof, or if such approval is modified or set aside on appeal, or if the Court does not enter the final judgment provided for in paragraph 6 hereof, or if the Court enters the final judgment and appellate review is sought and, on such

review, such final judgment is not affirmed in its entirety, Lear, KL Sales, and Class Plaintiffs

Co-Lead Counsel shall, at their sole discretion, each have the option to rescind, cancel, and

terminate this Settlement Agreement (excepting paragraphs 13, 23, 28, and 29 hereof) as it

relates to each of them.    Similarly, if the Court refuses to preliminarily approve Lear's

settlements or settlement agreements (or any part thereof) with the Direct Purchaser Plaintiffs

and the Dealership Plaintiffs, and KL Sales' settlements or settlement agreements (or any part

thereof) with the Dealership Plaintiffs,  Lear and KL Sales shall, at their sole discretion, have the

option to rescind, cancel, and terminate this Settlement Agreement (excepting paragraphs 13, 23,

28, and 29 hereof) as it relates to each of them.  If any of Lear, KL Sales, or Class Plaintiffs' Co-

Lead Counsel elect to rescind, cancel, and/or terminate this Settlement Agreement in accordance

with this paragraph 20, the Escrow Agent shall, within ten (10) business days of termination of

the Settlement Agreement, (i) if terminated by Class Plaintiffs' Co-Lead Counsel, refund (a) the

$128,640 Cash Payment (including any and all income earned thereon) to Lear; (b) the

Bankruptcy Reserve Settlement Proceeds (including any and all income earned thereon) to Lear

for redeposit in the Bankruptcy Reserve; and (c) the KL Sales Settlement Amount (including any

and all income earned thereon) to KL Sales, less any expenditures (allocated between Lear and

KL Sales on a pro rata basis) authorized pursuant to paragraph 13 of this Settlement Agreement

that were paid out of the Settlement Fund prior to termination; (ii) if terminated by Lear, refund

(1) the $128,640 Cash Payment (including any and all income earned thereon) to Lear and (2)

the Bankruptcy Reserve Settlement Proceeds (including any and all income earned thereon), less

any expenditures (allocated between Lear and KL Sales on a pro rata basis) authorized pursuant

to paragraph 13 of this Settlement Agreement that were paid out of the Settlement Fund prior to

termination, to Lear for redeposit in the Bankruptcy Reserve; and (iii) if terminated by KL Sales,

refund the KL Sales Settlement Amount (including any and all income earned thereon) to KL

Sales, less any expenditures (allocated between Lear and KL Sales on a pro rata basis) authorized

pursuant to paragraph 13 of this Settlement Agreement that were paid out of the Settlement Fund

prior to termination.  The parties expressly reserve all of their rights if the settlement does not

become final in accordance with the terms of this Settlement Agreement or if it is rescinded or terminated by Lear, KL Sales, or Class Plaintiffs' Co-Lead Counsel pursuant to this paragraph, including but not limited to the *status quo ante* rights of End-Payor Plaintiffs, Settlement Class Members, Lear, or KL Sales, including without limitation for purposes of the Debtors' *Motion for Entry of an Order (A) Enforcing Chapter 11 Plan Discharge and Injunction and (B) Directing Dismissal of Pending Litigation* [Docket No. 1660 - Case No. 09-14326 (ALG)] pending before the Bankruptcy Court and all pleadings and proceedings related thereto. Specifically, all negotiations and proceedings connected with this Settlement Agreement shall be without prejudice to the rights of any party hereto, shall not be deemed or construed to be an admission by any party of any fact or matter, and shall not be used with respect to the party or parties for which this Settlement Agreement has been rescinded, terminated, or otherwise does not become final in any way in the Actions or in any related actions or proceedings, including without limitation, for the avoidance of doubt, in connection with any assertion by the End-Payor Plaintiffs, on behalf of themselves or the Settlement Class, of any claim (as defined in section 101(5) of the Bankruptcy Code) against the Debtors in their voluntary cases pending before the Bankruptcy Court pursuant to chapter 11 of title 11 of the United States Code, unless the undersigned parties agree in writing to proceed with the settlement as and if modified by the Court.

Notwithstanding the foregoing, any modification or reversal on appeal of any award of attorneys' fees or expenses or of any plan of allocation of settlement proceeds among Settlement Class Members in the Actions shall not be deemed a modification of this Settlement Agreement or of a final judgment in these Actions. To the extent that any award of attorneys' fees or expenses is modified or reversed on appeal, the balance shall be returned to the Settlement Fund within thirty (30) days of such modification or reversal becoming final and not subject to further appellate review.

21.    <u>Taxes and Tax Expenses</u>.  Class Plaintiffs' Co-Lead Counsel or their designee shall be solely responsible for filing all informational and other tax returns necessary to report

any taxable income earned by the Settlement Fund and shall file all informational and other tax returns necessary to report any income earned by the Settlement Fund and pay any estimated or actual taxes due thereon out of the Settlement Fund, as and when legally required, including interest and penalties due on income earned by the Settlement Fund. Class Plaintiffs' Co-Lead Counsel shall be entitled to pay customary and reasonable tax expenses, including without limitation professional fees and expenses incurred in connection with carrying out their responsibilities set forth in this paragraph from the Settlement Fund, when incurred and upon written notice to the Escrow Agent without prior approval by the Court. Except as set forth in paragraph 12 hereof, neither Lear nor KL Sales shall have any responsibility to make any tax filings related to this Settlement Agreement or the Settlement Fund or to pay any taxes with respect thereto.

22.    Cooperation.

i.    Lear's Cooperation. In addition to its payment of the Lear Settlement Amount set forth in paragraph 7 hereof, Lear's obligations, as set forth below, shall be limited to: (a) the production of transactional sales data, which shall be compiled and produced in the form in which it is kept in the ordinary course of Lear's business, reflecting Lear's sales of Automotive Wire Harness Systems sold directly in the United States, to the extent such data exists and to the extent it is reasonably accessible and is reasonably available in Lear's records for the period January 1, 1998 to December 31, 2013; (b) the production of transactional cost data, which shall be compiled and produced in the form in which it is kept in the ordinary course of Lear's business, for the production and sale of Automotive Wire Harness Systems in the United States to the extent such data exists and to the extent it is reasonably accessible and is reasonably available in Lear's records for the period January 1, 1998 to December 31, 2013; (c) reasonable assistance by Lear to End-Payor Plaintiffs in understanding the transactional sales and cost data produced by Lear, including a reasonable number of written and/or telephonic communications with plaintiffs' experts and between technical personnel; (d) the production of Documents within the files of the Lear individuals identified in Lear's Rule 26(a)(1) Initial Disclosures, served

August 1, 2012 sent to or received from any employees of Furukawa Lear Corporation (later known as Lear Furukawa Corporation), which was a separately incorporated joint venture owned by Lear ESD Joint Venture Holdings LLC f/k/a Lear Corporation EEDS and Interiors and Furukawa Automotive Systems Inc. and Furukawa Electric Co., Ltd., during the period January 1, 2000 to February 28, 2010, to the extent such Documents exist, are relevant to the claims and/or defenses in the Actions, and are within Lear's possession, custody, and control and to the extent such Documents are readily and reasonably available in Lear's records; (e) the production of Documents within the files of the Lear individuals identified in Lear's Rule 26(a)(1) Initial Disclosures, served August 1, 2012 sent to or received from any employees of Kyungshin-Lear during the period January 1, 2000 to February 28, 2010, to the extent such Documents exist, are relevant to the claims and/or defenses in the Actions, are within Lear's possession, custody, and control, and to the extent such documents are reasonably available in Lear's records; (f) the authentication of any Documents referenced in subparts (a) through (e) of this paragraph that End-Payor Plaintiffs notify Lear they intend to use on summary judgment, class certification, or trial, to the extent that they properly are subject to authentication by Lear; and (g) one presentment of one or two witnesses, to be identified by Lear, upon a single date to be coordinated at Lear's discretion with counsel for Dealership Plaintiffs and Direct Purchaser Plaintiffs, who can generally describe (1) the United States marketplace for Automotive Wire Harness Systems, (2) Lear's sales of such products, (3) Lear's participation in the separately incorporated Kyungshin-Lear joint venture, and (4) Lear's participation in the separately incorporated joint venture owned by Lear ESD Joint Venture Holdings LLC f/k/a Lear Corporation EEDS and Interiors and Furukawa Automotive Systems Inc. and Furukawa Electric Co., Ltd. Lear shall use its best efforts to coordinate its presentment of witnesses pursuant to this paragraph 22(i)(g) with KL Sales presentment of witnesses pursuant to Paragraph 23(ii)(f). In addition, notwithstanding that Lear does not believe it has any transactional data relating to Furukawa Lear Corporation (later known as Lear Furukawa Corporation) within its possession, custody or control, Lear will provide, to the extent such information is reasonably known to it,

30

reasonable assistance to End-Payor Plaintiffs in understanding the transactional sales and cost data produced by Furukawa Lear Corporation including a reasonable number of written and/or telephonic communications with plaintiffs' experts and between technical personnel. Unless otherwise agreed to by Lear and End-Payor Plaintiffs, Lear shall complete its obligations pursuant to subpart (g) of this paragraph 22(i) within three (3) months of entry of preliminary approval of this settlement. Lear shall use its best efforts to substantially complete its obligations pursuant to subparts (a), (b), (d), and (e) of this paragraph 22(i) within three (3) months of entry of preliminary approval of this settlement, as set forth more fully in a confidential side letter agreement, and shall make available the reasonable assistance required by subpart (c) and satisfy its obligations with respect to Furukawa Lear Corporation's transactional data upon production of that transactional data by the successor to Furukawa Lear Corporation or its designee.

ii.      KL Sales' Cooperation.  In addition to its payment of the KL Sales Settlement Amount set forth in paragraph 7 hereof, KL Sales' obligations, as set forth below, shall be limited to: (a) the production of transactional sales data, which shall be compiled and produced in the form in which it is kept in the ordinary course of KL Sales' business, reflecting KL Sales' sales of Automotive Wire Harness Systems sold directly in the United States, to the extent such data exists and to the extent it is reasonably accessible and is reasonably available in KL Sales' records for the period January 1, 1998 to December 31, 2013; (b) the production of transactional cost data, which shall be compiled and produced in the form in which it is kept in the ordinary course of KL Sales' business, for the production and sale of Automotive Wire Harness Systems in the United States to the extent such data exists and to the extent it is reasonably accessible and is reasonably available in KL Sales' records for the period January 1, 1998 to December 31, 2013; (c) reasonable assistance by KL Sales to End-Payor Plaintiffs in understanding the transactional sales and cost data produced by KL Sales, including a reasonable number of written and/or telephonic communications with plaintiffs' experts and between technical personnel; (d) the production of Documents within the files of the KL Sales individuals identified in KL Sales' Rule 26(a)(1) Initial Disclosures served August 1, 2012, as having information regarding sales

31

and pricing of relevant products, sent to or received from any employees of Lear not working for KL Sales during the period January 1, 2000 to February 28, 2010, to the extent such Documents exist, are relevant to the claims and/or defenses in the Actions, are within KL Sales' possession, custody, and control, and to the extent such documents are reasonably available in KL Sales' records; (e) the authentication of any Documents referenced in subparts (a) through (d) of this paragraph that End-Payor Plaintiffs notify KL Sales they intend to use on summary judgment, class certification, or trial, to the extent that they properly are subject to authentication by KL Sales; and (f) one presentment of one or two witnesses, to be identified by KL Sales, upon a single date to be coordinated at KL Sales' discretion with counsel for Dealership Plaintiffs, who can generally describe (1) the United States marketplace for Automotive Wire Harness Systems, (2) KL Sales' sales of such products, and (3) the separately incorporated KL Sales joint venture. Unless otherwise agreed to by KL Sales and End-Payor Plaintiffs, KL Sales shall complete its obligations pursuant to subpart (f) of this paragraph 22(ii) within three (3) months of entry of preliminary approval of this settlement.  KL Sales shall use its best efforts to substantially complete its obligations pursuant to subparts (a), (b), and (d) of this paragraph 22(ii) within three (3) months of entry of preliminary approval of this settlement, as set forth more fully in a confidential side letter agreement.

iii.        In making any production contemplated by paragraph 22, Lear and KL Sales are entitled to withhold from production any Documents protected from disclosure by the attorney-client privilege, work product doctrine, joint defense privilege, applicable privacy laws, or any other applicable privilege, doctrine, or law.  In doing so, neither Lear nor KL Sales is required to create a privilege log or otherwise provide End-Payor Plaintiffs with identifying information regarding the Documents withheld.  To the extent any of Lear's or KL Sales' cooperation obligations pursuant to paragraph 22(i)(g) or 22(ii)(f) require any current or former Lear or KL Sales employee to travel from their principal place of business to another location, Class Plaintiffs' Co-Lead Counsel shall reimburse Lear or KL Sales, respectively, for half of the reasonable travel expenses incurred by any such person in connection with fulfilling Lear's or

KL Sales' cooperation obligations, but in no event shall Class Plaintiffs' Co-Lead Counsel be responsible for reimbursing such persons for time or services rendered. Such travel expenses may include economy airfare, but not airfare for business or first class seats. Expenses reimbursable by Class Plaintiffs' Co-Lead Counsel shall not exceed $750 per U.S.-based employee, per trip or $1,500 per non-U.S.-based employee, per trip. All Documents and other information provided pursuant to this Settlement Agreement will be deemed "Highly Confidential – Outside Attorneys Only," as said designation is described in the Protective Order in this Action (Dkt. 200), and subject to the Protective Order entered in the Action as if they had been produced in response to discovery requests and so designated. For the avoidance of doubt, End-Payor Plaintiffs expressly agree that they will not seek any discovery from Lear, KL Sales, or the Released Parties in the Actions after the Execution Date including but not limited to written discovery, document discovery, or deposition discovery. Lear's and KL Sales' obligations pursuant to this paragraph 22 shall not be affected by the Release set forth in paragraphs 18 and 19 of this Settlement Agreement. Unless this Settlement Agreement is rescinded, disapproved, or otherwise fails to take effect, Lear's and KL Sales' respective obligations to provide Cooperation under this Settlement Agreement shall cease whenever ordered by the Court or on the date that final judgment has been entered in the Action against all Defendants, whichever comes first. In the event that this settlement fails to receive approval by the Court, or in the event that it is terminated by any party under any provision herein, the parties agree that neither End-Payor Plaintiffs nor Class Plaintiffs' Co-Lead Counsel shall be permitted to introduce into evidence against Lear or KL Sales, at any hearing or trial, or in support of any motion, opposition, or other pleading in the Actions or in any other federal or state or foreign action alleging a violation of any law relating to the subject matter of the Actions, any deposition testimony or any documents provided by Lear, KL Sales, and/or the Released Parties, their counsel, or any individual made available by Lear pursuant to Cooperation (as opposed to from any other source or pursuant to a court order). Notwithstanding anything contained herein, End-Payor Plaintiffs and Settlement Class Counsel are not relinquishing any rights to pursue

discovery against Lear or KL Sales in the event that this settlement fails to receive final approval by the Court as contemplated herein, including final approval of "the Settlement Class" as defined in Paragraph 1.ff., or in the event that it is rescinded or terminated by any party under any provision herein.

23.     <u>Resolution of Disputes; Retention of Jurisdiction</u>.    Any disputes between or among Lear or KL Sales and any Settlement Class Member or Settlement Class Members concerning matters contained in this Settlement Agreement shall, if they cannot be resolved by negotiation and agreement, be submitted to the Court.    The Court shall retain jurisdiction over the implementation and enforcement of this Settlement Agreement.

24.     <u>Other Claims</u>.    This Settlement Agreement does not settle or compromise any claim other than the Released Claims against the Released Parties.    All rights of any Settlement Class Member against any person or entity other than the Released Parties for sales made by the Released Parties are specifically reserved by End-Payor Plaintiffs and the Settlement Class Members.    To the extent permitted and/or authorized by law, sales of Automotive Wire Harness Systems by the Released Parties in or into the United States shall remain in the Actions against the non-settling Defendants and/or any future defendants other than the Released Parties as a basis for damage claims, and shall be part of any joint and several liability claims in the Actions against the non-settling Defendants and/or any future defendants or persons or entities other than the Released Parties.

25.     <u>Binding Effect</u>.    This Settlement Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto.    Without limiting the generality of the foregoing, each and every covenant and agreement herein by the End-Payor Plaintiffs and their counsel shall be binding upon all Settlement Class Members and Releasing Parties.

26.     <u>Authorization to Enter Settlement Agreement</u>.    The undersigned representative of Lear covenants and represents that such representative is fully authorized to enter into and to execute this Settlement Agreement on behalf of Lear.    The undersigned representative of KL Sales covenants and represents that such representative is fully authorized to enter into and to

34

execute this Settlement Agreement on behalf of KL Sales. Class Plaintiffs' Co-Lead Counsel represent that they are fully authorized on behalf of the End-Payor Plaintiffs to conduct settlement negotiations with defense counsel and to enter into, and to execute, this Settlement Agreement on behalf of them and the Settlement Class.

27.    Notices.  All notices under this Settlement Agreement shall be in writing. Each such notice shall be given either by (a) hand delivery; (b) registered or certified mail, return receipt requested, postage pre-paid; or (c) Federal Express, UPS, or similar overnight courier and in the case of either (a), (b), or (c) shall be addressed, if directed to any Settlement Class Plaintiff or Settlement Class Member, to Class Plaintiffs' Co-Lead Counsel at their addresses set forth on the signature pages hereof, and if directed to Lear or KL Sales, to its representative(s) at the addresses set forth on the signature pages hereof, or such other address as Class Plaintiffs' Co-Lead Counsel, Lear, or KL Sales respectively, may designate from time to time by giving notice to all parties hereto in the manner described in this paragraph. Copies of all notices under this Settlement Agreement may, at the notifying party's option, be transmitted by email to the appropriate parties. Providing a copy by email shall only be in addition to, and not a substitute for, the formal notice mechanisms provided for in (a), (b), or (c) of this paragraph.

28.    No Admission.  Whether or not this Settlement Agreement becomes final or is rescinded or terminated pursuant its terms, the parties expressly agree that this Settlement Agreement and its contents, including without limitation its exhibits and any and all statements, negotiations, documents, and discussions associated with it, shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing or of the truth of any of the claims or allegations contained in the complaints in the Actions or any other pleading or filing, and evidence thereof shall not be discoverable or used, directly or indirectly, in any way, whether in the Actions or in any other action or proceeding, including without limitation, for the avoidance of doubt, in connection with any assertion by the End-Payor Plaintiffs on behalf of themselves or the Settlement Class, of any claim (as defined in

section 101(5) of the Bankruptcy Code) against the Debtors in their voluntary cases pending before the Bankruptcy Court pursuant to chapter 11 of title 11 of the United States Code.

29.    Confidentiality of Settlement Negotiations.    Class Plaintiffs' Co-Lead Counsel and Plaintiffs' Counsel shall keep strictly confidential and not disclose to any third party any non-public information regarding the parties' negotiation of this settlement and/or this Settlement Agreement.    For the sake of clarity, information contained within this Settlement Agreement shall be considered public once signed by all parties hereto.

30.    Intended Beneficiaries.    No provision of this Settlement Agreement shall provide any rights to, or be enforceable by, any person or entity that is not a Settlement Class Plaintiff, Settlement Class Member, a Released Party, or Plaintiffs' Counsel.    No Settlement Class Plaintiff, Settlement Class Member, or Plaintiffs' Counsel may assign or otherwise convey any right to enforce any provision of this Settlement Agreement.

31.    No Conflict Intended.    Any inconsistency between this Settlement Agreement and the exhibits attached hereto shall be resolved in favor of this Settlement Agreement.    The headings used in this Settlement Agreement are intended for the convenience of the reader only and shall not affect the meaning or interpretation of this Settlement Agreement.

32.    No Party is the Drafter.    None of the parties hereto shall be considered to be the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

33.    Choice of Law.    All terms of this Settlement Agreement shall be governed by and interpreted according to the substantive laws of Michigan without regard to its choice of law or conflict of law principles.

34.    Amendment; Waiver.    This Settlement Agreement shall not be modified in any respect except by a writing executed by all the parties hereto, and the waiver of any rights conferred hereunder shall be effective only if made by written instrument signed by the waiving party.    The waiver by any party of any breach of this Settlement Agreement shall not be deemed

or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of this Settlement Agreement.

35.    <u>Execution in Counterparts.</u>    This Settlement Agreement may be executed in counterparts.    Facsimile or emailed .pdf images of by-hand signatures shall be considered as valid signatures as of the date hereof, although the original signature pages shall thereafter be appended to this Settlement Agreement and filed with the Court.

36.    <u>Entire Agreements.</u>    This Settlement Agreement and the confidential side letter agreement referenced in paragraphs 9 and 22, hereof, constitute the entirety of the agreements among the parties, hereto, and are not subject to any condition not provided for herein.    This Settlement Agreement supersedes any and all prior and contemporaneous undertakings and agreements of End-Payor Plaintiffs, Lear, and KL Sales in connection herewith.    The Settlement Class Members and Class Plaintiffs' Co-Lead Counsel, or any of them, may hereafter discover facts other than or different from those that it knows or believes to be true with respect to the subject matter of this settlement, but the subsequent discovery or existence of such different or additional facts shall have no bearing on the validity of this Settlement Agreement once executed and shall not serve as a basis for any Party to challenge or otherwise seek to rescind, terminate, or cancel the settlement.

37.    <u>Class Action Fairness Act.</u>    Lear and KL Sales shall submit all materials required to be sent to appropriate Federal and State officials pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

*[Signatures Appear on the Following Page]*

Dated: May 5, 2014

_____

Hollis Salzman
Bernard Persky
William V. Reiss
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
601 Lexington Avenue, Suite 3400
New York, NY 10022
Telephone: (212) 980-7400
hsalzman@rkmc.com
bpersky@rkmc.com
wvreiss@rkmc.com


_____

Marc M. Seltzer
Steven G. Sklaver
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com

-- and --

Terrell W. Oxford
Warren T. Burns
SUSMAN GODFREY L.L.P.
901 Main Street, Suite 5100
Dallas, TX 75202
Telephone: (214) 754-1900
toxford@susmangodfrey.com
wburns@susmangodfrey.com

Frank C. Damrell
Steven N. Williams
Adam Zapala
Elizabeth Tran
COTCHETT, PITRE & MCCARTHY, LLP
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
jcotchett@cpmlegal.com
fdamrell@cpmlegal.com
swilliams@cpmlegal.com
azapala@cpmlegal.com
etran@cpmlegal.com

**Class Plaintiffs' Co-Lead Counsel**

Andrew S. Marovitz
Britt M. Miller
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
Telephone: (312) 782-0600
Facsimile: (312) 701-7711
amarovitz@mayerbrown.com
bmiller@mayerbrown.com

Howard B. Iwrey
Dante Stella
DYKEMA GOSSETT PLLC
39577 Woodward Ave.
Bloomfield Hills, Michigan 48304
Telephone: (248) 203-0526
Facsimile: (248) 203-0763
hiwrey@dykema.com
dstella@dykema.com

**Counsel for Lear Corporation**

Wm. Parker Sanders (GBN 626020)
Smith, Gambrell & Russell, LLP
1230 Peachtree St., N.E., Ste. 3100
Atlanta, GA 30309
(404) 815-3684
psanders@sgrlaw.com

Jeffrey G. Heuer (P14925)
Peter M. Falkenstein (P61375)
Jaffe, Raitt, Heuer & Weiss, P.C.
27777 Franklin Rd., Ste. 2500
Southfield, MI 48034
(248) 351-3000
jheuer@jaffelaw.com
pfalkenstein@jaffelaw.com

**Counsel for Kyungshin-Lear Sales and Engineering, LLC**

## Exhibit A to the Settlement Agreement

| Ref. No. | Related End-Payor Cases |
|---|---|
| 1 | *Lacava v. Delphi Automotive LLP, et al.*, 2:11-cv-14399-MOB-MKM (E.D. Mich. Oct. 05, 2011) |
| 2 | *Ballek v. Delphi Automotive LLP, et al.*, 2:11-cv-14555-MOB-MKM (E.D. Mich. Oct. 17, 2011) |
| 3 | *Junkins v. Delphi Automotive LLP, et al.*, 2:11-cv-14556-MOB-MKM (E.D. Mich. Oct. 17, 2011) |
| 4 | *Ascher v. Furukawa Electric Co., Ltd.*, et al ., 2:11-cv-14605-MOB-MKM (E.D. Mich. Oct. 19, 2011) |
| 5 | *Heller v. Delphi Automotive LLP, et al.*, W:11-cv-14593-MOB-MKM (E.D. Mich. Oct. 19, 2011) |
| 6 | *Kashishian v. Delphi Automotive LLP, et al.*, 2:11-cv-14639-MOB-MKM (E.D. Mich. Oct. 21, 2011) |
| 7 | *Shah v. Delphi Automotive LLP, et al.*, 2:11-cv-14739-MOB-MKM (E.D. Mich. Oct. 27, 2011) |
| 8 | *McInnis v. Delphi Automotive LLP, et al.*, 2:11-cv-14811-MOB-MKM (E.D. Mich. Nov. 01, 2011) |
| 9 | *Brownson v. Furukawa Electric Co., Ltd., et al.*, 2:11-cv-14831-MOB-MKM (E.D. Mich. Nov. 02, 2011) |
| 10 | *Herr v. Furukawa Electric Co., Ltd., et al.*, 2:11-cv-14836-MOB-MKM (E.D. Mich. Nov. 02, 2011) |
| 11 | *Tracy v. Delphi Automotive LLP, et al.*, 2:11-cv-14838-MOB-MKM (E.D. Mich. Nov. 02, 2011) |
| 12 | *Adams v. Furukawa Electric Co., Ltd., et al.*, 2:11-cv-14989-MOB-MKM ((E.D. Mich. Nov. 11, 2011) |
| 13 | *Chase et al v. Delphi Automotive LLP, et al.*, 2:11-cv-15041-MOB-MKM (E.D. Mich. Nov. 14, 2011) |
| 14 | *Koch v. Delphi Automotive, LLP, et al.*, 2:11-cv-15007-MOB-MKM (E.D. Mich. Nov. 14, 2011) |
| 15 | *Beck v. Delphi Automotive LLP, et al.*, 2:11-cv-15445-MOB-MKM (E.D. Mich. Dec. 12, 2011) |
| 16 | *Brandstein et al v. Delphi Automotive LLP, et al.*,  2:11-cv-15468-MOB-MKM (E.D. Mich. Dec. 14, 2011) |
| 17 | *RD Automotive, Inc. v. Delphi Automotive, LLP, et al.*, 2:12-cv-10262-MOB-MKM (E.D. Mich. Jan. 20, 2012) |

| Ref. No. | Related End-Payor Cases |
|---|---|
| 18 | *Sherman v. Delphi Automotive, LLP, et al.*, 2:12-cv-10260-MOB-MKM (E.D. Mich. Jan. 20, 2012) |
| 19 | *Nickell v. Delphi Automotive LLP, et al.*, 2:12-cv-10690-MOB-MKM (E.D. Mich. Feb. 23, 2012) |
| 20 | *Sirmon, et al. v. Delphi Automotive LLP, et al.*, W:12-cv-10675-MOB-MKM (E.D. Mich. Feb. 23, 2012) |
| 21 | *Budner, et al. v. Delphi Automotive LLP, et al.*, 2:12-cv-10678-MOB-MKM (E.D. Mich. Feb. 24, 2012) |
| 22 | *Kelly, et al. v. Delphi Automotive LLP, et al.*, 2:12-cv-10680-MOB-MKM (E.D. Mich. Feb. 24, 2012) |
| 23 | *Nicoud v. Furukawa Electric Company LTD, et al.*, 2:12-cv-10677-MOB-MKM (E.D. Mich. Feb. 24, 2012) |
| 24 | *Bott, et al. v. Delphi Automotive LLP, et al.*, 2:12-cv-10674-MOB-MKM (E.D. Mich. Feb. 27, 2012) |
| 25 | *Brock, et al. v. Delphi Automotive, LLP, et al.*, 2:12-cv-10683-MOB-MKM (E.D. Mich. Feb. 27, 2012) |
| 26 | *Byrne, et al. v. Delphi Automotive, LLP, et al.*, 2:12-cv-10685-MOB-MKM (E.D. Mich. Feb. 27, 2012) |
| 27 | *Crespo v. Delphi Automotive LLP, et al.*, 2:12-cv-10689-MOB-M (E.D. Mich. Feb. 27, 2012) |
| 28 | *Josefsberg v. Delphi Automotive, LLP, et al.*, W:12-cv-10686-MOB-MKM (E.D. Mich. Feb. 27, 2012) |
| 29 | *Keifer v. Delphi Automotive, LLP, et al.*, W:12-cv-10684-MOB-MKM (E.D. Mich. Feb. 27, 2012) |
| 30 | *Muscara v. Delphi Automotive, LLP, et al.*, W:12-cv-10682-MOB-MKM (E.D. Mich. Feb. 27, 2012) |
| 31 | *Maravilla et al v. Delphi Automotive LLP, et al.*, 2:12-cv-10679-MOB-MKM (E.D. Mich. Feb. 28, 2012) |
| 32 | *Olson, et al. v. Delphi Automotive LLP, et al.*, 2:12-cv-10929-MOB-MKM (E.D. Mich. March 1, 2012) |
| 33 | *Nguyen, et al. v. Furukawa Electric Co., Ltd., et al.*, 2:12-cv-10951-MOB-MKM (E.D. Mich. March 1, 2012) |
| 34 | *Wick, et al. v. Delphi Automotive LLP, et al.*, 2:12-cv-10966-MOB-MKM (E.D. Mich. March 2, 2012) |
| 35 | *Gordon, et al. v. Delphi Automotive LLP, et al.*, 2:12-cv-11014-MOB-MKM (E.D. Mich. March 8, 2012) |

| Ref. No. | Related End-Payor Cases |
|---|---|
| 36 | *Vanhoutte v. Yazaki Corp, et al.*, 2:12-cv-11054-MOB-MKM (E.D. Mich. March 8, 2012) |
| 37 | *Barron v. Delphi Automotive LLP, et al.*, 2:12-cv-11021-MOB-MKM (E.D. Mich. March 15, 2012) |
| 38 | *Prince v. Delphi Automotive LLP, et al.*, 2:12-cv-11271-MOB-MKM (E.D. Mich. March 21, 2012) |
| 39 | *Lamson v. Delphi Automotive LLP, et al.*, 2:12-cv-11610-MOB-MKM (E.D. Mich. April 11, 2012) |
| 40 | *Weatherwax v. Delphi Automotive LLP, et al.*, 2:13-cv-11500-MOB-MKM (E.D. Mich. April 1, 2013) |

<u>Exhibit B to the Settlement Agreement</u>

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | | |
|---|---|---|
| IN RE: AUTOMOTIVE PARTS ANTITRUST LITIGATION | : : : | 12-md-02311 |
| PRODUCT(S): | : : : | Hon. Marianne O. Battani |
| AUTOMOTIVE WIRE HARNESSES | : : | |
| This Document Relates to: | : : : | |
| ALL END-PAYOR ACTIONS | : : : | Case No. 12-cv-00103 |

**[PROPOSED] ORDER GRANTING END-PAYOR PLAINTIFFS'
MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
WITH DEFENDANTS LEAR CORPORATION AND
KYUNGSHIN-LEAR SALES AND ENGINEERING, LLC AND
<u>PROVISIONAL CERTIFICATION OF A SETTLEMENT CLASS</u>**

Upon consideration of End-Payor Plaintiffs' Motion for Preliminary Approval of Settlement with Defendants Lear Corporation ("Lear") and Kyungshin-Lear Sales and Engineering, LLC ("KL Sales") and Provisional Certification of a Settlement Class (the "Motion"), it is hereby **ORDERED** as follows:

1.      The Motion is hereby **Granted.**

2.      Unless otherwise set forth herein, defined terms in this Order shall have the same meaning ascribed to them in the Settlement Agreement.

<u>Preliminary Approval of Settlement Agreement</u>

3.      This Court has jurisdiction over this action and each of the parties to the Settlement Agreement.

1

4.    The terms of the Settlement Agreement are hereby preliminarily approved, including the release contained therein, as being fair, reasonable, and adequate to the Settlement Class, subject to final approval at a Fairness Hearing.   The Court finds that the Settlement Agreement was entered into at arm's length by experienced counsel and is sufficiently within the range of reasonableness that notice of the Settlement Agreement should be given, pursuant to a plan to be submitted by Settlement Class Counsel and approved by the Court at a later date as provided in this Order.   The Court further finds there is a sufficient basis for notifying the class of the proposed settlement, pursuant to the Notice Motion (defined in paragraph 9 below), to be submitted by End-Payor Plaintiffs for Court approval, and for enjoining class members from proceeding in any other action pending the conclusion of the Fairness Hearing.

<u>Class Certification</u>

5.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure and in light of the proposed settlement, the Court hereby finds that the prerequisites for a class action have been met and provisionally certifies the following class for settlement purposes (the "Settlement Class"):

> All persons and entities from January 1, 2000 through May 5, 2014 who:  (1) purchased or leased a new motor vehicle in the United States for personal use and not for resale which included one or more Automotive Wire Harness System(s) as a component part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant or any co-conspirator of the Defendants, or (2) indirectly purchased one or more Automotive Wire Harness System(s) as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant or any co-conspirator of the Defendants. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal government entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased Automotive Wire Harness Systems directly for resale.

6.      The Court finds that provisional certification of the Settlement Class is warranted in light of the Settlement Agreement because:  (a) the Settlement Class is so numerous that joinder is impracticable; (b) End-Payor Plaintiff Class representatives' claims present common issues of law and fact and are typical of the Settlement Class; (c) End-Payor Plaintiff Class representatives and Settlement Class Counsel (defined below) will fairly and adequately represent the Settlement Class; and (d) common issues predominate over any individual issues affecting the members of the Settlement Class.  The Court further finds that End-Payor Plaintiff Class representatives' interests are aligned with the interests of all other members of the Settlement Class.  The Court also finds settlement of this action on a class basis superior to other means of resolving the matter.

<u>Appointment of Settlement Class Counsel</u>

7.      The Court hereby appoints Cotchett, Pitre & McCarthy LLP, Robins, Kaplan, Miller & Ciresi L.L.P., and Susman Godfrey L.L.P. as Settlement Class Counsel, having determined that the requirements of Rule 23(g) of the Federal Rules of Civil Procedure are fully satisfied by this appointment.

8.      Each End-Payor Plaintiff Class representative named in the Complaint will serve as End-Payor Plaintiff Class representative on behalf of the Settlement Class.

<u>Notice to Potential Class Members</u>

9.      Prior to the Fairness Hearing, Settlement Class Counsel shall utilize the best available means of providing notice of the Settlement Agreement and the Fairness Hearing to all persons affected by and/or entitled to participate in the Settlement Agreement, in full compliance with the notice requirements of Rule 23 of the Federal Rules of Civil Procedure and due process of law.  Such means of providing notice will be addressed in a subsequent Order following

submission by End-Payor Plaintiffs at a later date of a proposal for notice to the Settlement Class and related forms for notice, claims, and distribution ("Notice Motion").

10.    The Notice Motion shall include a proposed form of, method for, and date of dissemination of notice, consistent with the Settlement Agreement.  The date on which the notice is mailed shall be the "Notice Date."

11.    Notice to members of the Settlement Class, except statutory notice required to be given by Lear and KL Sales pursuant to 28 U.S.C. § 1715, shall be the responsibility of Settlement Class Counsel.

<u>Other Provisions</u>

12.    As of the date of the entry of this Order, End-Payor Plaintiffs and all members of the Settlement Class shall be preliminarily enjoined from commencing, prosecuting, or continuing any action against Lear and/or KL Sales based upon or related to the Released Claims pending Final Approval of the settlement or until such time as this Court lifts such injunction by subsequent order.

13.    In the event that the Settlement Agreement is terminated in accordance with its provisions, the Settlement Agreement and all proceedings had in connection therewith shall be null and void, except insofar as expressly provided to the contrary in the Settlement Agreement, and without prejudice to the *status quo ante* rights of End-Payor Plaintiffs, Lear, KL Sales, or the members of the Settlement Class.

14.    The Court's provisional certification of the Settlement Class as provided herein is without prejudice to, or waiver of, the rights of any Defendant to contest certification of any other class proposed in these coordinated actions.  The Court's findings in this Order shall have no effect on the Court's ruling on any motion to certify any class in these actions or on the

Court's ruling(s) concerning any Defendant's motion; and no party may cite or refer to the Court's approval of the Settlement Class as persuasive or binding authority with respect to any motion to certify any such class or any Defendant's motion.

15.    The Court approves the establishment of the escrow account under the Settlement Agreement as a qualified settlement fund ("QSF") pursuant to Internal Revenue Code Section 1.468B-1 and the Treasury Regulations promulgated thereunder, and retains continuing jurisdiction as to any issue that may arise in connection with the formation and/or administration of the QSF.  Settlement Class Counsel are, in accordance with the Settlement Agreement, authorized to expend funds from the QSF for the payment of the costs of notice, payment of taxes, and settlement administration costs.

16.    If the Settlement Agreement is terminated or is ultimately not approved, any of the parties may seek to modify any Court-ordered schedule to ensure that the End-Payor Plaintiffs, Lear, and KL Sales will have sufficient time to prepare for the resumption of litigation, including but not limited to the completion of discovery, preparation of expert reports, the filing of class certification motion(s), the filing of summary judgment motion(s), and preparation for trial.  The End-Payor Plaintiffs, Lear, and KL Sales have agreed, and the Court so orders, that this Settlement Agreement and its contents, including its exhibits, and any and all statements, negotiations, documents, and discussions associated with it, shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing or of the truth of any of the claims, allegations, or defenses contained in the complaints in the Actions or any other pleading or filing, and evidence thereof shall not be discoverable or used, directly or indirectly, in any way, whether in the Actions or in any other action or proceeding.  Neither this Settlement Agreement, nor any of the negotiations or

5

proceedings connected with it, nor any other action taken to carry out its terms by Lear and/or

KL Sales shall be referred to, offered as evidence, or received in evidence in any pending or

future civil, criminal, or administrative action or proceedings, except in a proceeding to enforce

this Settlement Agreement, or to defend against the assertion of the Released Claims, or as

otherwise required by law.

17.    The litigation against Lear and KL Sales is stayed except to the extent necessary

to effectuate the Settlement Agreement.


IT IS SO ORDERED


_____
HON. MARIANNE O. BATTANI
U.S. DISTRICT JUDGE


Dated: _____, 2014

## **Annex 3**

**Auto Dealer Settlement Agreement**

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

_____
                                :

In Re:  AUTOMOTIVE PARTS        :         **12-MD-02311**
ANTITRUST LITIGATION         :         **Honorable Marianne O. Battani**
_____:
                                  :

In Re: WIRE HARNESS CASES       :
_____:
                                  :

THIS RELATES TO:                 :
ALL DEALERSHIP CASES         :         **2:12-cv-00102-MOB-MKM**
_____:

### SETTLEMENT AGREEMENT BETWEEN THE DEALERSHIP PLAINTIFF CLASS AND DEFENDANTS LEAR CORPORATION AND KYUNGSHIN-LEAR SALES AND ENGINEERING, LLC

This Settlement Agreement is made and entered into as of the 5th day of May, 2014, by and between defendants Lear Corporation ("Lear") and Kyungshin-Lear Sales and Engineering, LLC ("KL Sales") and the Dealership Plaintiffs (defined herein) in the above-captioned action, a multidistrict consolidated class action, and each action brought individually and on behalf of a class of automotive dealership purchasers of Automotive Wire Harness Systems (defined herein) consolidated therein, including without limitation the actions set forth on **Exhibit A** hereto.

WHEREAS, the plaintiffs have alleged that Lear and KL Sales participated in a conspiracy with other manufacturers of Automotive Wire Harness Systems to rig bids for, and to raise, fix, maintain, or stabilize the prices of, Automotive Wire Harness Systems sold in the United States from at least as early as January 1, 2000, until the present, in violation of the antitrust laws of the United States and various State antitrust and consumer protection laws;

WHEREAS, Lear and KL Sales each deny the allegations in plaintiffs' complaints, have asserted affirmative defenses against the claims alleged in the Actions (defined herein), and deny any liability whatsoever;

WHEREAS, Lear represents that it never received a subpoena in connection with the Department of Justice's recent investigation into automotive wire harness collusion, never was

identified as the subject or target of any such investigation, never was indicted, never pled guilty to any crime, and never was named in or implicated by the guilty pleas entered by other defendants;

WHEREAS, KL Sales represents that it never received a subpoena in connection with the Department of Justice's recent investigation into automotive wire harness collusion, never was identified as the subject or target of any such investigation, never was indicted, never pled guilty to any crime, and never was named in or implicated by the guilty pleas entered by other defendants;

WHEREAS, in November 2011, Lear moved the Bankruptcy Court (defined herein) for entry of an order enforcing the discharge and injunction entered in connection with the Bankruptcy Court's confirmation of Lear's reorganization Plan (defined herein), which would have the effect of barring the Actions in whole or substantial part;

WHEREAS, that motion has been briefed, argued, and is pending before the Bankruptcy Court;

WHEREAS, Dealership Plaintiffs, on behalf of themselves and the Settlement Class Members (defined herein), Lear, and KL Sales agree that this Settlement Agreement shall not be deemed or construed to be an admission or evidence of the truth of any of plaintiffs' claims or allegations in the Actions;

WHEREAS, arm's-length settlement negotiations have taken place between Class Plaintiffs' Co-Lead Counsel (defined herein) and Lear and KL Sales, respectively, and this Settlement Agreement, including its exhibits, embodies all of the terms and conditions of the good-faith settlement between Lear, KL Sales, and Dealership Plaintiffs, both individually and on behalf of the Settlement Class Members, and has been reached as a result of the parties' negotiations, subject to approval of the Court (defined herein) as provided herein;

WHEREAS, the parties recognize that because of joint and several liability, the Settlement Agreement with Lear and KL Sales does not impair Dealership Plaintiffs' ability to

collect from others the full amount of damages to which they and the Settlement Class claim entitlement in these Actions;

WHEREAS, Class Plaintiffs' Co-Lead Counsel (defined herein) have concluded, after due investigation and after carefully considering the relevant circumstances, including, without limitation, the claims asserted in the complaints filed in the Actions, the legal and factual defenses thereto, and the applicable law, that it would be in the best interests of the Settlement Class (defined herein) to enter into this Settlement Agreement in order to avoid the uncertainties of litigation and to assure that the benefits reflected herein are obtained for the Settlement Class and, further, that Class Plaintiffs' Co-Lead Counsel consider the settlement set forth herein to be fair, reasonable, adequate, and in the best interests of the Settlement Class; and

WHEREAS, Lear and KL Sales have agreed to enter into this Settlement Agreement in order to avoid the expenses, risk, and burden of further litigation, to obtain the releases, orders, and judgment contemplated by this Settlement Agreement, and to put to rest with finality all claims that have been or could have been asserted against them based on the allegations in plaintiffs' complaints;

NOW, THEREFORE, in consideration of the agreements herein set forth, it is agreed by and among the undersigned that the claims of the Dealership Plaintiffs and the Settlement Class Members be settled, compromised, and dismissed on the merits and with prejudice as to Lear, KL Sales, and all other Released Parties (defined herein) and, except as hereafter provided, without costs against the Settlement Class, Lear, or KL Sales, subject to the approval of the Court, on the following terms and conditions:

1.    Definitions.

The following capitalized terms, as used in this Settlement Agreement, have the following meanings:

a.    "*Actions*" means the automotive dealership antitrust class actions consolidated under the caption *In re Automotive Parts Antitrust Litigation, Wire Harness Cases,*

Master Case No. 12-cv-00102 (MOB), currently pending in the United States District Court for the Eastern District of Michigan, Southern Division.

b.    "*Automotive Wire Harness Systems*" for purposes of this Settlement Agreement only, has the same definition as set forth in ¶ 3 of the Complaint, specifically "automotive electrical distribution systems used to direct and control electronic components, wiring, and circuit boards in an automotive vehicle…. Automotive Wire Harness Systems include the following:  automotive wire harnesses, speed sensor wire assemblies, automotive electrical wiring, lead wire assemblies, cable bond, automotive wiring connectors, automotive wiring terminals, electronic control units, fuse boxes, relay boxes, junction blocks, high voltage wiring and power distributors"; *provided*, *however*, that for purposes of paragraphs 5 and 22 hereof, the term shall be limited to Automotive Wire Harness Systems as and to the extent used by Lear and/or KL Sales in their manufacture of  automotive wire harnesses.

c.    "*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of New York.

d.    "*Bankruptcy Reserve*" means the assets held in reserve pursuant to Article VI.B.3 of the Plan on account of disputed claims against the Debtors that became or become "Allowed Claims" (as defined in the Plan) subsequent to the the Plan Effective Date.

e.    "*Bankruptcy Reserve Settlement Proceeds*" means New Common Stock and Other General Unsecured Claims Warrants with a market value, in the aggregate, of nine hundred nineteen thousand, three hundred seventy-seven US Dollars ($919,377 USD), measured using the closing trading price of New Common Stock on the Execution Date to be paid as set forth in paragraph 7 herein and as may be adjusted as set forth in paragraph 8 herein.

f.    "*Class Plaintiffs' Co-Lead Counsel*" means the law firms of Cuneo Gilbert & LaDuca, LLP, 507 C Street, N.E., Washington, DC 20002; Barrett Law Group, P.A., P.O. Box 927, 404 Court Square, Lexington, MS 39095; and Larson · King, LLP, 2800 Wells Fargo Place, 30 East Seventh Street, St. Paul, MN 55101.

4

g.      "*Complaint*" means Dealership Plaintiffs' Second Consolidated Class Action Complaint, Dkt. 125, filed July 17, 2013.

h.      "*Court*" means the United States District Court for the Eastern District of Michigan where the Actions are pending.

i.      "*Dealership Plaintiffs*" means those Settlement Class Members as defined in subparagraph gg, below, who are named plaintiffs in the Complaint.

j.      "*Debtors*" shall mean, collectively, Lear Corporation; Lear #50 Holdings, LLC; Lear Argentine Holdings Corporation #2; Lear Automotive Dearborn, Inc.; Lear Automotive Manufacturing, LLC; Lear Canada; Lear Canada Investments Ltd.; Lear Corporation (Germany) Ltd.; Lear Corporation Canada Ltd.; Lear Corporation EEDS and Interiors; Lear Corporation Global Development, Inc.; Lear EEDS Holdings, LLC; Lear European Operations Corporation; Lear Holdings, LLC; Lear Investments Company, LLC; Lear Mexican Holdings Corporation; Lear Mexican Holdings, LLC; Lear Mexican Seating Corporation; Lear Operations Corporation; Lear Seating Holdings Corp. #50; Lear South Africa Limited; Lear South American Holdings Corporation; Lear Trim L.P.; and Renosol Seating, LLC.

k.      "*Defendant*" means any person or entity named as a defendant in the Complaint.

l.      "*Document*" is defined to be synonymous in meaning and equal in scope to the usage of this term in Fed. R. Civ. P. 34(a), including, without limitation, electronic or computerized data compilations.  A draft or non-identical copy is a separate document within the meaning of this term.

m.      "*Effective Date*" means the date on which Final Approval of this settlement has been obtained.

n.      "*Escrow Account*" means the account or accounts meeting the requirements of Treas. Reg. § 1.468B-1(c)(3) to be established by Class Plaintiffs' Co-Lead

Counsel for receipt of the Settlement Amounts to be paid by Lear and KL Sales pursuant to this Settlement Agreement.

        o.        "*Escrow Agent*" means the escrow agent responsible for administering the Escrow Account.

        p.        "*Execution Date*" means the date first appearing above.

        q.        "*Final Approval*" means the first date upon which all of the following three conditions shall have been satisfied:

        i.    This settlement has been approved in all respects by the Court as required by Rule 23(e) of the Federal Rules of Civil Procedure;

        ii.    Entry has been made, as provided in paragraph 6 hereof, of the final judgment of dismissal that shall be provided in advance to and agreed to by Lear and KL Sales; and

        iii.    Either (a) the time to appeal, or to seek permission to appeal, the Court's approval of the settlement as described in (i) hereof and entry of final judgment as described in (ii) hereof has expired with no appeal having been taken or permission to appeal having been sought; or (b) such approval and final judgment have been affirmed in their entirety by the court of last resort to which any appeal has been taken or petition for review has been presented, and such affirmance has become no longer subject to the possibility of further appeal or review.  It is agreed that in determining the times for appeal, further appeal, or review, the provisions of Fed. R. Civ. P. 60 and of the All Writs Act, 28 U.S.C. § 1651, shall not be taken into account.

        r.        "*Final Bankruptcy Order*" shall mean a Final Order authorizing and approving Lear's distribution of assets as contemplated in this Settlement Agreement in an amount equivalent to the Bankruptcy Reserve Settlement Proceeds from the Bankruptcy Reserve

to the Escrow Account for the purpose of settling the Actions pursuant to the terms of this Settlement Agreement.

s.    "*Final Order*" shall mean an order or judgment of a court of competent jurisdiction with respect to the subject matter, which has not been reversed, stayed, modified or amended, and as to which the time to appeal, petition for certiorari or move for reargument or rehearing has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or has otherwise been dismissed with prejudice.

t.    "*Indirect Purchaser States*" for purposes of this Settlement Agreement only means Arizona, Arkansas, California, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusssetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin.

u.    "*Liquidation Date*" shall mean the date on which the Dealership Plaintiffs liquidate or cause liquidation of the Bankruptcy Reserve Settlement Proceeds.

v.    "*Motion*" as used in paragraph 4 herein means a motion for preliminary approval of the settlement contemplated by this Settlement Agreement and for a stay of all proceedings in the Actions against Lear and KL Sales until the Court renders a final decision regarding the approval of the settlement and, if it approves the settlement, enters the final judgment.

w.    "*Notice Costs*" means the fees and costs necessary to provide notice of the settlement to Settlement Class members.

x.    "*Plaintiffs' Counsel*" means those attorneys or law firms retained as counsel for any of the plaintiffs in any of the Actions.

7

y.   "*Plan*" means, collectively, (a) the Debtors' joint plan of reorganization under chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101-1531, either in its present form, or as it may be altered, amended, modified or supplemented from time to time in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure or the terms thereof, and (b) the supplements to the Plan filed with the Bankruptcy Court in conjunction with the Plan, and which were incorporated therein by reference.

z.   "*Plan Effective Date*" means November 9, 2009.

aa.   "*Released Claims*" shall have the meaning set forth in paragraphs 18 and 19 hereof.

bb.   "*Released Parties*" shall refer jointly and severally, individually and collectively to Lear Corporation; the Debtors; Kyungshin-Lear Sales and Engineering, LLC; the present and former direct and indirect parents, owners, subsidiaries, divisions, affiliates, or associates (as defined in SEC Rule 12b-2 promulgated pursuant to the Securities Exchange Act of 1934), of any of the foregoing; the present and former officers, directors, employees, agents, attorneys, servants, representatives, non-Defendant stockholders other than Lear, members, managers, and partners of any of the above entities (with respect to any conduct of any of the above entities, except that Furukawa Electric Co., Ltd., American Furukawa, Inc., Furukawa Wiring Systems America, Inc., Lear Furukawa Corporation, Furukawa Lear Corporation, and Furukawa Automotive Systems Inc. are not Released Parties); and the predecessors, heirs, executors, administrators, successors, and assigns of any of the above persons or entities.

cc.   "*Releasing Parties*" shall refer jointly and severally, individually and collectively to Dealership Plaintiffs and the Settlement Class Members, as well as each of their past and present officers, directors, members, managers, agents, employees, legal representatives, trustees, parents, affiliates, heirs, executors, administrators, purchasers, predecessors, successors, and assigns (and the parents', subsidiaries', and affiliates' past and present officers, directors, agents, employees, legal representatives, trustees, parents, affiliates, heirs, executors, administrators, and purchasers) and officers, directors, agents, employees, legal

8

representatives, trustees, parents, affiliates, heirs, executors, administrators, purchasers, predecessors, successors, and assigns of each of the foregoing.

dd.    "*Settlement Agreement*" means this agreement by and between Lear, KL Sales, and Dealership Plaintiffs, both individually and on behalf of the Settlement Class Members.

ee.    "*Settlement Amounts*"

i.    "*Lear Settlement Amount*" means a total, as of the Execution Date, of nine hundred sixty thousand US Dollars ($960,000 USD) comprised of (1) a cash payment of forty thousand, six hundred twenty-three US Dollars ($40,623 USD) and (2) the Bankruptcy Reserve Settlement Proceeds to be paid as set forth in paragraph 7 herein.

ii.    "*KL Sales Settlement Amount*" means a total of seventy-two thousand US Dollars ($72,000 USD).

iii.    The Lear Settlement Amount and the KL Sales Settlement Amount shall collectively be referred to as the "Settlement Amounts."

ff.    "*Settlement Class*" for purposes of this Settlement Agreement only shall mean "all automobile dealers that, during the period January 1, 2000 through the Execution Date: (1) purchased Automotive Wire Harness Systems manufactured by the Defendants or any current or former subsidiary or affiliate thereof or any co-conspirator, or (2) purchased vehicles containing Automotive Wire Harness Systems manufactured by the Defendants or any current or former subsidiary, affiliate therof, or co-conspirator." Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries, and affiliates, any co-conspirators, federal government entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased Automotive Wire Harness Systems directly from Defendants.

gg.    "*Settlement Class Member*" or "*Settlement Class Members*" means, individually or collectively, members of the Settlement Class who do not timely and validly request exclusion from the Settlement Class in accordance with paragraph 9 hereof.

hh.    "*Settlement Fund*" means the collective dollar amount of the Settlement Amounts plus any interest earned thereon after payment thereof by Lear and KL Sales into the Escrow Account.

ii.    "*Settlement Hearing*" means the final approval hearing scheduled by the Court to consider the fairness, adequacy, and reasonableness of the proposed settlement.

2.    <u>Reasonable Best Efforts to Effectuate this Settlement</u>.  Class Plaintiffs' Co-Lead Counsel agree to recommend approval of this settlement by the Court and by Settlement Class Members without qualification or condition not set forth herein.  Class Plaintiffs' Co-Lead Counsel, Settlement Class Members, and counsel for Lear and KL Sales agree to undertake their reasonable best efforts, including, without limitation, all steps and efforts contemplated by this Settlement Agreement and any other steps and efforts that may become necessary or appropriate by order of the Court or otherwise, to carry out the terms of this Settlement Agreement and to obtain Final Approval of this Settlement Agreement.  The Court's certification of the Settlement Class as provided herein is without prejudice to, or waiver of: (i) the rights of any non-settling Defendant to contest certification of any putative class proposed in the consolidated actions; or (ii) the rights or arguments asserted by any Defendant in defending against such claims.  The Court's findings and rulings in connection with this settlement shall have no effect on the Court's ruling on any motion to certify any class in the Actions or any other action, and no party may cite or refer to the Court's approval of the Settlement Class as persuasive or binding authority with respect to any motion to certify any class or with respect to any defense asserted by any Defendant.

3.    <u>Approval by the Bankruptcy Court</u>.    The effectiveness of this Settlement Agreement as to Lear and Lear's obligation to pay the Lear Settlement Amount shall be subject

to and contingent upon the entry of a Final Bankruptcy Order authorizing Lear to distribute the Bankruptcy Reserve Settlement Proceeds to the Escrow Account. If no such Final Bankruptcy Order is entered as provided in this paragraph, the Settlement Agreement as to Lear shall be immediately and automatically terminated (excepting paragraphs 13, 23, 28, and 29 hereof), with no further action required by the parties, and all proceedings had in connection therewith shall be null and void, without prejudice to the *status quo ante* rights of Dealership Plaintiffs, Settlement Class Members, or Lear, including without limitation for purposes of the Debtors' *Motion for Entry of an Order (A) Enforcing Chapter 11 Plan Discharge and Injunction and (B) Directing Dismissal of Pending Litigation* [Docket No. 1660 - Case No. 09-14326 (ALG)] pending before the Bankruptcy Court and all pleadings and proceedings related thereto. In that event, all negotiations and proceedings connected with this Settlement Agreement shall be without prejudice to the rights of any party hereto, shall not be deemed or construed to be an admission by any party of any fact or matter, and shall not be used with respect to Lear in any way in the Actions or in any related actions or proceedings, including without limitation, for the avoidance of doubt, in connection with any assertion by the Dealership Plaintiffs, on behalf of themselves or the Settlement Class, of any claim (as defined in section 101(5) of the Bankruptcy Code) against the Debtors in their voluntary cases pending before the Bankruptcy Court pursuant to chapter 11 of title 11 of the United States Code, unless Lear and Class Plaintiffs' Co-Lead Counsel agree in writing to proceed with the settlement as and if modified by the Court. Similarly, if a Final Bankruptcy Order is not entered in connection with Lear's settlements or settlement agreements (or any part thereof) with the putative class plaintiffs in the matters captioned *In re Automotive Parts Antitrust Litigation / In re Wire Harness Cases,* Case No. 12-CV-101 ("Direct Purchaser Plaintiffs") and *In re Automotive Parts Antitrust Litigation / In re Wire Harness Cases,* Case No. 12-CV-103 ("End-Payor Plaintiffs"), this Settlement Agreement as to Lear shall be immediately and automatically terminated (excepting paragraphs 13, 23, 28, and 29 hereof), with no further action required by the parties, and all proceedings had in connection therewith shall be null and void, without prejudice to the *status quo ante* rights of

Dealership Plaintiffs, Settlement Class Members, or Lear, including without limitation for purposes of the Debtors' *Motion for Entry of an Order (A) Enforcing Chapter 11 Plan Discharge and Injunction and (B) Directing Dismissal of Pending Litigation* [Docket No. 1660 - Case No. 09-14326 (ALG)] pending before the Bankruptcy Court and all pleadings and proceedings related thereto.  In that event, all negotiations and proceedings connected with this Settlement Agreement shall be without prejudice to the rights of any party hereto, shall not be deemed or construed to be an admission by any party of any fact or matter, and shall not be used with respect to Lear in any way in the Actions or in any related actions or proceedings, including without limitation, for the avoidance of doubt, in connection with any assertion by the Dealership Plaintiffs, on behalf of themselves or the Settlement Class, of any claim (as defined in section 101(5) of the Bankruptcy Code) against the Debtors in their voluntary cases pending before the Bankruptcy Court pursuant to chapter 11 of title 11 of the United States Code, unless Lear and Class Plaintiffs' Co-Lead Counsel agree in writing to proceed with the settlement as and if modified by the Court.  If this Settlement Agreement is rescinded, cancelled, or terminated as to Lear in accordance with this paragraph 3, the Escrow Agent shall, within ten (10) business days of termination of the Settlement Agreement, refund (1) the $40,623 cash payment (including any and all income earned thereon) to Lear and (2) the Bankruptcy Reserve Settlement Proceeds (including any and all income earned thereon), less any expenditures (allocated between Lear and KL Sales on a pro rata basis) authorized pursuant to paragraph 13 of this Settlement Agreement that were paid out of the Settlement Fund prior to termination, to Lear for redeposit in the Bankruptcy Reserve.

4.    Motion for Preliminary Approval.    Within twenty (20) days of the Final Bankruptcy Order as set forth in paragraph 3 hereto, Dealership Plaintiffs shall submit to the Court, in a form mutually agreed upon by counsel for Lear, KL Sales, and Class Plaintiffs' Co-Lead Counsel, a motion for preliminary approval of the settlement contemplated by this Settlement Agreement and for a stay of all proceedings in the Actions against Lear and KL Sales until the Court renders a final decision regarding the approval of the settlement and, if it

approves the settlement, enters the final judgment.  The Motion shall include the proposed form of order preliminarily approving this settlement substantially in the form of **Exhibit B** hereto that shall be provided to and agreed to by Lear and KL Sales.  Lear and KL Sales shall not unreasonably withhold their agreement to the Motion and proposed form of order preliminarily approving this settlement.  If no Final Bankruptcy Order is entered as provided in paragraph 3, the Motion contemplated by this paragraph 4 shall be limited to KL Sales and shall be filed within twenty (20) days of the entry of an order by the Bankruptcy Court denying Lear's request for issuance of the Final Bankruptcy Order.

5.      <u>Notice to Settlement Class</u>.  In the event that the Court preliminarily approves the settlement, Class Plaintiffs' Co-Lead Counsel shall, in accordance with Rule 23 of the Federal Rules of Civil Procedure and the Court's Order, provide each Settlement Class Member who can be identified by reasonable means with notice in a reasonable manner as approved by the Court, the proposed plan of distribution of the settlement proceeds among the Settlement Class Members, and the date of the Settlement Hearing.  In order to mitigate the costs of notice, Dealership Plaintiffs shall endeavor, if practicable, to disseminate notice of this settlement with notice of any other settlements that are reached with any other Defendant.  Prior to providing notice pursuant to this paragraph, Dealership Plaintiffs shall submit to the Court within a reasonable period of time following preliminary approval, as determined in good faith by Class Plaintiffs' Co-Lead Counsel, consistent with the parties' goal of obtaining Final Approval of this settlement, a motion, subject to review by Lear and KL Sales and consistent with the content of this Settlement Agreement, for authorization to disseminate notice of the settlement to all Settlement Class Members (the "Notice Motion").  The Notice Motion shall include a proposed form of, method for, and date of dissemination of notice.  Dealership Plaintiffs shall take all necessary and appropriate steps to ensure that notice is provided in accordance with the order of the Court.  In addition:

a.  Lear and KL Sales agree to permit a maximum of one hundred twenty-five thousand US dollars ($125,000 USD) of the Settlement Fund to be used towards

13

Notice Costs.  Funds expended pursuant to this paragraph may be paid without further approval from the Court and, in accordance with the provisions of paragraph 13, any amounts expended for Notice Costs are not recoverable if this settlement does not become final or is terminated.

b.  In no event shall Lear and/or KL Sales be responsible for giving notice of this settlement to members of the Settlement Class or for the administration of the Settlement Fund, including but not limited to the expense and cost of such notice and claims administration, except insofar as provided in this Settlement Agreement.

c.  If and to the extent a claims administrator is selected to administer any distribution from the Settlement Fund, that claims administrator shall determine through an audit process of claims filed that claimants qualify as Settlement Class Members.

6.  <u>Motion for Entry of Final Judgment</u>.  Dealership Plaintiffs shall submit, in a form mutually agreed upon by counsel for Lear, KL Sales, and Class Plaintiffs' Co-Lead Counsel, a motion for final approval of the settlement by the Court, after notice to the members of the Settlement Class of the Settlement Hearing, and shall seek entry of an order and final judgment, which shall be provided in advance to and agreed to by Lear and KL Sales:

a.  certifying the Settlement Class described in paragraph 1.ff., pursuant to Rule 23 of the Federal Rules of Civil Procedure, solely for purposes of this settlement as a settlement class;

b.  fully and finally approving the settlement contemplated by this Settlement Agreement and its terms as being a fair, reasonable, and adequate settlement as to the Settlement Class within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation pursuant to its terms and conditions;

c.  directing that the Actions be dismissed with prejudice as to Lear and KL Sales, and, except as provided for herein, without costs;

14

    d.   discharging and releasing the Released Parties from all Released Claims;

    e.   reserving continuing and exclusive jurisdiction over the settlement, including its administration; and

    f.   determining pursuant to Fed. R. Civ. P. 54(b) that there is no just reason for delay and directing that the judgment of dismissal of the Actions as to Lear and KL Sales shall be final and appealable.

Lear and KL Sales shall not unreasonably withhold their agreement to the motion for final approval of the settlement and the proposed order of final judgment.

    7.   <u>Settlement Consideration and Payment</u>.  As soon as reasonably practicable but in no event later than five (5) business days after the Execution Date, and in full, complete, and final settlement of the Actions as provided herein, Lear shall cause the Lear Settlement Amount and KL Sales shall cause the KL Sales Settlement Amount to be deposited into the Escrow Account as follows:

    a.   **Cash Payment.**  Lear shall deposit forty thousand, six hundred twenty-three US Dollars ($40,623 USD) into the Escrow Account (the "Cash Payment").  KL Sales shall deposit the full amount of the KL Sales Settlement Amount into the Escrow Account.  In the event that the foregoing deadline falls on a Saturday, Sunday, or U.S. bank holiday, the deadline will be extended to the next business day.  The payments shall be made by wire transfer in immediately available funds.

    b.   **Proceeds of Bankruptcy Claim.**  Except as provided to the contrary in paragraph 3, the Settlement Class shall have, without the need to file a proof of claim against Lear in the Bankruptcy Court or seek to have any claim allowed on a class basis, a prepetition claim (which will be deemed an Allowed Other General Unsecured Claim (as defined in the Plan) in that class of claims designated in the Plan as Class 5A), in an amount such that, upon distribution on account of such claim in accordance with this Settlement Agreement, the Settlement Class shall receive the Bankruptcy Reserve Settlement Proceeds; *provided* that, for the avoidance of

doubt and without limiting the generality of paragraph 3 above, if a Final Bankruptcy Order is not entered, the Settlement Class shall have no such claim, nor right to assert such claim absent entry of a Final Order authorizing it to do so. On account of such claim, Lear shall cause a distribution of the Bankruptcy Reserve Settlement Proceeds to be deposited into the Escrow Account. For the avoidance of doubt, neither the Dealership Plaintiffs nor the Settlement Class Members, nor anyone acting on their behalf, shall receive, in connection with this distribution or otherwise, any additional escrow CUSIP with respect to or right to any future distributions out of the Bankruptcy Reserve.

8.    <u>Net Lear Settlement Amount</u>.    The Dealership Plaintiffs shall cause the liquidation of the New Common Stock and Other General Unsecured Claims Warrants deposited by Lear into the Escrow Account ("Stock and Warrants"), which shall be at least equal to the Bankruptcy Reserve Settlement Proceeds, to occur as promptly as practicable upon distribution into the Escrow Account. If, following such liquidation the value of the liquidated Stocks and Warrants plus the Cash Payment is less than the Lear Settlement Amount plus any reasonable out-of-pocket costs and capital gains tax in liquidating the Stocks and Warrants, then Lear shall cause additional New Common Stock and Other General Unsecured Claims Warrants from the Bankruptcy Reserve or an additional Cash Payment, at Lear's sole discretion, to be distributed to the Escrow Account (and Dealership Plaintiffs immediately will liquidate, if necessary, such proceeds upon receipt) until the aggregate value of the liquidated Stocks and Warrants plus Cash Payment equals the Lear Settlement Amount plus the reasonable out-of-pocket costs and capital gains tax in liquidating the Stocks and Warrants. If, on the other hand, the value of the liquidated Stocks and Warrants plus the Cash Payment is greater than the Lear Settlement Amount plus any reasonable out-of-pocket costs and capital gains tax in liquidating the Stocks and Warrants then the Dealership Plaintiffs shall cause the Escrow Agent to pay to Lear, in cash, the amount of such excess as soon as practicable following the Liquidation Date. The parties agree that the agreement establishing and governing administration of the Escrow Account shall

provide that, for the avoidance of doubt, subsequent to transfer to the Dealership Plaintiffs from the Escrow Account of the Settlement Fund, the Dealership Plaintiffs shall transfer to Lear any amounts remaining in the Escrow Account net of any reasonable out-of-pocket costs and capital gains tax in liquidating the Stocks and Warrants.

9.    <u>Exclusions</u>.   Any person or entity seeking exclusion from the Settlement Class must file a timely written request for exclusion.  Any person or entity that files such a request shall be excluded from the Settlement Class and shall have no rights with respect to this settlement.  A request for exclusion that does not comply with all of the provisions set forth in the class notice, including but not limited to not containing all of the requested information, not bearing the proper signature, being sent to an address other than the one designated, or not being sent within the time specified, will, subject to the Court's review, be invalid, and the person(s) or entity serving such an invalid request shall be deemed Settlement Class Member(s) and shall be bound by this Settlement Agreement upon Final Approval.  The request must be mailed to Class Plaintiffs' Co-Lead Counsel, counsel for Lear, and counsel for KL Sales at the addresses provided in the class notice, and postmarked no later than sixty (60) days after the date on which written notice of this settlement is first given to the Settlement Class or any other date set by the Court.  Class Plaintiffs' Co-Lead Counsel, counsel for Lear, and counsel for KL Sales shall promptly forward to each other complete copies of all requests for exclusion, as they are received.  To the extent a claims administrator is retained to administer any distribution of the Settlement Fund, Class Plaintiffs' Co-Lead Counsel are responsible for promptly providing such claims administrator with copies of any requests for exclusion received pursuant to this paragraph.  Further, Class Plaintiffs' Co-Lead Counsel shall, within ten (10) business days after the Court-ordered deadline for timely requests for exclusion from the Settlement Class, cause to be provided to counsel for Lear and counsel for KL Sales a list of those Settlement Class members who have timely excluded themselves from the Settlement Class.  With respect to any potential Settlement Class member who validly requests exclusion from the Settlement Class, Lear and KL Sales reserve all of their legal rights and defenses, including but not limited to any

defenses relating to whether the excluded Settlement Class member is an indirect purchaser of Automotive Wire Harness Systems and/or has standing to bring any claim against Lear or KL Sales. Within twenty (20) business days following the deadline for the submission of requests for exclusion from the Settlement Class in accordance with the terms of this paragraph, or as soon thereafter as practicable, the parties shall determine the total number of automobile dealers in the Indirect Purchaser States from January 1, 2000 through the Execution Date that: (1) purchased Automotive Wire Harness Systems manufactured by one of the Defendants or any current or former subsidiary or affiliate thereof or any co-conspirator identified to counsel for Lear and KL Sales by Class Plaintiffs' Co-Lead Counsel, or (2) purchased vehicles containing automotive Wire Harness Systems manufactured by one of the Defendants or any current or former subsidiary or affiliate thereof or any co-conspirator identified to counsel for Lear and KL Sales by Class Plaintiffs' Co-Lead Counsel (defined as "Total Number of Damages Class Members" for purposes of calculating the Total Opt-Out Percentage defined below). The parties shall determine the Total Number of Damages Class Members based upon reasonably available public information and each dealership location shall be counted as a separate Settlement Class member for purposes of this calculation. In the event that the parties mutually agree that non-public information is required to determine the Total Number of Damages Class Members, the parties shall identify an appropropriate source of, and Lear shall pay for, the reasonable costs incurred in securing the necessary information. Within ten (10) business days following the determination of the Total Number of Damages Class Members, the parties shall calculate the percentage of United States dealer locations in the Indirect Purchaser States that are owned or controlled by Settlement Class members in the Indirect Purchaser States that have validly and timely requested to be excluded from the Settlement Class (the "Total Opt-Out Percentage"), provided that Lear and KL Sales, respectively, shall have the sole option to waive the calculation and, by doing so, waive its termination rights under this paragraph. Locations represented by any non-putative class plaintiffs that have filed a complaint against any other defendant(s) in the Actions involving the allegations at issue in the Actions, are not considered opt-outs. The Total

Opt-Out Percentage is a fraction, the numerator of which is the Total Number of Damages Class Members that have validly and timely requested to be excluded from the Settlement Class, and the denominator of which is the Total Number of Damages Class Members. In the event that the Total Opt-Out Percentage exceeds the percentage set forth in a separate confidential side letter agreement, Lear and KL Sales shall each, at their sole discretion, have the option to rescind, cancel, and terminate this Settlement Agreement (excepting paragraphs 13, 23, 28, and 29 hereof) as with respect to them; *provided*, *however*, that (i) these termination rights shall be exercised within five (5) business days of the receipt of Total Opt-Out Percentage calculation or be deemed waived and (ii) the party exercising their termination rights shall have the burden of demonstrating that the Total Opt-Out Percentage has been met. Lear and KL Sales' respective termination rights regarding the Dealership Plaintiffs, members of the Settlement Class, and the Total Opt-Out Percentage are fully set forth in the confidential side letter. If either Lear or KL Sales elects to rescind, cancel, and/or terminate this Settlement Agreement in accordance with this paragraph 9 (the "Terminating Party") as it relates to each of them, the Escrow Agent shall, within ten (10) business days of termination of the Settlement Agreement with respect to the Terminating Party, refund to the Terminating Party the portion of the Settlement Fund (including any and all income earned thereon) paid by the Terminating Party, less only any taxes paid or owed on the earnings of the Settlement Fund, any reasonable out-of-pocket costs and capital gains tax in liquidating the Stocks and Warrants, and any Notice Costs or other expenditures authorized by this Settlement Agreement that were paid out of the Settlement Fund prior to termination. The parties expressly reserve all of their rights if the settlement does not become final in accordance with the terms of this Settlement Agreement or if it is rescinded or terminated by Lear and/or KL Sales pursuant to this paragraph. Specifically, all negotiations and proceedings connected with this Settlement Agreement shall be without prejudice to the rights of any party hereto, including without limitation, specifically, the *status quo ante* rights of Dealership Plaintiffs, Settlement Class Members, Lear, or KL Sales, including without limitation for purposes of the Debtors' *Motion for Entry of an Order (A) Enforcing Chapter 11 Plan*

*Discharge and Injunction and (B) Directing Dismissal of Pending Litigation* [Docket No. 1660 - Case No. 09-14326 (ALG)] pending before the Bankruptcy Court and all pleadings and proceedings related thereto, shall not be deemed or construed to be an admission by any party of any fact or matter, and shall not be used with respect to any party as to which this Settlement Agreement has been terminated in any way in the Actions or in any related actions or proceedings, including without limitation, for the avoidance of doubt, in connection with any assertion by the Dealership Plaintiffs, on behalf of themselves or the Settlement Class, of any claim (as defined in section 101(5) of the Bankruptcy Code) against the Debtors in their voluntary cases pending before the Bankruptcy Court pursuant to chapter 11 of title 11 of the United States Code, unless the respective parties agree in writing to proceed with the settlement as and if modified by the Court.

10.    <u>Investment of Settlement Fund</u>.  All payments into the Escrow Account shall, when made, be invested in United States Government Treasury obligations or United States Treasury money market funds; *provided*, *however*, that such portions of the Settlement Fund as may reasonably be needed to pay current expenses associated with providing notice to the Settlement Class pursuant to paragraph 5 hereof, and any other amounts approved by the Court following Final Approval, may be deposited in a federally insured interest-bearing bank account. Any interest earned on any of the foregoing shall become part of the Settlement Fund.  Neither Lear nor KL Sales shall have any responsibility for, or liability in connection with, the Settlement Fund, including, without limitation, the investment, administration, maintenance or distribution thereof.

11.    <u>Custody of the Court</u>.  All funds held in the Escrow Account shall be deemed and considered to be *in custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to this Settlement Agreement and/or further order(s) of the Court.

12.    <u>Qualified Settlement Fund</u>.  The Escrow Account is intended by the parties hereto to be treated as a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1, and

to that end the parties hereto shall cooperate with each other and shall not take a position in any filing or before any tax authority that is inconsistent with such treatment.  At the request of Lear and/or KL Sales, a "relation back election" as described in Treas. Reg. § 1.468B-1(j) shall be made so as to enable the Escrow Account to be treated as a qualified settlement fund from the earliest date possible, and the Escrow Agent shall take all actions as may be necessary or appropriate to this end.   At the direction of Class Plaintiffs' Co-Lead Counsel and with notification to Lear's and KL Sales' counsel, the Escrow Agent shall pay taxes or estimated taxes on any income earned on the funds in the Escrow Account and all related costs and expenses from the Escrow Account, whether or not Final Approval has occurred.  In the event federal or state income tax liability is finally assessed against and paid by Lear or KL Sales as a result of any income earned on the funds in the Escrow Account, Lear and KL Sales shall be entitled to their respective pro rata reimbursement of such payment from the funds in the Escrow Account, after approval of the Court and whether or not Final Approval has occurred.  Lear and KL Sales will use reasonable efforts to resist any such assessment or payment.  Except as set forth in this paragraph, neither Lear nor KL Sales shall have any responsibility to make any tax filings related to the Settlement Fund or to pay any taxes with respect thereto.

13.    <u>Payments of Costs From the Settlement Fund</u>.  Reasonable disbursements for expenses associated with providing Notice of the settlement to the Settlement Class pursuant to paragraph 5 hereof, any reasonable out-of-pocket costs in liquidating the Stocks and Warrants, and expenses incurred in connection with taxation matters pursuant to paragraphs 8, 12 and 21 hereof, may be paid without approval from the Court and shall not be refundable to Lear or KL Sales in the event the Agreement is disapproved, rescinded, or otherwise fails to become effective.  No other disbursement from or distribution of the Settlement Fund shall be made without prior approval of the Court.  Neither Lear nor KL Sales shall have any responsibility for, or liability in connection with, the Settlement Fund, including, without limitation the investment, administration, maintenance, or distribution thereof.

14.     <u>All Claims Satisfied by Settlement Fund</u>.  Each Settlement Class Member shall look solely to the Settlement Fund and/or other relief expressly provided in this Settlement Agreement for settlement and satisfaction, as provided herein, of all claims released by the Settlement Class pursuant to paragraphs 18 and 19 hereof.  Except as provided by order of the Court pursuant to this Settlement Agreement, no Settlement Class Member shall have any interest in the Settlement Fund or any portion thereof.

15.     <u>All Expenses Paid from Settlement Fund</u>.  Neither Lear nor KL Sales shall be liable for any of the costs or expenses of the litigation of the Actions or of this settlement, including but not limited to those (a) of any of the Dealership Plaintiffs' or Settlement Class Members' counsel, experts, consultants, agents, and representatives; (b) incurred in giving notice (except insofar as provided in paragraph 5 hereof); or (c) incurred in administering the settlement or distributing the Settlement Funds.

16.     <u>Attorneys' Fees, Reimbursement of Costs and Expenses, and Incentive Awards for Class Representatives</u>.

(a)     Class Plaintiffs' Co-Lead Counsel may submit an application or applications to the Court (the "Fee and Expense Application") for: (i) an award of attorneys' fees; (ii) reimbursement of costs and expenses incurred in connection with prosecuting the Actions and incentive awards, plus interest on such attorneys' fees, costs, and expenses at the same rate and for the same period as earned by the Settlement Fund (until paid) as may be awarded by the Court (the "Fee and Expense Award"); and (iii) incentive awards for the Dealership Plaintiffs. Class Plaintiffs' Co-Lead Counsel reserve the right to make additional applications for fees and expenses incurred and reasonable incentive awards.  In no event shall the Released Parties be responsible to pay any such fees, expenses, costs, or incentive awards except to the extent they are paid out of the Settlement Fund.

(b)     Subject to Court approval, Dealership Plaintiffs and Class Plaintiffs' Co-Lead Counsel shall be reimbursed and paid solely out of the Settlement Fund for all expenses, including but not limited to attorneys' fees and past, current, or future litigation expenses, and

incentive awards. There shall be no payment of attorneys' fees, costs, or expenses of Plaintiffs' Counsel, or any other award the Court may make, including but not limited to incentive awards for the Dealership Plaintiffs, out of the Settlement Fund until after the Court enters an order finally approving the settlement and awarding such payment.

(c)     In the event the settlement is reversed on appeal or the awards of attorneys' fees and reimbursement of costs are reduced on appeal, Class Plaintiffs' Co-Lead Counsel shall, within ten (10) business days from receiving notice of the applicable court order, refund to the Settlement Fund the fees, expenses, and costs paid from the Settlement Fund plus interest thereon at the same rate(s) as earned on the Settlement Fund in an amount consistent with such reversal or modification.

(d)     Lear and KL Sales agree to take no position with respect to any application to the Court by Class Plaintiffs' Co-Lead Counsel for an award of attorneys' fees, reimbursement of costs and expenses incurred in the prosecution of these Actions, and incentive awards for the Dealership Plaintiffs, *provided* that the application is made in accordance with this Settlement Agreement.

(e)     The procedures for and the allowance or disallowance by the Court of the application by Class Plaintiffs' Co-Lead Counsel for attorneys' fees, costs, and expenses to be paid out of the Settlement Fund are not part of this Settlement Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the settlement. Any order or proceeding relating to the Fee and Expense Application or any appeal from any such order shall not operate to terminate or cancel this Settlement Agreement, affect or delay the finality of the judgment approving settlement, or affect or delay the payment of the Fee and Expense Award as provided in paragraph 16(a) above.

(f)     Neither Settling Defendants nor any other of the Released Parties shall have any responsibility for, or interest in, or liability whatsoever with respect to any payment to Plaintiffs' Counsel of any Fee and Expense Award in the Actions.

(g)    Neither Settling Defendants nor any other of the Released Parties shall have any responsibility for, or interest in, or liability whatsoever with respect to allocation among Plaintiffs' Counsel, and/or any other person who may assert some claim thereto, of any Fee and Expense Award that the Court may make in the Actions.

17.    <u>Plan of Distribution and Proof of Claim</u>.  Unless otherwise ordered by the Court, the Settlement Fund shall be distributed to Settlement Class Members in accordance with a plan of distribution to be submitted to and approved by the Court.  Any proof of claim form that may be used in connection with the distribution of the Settlement Fund to Settlement Class Members shall be provided in advance for consultation with counsel for Lear and KL Sales, and thereafter shall be submitted to and approved by the Court.

18.    <u>Releases</u>.  In addition to the effect of any final judgment entered in accordance with this Settlement Agreement, in the event that this settlement is approved by the Court the Released Parties shall be released and forever discharged from all manner of claims, demands, actions, suits, causes of action, whether class, individual, or otherwise in nature, damages whenever incurred, liabilities of any nature whatsoever, including without limitation costs, penalties, and attorneys' fees, known or unknown, suspected or unsuspected, asserted or unasserted, in law or equity, that any of the Releasing Parties, or any one of them, whether directly, representatively, derivatively, or in any other capacity, ever had, now have, could have, or hereafter can, shall, or may have, relating in any way to any conduct related to, arising from, or described in the Actions prior to the Effective Date on account of, arising out of, resulting from, or related to in any respect the purchase, sale, pricing, discounting, manufacturing, offering, or distributing of Automotive Wire Harness Systems or relating, in any way, to any conduct alleged in the Actions including, without limitation, any such claims which have been asserted or could have been asserted in the Actions, or any one of them, against the Released Parties including, but not limited to, claims arising under federal or state antitrust, unfair competition, unfair practices, price discrimination, unitary pricing, trade practice, or civil conspiracy law, including without limitation the Sherman Antitrust Act, 15 U.S.C. § 1 *et seq.*

However, the Released Claims do not include: (1) claims based on direct purchases of Automotive Wire Harness Systems; (2) claims made by end-payors that are indirect purchasers of Automotive Wire Harness Systems; (3) claims based on negligence, personal injury, bailment, failure to deliver lost goods, damaged or delayed goods, product defects, or breach of product warranty, or breach of contract claims relating to Automotive Wire Harness Systems; (4) claims concerning any automotive part other than Automotive Wire Harness Systems; (5) claims made by any State as to government purchases and/or penalties; (6) claims for damages under the state or local laws of any jurisdiction in the United States other than the Indirect Purchaser States; and (7) claims brought outside the United States under laws other than those of the United States relating to purchases of Automotive Wire Harness Systems outside the United States.   The Releasing Parties covenant and agree that they, and each of them, will forever refrain from instituting, maintaining, prosecuting, or continuing to maintain or prosecute any suit or action, or collecting from, seeking to recover from, or proceeding against the Released Parties in connection with any of the Released Claims.   Dealership Plaintiffs and their counsel acknowledge that Lear and KL Sales consider it to be a material term of this Settlement Agreement that all Settlement Class Members will be bound by the provisions of this paragraph 18; *provided*, *however*, that should there be a breach of this covenant not to sue by any Settlement Class Member other than Dealership Plaintiffs, or any one of them, Dealership Plaintiffs and Class Plaintiffs' Co-Lead Counsel shall fully cooperate with Lear and KL Sales in seeking the dismissal of any such claim or action.   Claimants on the Settlement Fund shall execute a release of the Released Parties as a condition precedent to receipt of any part of the Settlement Fund, but the failure of any claimant to execute such a release shall not in any way affect the validity of the release provided in this paragraph 18, and they shall nonetheless be bound by the terms of such release.   Class Plaintiffs' Co-Lead Counsel shall provide counsel for Lear and KL Sales with copies of the releases referred to in this paragraph.

19.   <u>Waiver of Rights</u>.   In addition to the provisions of paragraph 18, each Settlement Class Member hereby expressly agrees that, upon Final Approval, it will waive and release with

respect to the Released Claims that such Settlement Class Member has released pursuant to paragraph 18 hereof any and all provisions, rights, and benefits conferred either (a) by § 1542 of the California Civil Code, which reads:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor,

(b) by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to § 1542 of the California Civil Code, or (c) any law or principle of law of any jurisdiction that would limit or restrict the effect or scope of the provisions of the release set forth in paragraph 18 hereof. Each Settlement Class Member may hereafter discover facts other than or different from those that it knows or believes to be true with respect to the subject matter of the Released Claims that such Settlement Class Member has released pursuant to paragraph 18 hereof, but each Settlement Class Member hereby expressly agrees that, upon Final Approval, it shall have waived and fully, finally, and forever settled and released any known or unknown, suspected or unsuspected, asserted or unasserted, contingent or non-contingent claim with respect to the Released Claims that such Settlement Class Member has released pursuant to paragraph 18 hereof, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts. The release of unknown, unanticipated, and unsuspected losses or claims is contractual, and not a mere recital.

20. <u>Effect of Disapproval</u>. If the Court refuses, preliminarily or otherwise, to approve the settlement or this Settlement Agreement or any part hereof, or if such approval is modified or set aside on appeal, or if the Court does not enter the final judgment provided for in paragraph 6 hereof, or if the Court enters the final judgment and appellate review is sought and, on such review, such final judgment is not affirmed in its entirety, Lear, KL Sales, and Class Plaintiffs Co-Lead Counsel shall, at their sole discretion, each have the option to rescind, cancel, and terminate this Settlement Agreement (excepting paragraphs 13, 23, 28, and 29 hereof) as it relates to each of them. Similarly, if the Court refuses to preliminarily approve Lear's

settlements or settlement agreements (or any part thereof) with the Direct Purchaser Plaintiffs and the End-Payor Plaintiffs, and KL Sales' settlements or settlement agreements (or any part thereof) with the End-Payor Plaintiffs,  Lear and KL Sales shall, at their sole discretion, have the option to rescind, cancel, and terminate this Settlement Agreement (excepting paragraphs 13, 23, 28, and 29 hereof) as it relates to each of them.  If any of Lear, KL Sales, or Class Plaintiffs' Co-Lead Counsel elect to rescind, cancel, and/or terminate this Settlement Agreement in accordance with this paragraph 20, the Escrow Agent shall, within ten (10) business days of termination of the Settlement Agreement, (i) if terminated by Class Plaintiffs' Co-Lead Counsel, refund (a) the $40,623 Cash Payment (including any and all income earned thereon) to Lear; (b) the Bankruptcy Reserve Settlement Proceeds (including any and all income earned thereon) to Lear for redeposit in the Bankruptcy Reserve; and (c) the KL Sales Settlement Amount (including any and all income earned thereon) to KL Sales, less any expenditures (allocated between Lear and KL Sales on a pro rata basis) authorized pursuant to paragraph 13 of this Settlement Agreement that were paid out of the Settlement Fund prior to termination; (ii) if terminated by Lear, refund (1) the $40,623 Cash Payment (including any and all income earned thereon) to Lear and (2) the Bankruptcy Reserve Settlement Proceeds (including any and all income earned thereon), less any expenditures (allocated between Lear and KL Sales on a pro rata basis) authorized pursuant to paragraph 13 of this Settlement Agreement that were paid out of the Settlement Fund prior to termination, to Lear for redeposit in the Bankruptcy Reserve; and (iii) if terminated by KL Sales, refund the KL Sales Settlement Amount (including any and all income earned thereon) to KL Sales, less any expenditures (allocated between Lear and KL Sales on a pro rata basis) authorized pursuant to paragraph 13 of this Settlement Agreement that were paid out of the Settlement Fund prior to termination.  The parties expressly reserve all of their rights if the settlement does not become final in accordance with the terms of this Settlement Agreement or if it is rescinded or terminated by Lear, KL Sales, or Class Plaintiffs' Co-Lead Counsel pursuant to this paragraph, including but not limited to the *status quo ante* rights of Dealership Plaintiffs, Settlement Class Members, Lear, or KL Sales, including without limitation for purposes of the Debtors' *Motion*

*for Entry of an Order (A) Enforcing Chapter 11 Plan Discharge and Injunction and (B) Directing Dismissal of Pending Litigation* [Docket No. 1660 - Case No. 09-14326 (ALG)] pending before the Bankruptcy Court and all pleadings and proceedings related thereto. Specifically, all negotiations and proceedings connected with this Settlement Agreement shall be without prejudice to the rights of any party hereto, shall not be deemed or construed to be an admission by any party of any fact or matter, and shall not be used with respect to the party or parties for which this Settlement Agreement has been rescinded, terminated, or otherwise does not become final in any way in the Actions or in any related actions or proceedings, including without limitation, for the avoidance of doubt, in connection with any assertion by the Dealership Plaintiffs, on behalf of themselves or the Settlement Class, of any claim (as defined in section 101(5) of the Bankruptcy Code) against the Debtors in their voluntary cases pending before the Bankruptcy Court pursuant to chapter 11 of title 11 of the United States Code, unless the undersigned parties agree in writing to proceed with the settlement as and if modified by the Court.

Notwithstanding the foregoing, any modification or reversal on appeal of any award of attorneys' fees or expenses or of any plan of allocation of settlement proceeds among Settlement Class Members in the Actions shall not be deemed a modification of this Settlement Agreement or of a final judgment in these Actions.  To the extent that any award of attorneys' fees or expenses is modified or reversed on appeal, the balance shall be returned to the Settlement Fund within thirty (30) days of such modification or reversal becoming final and not subject to further appellate review.

21.    <u>Taxes and Tax Expenses</u>.  Class Plaintiffs' Co-Lead Counsel or their designee shall be solely responsible for filing all informational and other tax returns necessary to report any taxable income earned by the Settlement Fund and shall file all informational and other tax returns necessary to report any income earned by the Settlement Fund and pay any estimated or actual taxes due thereon out of the Settlement Fund, as and when legally required, including interest and penalties due on income earned by the Settlement Fund.  Class Plaintiffs' Co-Lead

Counsel shall be entitled to pay customary and reasonable tax expenses, including without limitation professional fees and expenses incurred in connection with carrying out their responsibilities set forth in this paragraph from the Settlement Fund, when incurred and upon written notice to the Escrow Agent without prior approval by the Court.  Except as set forth in paragraph 12 hereof, neither Lear nor KL Sales shall have any responsibility to make any tax filings related to this Settlement Agreement or the Settlement Fund or to pay any taxes with respect thereto.

22.    <u>Cooperation</u>.

i.    <u>Lear's Cooperation</u>.  In addition to its payment of the Lear Settlement Amount set forth in paragraph 7 hereof, Lear's obligations, as set forth below, shall be limited to: (a) the production of transactional sales data, which shall be compiled and produced in the form in which it is kept in the ordinary course of Lear's business, reflecting Lear's sales of Automotive Wire Harness Systems sold directly in the United States, to the extent such data exists and to the extent it is reasonably accessible and is reasonably available in Lear's records for the period January 1, 1998 to December 31, 2013; (b) the production of transactional cost data, which shall be compiled and produced in the form in which it is kept in the ordinary course of Lear's business, for the production and sale of Automotive Wire Harness Systems in the United States to the extent such data exists and to the extent it is reasonably accessible and is reasonably available in Lear's records for the period January 1, 1998 to December 31, 2013; (c) reasonable assistance by Lear to Dealership Plaintiffs in understanding the transactional sales and cost data produced by Lear, including a reasonable number of written and/or telephonic communications with plaintiffs' experts and between technical personnel; (d) the production of Documents within the files of the Lear individuals identified in Lear's Rule 26(a)(1) Initial Disclosures, served August 1, 2012 sent to or received from any employees of Furukawa Lear Corporation (later known as Lear Furukawa Corporation), which was a separately incorporated joint venture owned by Lear ESD Joint Venture Holdings LLC f/k/a Lear Corporation EEDS and Interiors and Furukawa Automotive Systems Inc. and Furukawa Electric Co., Ltd., during the period January

1, 2000 to February 28, 2010, to the extent such Documents exist, are relevant to the claims and/or defenses in the Actions, and are within Lear's possession, custody, and control and to the extent such Documents are readily and reasonably available in Lear's records; (e) the production of Documents within the files of the Lear individuals identified in Lear's Rule 26(a)(1) Initial Disclosures, served August 1, 2012 sent to or received from any employees of Kyungshin-Lear during the period January 1, 2000 to February 28, 2010, to the extent such Documents exist, are relevant to the claims and/or defenses in the Actions, are within Lear's possession, custody, and control, and to the extent such documents are reasonably available in Lear's records; (f) the authentication of any Documents referenced in subparts (a) through (e) of this paragraph that Dealership Plaintiffs notify Lear they intend to use on summary judgment, class certification, or trial, to the extent that they properly are subject to authentication by Lear; and (g) one presentment of one or two witnesses, to be identified by Lear, upon a single date to be coordinated at Lear's discretion with counsel for End-Payor Plaintiffs and Direct Purchaser Plaintiffs, who can generally describe (1) the United States marketplace for Automotive Wire Harness Systems, (2) Lear's sales of such products, (3) Lear's participation in the separately incorporated Kyungshin-Lear joint venture, and (4) Lear's participation in the separately incorporated joint venture owned by Lear ESD Joint Venture Holdings LLC f/k/a Lear Corporation EEDS and Interiors and Furukawa Automotive Systems Inc. and Furukawa Electric Co., Ltd. Lear shall use its best efforts to coordinate its presentment of witnesses pursuant to this paragraph 22(i)(g) with KL Sales presentment of witnesses pursuant to Paragraph 23(ii)(f). In addition, notwithstanding that Lear does not believe it has any transactional data relating to Furukawa Lear Corporation (later known as Lear Furukawa Corporation) within its possession, custody or control, Lear will provide, to the extent such information is reasonably known to it, reasonable assistance to Dealership Plaintiffs in understanding the transactional sales and cost data produced by Furukawa Lear Corporation including a reasonable number of written and/or telephonic communications with plaintiffs' experts and between technical personnel. Unless otherwise agreed to by Lear and Dealership Plaintiffs, Lear shall complete its obligations

pursuant to subpart (g) of this paragraph 22(i) within three (3) months of entry of preliminary approval of this settlement.  Lear shall use its best efforts to substantially complete its obligations pursuant to subparts (a), (b), (d), and (e) of this paragraph 22(i) within three (3) months of entry of preliminary approval of this settlement, as set forth more fully in a confidential side letter agreement, and shall make available the reasonable assistance required by subpart (c) and satisfy its obligations with respect to Furukawa Lear Corporation's transactional data upon production of that transactional data by the successor to Furukawa Lear Corporation or its designee.

ii.         <u>KL Sales' Cooperation</u>.  In addition to its payment of the KL Sales Settlement Amount set forth in paragraph 7 hereof, KL Sales' obligations, as set forth below, shall be limited to: (a) the production of transactional sales data, which shall be compiled and produced in the form in which it is kept in the ordinary course of KL Sales' business, reflecting KL Sales' sales of Automotive Wire Harness Systems sold directly in the United States, to the extent such data exists and to the extent it is reasonably accessible and is reasonably available in KL Sales' records for the period January 1, 1998 to December 31, 2013; (b) the production of transactional cost data, which shall be compiled and produced in the form in which it is kept in the ordinary course of KL Sales' business, for the production and sale of Automotive Wire Harness Systems in the United States to the extent such data exists and to the extent it is reasonably accessible and is reasonably available in KL Sales' records for the period January 1, 1998 to December 31, 2013; (c) reasonable assistance by KL Sales to Dealership Plaintiffs in understanding the transactional sales and cost data produced by KL Sales, including a reasonable number of written and/or telephonic communications with plaintiffs' experts and between technical personnel; (d) the production of Documents within the files of the KL Sales individuals identified in KL Sales' Rule 26(a)(1) Initial Disclosures served August 1, 2012, as having information regarding sales and pricing of relevant products, sent to or received from any employees of  Lear not working for KL Sales during the period January 1, 2000 to February 28, 2010, to the extent such Documents exist, are relevant to the claims and/or defenses in the Actions, are within KL Sales' possession, custody, and control, and to the extent such documents are reasonably available in KL Sales'

31

records; (e) the authentication of any Documents referenced in subparts (a) through (d) of this paragraph that Dealership Plaintiffs notify KL Sales they intend to use on summary judgment, class certification, or trial, to the extent that they properly are subject to authentication by KL Sales; and (f) one presentment of one or two witnesses, to be identified by KL Sales, upon a single date to be coordinated at KL Sales' discretion with counsel for End-Payor Plaintiffs, who can generally describe (1) the United States marketplace for Automotive Wire Harness Systems, (2) KL Sales' sales of such products, and (3) the separately incorporated KL Sales joint venture. Unless otherwise agreed to by KL Sales and Dealership Plaintiffs, KL Sales shall complete its obligations pursuant to subpart (f) of this paragraph 22(ii) within three (3) months of entry of preliminary approval of this settlement. KL Sales shall use its best efforts to substantially complete its obligations pursuant to subparts (a), (b), and (d) of this paragraph 22(ii) within three (3) months of entry of preliminary approval of this settlement, as set forth more fully in a confidential side letter agreement.

      iii.      In making any production contemplated by paragraph 22, Lear and KL Sales are entitled to withhold from production any Documents protected from disclosure by the attorney-client privilege, work product doctrine, joint defense privilege, applicable privacy laws, or any other applicable privilege, doctrine, or law. In doing so, neither Lear nor KL Sales is required to create a privilege log or otherwise provide Dealership Plaintiffs with identifying information regarding the Documents withheld. To the extent any of Lear's or KL Sales' cooperation obligations pursuant to paragraph 22(i)(g) or 22(ii)(f) require any current or former Lear or KL Sales employee to travel from their principal place of business to another location, Class Plaintiffs' Co-Lead Counsel shall reimburse Lear or KL Sales, respectively, for half of the reasonable travel expenses incurred by any such person in connection with fulfilling Lear's or KL Sales' cooperation obligations, but in no event shall Class Plaintiffs' Co-Lead Counsel be responsible for reimbursing such persons for time or services rendered. Such travel expenses may include economy airfare, but not airfare for business or first class seats. Expenses reimbursable by Class Plaintiffs' Co-Lead Counsel shall not exceed $750 per U.S.-based

employee, per trip or $1,500 per non-U.S.-based employee, per trip.  All Documents and other information provided pursuant to this Settlement Agreement will be deemed "Highly Confidential – Outside Attorneys Only," as said designation is described in the Protective Order in this Action (Dkt. 200), and subject to the Protective Order entered in the Action as if they had been produced in response to discovery requests and so designated.  For the avoidance of doubt, Dealership Plaintiffs expressly agree that they will not seek any discovery from Lear, KL Sales, or the Released Parties in the Actions after the Execution Date including but not limited to written discovery, document discovery, or deposition discovery.   Lear's and KL Sales' obligations pursuant to this paragraph 22 shall not be affected by the Release set forth in paragraphs 18 and 19 of this Settlement Agreement.   Unless this Settlement Agreement is rescinded, disapproved, or otherwise fails to take effect, Lear's and KL Sales' respective obligations to provide Cooperation under this Settlement Agreement shall cease whenever ordered by the Court or on the date that final judgment has been entered in the Action against all Defendants, whichever comes first.  In the event that this settlement fails to receive approval by the Court, or in the event that it is terminated by any party under any provision herein, the parties agree that neither Dealership Plaintiffs nor Class Plaintiffs' Co-Lead Counsel shall be permitted to introduce into evidence against Lear or KL Sales, at any hearing or trial, or in support of any motion, opposition, or other pleading in the Actions or in any other federal or state or foreign action alleging a violation of any law relating to the subject matter of the Actions, any deposition testimony or any documents provided by Lear, KL Sales, and/or the Released Parties, their counsel, or any individual made available by Lear pursuant to Cooperation (as opposed to from any other source or pursuant to a court order).   Notwithstanding anything contained herein, Dealership Plaintiffs and Settlement Class Counsel are not relinquishing any rights to pursue discovery against Lear or KL Sales in the event that this settlement fails to receive final approval by the Court as contemplated herein, including final approval of "the Settlement Class" as defined in Paragraph 1.ff., or in the event that it is rescinded or terminated by any party under any provision herein.

23.    <u>Resolution of Disputes; Retention of Jurisdiction</u>.    Any disputes between or among Lear or KL Sales and any Settlement Class Member or Settlement Class Members concerning matters contained in this Settlement Agreement shall, if they cannot be resolved by negotiation and agreement, be submitted to the Court.  The Court shall retain jurisdiction over the implementation and enforcement of this Settlement Agreement.

24.    <u>Other Claims</u>.    This Settlement Agreement does not settle or compromise any claim other than the Released Claims against the Released Parties.  All rights of any Settlement Class Member against any person or entity other than the Released Parties for sales made by the Released Parties are specifically reserved by Dealership Plaintiffs and the Settlement Class Members.  To the extent permitted and/or authorized by law, sales of Automotive Wire Harness Systems by the Released Parties in or into the United States shall remain in the Actions against the non-settling Defendants and/or any future defendants other than the Released Parties as a basis for damage claims, and shall be part of any joint and several liability claims in the Actions against the non-settling Defendants and/or any future defendants or persons or entities other than the Released Parties.

25.    <u>Binding Effect</u>.    This Settlement Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto.  Without limiting the generality of the foregoing, each and every covenant and agreement herein by the Dealership Plaintiffs and their counsel shall be binding upon all Settlement Class Members and Releasing Parties.

26.    <u>Authorization to Enter Settlement Agreement</u>.    The undersigned representative of Lear covenants and represents that such representative is fully authorized to enter into and to execute this Settlement Agreement on behalf of Lear.  The undersigned representative of KL Sales covenants and represents that such representative is fully authorized to enter into and to execute this Settlement Agreement on behalf of KL Sales.  Class Plaintiffs' Co-Lead Counsel represent that they are fully authorized on behalf of the Dealership Plaintiffs to conduct settlement negotiations with defense counsel and to enter into, and to execute, this Settlement Agreement on behalf of them and the Settlement Class.

27.    <u>Notices.</u>  All notices under this Settlement Agreement shall be in writing.  Each such notice shall be given either by (a) hand delivery; (b) registered or certified mail, return receipt requested, postage pre-paid; or (c) Federal Express, UPS, or similar overnight courier and in the case of either (a), (b), or (c) shall be addressed, if directed to any Settlement Class Plaintiff or Settlement Class Member, to Class Plaintiffs' Co-Lead Counsel at their addresses set forth on the signature pages hereof, and if directed to Lear or KL Sales, to its representative(s) at the addresses set forth on the signature pages hereof, or such other address as Class Plaintiffs' Co-Lead Counsel, Lear, or KL Sales respectively, may designate from time to time by giving notice to all parties hereto in the manner described in this paragraph.  Copies of all notices under this Settlement Agreement may, at the notifying party's option, be transmitted by email to the appropriate parties.  Providing a copy by email shall only be in addition to, and not a substitute for, the formal notice mechanisms provided for in (a), (b), or (c) of this paragraph.

28.    <u>No Admission.</u>  Whether or not this Settlement Agreement becomes final or is rescinded or terminated pursuant its terms, the parties expressly agree that this Settlement Agreement and its contents, including without limitation its exhibits and any and all statements, negotiations, documents, and discussions associated with it, shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing or of the truth of any of the claims or allegations contained in the complaints in the Actions or any other pleading or filing, and evidence thereof shall not be discoverable or used, directly or indirectly, in any way, whether in the Actions or in any other action or proceeding, including without limitation, for the avoidance of doubt, in connection with any assertion by the Dealership Plaintiffs on behalf of themselves or the Settlement Class, of any claim (as defined in section 101(5) of the Bankruptcy Code) against the Debtors in their voluntary cases pending before the Bankruptcy Court pursuant to chapter 11 of title 11 of the United States Code.

29.    <u>Confidentiality of Settlement Negotiations.</u>  Class Plaintiffs' Co-Lead Counsel and Plaintiffs' Counsel shall keep strictly confidential and not disclose to any third party any non-public information regarding the parties' negotiation of this settlement and/or this

Settlement Agreement.  For the sake of clarity, information contained within this Settlement Agreement shall be considered public once signed by all parties hereto.

30.      Intended Beneficiaries.  No provision of this Settlement Agreement shall provide any rights to, or be enforceable by, any person or entity that is not a Settlement Class Plaintiff, Settlement Class Member, a Released Party, or Plaintiffs' Counsel.  No Settlement Class Plaintiff, Settlement Class Member, or Plaintiffs' Counsel may assign or otherwise convey any right to enforce any provision of this Settlement Agreement.

31.      No Conflict Intended.  Any inconsistency between this Settlement Agreement and the exhibits attached hereto shall be resolved in favor of this Settlement Agreement.  The headings used in this Settlement Agreement are intended for the convenience of the reader only and shall not affect the meaning or interpretation of this Settlement Agreement.

32.      No Party is the Drafter.  None of the parties hereto shall be considered to be the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

33.      Choice of Law.  All terms of this Settlement Agreement shall be governed by and interpreted according to the substantive laws of Michigan without regard to its choice of law or conflict of law principles.

34.      Amendment; Waiver.  This Settlement Agreement shall not be modified in any respect except by a writing executed by all the parties hereto, and the waiver of any rights conferred hereunder shall be effective only if made by written instrument signed by the waiving party.  The waiver by any party of any breach of this Settlement Agreement shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of this Settlement Agreement.

35.      Execution in Counterparts.  This Settlement Agreement may be executed in counterparts.  Facsimile or emailed .pdf images of by-hand signatures shall be considered as

valid signatures as of the date hereof, although the original signature pages shall thereafter be appended to this Settlement Agreement and filed with the Court.

36.    <u>Entire Agreements.</u>  This Settlement Agreement and the confidential side letter agreement referenced in paragraphs 9 and 22, hereof, constitute the entirety of the agreements among the parties, hereto, and are not subject to any condition not provided for herein.  This Settlement Agreement supersedes any and all prior and contemporaneous undertakings and agreements of Dealership Plaintiffs, Lear, and KL Sales in connection herewith.  The Settlement Class Members and Class Plaintiffs' Co-Lead Counsel, or any of them, may hereafter discover facts other than or different from those that it knows or believes to be true with respect to the subject matter of this settlement, but the subsequent discovery or existence of such different or additional facts shall have no bearing on the validity of this Settlement Agreement once executed and shall not serve as a basis for any Party to challenge or otherwise seek to rescind, terminate, or cancel the settlement.

37.    <u>Class Action Fairness Act.</u>  Lear and KL Sales shall submit all materials required to be sent to appropriate Federal and State officials pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

*[Signatures Appear on the Following Page]*

Dated: May 5, 2014

*Jonathan W. Cuneo* (signature)

_____

Jonathan W. Cuneo
Joel Davidow
Daniel Cohen
Victoria Romanenko
CUNEO GILBERT & LADUCA, LLP
507 C Street, N.E.
Washington, D.C.  20002
Telephone:  (202) 789-3960
jonc@cuneolaw.com
joel@cuneolaw.com
danielc@cuneolaw.com
Vicky@cuneolaw.com

Don Barrett
Brian Herrington
David McMullan
Barrett Law Group, P.A.
P.O. Box 927
404 Court Square
Lexington, MS  39095
Telephone:  (662) 834-2488
dbarrett@barrettlawgroup.com
bherrington@barrettlawgroup.com
dmcmullan@barrettlawgroup.com

Shawn M. Raiter
Larson · King, LLP
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN  55101
Telephone:  (651) 312-6500
sraiter@larsonking.com

**Class Plaintiffs' Co-Lead Counsel**

_____

Andrew S. Marovitz
Britt M. Miller
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL  60606
Telephone:  (312) 782-0600
Facsimile:  (312) 701-7711
amarovitz@mayerbrown.com
bmiller@mayerbrown.com

Howard B. Iwrey
Dante Stella
DYKEMA GOSSETT PLLC
39577 Woodward Ave.
Bloomfield Hills, Michigan 48304
Telephone:  (248) 203-0526
Facsimile:  (248) 203-0763
hiwrey@dykema.com
dstella@dykema.com

**Counsel for Lear Corporation**

_____

Wm. Parker Sanders (GBN 626020)
SMITH, GAMBRELL & RUSSELL, LLP
1230 Peachtree St., N.E., Ste. 3100
Atlanta, GA 30309
(404) 815-3684
psanders@sgrlaw.com

Jeffrey G. Heuer (P14925)
Peter M. Falkenstein (P61375)
JAFFE, RAITT, HEUER & WEISS, P.C.
27777 Franklin Rd., Ste. 2500
Southfield, MI 48034
(248) 351-3000
jheuer@jaffelaw.com
pfalkenstein@jaffelaw.com

**Counsel for Kyungshin-Lear Sales and
Engineering, LLC**

Dated: May 5, 2014

Jonathan W. Cuneo
Joel Davidow
Daniel Cohen
Victoria Romanenko
CUNEO GILBERT & LADUCA, LLP
507 C Street, N.E.
Washington, D.C. 20002
Telephone: (202) 789-3960
jonc@cuneolaw.com
joel@cuneolaw.com
danielc@cuneolaw.com
Vicky@cuneolaw.com

Don Barrett
Brian Herrington
David McMullan
Barrett Law Group, P.A.
P.O. Box 927
404 Court Square
Lexington, MS 39095
Telephone: (662) 834-2488
dbarrett@barrettlawgroup.com
bherrington@barrettlawgroup.com
dmcmullan@barrettlawgroup.com

Shawn M. Raiter
Larson · King, LLP
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101
Telephone: (651) 312-6500
sraiter@larsonking.com

**Class Plaintiffs' Co-Lead Counsel**

Andrew S. Marovitz
Britt M. Miller
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
Telephone: (312) 782-0600
Facsimile: (312) 701-7711
amarovitz@mayerbrown.com
bmiller@mayerbrown.com

Howard B. Iwrey
Dante Stella
DYKEMA GOSSETT PLLC
39577 Woodward Ave.
Bloomfield Hills, Michigan 48304
Telephone: (248) 203-0526
Facsimile: (248) 203-0763
hiwrey@dykema.com
dstella@dykema.com

**Counsel for Lear Corporation**

Wm. Parker Sanders (GBN 626020)
SMITH, GAMBRELL & RUSSELL, LLP
1230 Peachtree St., N.E., Ste. 3100
Atlanta, GA 30309
(404) 815-3684
psanders@sgrlaw.com

Jeffrey G. Heuer (P14925)
Peter M. Falkenstein (P61375)
JAFFE, RAITT, HEUER & WEISS, P.C.
27777 Franklin Rd., Ste. 2500
Southfield, MI 48034
(248) 351-3000
jheuer@jaffelaw.com
pfalkenstein@jaffelaw.com

**Counsel for Kyungshin-Lear Sales and Engineering, LLC**

## Exhibit A to the Settlement Agreement

1. *Landers Auto Group Number 1 v. Delphi Automotive LLP, et al.*, Case Nos. 11-00757 (E.D. Ark.), 2:12-cv-10676-MOB-MKM (E.D. Mich.)

2. *Martens Cars of Washington, Inc., v. Furukawa Electric Co., et al.*, Case Nos. 11-01892 (D.D.C.), 2:12-cv-10681-MOB-MKM (E.D. Mich.)

3. *Superstore Automotive, Inc. v. Delphi Automotive LLP, et al.*, Case Nos. 11-03092 (D. Minn.), 2:12-cv-10687-MOB-MKM (E.D. Mich.)

4. *Hammett Motor Company, Inc. v. Delphi Automotive LLP, et al.*, Case Nos. 11-00647 (S.D. Miss.), 2:12-cv-10688-MOB-MKM (E.D. Mich.)

5. *Rainbow Chevrolet, Inc. v. Denso International America, Inc., et al.*, Case No. 2:12-cv-12526-MOB-MKM (E.D. Mich.)

<u>Exhibit B to the Settlement Agreement</u>

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | |
|---|---|
| IN RE: AUTOMOTIVE PARTS ANTITRUST LITIGATION | : 12-md-02311 : : |
| PRODUCT(S): AUTOMOTIVE WIRE HARNESSES | : : Hon. Marianne O. Battani : : |
| This Document Relates to: ALL DEALERSHIP ACTIONS | : : Case No. 12-cv-00102 : : |

**[PROPOSED] ORDER GRANTING DEALERSHIP PLAINTIFFS'
MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
WITH DEFENDANTS LEAR CORPORATION AND
KYUNGSHIN-LEAR SALES AND ENGINEERING, LLC AND
<u>PROVISIONAL CERTIFICATION OF A SETTLEMENT CLASS</u>**

Upon consideration of Dealership Plaintiffs' Motion for Preliminary Approval of Settlement with Defendants Lear Corporation ("Lear") and Kyungshin-Lear Sales and Engineering, LLC ("KL Sales") and Provisional Certification of a Settlement Class (the "Motion"), it is hereby **ORDERED** as follows:

1.     The Motion is hereby **Granted.**

2.     Unless otherwise set forth herein, defined terms in this Order shall have the same meaning ascribed to them in the Settlement Agreement.

<u>Preliminary Approval of Settlement Agreement</u>

3.     This Court has jurisdiction over this action and each of the parties to the Settlement Agreement.

1

4.      The terms of the Settlement Agreement are hereby preliminarily approved, including the release contained therein, as being fair, reasonable, and adequate to the Settlement Class, subject to final approval at a Fairness Hearing.   The Court finds that the Settlement Agreement was entered into at arm's length by experienced counsel and is sufficiently within the range of reasonableness that notice of the Settlement Agreement should be given, pursuant to a plan to be submitted by Settlement Class Counsel and approved by the Court at a later date as provided in this Order.   The Court further finds there is a sufficient basis for notifying the class of the proposed settlement, pursuant to the Notice Motion (defined in paragraph 9 below), to be submitted by Dealership Plaintiffs for Court approval, and for enjoining class members from proceeding in any other action pending the conclusion of the Fairness Hearing.

<u>Class Certification</u>

5.      Pursuant to Rule 23 of the Federal Rules of Civil Procedure and in light of the proposed settlement, the Court hereby finds that the prerequisites for a class action have been met and provisionally certifies the following class for settlement purposes (the "Settlement Class"):

> All automobile dealers that, during the period January 1, 2000 through May 5, 2014:  (1) purchased Automotive Wire Harness Systems manufactured by the Defendants or any current or former subsidiary or affiliate thereof or any co-conspirator, or (2) purchased vehicles containing Automotive Wire Harness Systems manufactured by the Defendants or any current or former subsidiary, affiliate thereof or co-conspirator."   Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal government entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased Automotive Wire Harness Systems directly from Defendants.

6.      The Court finds that provisional certification of the Settlement Class is warranted in light of the Settlement Agreement because:  (a) the Settlement Class is so numerous that

joinder is impracticable; (b) Dealership Plaintiff Class representatives' claims present common issues of law and fact and are typical of the Settlement Class; (c) Dealership Plaintiff Class representatives and Settlement Class Counsel (defined below) will fairly and adequately represent the Settlement Class; and (d) common issues predominate over any individual issues affecting the members of the Settlement Class.  The Court further finds that Dealership Plaintiff Class representatives' interests are aligned with the interests of all other members of the Settlement Class.  The Court also finds settlement of this action on a class basis superior to other means of resolving the matter.

<u>Appointment of Settlement Class Counsel</u>

7.    The Court hereby appoints Cuneo Gilbert & LaDuca, LLP 507 C Street, N.E., Washington, DC 20002; **[insert others]** as Settlement Class Counsel, having determined that the requirements of Rule 23(g) of the Federal Rules of Civil Procedure are fully satisfied by this appointment.

8.    Each Dealership Plaintiff Class representative named in the Complaint will serve as Dealership Plaintiff Class representative on behalf of the Settlement Class.

<u>Notice to Potential Class Members</u>

9.    Prior to the Fairness Hearing, Settlement Class Counsel shall utilize the best available means of providing notice of the Settlement Agreement and the Fairness Hearing to all persons affected by and/or entitled to participate in the Settlement Agreement, in full compliance with the notice requirements of Rule 23 of the Federal Rules of Civil Procedure and due process of law.  Such means of providing notice will be addressed in a subsequent Order following submission by Dealership Plaintiffs at a later date of a proposal for notice to the Settlement Class and related forms for notice, claims, and distribution ("Notice Motion").

10.     The Notice Motion shall include a proposed form of, method for, and date of dissemination of notice, consistent with the Settlement Agreement.  The date on which the notice is mailed shall be the "Notice Date."

11.     Notice to members of the Settlement Class, except statutory notice required to be given by Lear and KL Sales pursuant to 28 U.S.C. § 1715, shall be the responsibility of Settlement Class Counsel.

<u>Other Provisions</u>

12.     As of the date of the entry of this Order, Dealership Plaintiffs and all members of the Settlement Class shall be preliminarily enjoined from commencing, prosecuting, or continuing any action against Lear and/or KL Sales based upon or related to the Released Claims pending Final Approval of the settlement or until such time as this Court lifts such injunction by subsequent order.

13.     In the event that the Settlement Agreement is terminated in accordance with its provisions, the Settlement Agreement and all proceedings had in connection therewith shall be null and void, except insofar as expressly provided to the contrary in the Settlement Agreement, and without prejudice to the *status quo ante* rights of Dealership Plaintiffs, Lear, KL Sales, or the members of the Settlement Class.

14.     The Court's provisional certification of the Settlement Class as provided herein is without prejudice to, or waiver of, the rights of any Defendant to contest certification of any other class proposed in these coordinated actions.  The Court's findings in this Order shall have no effect on the Court's ruling on any motion to certify any class in these actions or on the Court's ruling(s) concerning any Defendant's motion; and no party may cite or refer to the

Court's approval of the Settlement Class as persuasive or binding authority with respect to any motion to certify any such class or any Defendant's motion.

15.    The Court approves the establishment of the escrow account under the Settlement Agreement as a qualified settlement fund ("QSF") pursuant to Internal Revenue Code Section 1.468B-1 and the Treasury Regulations promulgated thereunder, and retains continuing jurisdiction as to any issue that may arise in connection with the formation and/or administration of the QSF.    Settlement Class Counsel are, in accordance with the Settlement Agreement, authorized to expend funds from the QSF for the payment of the costs of notice, payment of taxes, and settlement administration costs.

16.    If the Settlement Agreement is terminated or is ultimately not approved, any of the parties may seek to modify any Court-ordered schedule to ensure that the Dealership Plaintiffs, Lear, and KL Sales will have sufficient time to prepare for the resumption of litigation, including but not limited to the completion of discovery, preparation of expert reports, the filing of class certification motion(s), the filing of summary judgment motion(s), and preparation for trial.    The Dealership Plaintiffs, Lear, and KL Sales have agreed, and the Court so orders, that this Settlement Agreement and its contents, including its exhibits, and any and all statements, negotiations, documents, and discussions associated with it, shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing or of the truth of any of the claims, allegations, or defenses contained in the complaints in the Actions or any other pleading or filing, and evidence thereof shall not be discoverable or used, directly or indirectly, in any way, whether in the Actions or in any other action or proceeding.    Neither this Settlement Agreement, nor any of the negotiations or proceedings connected with it, nor any other action taken to carry out its terms by Lear and/or

KL Sales shall be referred to, offered as evidence, or received in evidence in any pending or future civil, criminal, or administrative action or proceedings, except in a proceeding to enforce this Settlement Agreement, or to defend against the assertion of the Released Claims, or as otherwise required by law.

17.    The litigation against Lear and KL Sales is stayed except to the extent necessary to effectuate the Settlement Agreement.


IT IS SO ORDERED


_____
HON. MARIANNE O. BATTANI
U.S. DISTRICT JUDGE


Dated: _____, 2014